Case No. 24-6332

---

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

---

Penny Quinteros,
*Plaintiff-Appellant, (pro se)*

v.

InnoGames, Hendrick Klindworth, Michael Zillmer,
Julie Blan, and Richard Stephenson,
*Defendants-Appellees*.

On Appeal from the United States District Court
for the Western District of Washington
No. 19-cv-1402 - RSM
The Honorable Ricardo S. Martinez

---

## APPELLANT'S OPENING BRIEF

---

Penny Quinteros, Esq.
19338 133rd PL SE
Renton, WA 98058
206-661-8292
253-854-2788

*Pro Se*

## **ORAL ARGUMENTS REQUESTED**

1

# CONTENTS

Statement of Jurisdiction ..................................................................1

    I.    Subject Matter Jurisdiction Exists...............................................1

    II.  Personal Jurisdiction Exists.........................................................1

    III.    Appellate Court Jurisdiction Is Appropriate..................................3

Procedural History ...........................................................................4

Statement of the Issues ....................................................................5

Statement of The Case .....................................................................6

Summary of the Arguments...............................................................9

Arguments.......................................................................................10

    I.    SUBSTANTIVE ERRORS – THIRD AMENDED COMPLAINT STATES PLAUSIBLE CLAIMS ...........................................................11

    A.  Negligence And Gross Negligence Claims. ...................................11

    B.  Defamation Claim........................................................................16

    C.  Emotional Distress .......................................................................20

    D.  Gender Discrimination Claim........................................................22

    E.  Fraud, Misrepresentation, And Deceit Claims and The Consumer Protection Claims ......................................................................24

    F.  Product Liability Claim . .............................................................27

    G.  Contract and Promissory Estoppel Claims ...................................28

    H.  Copyright Claim...........................................................................30

    II.  The Newly Added Claims.............................................................37

    I.    The New Claims Should Be Retroactive And Were Otherwise Properly Pled. .............................................................................41

    III. Procedural Errors, Matters Outside the Pleadings. .......................42

    IV. Inadmissible And Irrelevant "Prior Bad Acts" Evidence....................47

    V.    The Ninth Circuit Previously Found the Claims Plausible.............50

Conclusion………………………………………………………………..….54

ii

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)..........................................................50

*Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009)......42

*Baxter v. Morningside, Inc.*, 10 Wash. App. 893, 521 P.2d 946 (1974) .................14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)..............................................50

*Boddie v. Connecticut*, 401 U.S. 371 (1971) ...........................................................3

*Brock v. United States*, 64 F.3d 1421, 1422 (1995)..................................................11

*Coal. for ICANN Transparency Inc. v. VeriSign, Inc.*, 611 F.3d 495, 501 (9th Cir.

   2010) ....................................................................................................................11

*DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 765 (9th Cir. 2018) ......50

*Foman v. Davis*, 371 U.S. 178, 182 (1962) ................................................. 16, 22, 39

*Fontana v. Haskins*, 262 F.3d 871, 877 (9th Cir. 2001) ................................... 39, 40

*Hvolboll v. Wolff Co.*, 187 Wash.App. 37, 43–44 (2015)..........................................12

*International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)............................2

*McKeever v. OpenSpend, Inc.*, 2019 WL 7758602 at *4, (N.D. Cal. 2019..............2

*Mendez v. Palm Harbor Homes, Inc.,* 111 Wash.App. 446 (2002)........................46

*Mohr v. Grant*, 153 Wash.2d 812, 822 (2005) ................................................ 16, 19

*Nunley v. Chelan-Douglas Health District*, 558 P.3d 513 (Wash App.) (2024)... 12,

  13

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007).............. 30, 32

**Statutes**

15 U.S.C. § 6851 ..............................................................................................1

*17 U.S.C. § 106* ...................................................................................... 31, 33

*Faulk v. Keene Corp.*, 113 Wash.2d 645 (1989) .......................................28

*Nw. Indep. Forest Mfrs. v. Dep't*.............................................................28

RCW § 49.60.215............................................................................................23

RCW § 7.72.....................................................................................................27

Wash. Rev. Code § 4 28.185..........................................................................1

**Rules**

18 U.S.C. § 2511 ............................................................................................1

28 U.S.C. § 1332 ...........................................................................................1

F.R.C.P. 12(d) .............................................................................................42

F.R.C.P. 12(h)(1)...........................................................................................2

F.R.E. 1002 .................................................................................................47

Fed. R. Civ. P. 9(b) ....................................................................................24

Federal Rule of Appellate Procedure 4(a)(1)(A) .......................................3

Federal Rule of Civil Procedure 4(k)(2) .....................................................2

*Khoja v.Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018)...............42

iv

**Regulations**

45 C.F.R. § 1606.8 ......................................................................................25

## STATEMENT OF JURISDICTION

### I.  Subject Matter Jurisdiction Exists

Ms. Quinteros (Appellant/Plaintiff) is an individual and a resident of the State of Washington. The Defendants are: InnoGames, a German limited liability company; Hendrick Klindworth, and individual and resident of Germany; Michael Zillmer, an individual and resident of Germany; Julie Blan, an individual and resident of the State of Georgia, U.S.A., and Richard Stephenson, an individual and resident of Germany.

The Ninth Circuit Court of Appeals has jurisdiction under 28 U.S.C. § 1332(a)(1–2) in that the Appellant has diversity from all of the Appellees and the amount in controversy exceeds $75,000. The Court also has jurisdiction under 28 U.S.C. § 1338 as the case involves copyright claims, violations of federal privacy laws, such as the Electronic Communications Privacy Act 18 U.S.C. § 2511, and this case involves a federal civil right of action under 15 U.S.C. § 6851.

### II.  Personal Jurisdiction Exists

Personal jurisdiction is appropriate in this case under Wash. Rev. Code § 4 28.185(1)(a–b)(2011) as InnoGames solicited Ms. Quinteros with emails and advertisements to her home in the State of Washington and directed their gaming activities to her state by registering for a business license and paying sales tax on

1

her transactions to the State of Washington. The other defendants are employees of InnoGames and so similarly directed their activities to the State of Washington. The case meets the requirements of *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) and does not offend the traditional notions of fair play and substantial justice.

Additionally, personal jurisdiction would be appropriate under Federal Rule of Civil Procedure 4(k)(2) as to the defendants InnoGames, Hendrik Klindworth, Michael Zillmer, and Richard Stephenson because they are foreign defendants not subject to the general jurisdiction in any states' courts, the case involves federal questions, and exercising jurisdiction is consistent with U.S. law.

Last, it should be noted that defendant Julie Blan waived personal jurisdiction by filing a 12(b)(6) Motion to Dismiss without asserting personal jurisdiction as a defense. F.R.C.P. 12(h)(1); 2 ER 359–362; see also *McKeever v. OpenSpend, Inc.*, 2019 WL 7758602 at *4, (N.D. Cal. 2019) (holding that the filing of a second amended complaint does not constitute a "clean slate" and that defendants must assert a lack of personal jurisdiction defense in their first motion to dismiss or it is waived).

2

### III.    Appellate Court Jurisdiction Is Appropriate

The notice of appeal was timely filed with the Court on October 14, 2024. The appeal is from a final order of the district court entitled "Judgment By Court" dated September 16, 2024. Under Federal Rule of Appellate Procedure 4(a)(1)(A) a notice of appeal is timely if filed within 30 days after entry of judgment.

## STATEMENT OF THE CASE

Since 2019 Ms. Quinteros has not had even one moment in front of a court. Ms. Quinteros has a right to petition the government for redress of grievances under the First Amendment. Due process requires the right to be heard must be granted at a meaningful time and in a meaningful manner appropriate to the nature of the case. *Boddie v. Connecticut*, 401 U.S. 371 (1971). Ms. Quinteros's arguments are best made in person. This case is simple in some aspects, but the interplay of what happened when and by whom is complex and occurred over multiple years. Ms. Quinteros can best assist the court with questions in a live manner. Further, Ms. Quinteros would like to observe the court's reaction to her arguments as part of the appearance of fairness doctrine. See eg., *Federal Communications Commission v. WJR, The Goodwill Station*, 337 U.S. 265, 276 (1949) (it is determined on a case-by-case basis if due process requires an oral argument in order to provide a fair hearing).

3

## PROCEDURAL HISTORY

Ms. Quinteros is proceeding pro se. Ms. Quinteros is now a lawyer but had just started law school at the time this case was filed. This case was initially filed in September 2019. Ms. Blan filed a motion to dismiss after the cutoff date for an answer and independent of the other defendants. See Docket 15. The district court allowed Blan to revise and refile this motion, see 2 ER 363–66, and the court granted the motion to dismiss based on "group pleadings," with leave to amend the complaint. See Docket 34. In September, 2020 the other parties also filed a motion to dismiss which was granted in March of 2022 and no leave to amend was given. See Docket 94. In April of 2022 Ms. Quinteros petitioned the Ninth Circuit for appeal. In January 2024 a mandate issued ordering a reversal based on abuse of discretion. See 2 ER 393. In March 2024 Ms. Quinteros filed an amended complaint, and then in May 2024 Ms. Quinteros sought and received leave to fix several typos and other errors in the new complaint. 2 ER 92. The defendants filed a Motion to Dismiss in July 2024, 2 ER 300, and it was granted in September 2024, 1 ER 2. This appeal follows after timely notice of appeal was filed in October 2024.

## STATEMENT OF THE ISSUES

1. Did Plaintiff properly state her claims capable of relief? Did the district court err on the substantive law?

2. Did the district court err when it denied Ms. Quinteros's inclusion of new claims even though the Ninth Circuit had previously granted leave to amend?

3. Did the district court err when it considered matters outside of the pleadings and evidence submitted by the defendants in contravention of Federal Rule of Civil Procedure 12(d) and the long-standing requirement that allegations in the complaint must be considered as true?

4. Did the district court rely on inadmissible and irrelevant "prior bad acts" evidence which resulted in bias, animosity, and discrimination in the dismissal?

5. Did the district court err when it ignored the Ninth Circuit's previous order and dismissed the negligence claim as speculative when the Ninth Circuit previously held the claim was plausibly alleged?

**STATEMENT OF THE CASE**

InnoGames solicited players into their game, Forge of Empires, by promising them that the game was only for players over the age of eighteen and promising that "brutal sex" would occur with "most of the characters in this game [who are] sexually attractive females who display sexually explicit behavior." At the same time, InnoGames solicited Ms. Quinteros by promising her that the game was "fun," "fair," and "suitable for all ages." Ms. Quinteros was told repeatedly that the game was "family friendly" and was repeatedly and explicitly told that all players were subject to the same detailed rulebook. Unfortunately, InnoGames knew at the time they solicited Ms. Quinteros to spend over $10,000 on the game that these were untrue statements. They knew that they had solicited players by promising them sex with the unknowing female players like Ms. Quinteros.

Both things cannot be true. InnoGames cannot deliver "females who display sexually explicit behavior" while at the same time promising their female players they would enforce a rule stating InnoGames would not tolerate "sexually explicit" behavior. Promising that most of the clientele of a business wants to engage in brutal sex while bringing in unsuspecting women with the exact opposite promise is clearly malfeasance. It creates a dangerous and unsafe environment for the women clientele. The question before the Ninth Circuit today is whether

InnoGames gets to get away with it simply because they have an online environment and not a brick and mortar establishment.

Unfortunately, the case doesn't stop there. Ms. Quinteros was subject to a sex-crime that occurred through the game, because InnoGames also created an unsafe moderation system. InnoGames recruited players from the game to secretly moderate the community and police the players like Ms. Quinteros with special access to tools and private records. Please remember, these players that were solicited to be moderators are partly made up of players who joined looking for sex with the female players. These moderators acted in all regards as customer service agents for InnoGames.

In 2016, Ms. Quinteros began to be harassed by several players because she did not display the "sexually attractive" female traits they were looking for. They attempted to coerce Ms. Quinteros into sending them a photograph of her breasts to prove that she was a woman, otherwise they would organize to damage Ms. Quinteros's ability to play the game and use her $10,000 account. Ms. Quinteros, instead of sending her harassers a photo, specifically uploaded it to a private url, accessible only with the correct code, and sent it to a neutral third-party through a confidential game-chat feature known as a "whisper." But unknown to Ms. Quinteros, one of the harassing players was also secretly a senior moderator who accessed this intimate image and sent it to the harassment mob. Ms. Quinteros

7

suffered years of sexual harassment and emotional damage as a result. Ms. Quinteros seeks to hold InnoGames responsible for this data-breach, for the actions of its moderators, and the resulting civil conspiracy of harassment.

Finally, Ms. Quinteros has brought all her claims through 2019 against InnoGames as civil procedure requires. These additional claims involve InnoGames intentionally making their game psychologically addictive so as to inflict gaming disorder on Ms. Quinteros. InnoGames engaging in a civil conspiracy with its moderators and players to defame Ms. Quinteros. And the claims include breach of several laws including sex-discrimination in accommodations, intimate image distribution civil requirements, wire-tapping, privacy and electronic-communication laws.

## SUMMARY OF THE ARGUMENTS

There are two essential parts to the legal analysis of this appeal. Did the district court make the proper substantial rulings on the issues, and did the district court follow the proper procedural rules required to adjudicate a claim justly. The answer to both of these questions is no.

Ms. Quinteros properly stated arguments for relief. Ms. Quinteros will succinctly identify the elements of each claim and the facts that meet that requirement. These arguments will follow the roadmap that the Ninth Circuit previously identified regarding the elements of the claims and the facts that needed revision in its prior decision. The district court erred when it refused to follow the Ninth Circuit's rulings on several areas of law on this matter.

The district court has allowed mountains of improper and irrelevant evidence to influence its decision on this matter. Considering facts outside the pleadings is not only procedurally improper. It amounts to an abuse of judicial discretion to decide a motion to dismiss when what the court is really deciding is a motion for summary judgment in disguise and without providing the proper ability for discovery.

**ARGUMENTS**

**Legal Standard**

When evaluating a motion to dismiss under Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff, the non-moving party. *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009). A complaint survives dismissal if it contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard is not a high bar—plausibility simply requires enough factual content to allow the court to reasonably infer that the defendant is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 678.

While legal conclusions alone are not entitled to an assumption of truth, courts must view the complaint in its entirety and consider whether well-pleaded facts support a plausible claim. *Id.* at 679. Detailed factual allegations are not required; rather, a complaint need only provide more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

10

Importantly, dismissal under Rule 12(b)(6) is disfavored, and where a complaint is found deficient, courts should grant leave to amend unless it is absolutely clear that no additional facts could cure the deficiency. *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

Appellate courts review a district court's dismissal under Rule 12(b)(6) de novo. *Brock v. United States*, 64 F.3d 1421, 1422 (1995). This means the appellate court gives no deference to the lower court's decision and independently evaluates whether the complaint states a claim upon which relief can be granted. The appellate court applies the same standard as the district court, accepting all well-pleaded facts as true and drawing all reasonable inferences in favor of the plaintiff. See *Coal. for ICANN Transparency Inc. v. VeriSign, Inc.*, 611 F.3d 495, 501 (9th Cir. 2010).

I.     **The Third Amended Complaint states plausible claims.**

**A. The Negligence And Gross Negligence Claims Are Properly Stated.**

The Court's dismissal of Plaintiff's negligence and gross negligence claims is improper because it fails to recognize the duty owed by Defendants, disregards well-pleaded allegations of breach and proximate cause, and misapplies the standard for vicarious liability.

11

**1. Defendants Owed Plaintiff a Duty of Care**

Contrary to the Court's assertion, Plaintiff has plausibly alleged that Defendants owed her a duty of care. InnoGames actively solicited Plaintiff and others into its gaming platform, creating a business-consumer relationship. Through its Terms of Service, Community Guidelines, Published Rules, and Privacy Policy, InnoGames expressly undertook a duty to protect players from harassment, ensure fair enforcement of rules, and safeguard private user data. Additionally, Washington law recognizes a duty to prevent foreseeable harm when a party exercises control over a dangerous condition—here, Defendants knowingly allowed moderators to access and misuse private data, despite prior incidents demonstrating a risk of such misconduct (see *Xander* lawsuit). *Hvolboll v. Wolff Co.*, 187 Wash.App. 37, 43–44 (2015); 2 ER 112–13. Further Washington State law specifically contemplates a duty on behalf of companies to protect private information. *Nunley v. Chelan-Douglas Health District*, 558 P.3d 513 (Wash App.) (2024). "We hold that companies that collect and store personal indentifiable information (PII) and personal health information (PHI) have a duty to use reasonable care in collecting and storing the information. This duty includes taking reasonable steps to prevent unauthorized access and disclosure of information." *Id.* at 517. The same court also recognizes cognizable injuries for such data breaches.

*Id.* Last, several members of InnoGames staff promised to help Ms. Quinteros remedy the problem, thus creating a duty under the "rescue-doctrine" as well.

### 2. Defendants Breached Their Duty

Plaintiff has alleged specific breaches of these duties, including:

- Permitting moderators, who were also active players with conflicts of interest, to access and misuse private user data;

- Failing to supervise or discipline moderators who engaged in misconduct;

- Creating an unsafe gaming environment through sexually explicit advertisements that encouraged harassment of female players;

- Ignoring complaints of targeted harassment and instead penalizing Plaintiff for reporting abuse.

These breaches directly facilitated the theft and dissemination of Plaintiff's intimate image, a foreseeable consequence of Defendants' failure to enforce safeguards.

### 3. Moderators Were Employees Acting Within the Scope of Their Duties

The Court's ruling incorrectly assumes that InnoGames' moderators were not employees or that their misconduct fell outside the scope of their employment.

13

Plaintiff has alleged that moderators, senior moderators, and community managers were essential personnel responsible for enforcing InnoGames' policies, reviewing player reports, and moderating community interactions. These roles were not voluntary in a casual sense; moderators were subject to a formal application and interview process, received training, were required to sign confidentiality agreements, and were compensated—whether in traditional wages (for community managers) or in-game currency (for moderators).

Additionally, moderators performed essential functions for InnoGames, such as responding to support tickets, enforcing game rules, and monitoring player behavior. These activities were not discretionary hobbies but assigned job functions critical to the game's operation and reputation. The fact that a moderator abused this role to access and distribute Plaintiff's intimate image does not remove their actions from the scope of employment. The doctrine of respondeat superior applies when an employee's wrongful conduct is reasonably incidental to their job duties. Here, the moderator's ability to access Plaintiff's private information stemmed directly from their position and authority granted by InnoGames.

Even if InnoGames argues that these individuals were not traditional employees, they still qualify as "gratuitous agents" under Washington law, see *Baxter v. Morningside, Inc.*, 10 Wash. App. 893, 521 P.2d 946 (1974), meaning that their actions, performed under the company's control and direction, subject

14

InnoGames to liability. Whether or not the company explicitly authorized the moderator's misconduct is irrelevant; InnoGames created and maintained a system in which moderators had unchecked access to private player data without adequate oversight, making the harm to Plaintiff foreseeable and preventable.

### 4. Defendants' Breach Was the Proximate Cause of Plaintiff's Harm

The Court's conclusion that Plaintiff's injuries resulted merely from third-party insults ignores the substantial allegations that Defendants' actions led to the unauthorized access and distribution of her intimate image. But for Defendants' negligence in allowing moderators unchecked access to private data, Quinteros's photograph would not have been disseminated. Furthermore, Defendants' refusal to intervene or enforce their own policies exacerbated Ms. Quinteros's harm, prolonging the harassment and intensifying her emotional distress.

### 5. Plaintiff Has Plausibly Pled Negligence Under *Twombly/Iqbal*

The Court erroneously characterizes Ms. Quinteros's claims as speculative. The Second Amended Complaint contains detailed allegations of Defendants' knowledge, inaction, and facilitation of the harm suffered. Plaintiff does not rely on mere conclusions but presents specific facts, including Defendants' prior knowledge of similar misconduct (Xander lawsuit), the company's failure to

15

implement safeguards, and its active role in fostering a hostile environment. These allegations are sufficient to state a claim under *Twombly* and *Iqbal*.

Given the well-pleaded allegations of duty, breach, causation, and damages, Plaintiff's negligence and gross negligence claims should not have been dismissed. The Court's ruling misapplies the legal standards for duty and vicarious liability, disregards the foreseeability of harm, and improperly resolves factual disputes at the pleading stage. Accordingly, Plaintiff respectfully requests reconsideration of the dismissal.

### B. The Defamation Claim Is Properly Alleged

The Court's ruling dismissing Ms. Quinteros' defamation claims is overly narrow and fails to consider the totality of the factual allegations contained in the complaint. Under *Mohr v. Grant*, a private individual must show falsity, unprivileged communication, fault, and damages to sustain a defamation claim. *Mohr v. Grant*, 153 Wash.2d 812, 822 (2005). Moreover, as established in *Foman v. Davis* and affirmed by the Ninth Circuit previously in this case, pro se litigants are entitled to liberal amendment of their pleadings to cure any deficiencies. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Only if Ms. Quinteros's ability to supplement facts is exhausted should dismissal be granted without leave to amend. Ms. Quinteros' complaint, which alleges that InnoGames participated in a civil

16

conspiracy with third-party harassers to adopt and disseminate defamatory statements, pled sufficient facts to satisfy these elements. In support of her claim, Ms. Quinteros has screenshot evidence identifying the exact speakers, along with the dates and times of the statements—a fact that can be introduced upon amendment.

### 1. Falsity Grounded in a Material, Objective Wrong

Ms. Quinteros' defamation claims are predicated on the wrongful, unauthorized disclosure of her intimate image—a factual event that was both unauthorized and false. The complaint alleges that Defendants' agents (moderators, senior moderators, and community managers), who are integral employees of InnoGames, accessed and disseminated Ms. Quinteros' private photograph without consent. This disclosure constitutes a false portrayal of Ms. Quinteros' conduct, forming the basis for subsequent defamatory communications. Statements such as "2C is a tranny?", that Ms. Quinteros "failed in law school," or that she was "a man" are not mere opinions; they are defamatory assertions rooted in a baseless misrepresentation that causes reputational harm.

### 2. Context, Identity of Speakers, and Civil Conspiracy

While the district court contends that the complaint lacks detailed identification of the speakers and precise details regarding the time and place, the

17

complaint sufficiently pled that these statements were part of a coordinated campaign of harassment within the gaming community. Ms. Quinteros alleges that this campaign was the product of a civil conspiracy between InnoGames and third-party harassers. By conspiring with these harassers, InnoGames effectively adopted their defamatory statements as its own, thereby deepening its liability. Importantly, Ms. Quinteros possesses documentation that precisely identifies the speakers, as well as the dates and times of the statements. Should the Court allow amendment—a remedy that is liberally available to pro se litigants—these details will be incorporated to fully satisfy the pleading requirements.

### 3. Defamatory Statements as More Than Mere Opinions

Defendants argue that the statements in question are mere opinions and thus nonactionable. However, the complaint pled that these statements were made with the express purpose of generating sexually explicit and harassing commentary designed to injure Ms. Quinteros' reputation. The context in which a moderator's unauthorized disclosure of a private, intimate image triggered a cascade of false and damaging statements demonstrates that these are assertions of false fact rather than hyperbolic opinions. The civil conspiracy with third-party harassers further underscores that these statements were adopted by InnoGames as its own, rendering them actionable under defamation law.

18

### 4. Harm and Damages

Ms. Quinteros pled detailed allegations of reputational harm and emotional distress resulting from this orchestrated campaign of defamatory statements. The cumulative effect of these false statements, stemming from a demonstrable breach of duty by InnoGames and its agents, supports a genuine claim for damages. The conspiracy with third-party harassers, through which InnoGames adopted their defamatory communications, exacerbates the injury to her reputation and validates her claim for relief.

### 5. Amendment is Liberally Permitted for Pro Se Litigants

Given that pro se litigants are afforded liberal amendment opportunities, Ms. Quinteros respectfully requests leave to amend her complaint to include the detailed documentation of the speakers, dates, and times of the defamatory statements. Such an amendment would cure any remaining deficiencies and ensure that all elements of her defamation claim are fully pled, in line with established case law and the principles governing pro se litigation.

In sum, the complaint contains sufficient factual allegations to support a defamation claim under *Mohr v. Grant*. It establishes the falsity of the unauthorized disclosure of Ms. Quinteros' intimate image, situates the defamatory statements within the context of a coordinated campaign driven by a civil

19

conspiracy with third-party harassers, and demonstrates that InnoGames, by participating in this conspiracy, adopted those statements as its own. Given that Ms. Quinteros has additional documentation available to supplement her complaint—and that liberal amendment is available to pro se litigants—the dismissal of these claims is premature. Ms. Quinteros respectfully requests that the Court reconsider its ruling and permit her defamation claims to proceed.

## C. The Emotional Distress claims were properly stated

The Court's ruling dismissing Ms. Quinteros' claims is overly narrow and fails to account for the egregious facts set forth in the complaint. Ms. Quinteros has pled that InnoGames not only allowed, but actively facilitated, a campaign of harassment and defamatory conduct through its moderators and employees. This outrageous conduct is further underscored by InnoGames' solicitation of players to have sex with Ms. Quinteros—a reprehensible act that amplifies the extreme and targeted nature of the harassment.

## 1. Outrageous Conduct and Extreme Harassment

Ms. Quinteros alleges that InnoGames engaged in a pattern of outrageous conduct by:

- Allowing moderators and community managers to access and disclose her intimate image without consent.

20

- Disseminating false, defamatory statements that impugned her character, including claims that she "failed in law school," that she was "a man," and derogatory slurs.

- Most egregiously, actively soliciting players to have sex with her. This solicitation not only constitutes a gross invasion of her privacy and a blatant abuse of power, but it also served to further humiliate and degrade Ms. Quinteros in a systematic and coordinated campaign of harassment.

These allegations clearly demonstrate that Defendants' conduct was more than mere negligence or isolated insults—it was a deliberate, orchestrated effort to demean and damage Ms. Quinteros, thereby increasing her reputational and emotional injury.

**2. Civil Conspiracy and Adoption of Harassing Statements**

The complaint alleges that InnoGames conspired with third-party harassers by adopting and disseminating their defamatory statements as its own. This civil conspiracy is central to the outrageous nature of the conduct. By participating in and facilitating this campaign of defamation, InnoGames deepened its liability. The fact that InnoGames not only allowed but also encouraged such behavior demonstrates a level of recklessness that should preclude dismissal.

### 3. Amendment is Readily Available to Clarify Deficiencies

While the Court contends that the complaint lacks detailed identification of the speakers and the precise time and place of these statements, Ms. Quinteros possesses documentation that identifies the exact speakers, along with dates and times. In light of the liberal amendment standards applicable to pro se litigants—as established in *Foman v. Davis*—Ms. Quinteros respectfully requests leave to amend her complaint to incorporate these details, thereby curing any remaining deficiencies.

In sum, Ms. Quinteros' emotional distress complaint sets forth sufficient factual allegations to support her claims. It demonstrates that InnoGames engaged in an egregious pattern of outrageous conduct—including the solicitation of players to have sex with her—which was part of a broader civil conspiracy to defame and harass her. Given that additional documentation is available and amendment is liberally permitted for pro se litigants, dismissal of these claims is premature. Ms. Quinteros respectfully requests that the Court reconsider its ruling and allow her claims to proceed.

### D. The Gender Discrimination Claim is properly stated

Ms. Quinteros' complaint demonstrates a pattern of discriminatory conduct by InnoGames that should preclude dismissal. The complaint alleges that

22

InnoGames engineered a system in which its rules are enforced unequally—shielding male players while subjecting female players, such as Ms. Quinteros, to harsher treatment, exclusionary practices, and targeted harassment. This unequal enforcement is not accidental but is embedded in the design and moderation practices of the game.

The evidence indicates that female players are systematically left unprotected by the rules, whereas male players receive preferential treatment. This differential treatment not only constitutes unfair discrimination but also violates Washington law, specifically RCW § 49.60.215, which prohibits unconscionable conduct and deceptive practices that harm consumers. The complaint establishes that InnoGames' moderation practices were designed to favor male players, thereby directly contributing to the harm suffered by Ms. Quinteros.

Given these allegations, dismissing Ms. Quinteros' claims would ignore the clear evidence of systematic gender-based discrimination inherent in the operation of InnoGames. Ms. Quinteros respectfully requests that the Court allow her claims to proceed so that the documented evidence of unequal rule enforcement and discriminatory practices can be fully examined.

23

**E. The Fraud, Misrepresentation, And Deceit Claims State Specific And Detailed Facts Regarding The "Who, What, Where, And How" Necessary To State A Claim For Relief. The Consumer Protection Claims Similarly Should Not Have Been Dismissed.**

The legal standard under Fed. R. Civ. P. 9(b) requires that a claim must state with particularity the circumstances constituting fraud. A fraud claim is properly pled if it "informs the defendant of who did what, and describes the fraudulent conduct and mechanisms." *Haberman v. Washington Pub. Power Supply Sys.*, 109 Wn.2d 107, 165 (1987).

Here Ms. Quinteros has identified very specific statements that are fraudulent. First, Ms. Quinteros was invited into a game that was for "people of all ages," "family friendly" and "fair." These representations were made repeatedly by InnoGame moderators to Ms. Quinteros and are identified in depth in the complaint. See eg., 2 ER 184–85. At the same time moderators were promising Ms. Quinteros the game was family friendly, they told other players that *Forge of Empires* was a sexually explicit game only for players over the age of eighteen. Ms. Quinteros relied on InnoGames's statements to have her five and seven-year old children play this game. See 2 ER 112. That is one of the fraudulent statements.

24

The other fraudulent statements are that InnoGames ran a "fair" game. Although fair has multiple meanings under the law, it is often associated with an "impartial decision maker." See e.g., 45 C.F.R. § 1606.8 (requiring an impartial hearing officer who is not biased and doesn't have a personal interest in the outcome). Running a fair game has a very specific context. It means that all players of the game follow the same rules which are interpreted by non-biased decision makers.

Would the court find the following analogy to be fraud? The Eagles are invited to participate in Super Bowl LIX by the NFL against the Chiefs. They are promised a fair game by the NFL. At halftime, the Eagles discover that Patrick Maholmes is not only the star quarterback of the Chiefs, he is also secretly the head referee and has been changing the rulebook whenever he wanted. Everyone in the world would find that to be fraud. Ms. Quinteros does not deserve less protection simply because she isn't on the mainstage.

Ms. Quinteros spent $10,000 on this game believing the game was fair. She believed that the Rules and Terms and Conditions would be enforced equally and in an impartial manner. She was told repeatedly before making transactions that the game rules applied to everyone and were enforced fairly and consistently. These statements were made through interactions with the

25

moderators in a recorded record. Ms. Quinteros cited specific statements in her complaint.

The game was in fact not fair, the rules were not enforced equally and in an impartial manner. InnoGames had no intention of providing a fair game right from the start, identified from their promises to Ms. Quinteros in the rules that they would not accept sexually explicit and pornographic behavior, while at the same time making promises to the male players in pornographic advertisements that the game was full of sexually explicit behavior.

Since Ms. Quinteros properly stated her claim for fraud, she also properly stated her claim for protection under the consumer protection laws of Washington State. InnoGames knowingly deceived Ms. Quinteros with the above representations over and over again in an attempt to drag more and more money out of her. This is their standard practice and this affects not just Ms. Quinteros, but every person who plays their game. In particular, InnoGames rampantly allowed cheating when it claimed in its Rules that it did not allow cheating. InnoGames knowingly allowed "botting" users to play, even though it was a specific violation of the game rules.

26

These botting-players were reported over and over again, but the reporters were disbelieved by the moderators because the moderators had implicit bias and were playing on the same teams as the "botters." See 2 ER 138.

Ms. Quinteros's claim was specifically amended to include the additional language of the "who, what, where, and how." Dismissal was inappropriately based on the district court's interpretation of an ambiguous contract provision that Ms. Quinteros has claimed she is not even bound by, and if she is bound it was to a different version of the contract than that submitted by the defense. The district court erred when basing its decision on fraud on a factual determination about what the contract says. The Ninth Circuit should find that the fraud claim was stated with particularity.

## F. The Product Liability Claim Was Properly Amended To Address Whether *Forge Of Empires* Was Unreasonably Addictive.

An unsafe product for product liability is generally one where there are reasonably safer alternative designs. The Washington Products Liability Act, RCW § 7.72, provides that a product is not reasonably safe as designed if, at the time of manufacture, the likelihood and seriousness of harm caused by the product outweigh the burden on the manufacturer to design a safer product and the adverse

27

effect that a practical and feasible alternative design would have on the product's usefulness. *Faulk v. Keene Corp.*, 113 Wash.2d 645 (1989).

The Ninth Circuit previously identified the main missing component of this claim is that the game-addiction intentionally created by InnoGames had to be "unreasonable." Reasonableness is a factual-determination, but InnoGames knew that it game was addictive and purposefully attempted to cause addiction in their players without warning their players that they were doing so. InnoGames knew that this addiction could lead to excessive overspending, excessive gameplay to the point of damaging players brains and destroying their relationships, loss of the ability to work and other harmful effects. There were many safer alternative designs InnoGames could choose to implement, such as "rest periods" or decreased benefits for extended play, but InnoGames chose to do the exact opposite. All of these circumstances should lead to a finding that the game was unreasonably addictive and thus this claim was properly stated.

**G. The Contract and Promissory Estoppel Claims were properly stated.**

A breach of contract claim requires asserting (1) the existence of a contractual duty, (2) defendant's breach of that duty, and that (3) defendant's breach of that duty caused damages to the plaintiff. *Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 78 Wn. App. 707, 712 (1995). The doctrine of promissory

28

estoppel serves to enforce "otherwise unenforceable promises which are not supported by consideration." *Klinke v. Famous Recipe Fried Chicken, Inc.*, 94 Wn.2d 255, 261, 616 (1980).

Here the district court engaged in several errors by relying on the Terms and Conditions from the *international* version of the game submitted by the defendants. Ms. Quinteros was never playing that version of the game and those Terms and Conditions are completely irrelevant. The district court should not have used them to make factual decisions, and the district court should not have made factual decisions at all on a motion to dismiss.

First, the district court found that Ms. Quinteros was bound by the Terms and Conditions even though she stated she did not agree to them when joining the game. Second, if Ms. Quinteros was bound by the terms the district court found that the contract was not ambiguous as Ms. Quinteros asserted. The contract states that "InnoGames will not accept…" certain behavior. These contracts are generally held strictly against the drafter, but the district court here found that because the ambiguous language was in the "user" section it should be interpreted in favor of InnoGames despite its clear language. These are all factual decisions on contract interpretation.

29

Additionally, the district court sua sponte held that Ms. Quinteros must've been bound by a provision stating that user content is licensed to InnoGames without identifying that this language was provided in a private electronic communication system intended to be between two parties and there are specific laws addressing how that information can be used and accessed by that communication provider.

It boggles the mind that the district court can make these factual determinations without converting this motion to a motion for summary judgment and providing Ms. Quinteros the opportunity to engage in discover on the facts.

**H. Argument Against Dismissal of Ms. Quinteros' Copyright Claim**

Ms. Quinteros respectfully requests that the Court overrule the lower court's dismissal of her copyright claim. The district court's order dismissing this claim is flawed because it (1) misapplies the *Perfect 10* "server test" in a manner that improperly immunizes online infringers, (2) fails to recognize that InnoGames' direct agents actively accessed, copied, and redistributed Ms. Quinteros' copyrighted image, (3) incorrectly assumes that InnoGames' Terms and Conditions bar her claim, and (4) disregards Ms. Quinteros' fundamental rights under the Copyright Act, which grants the original artist the exclusive right to reproduce and

30

distribute their work, regardless of the district court's opinion on the image's value.

Additionally, Ms. Quinteros has suffered direct damages as a result of the unauthorized release of her copyrighted photograph, which harmed her reputation and subjected her to public ridicule. The district court's failure to recognize the real-world consequences of InnoGames' infringement further underscores why dismissal of this claim was improper.

**1. The Copyright Act grants Ms. Quinteros exclusive rights over her work.**

Under *17 U.S.C. § 106*, the Copyright Act grants creators the exclusive right to reproduce, distribute, and display their copyrighted works. The district court specifically stated "calling this [work] intellectual property is a stretch." 1 ER 25–26. The district court alluded to the fact that this claim was "borderline frivolous" because it disapproved of Ms. Quinteros copyrighting the photograph. However, the statutory protections given by the Copyright Act apply regardless of whether the district court considers the image in question to be good, bad, artistic, or insignificant. Sometimes the value in having the exclusive right to publicly display an image is having the right *not* to publicly display an image. Once an individual

31

has a valid copyright in an image, no third party—including InnoGames—may legally copy, distribute, or publicly display it without authorization.

Here, Ms. Quinteros has clearly alleged that her copyrighted photograph was reproduced and disseminated without her permission by InnoGames' agents, violating her exclusive rights under the Copyright Act. The Court's decision to dismiss the claim overlooks this clear-cut statutory protection and improperly shifts the focus to subjective judgments about the image, which are legally irrelevant to the question of infringement.

**2. The Court's Application of the "Server Test" Is Misplaced**

The district court's reliance on the *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) "server test" to dismiss Ms. Quinteros' copyright claim is erroneous. *Perfect 10* involved a scenario in which Google merely linked to images hosted on third-party websites, without storing or copying them. This is fundamentally different from the case at hand.

Here, InnoGames' own agents and moderators actively accessed, stored, copied, and distributed Ms. Quinteros' image—conduct that goes well beyond passive linking. The image was originally sent via a private-access URL with a short expiration period, yet it continued to be accessed and distributed years later.

32

The prolonged unauthorized dissemination of her copyrighted work establishes direct infringement under *17 U.S.C. § 106*.

If the district court's ruling were upheld, it would create a dangerous precedent allowing companies to infringe upon artists' copyrights as long as they initially accessed the work through a hyperlink. Such an interpretation contradicts the intent of the Copyright Act and provides an unjustified loophole for digital copyright violators.

**3. InnoGames' Agents Directly Engaged in Copyright Infringement**

The dismissal of Ms. Quinteros' copyright claim ignores the fact that InnoGames' own employees and agents were responsible for copying and distributing her image. Copyright infringement is not limited to official corporate policies—it includes unauthorized actions taken by employees and agents who are acting under the company's authority.

In this case, InnoGames' moderators, senior moderators, and community managers—who had access to private player information—used their privileged positions to obtain and redistribute Ms. Quinteros' copyrighted work. A company is legally responsible for the misconduct of its agents when they act within the scope of their duties, and here, InnoGames provided these moderators with special access to player data.

33

Additionally, InnoGames had a direct financial interest in the continued distribution of the image, as the controversy surrounding Ms. Quinteros' mistreatment generated user engagement and, consequently, revenue. InnoGames knowingly permitted this ongoing infringement, making it liable under both direct and contributory infringement doctrines.

**4. The Terms and Conditions Do Not Bar Ms. Quinteros' Copyright Claim**

Defendants argue that Ms. Quinteros granted InnoGames a license to distribute her copyrighted image under the game's Terms and Conditions. However, this defense is legally and factually defective for multiple reasons:

- No Agreement to Terms: Ms. Quinteros has alleged—and Defendants have not disputed—that she never agreed to InnoGames' Terms and Conditions through a valid "clickwrap" or "browsewrap" agreement. In fact, Forge of Empires allowed users to play without affirmatively consenting to any contract.

- Unconscionability: Even if Ms. Quinteros had agreed to the Terms and Conditions, the provision allowing InnoGames to retain and distribute private user content would be substantively and procedurally unconscionable. No reasonable user would expect a gaming company to retain, republish, or weaponize their private images for public distribution.

- Waiver of Enforcement: InnoGames selectively enforces its Terms and Conditions, allowing harassment to flourish while purporting to shield itself from liability. Its failure to uniformly enforce these terms undermines its ability to rely on them as a defense.

**5. The Unauthorized Release of the Image Has Damaged Ms. Quinteros' Reputation**

The damage suffered by Ms. Quinteros is not speculative—it is direct and substantial. Copyright infringement is not just about unauthorized copying; it is also about the consequences of that infringement.

Here, InnoGames' release of Ms. Quinteros' copyrighted photograph exposed her to reputational harm, harassment, and ridicule. The image was not merely copied—it was used as a tool to demean, defame, and publicly humiliate her within the gaming community. This unauthorized release directly contributed to a hostile environment in which Ms. Quinteros was targeted with explicit harassment and defamatory attacks, further intensifying the emotional and professional consequences of the infringement.

The Copyright Act exists to protect artists and creators from exactly this kind of harm—where their work is exploited and used in ways that damage their reputation without their consent. Ms. Quinteros has the exclusive right to control

how her image is used, and the Court's dismissal of her claim fails to recognize the gravity of the harm caused by InnoGames' infringement.

The dismissal of Ms. Quinteros' copyright claim was premature and legally incorrect. The Copyright Act (*17 U.S.C. § 106*) explicitly grants artists the exclusive right to control their work, regardless of whether a court considers the image good or bad. The Court's misapplication of the *Perfect 10* "server test," its failure to recognize InnoGames' direct involvement in the infringement, and its reliance on Terms and Conditions that Ms. Quinteros never agreed to all warrant reconsideration.

Additionally, the unauthorized release of the copyrighted image has damaged Ms. Quinteros' reputation, further justifying her claim for relief. Given these substantial legal and factual errors, Ms. Quinteros respectfully requests that the Court reinstate her copyright claim. If additional specificity is required, she requests leave to amend in accordance with the Ninth Circuit's guidance favoring amendment for pro se litigants.

36

## II. The Newly Added Claims Should Not Have Been Dismissed.

The district court's dismissal of Ms. Quinteros' newly added claims was improper because it contradicts the Ninth Circuit's directive that the district court abused its discretion with its first dismissal. If the district court had not abused its discretion and had allowed amendment initially, Ms. Quinteros would've been able to bring these claims. The district court's decision to strike these claims disregards this precedent and unduly restricts Ms. Quinteros' ability to present her full case.

Furthermore, Ms. Quinteros' newly added claims arise directly from the same factual allegations that were already part of the case. She is not introducing an entirely new legal theory based on unrelated facts but is instead refining and expanding her claims to ensure that all applicable causes of action are properly pled. The Ninth Circuit has made clear that plaintiffs may amend their complaints to add claims as long as they arise from the same set of operative facts. The district court's dismissal of these claims therefore unjustly prevents Ms. Quinteros from fully asserting her rights.

Additionally, InnoGames has long been on notice of these factual allegations and cannot credibly claim prejudice. Courts have routinely held that amendments should be allowed when they do not unfairly surprise the defendant or require entirely new discovery. Here, the newly added claims simply provide a legal

37

framework for conduct that has been at issue since the outset of the case. By dismissing these claims on procedural grounds rather than allowing them to be litigated on their merits, the district court has unfairly disadvantaged Ms. Quinteros and improperly restricted the scope of her case.

Finally, the Ninth Circuit previously reversed the district court's refusal to allow amendment, emphasizing that Ms. Quinteros should be given a meaningful opportunity to correct deficiencies in her pleadings. The district court's current ruling disregards this mandate by arbitrarily limiting the scope of amendment. The district court relied on precedent that can be distinguished. *Benton v. Baker Hughes*, 623 F.App'x 888 (9th Cir. 2015), and *Expeditors Int'l of Washington Inc. v. Santillana*, 2023 WL 8449165 (W.D. Wash Dec. 6, 2023). The district court should not rely on these cases as they involve the district court granting leave to amend at its own level. Those cases make more sense if one considers that the parties in them are trying to work-around having to appeal a district court's order by making small changes in the names of their previously asserted claims. Here Ms. Quinteros sought from the Ninth Circuit and received reversal of the district court's prior dismissal. The Ninth Circuit should now respect its own ruling on that matter.

### 1. The Ninth Circuit's Order Supports Broad Amendment

The Ninth Circuit's decision did not explicitly limit Ms. Quinteros's amendments to previously pled claims. Instead, the court emphasized that Quinteros should have "more than one opportunity to cure the deficiencies in her pleading." 2 ER 402. The appellate court's reasoning aligns with the liberal standard for amendment under *Foman v. Davis*, 371 U.S. 178, 182 (1962), which discourages unwarranted restrictions on amendments, particularly when no undue delay or prejudice is shown. The purpose of a pleading is to facilitate a proper decision on the merits. *Id.*

### 2. Plaintiff's New Claims Are Based on the Same Core Facts

Defendants argue that Quinteros's addition of invasion of privacy, interception of electronic communications, and intimate image dissemination are entirely new causes of action. However, under *Fontana v. Haskins*, 262 F.3d 871, 877 (9th Cir. 2001), plaintiffs are not required to plead specific legal theories as long as their factual allegations support a viable claim. The newly asserted claims arise from the same factual basis as the original complaint, meaning Defendants were already on notice of the underlying allegations. Courts generally allow amendments that assert new claims based on previously pled facts, as dismissal in such cases serves no legitimate procedural purpose.

39

### 3. No Undue Delay Or Prejudice To Defendants

While Defendants contend that allowing the new claims would result in undue delay and prejudice, they fail to demonstrate any specific harm beyond routine litigation burdens. Given that this case had already been remanded for further amendment, barring Quinteros from asserting claims rooted in the same factual allegations would unfairly restrict her ability to obtain relief. The Ninth Circuit's reversal of the prior dismissal underscores the necessity of permitting reasonable amendments, particularly when they serve the interests of justice.

Ms. Quinteros's newly asserted claims should not have been dismissed on procedural grounds. The Ninth Circuit's mandate, the established pleading standard under *Fontana*, and the absence of undue prejudice all weigh in favor of allowing these claims to proceed. Therefore, Ms. Quinteros respectfully requests that the Ninth Circuit reverse the district court and permit her amended complaint to stand.

The proper course of action would have been to allow these claims to proceed, particularly given the broad discretion courts have to permit amendments in the interest of justice. For these reasons, Ms. Quinteros respectfully requests that

40

the district court reconsider its dismissal of her newly added claims and allow them to proceed in accordance with established precedent on liberal amendment.

## I. The New Claims Should Be Retroactive And Were Otherwise Properly Pled.

Further addressing some of these new claims: The district court erred in dismissing Ms. Quinteros' claims under intimate image laws by failing to recognize that such laws serve a remedial purpose and should be applied retroactively to protect victims of nonconsensual image distribution. Courts have long held that statutes aimed at remedying ongoing harms—particularly those addressing privacy violations and reputational injury—should be given retroactive effect when necessary to prevent continued exploitation and abuse. Given that Ms. Quinteros continues to suffer reputational and emotional harm from the unauthorized dissemination of her intimate image, refusing to apply these laws retroactively denies her a meaningful remedy for ongoing misconduct.

Additionally, the district court improperly relied on Defendants' unauthorized evidence of Ms. Quinteros' intimate image, effectively compounding the court's error by not accepting the claims in Ms. Quinteros's complaint as true. The image submitted by the defendants is not the original image and should be excluded by the best evidence rule. Ms. Quinteros intends to show that the original

41

image does show her areola and nipple through the bra. Therefore, the Ninth Circuit should reverse the district court and apply intimate image laws retroactively to provide Ms. Quinteros the protections and relief that these statutes were enacted to ensure.

**III.  The District Court Erred In Considering Matters Outside Of The Pleadings And Evidence Submitted By The Defendants In Contravention To Federal Rule Of Civil Procedure 12(D) And The Long-Held Requirement That Allegations In The Complaint Must Be Considered As True.**

Now that this brief has addressed the substantial issues, Ms. Quinteros will outline the procedural issues that caused the district court to err. The district court is required to accept all facts alleged in the complaint as true and to make all inferences in a light most favorable to the non-moving party. *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009). In addition, if the district court accepts matters outside of the pleadings, it must convert a motion to dismiss to a motion for summary judgment and give all parties the reasonable opportunity to present pertinent materials. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018); F.R.C.P. 12(d).

First the district court states that Ms. Quinteros's claims "strain credulity" indicating that the court is not accepting the facts as true. 1 ER 12. The court further states that Ms. Quinteros's pleading regarding outrageous conduct is "implausible" and "untethered to the pleaded facts," 1 ER 15. Again indicating that the court is not accepting the facts as true.

Later the court quotes how prior attachments "paint a richly-detailed portrait of Defendant's response to Plaintiff's complaints of gender discrimination, and the Court finds such a claim to be implausible given Defendants' repeated attempts to respectfully respond to Plaintiff's harassing and abusive customer service requests." 1 ER 16. The court relying on this document is in direct contradiction to F.R.C.P. 12(d). Ms. Quinteros should've been given the opportunity to rebut any evidence, particularly as the customer support tickets in question only display half of the interactions Ms. Quinteros had with the moderators and do not paint the complete picture for the court. Thus Ms. Quinteros was denied the opportunity to bring forward pertinent material because she was not aware the court would be using these materials outside the pleadings in its decision.

The court further states that it would dismiss the additional claims due to the defendant's argument that the image in question could not be considered an intimate image. 1 ER 10 fn. 5. Ms. Quinteros again argued that the picture evidence in question was inadmissible as it did not meet the best evidence rule and

was submitted by defendants on a motion to dismiss, but her arguments were ignored by the district court. See 2 ER 274–75. The district court stated, "Although not strictly necessary for dismissal of this claim, the Court finds that Plaintiff's pleadings as to this image do not match any reasonable interpretation of the image, which is in the record. The image does not show a see-through bra. Defendants also assert that Plaintiff fails to plead damages stemming from the breach of contract." 1 ER 23. Plaintiff objected to this image being relied on, and that objection was never addressed. 2 ER 275–76. The original image does show a see-thru bra and a visible areola, which is the "best evidence" to rely on, not the PDF copy that has been degraded in integrity so much that it has "fuzzed out" the necessary detail. See F.R.E. 1001–08. Either way, whether that bra is see-thru or opaque is a question of fact that is not permissible to be decided on a motion to dismiss.

Perhaps most disturbing, the court quotes where Defendants admitted the supposed "Terms and Conditions" of the game as stating that it "explicitly provides InnoGames a license to duplicate and make publicly available any use[]-provided content." 1 ER 23. The Terms and Conditions submitted by the defendants are not the Terms and Conditions for the game Ms. Quinteros was playing, but they instead reflect the terms from an entirely different server. It appears that opposing counsel pulled these terms from an InnoGames website, but

44

they pulled them from the *wrong* website. Ms. Quinteros made this fact known to the court and objected to their inclusion, but the court ignored this error when rendering its decision. See 2 ER 275–76; 285–86, also see Defendants Exhibits 2 ER 335–58. The Defendants submitted the *international* Terms and Conditions, not the *U.S.* Terms and Conditions, but the district court still relied on these faulty and defense-submitted exhibits to make its decision. 2 ER 275–76. Additionally, throughout the five years of this lawsuit, Ms. Quinteros maintains that she did not agree to any clickwrap Terms and Conditions as players at the time were permitted to enter without agreement. *and see* 2 ER 276, 285, 292. Therefore, this is a material fact of dispute about whether any Terms and Conditions apply. Lastly Ms. Quinteros argued that the Terms and Conditions were unconscionable and waived. *See eg.* 2 ER 276, 286.

This same flaw occurs again and again in Judge Martinez's decision, and reoccurs when Judge Martinez cites to the purported "rules" of the game submitted by defense counsel to say that Plaintiff made misrepresentations to the court. 1 ER 17–18; *and see* 2 ER 328 and 328 n.5 (defense argument regarding submitted rules). This is entirely inaccurate. Ms. Quinteros's fraud claim is—in part—based around the idea that the InnoGames moderators changed the *United States* version of the rules to target her, whereas the *International* version of the rules are the

original, un-modified version. Ms. Quinteros's fraud claim also alleges that

InnoGames made the following statement that it knew was misleading:

> InnoGames does not accept any publications that the Forge of Empires Team considers illegal, insulting, offensive, threatening, abusive, real-life aggressive, sexually explicit, pornographic (including, but not limited to drawings and animations), politically extreme, religiously fanatic, endangering youth, racist, playing down the use of illegal drugs or alcohol, or promoting the use of said substances in any way inappropriate.

> The district court writes in its decision,

> "She [Quinteros] does not identify false statements of fact made by Defendants. Instead, she points to language in the T&C's attempting to regulate user behavior. This kind of language can be found for any online service attempting to avoid the harassing behavior that she allegedly experienced and apparently dished out as well. This language cannot plausibly constitute a false statement of fact because *it is written to users to inform them of their obligations, not as a promise of what will not happen on the platform*."

> 1 ER 17–18 (emphasis added).

Here the court impermissibly decided a contractual ambiguity—a fact of

consequence— in this claim: that the language of the Terms and Conditions was

binding on Ms. Quinteros and not binding on InnoGames. The complained of

statement clearly states "InnoGames *does not*" which should be interpreted as

binding the named party: InnoGames. This is particularly true as ambiguities in

contracts of adhesion like this are interpreted strictly against the drafter. *See*

*Mendez v. Palm Harbor Homes, Inc.,* 111 Wash.App. 446 (2002).

Again Defense counsel submitted the *International Version*, and the Judge accepted this as proof of the Plaintiff's claims. Moreover, the district court failed to consider that this is a motion to dismiss, Ms. Quinteros submitted the statements that she found false and misleading so as to put the defendants and the court on notice of her claims. Whether the statements amount to binding requirements on the defendants or on the plaintiff is the exact type of fact that should be decided at trial or on a motion for summary judgment after evidence is submitted by both parties. It is entirely inappropriate to decide facts on a motion to dismiss.

In sum, the district court, repeatedly violated procedure when accepting materials outside the pleadings, submitted by defense counsel, to decide facts on a motion to dismiss, therefore the order granting the motion to dismiss should be reversed.

**IV.  The District Court Relied On Inadmissible And Irrelevant "Prior Bad Acts" Evidence Which Resulted In The District Court Exhibiting Animosity And Sex-Based Discrimination In The Decision.**

In the district court's first dismissal of this complaint, it broadly quoted evidence that is irrelevant and inadmissible: in effect quoting Ms. Quinteros's profane statements to the moderators two years after the events to shame Ms.

47

Quinteros for her reactions to the crime committed against her. Ms. Quinteros appealed based in part on the inadmissibility of this evidence. In this dismissal, the district court again spent two pages of its order quoting this irrelevant evidence even though it was not included with the amended complaint. 1 ER 6–7. Here, the court has gone so far as to state: "Although Plaintiff has filed a new Complaint, and never included the above customer service exchange in the body of her pleadings, it was attached to a prior pleading by Plaintiff, previously discussed in a Court Order, and cannot be unseen by the Court." 1-ER-7 fn. 1.

Relying on evidence outside of the current pleading, as the district court did here, is counter to Federal Rule of Civil Procedure 12(d) which requires when there are matters outside the pleadings not excluded by the court, the motion must be treated as one for summary judgment and all parties must be given a reasonable opportunity to present all pertinent materials. Here, the matter was not treated as a summary judgment, denying Ms. Quinteros the opportunity to do any form of discovery to present "all material pertinent to the motion." Ms. Quinteros is not asking the court to "unsee" information but instead is insisting the court not to base its decision on an incident that occurred two years after the operative events that give rise to this suit.

In addition to being irrelevant, the quoted sections regarding Ms. Quinteros's profanity is prior bad act evidence inadmissible under F.R.E. 404(b),

48

in effect acting solely as evidence that Ms. Quinteros is a bad person and therefore not deserving of relief. There are several subtle statements and decisions by the district court which lead to the conclusion that the district court did not believe Plaintiff was deserving of relief. These statements include referencing the prior bad act evidence. 1 ER 18("This kind of language [in the Terms and Conditions] can be found for any online service attempting to avoid the harassing behavior that Plaintiff allegedly experienced and *apparently dished out as well*.") (emphasis added).

The district court's view of Ms. Quinteros is subtle, but observable. The Ninth Circuit should address its attention to a few particular incidents. The district court denied Ms. Quinteros the extension of time to keep the photograph evidence submitted by the defendants sealed. The court stated it wouldn't accept an extension filed after the deadline even if it was stipulated (as this one was, even though an error had been made where it wasn't signed by the opposing party). See 1 ER 28–36. Ms. Quinteros was requesting an extension because at the time of the filing of the document, Ms. Quinteros had to fly to Montana due to the unexpected and tragic death of her father. She learned about the filing while sitting in a family gathering. The funeral was held only a few days before the due-date and Ms. Quinteros wasn't able to ask for an extension as she didn't have the wherewithal to focus on civil procedure in the face of immediate family tragedy. This explanation

49

was provided to the district court who still denied leave to file to have the photograph sealed a few days past the deadline. The district court also excoriated Ms. Quinteros for filing an extension to submit a reply on the day the document was due. In contrast, the district court has numerously granted defendants extensions of time even when they are submitted without reason and on the due date or past the due date. (See e.g. the first motion to dismiss on the docket was filed after the due date for an answer, but was permitted to be filed). On remand, this case should be assigned to a new judge.

**V.    The District Court Impermissible Found The Negligence Claim Speculative When The Ninth Circuit Has Previously Held That It Was Plausibly Alleged.**

Factual allegations must be plausible, and not merely speculative. *See DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 765 (9th Cir. 2018) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Non-speculative claims are those that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

50

The Ninth Circuit previously addressed whether the Negligence claim was speculative and held, "Quinteros plausibly alleges that *Forge of Empires* moderators improperly accessed a sensitive image of hers, and unlawfully disseminated that image." 1 ER 39–40. The Ninth Circuit continued in a footnote saying that the district court had previously erred when it found that the claims were "fanciful" and "implausible." *Id*. n. 2. The Ninth Circuit previously cited the fact that other specific instances of moderator misconduct make this claim plausible. *Id.* Here the district court simply has repackaged its previous error. Instead of calling the negligence claim "implausible" it calls the negligence claim "speculative" which is the exact language of the *Iqbal/Twombly* rule it had relied on for its previous erroneous decision.

This matter has already been conclusively decided by the Ninth Circuit. The Ninth Circuit found the negligence claim plausibly alleged and the facts of the claim have not changed. Therefore, the district court erred in dismissing the negligence claim. The Ninth Circuit should reverse.

## CONCLUSION

There are two main errors that occurred here. The district court erred on the substantive law. Ms. Quinteros specifically addressed each concern raised by the Ninth Circuit on the last appeal and properly amended her complaint to include

51

facts related to every element of each claim. The district court also erred on the procedural law. The district court ought not to accept evidence submitted by the defendants. The district court admitted mountains of evidence that was not contained in the pleadings, and the district court made factual determinations which are not permitted on a motion to dismiss. This case should move forward to discover and allow the defendants to submit a motion for summary judgment if they want to put in evidence.  The Ninth Circuit should reverse.

/s Penny Quinteros, *pro se*
Penny Quinteros WSBA# 60753
19338 133rd PL SE
Renton, WA 98058
elilyn@comcast.net

52

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 24-6332

I am the attorney or self-represented party.

**This brief contains** | 11,214 | **words,** including | | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(X) complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated | |.

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Penny Quinteros | **Date** | 02/24/25

*(use* "s/[typed name]" *to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 8**                                                                                    *Rev. 12/01/22*