**Case No. 24-6332**

---

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

---

Penny Quinteros,
*Plaintiff-Appellant, (pro se)*

v.

InnoGames, Hendrick Klindworth, Michael Zillmer,
Julie Blan, and Richard Stephenson,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Western District of Washington
No. 19-cv-1402 - RSM
The Honorable Ricardo S. Martinez

---

**EXCERPT OF RECORD[1]**

**VOLUME 1**
**(Decisions Being Appealed and Reviewed;Prior 9th Circuit Decision)**

---

Penny Quinteros, Esq.
19338 133rd PL SE
Renton, WA 98058
206-661-8292
253-854-2788

*Pro Se*

[1] Please note, appellant is proceeding *pro se*, and under FRAP 30-1.3 is not required to submit an excerpt. Appellant has chosen to do so, but has omitted Exhibit 10, District Court Docket #54 as it is 1495 pages and would be cost-prohibitive to print.

**District Court Order Granting Second Motion to Dismiss – Docket 126**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PENNY QUINTEROS,<br><br>                    Plaintiff,<br><br>        v.<br><br>INNOGAMES, et al.,<br><br>                    Defendants. | CASE NO. C19-1402RSM<br><br>ORDER GRANTING DEFENDANTS' SECOND MOTION TO DISMISS |

## I.     INTRODUCTION

This matter comes before the Court on Defendants InnoGames GmbH, Hendrik Klindworth, Michael Zillmer, Julie Blan, and Richard Stephenson's Second Motion to Dismiss. Dkt. #114.  Plaintiff Penny Quinteros opposes and requests oral argument.  Dkt. #122.  The Court has determined oral argument is unnecessary and that it can rule based on the existing record.  For the reasons stated below, the Court GRANTS Defendants' Motion and dismisses all of Plaintiff's claims without leave to amend.

## II.     BACKGROUND

*Pro se* Plaintiff Quinteros filed this action in 2019.  Dkt. #1.  The Court first granted a motion to dismiss (brought by a single Defendant) on July 1, 2020.  Dkt. #34.  Plaintiff was given leave to amend.  The Court granted a second motion to dismiss on March 28, 2022, this time brought by all Defendants. Dkt. #94.  Leave to amend was not granted.  Plaintiff appealed.

ORDER GRANTING DEFENDANTS' SECOND MOTION TO DISMISS - 1

On January 8, 2024, the Ninth Circuit affirmed in part and reversed in part. Dkt. #100. The panel ruled that "the district court properly found Quinteros failed to state a claim as to all the claims raised in the complaint." *Id*. at 3.  The Ninth Circuit concluded, however, that the Court abused its discretion in denying Plaintiff leave to amend, and reversed and remanded so that she could be "given more than one opportunity to cure the deficiencies in her pleading" considering "the liberal standard we apply to pro se litigants." *Id*. at 11.

Plaintiff Quinteros has now filed a "Second Amended Complaint." Dkt. #104.  Plaintiff adds introductory argument, updates the procedural history, adds background facts, adds more specifics within her previously dismissed claims, and adds three new claims: the common law tort of Invasion of Privacy through Public Disclosure of Private Facts, Intercepting Electronic Communications in violation of RCW § 9.73.030, and 18 U.S.C. § 2510 *et seq*., and Intimate Image Dissemination in violation of RCW § 9A.86.010 and §§ 7.110.010–7.110.902.  *See id*. Plaintiff informs the Court that she is now a licensed attorney in Washington State. *Id*. at 11.

For purposes of this Motion, the Court will accept all facts in the latest Amended Complaint, Dkt. #104, as true.  The Court will briefly summarize the relevant facts.

Defendant InnoGames—a German business entity—created an online video game known as "Forge of Empires." *Id.* at 11–12.  The individual Defendants are officers and employees of InnoGames. *Id*. at 12–13.  Forge of Empires is played via internet browser or mobile app.  The person playing the game (a "user" or "player") builds a city starting in the Stone Age and progressing through history.  There is significant interaction between online players within the game over chat and other message systems. *Id*. at 15.  Forge of Empires is free to play, but includes obstacles to free-play such as limiting premium items to in-game currency and giving incentives towards advancement for in-game currency purchases.  The in-game currency, "diamonds," is purchased in the game via AmazonPay, Paypal, or a direct

credit-card purchase. *Id.* Plaintiff alleges that Forge of Empires "is designed to promote excessive game-play by penalizing infrequent play." *Id.* The evidence of this is:

> …instances such as making your city's resources produce more goods if you log in more frequently and providing "special event" buildings that can only be obtained through daily play or diamond purchases, and being unable to complete certain features (such as settlements) without consistent (generally every 4-hour) gameplay. Further the game resets the guild-versus-guild fighting area every day at 8pm EST in order to encourage players to come fight or lose their prior time/troop/money investments. The game also encourages frequent gameplay by having to manually click all items in the game without the use of bots or macros which are against the game rules.

*Id.* at 15.

Plaintiff alleges that "moderators" she encountered in Forge of Empires are InnoGames employees. *Id.* at 15. There is a hierarchical system with "moderators," "senior moderators" and "community manager" titles. Each level has more supervisory authority over the level below it. Openings for these roles are advertised with announcements to the community of players. *Id.* The moderators, senior moderators, and community managers respond to various customer service complaints with "Support Tickets" or emails. The moderators, senior moderators, and community managers handle issues such as password recovery, technical support, billing disputes, reports of cheating, game glitches and bugs, general game-play instruction, and breach of rule complaints. *Id.* at 16. The community managers work either full-time or part-time. The moderators and senior moderators are compensated with in-game currency. *Id.* at 16. The community managers are paid with the currency of their country. *Id.* There are no "customer service" agents at InnoGames, instead the customer service role is given the title "moderator" "senior moderator" or "community manager." *Id.*

Plaintiff, using the moniker "TwoCents," played Forge of Empires "almost every day without interruption from 2016–2019 for over 10,000 hours of game play." *Id.* at 18.

ORDER GRANTING DEFENDANTS' SECOND MOTION TO DISMISS - 3

Plaintiff maintains that the game is psychologically addictive and that she became psychologically dependent or addicted. *Id.* at 48. Plaintiff alleges that instead of warning players of the addictive nature of the game, InnoGames exploited players with "micro-transactions." *Id.* Relying on representations made by InnoGames that the game was fair, Plaintiff sought to excel at the game. Her dependence on the game and/or desire to progress resulted in her spending over $9,000 on micro-transactions. *Id.* at 43.

Around July of 2016, Plaintiff began experiencing gender-based harassment from other players, including some she alleges "were secretly InnoGames moderators, senior moderators, and community managers." *Id.* at 19. These players and/or "staff members" accused Plaintiff of being a man and started to solicit Plaintiff's online friends and co-players to no longer engage with her socially or for game activities. *Id.* at 19–20. Plaintiff pleads:

> These other players, and secret InnoGames staff moderators, told the plaintiff that she had to prove she was a woman by sending a photograph of her breasts to them. They told her this was the only way they would stop harassing her. The plaintiff fell victim to this manipulation, and relying on statements from InnoGames and Julie Blan that the game was fun, fair, and the rules were enforced equally, sent a picture of her breasts (in a somewhat see-thru bra) to what she considered a friend and neutral third-party player, known as Gensmoky, via a screenshot link.

*Id.* at 20.[1] Plaintiff alleges that Defendants were involved in continued harassment through their efforts as moderators of the game's chat feature. *See, e.g., id.* at 23 ("Julie Blan in her role as Community Manager facilitated, encouraged and supported the harassment of Plaintiff."). Statements made by other players to Plaintiff included "'what you are is a dumb sluuuuut,'""butthurt dumb ****biotch," and "Inno won't ban 2C [TwoCents] because she keeps

---

[1] Plaintiff alleges she registered a copyright for this photo of "her breasts in a somewhat see-thru bra" three years later, on September 3, 2019. Dkt. #104 at 60. The photo has been filed as an exhibit by Defendants. *See* Dkt. #116. The Court denied a motion to seal this exhibit. Dkt. #118. That Order described the image as "a photograph depicting Plaintiff Ms. Quinteros' upper torso in an opaque, teal sports bra covering her entire chest." *Id.* Where a sports bra would naturally dip down in front, Plaintiff tucked in a note covering all exposed skin. The note reads, "fuck off [unintelligible] Macy, DD, and the [unintelligible] Love, TwoC[ents]." *Id.*

ORDER GRANTING DEFENDANTS' SECOND MOTION TO DISMISS - 4

sending them photos." *Id.* at 22. The names or monikers of the harassing players/staff members are not alleged. Plaintiff alleges she has been targeted by unnamed moderators "because she doesn't display 'typical female' behavior." *Id.* A game moderator accused Plaintiff of having a "vulgar upbringing." Other game moderators accused Plaintiff of "drama" or allowing her emotions to run high. *Id.* at 23.

Plaintiff believes that the above behavior occurred, at least in part, because InnoGames advertised the game with "sexually explicit advertisements" which "created an unsafe environment for women players." *Id.* at 24.

Plaintiff reported her continued harassment to InnoGames and at least some of the individual Defendants. Plaintiff believes that the harassment violated InnoGames' Terms and Conditions for playing Forge of Empires,[2] but that Defendants failed to prevent the harassment. Plaintiff alleges that instead of acting to protect her, Defendants discriminated against her, enforcing rules disproportionately against her because of her gender, changing rules, and enforcing certain rules against her alone.

In reporting this harassment, Plaintiff, for whatever reason, also engaged in harassing and offensive language. This is demonstrated in her own attachment to her first Amended Complaint. Examples of harassment have previously been highlighted by Defendants:

> Among the profane attacks Plaintiff made on InnoGames moderators and managers, were statements such as "F**k that, give me the number you dirty mother f***ing rancid p***y licking f**k". Dkt. #54 at 264 (asterisks added). Plaintiff threatened to change her username to 'Pancea3 s**ks d'…" Dkt. #54 at 374 (asterisks added). In perhaps her most profane and offensive attack on support staff, Plaintiff wrote "YOU are a dirty filthy b**ch. You f**king get down on your knees and s**k the rancid d**ks of

---

[2] Forge of Empires operates under game-specific terms and conditions, community standards, and in-game rules. Moderators explained to Plaintiff how InnoGames handles rule violations: players are first given warnings, and each warning gives them six "points." Once a player has acquired twenty-four points, they are given a temporary ban. Dkt. #54 at 281, 311.

ORDER GRANTING DEFENDANTS' SECOND MOTION TO DISMISS - 5

> other players. Or let them shove their fists up you're a**s because you don't have a single brain-cell left. Apparently there is quite seriously a thing as being "f**ked stupid." You're living proof."
> *Id*. at 1350 (asterisks added).

Dkt. #64 at 8–9 (citing Dkt. #54).  This is language directed at Innogames support staff—not other players—through an online customer support system.  Responding to that last "down on your knees" example, Innogames support staff stated "[w]e have, repeatedly, asked you not to curse or verbally abuse our team…. whilst as a customer you have a right to service, you don't have a right to verbally abuse our team under any circumstances…. To draw a real world comparison, if you walked in to your local grocery store and verbally abused staff, the management has the right to remove you from their premises."  Dkt. #54 at 1350-51.  Eight minutes later, Plaintiff wrote, "I have not, once verbally abused any member of your team. On the other hand you have, repeatedly asked me to modify my mode of address to a form of power as a method of silencing my rights as a woman. [citation to a Dame Magazine article]…. This is your final warning."  *Id*. at 1351.  The argument between Plaintiff and customer support continues for several pages.[3]

Plaintiff's Second Amended Complaint brings causes of action for "negligence, gross negligence;" "invasion of privacy by publication;" "defamation/libel/slander;" "intentional infliction of emotional distress, negligent infliction of emotional distress;" "gender discrimination in public accommodation;" "fraud, misrepresentation/deceit, unfair and deceptive trade practices;" "product liability;" "breach of contract, third-party breach of contract, promissory estoppel;" "copyright infringement;" "intercepting electronic communications: state and federal claims;" and "intimidate image dissemination."  Dkt. #104.

---

[3] Although Plaintiff has filed a new Complaint, and never included the above customer service exchange in the body of her pleadings, it was attached to a prior pleading by Plaintiff, previously discussed in a Court Order, and cannot be unseen by the Court.

ORDER GRANTING DEFENDANTS' SECOND MOTION TO DISMISS - 6

She seeks "Loss of Income $180,000; Loss of Reputation $500,000; Physical and Emotional Pain and suffering $500,000; Defrauded amount $9,000 plus $16,000 of triple damages under Washington State Consumer protection laws," as well as statutory and punitive damages and other unspecified damages. *Id*. at 65.

Defendants again move to dismiss all claims under Rule 12(b)(6). Dkt. #114.[4]

### III.    DISCUSSION

**A. Legal Standard under Rule 12(b)(6)**

In making a 12(b)(6) assessment, the court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted). However, the court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. at 678. This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The complaint need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Absent facial plausibility, a plaintiff's claims must be dismissed. *Id*. at 570.

Where a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the

_____

[4] Defendants have also moved for dismissal based on lack of personal jurisdiction, as they have before. Dkt. #114 at 10–13. The Court again finds that it need not address this argument as dismissal of all claims is appropriate under Rule 12(b)(6).

ORDER GRANTING DEFENDANTS' SECOND MOTION TO DISMISS - 7

challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

**B. Analysis**

**1. Plaintiff's Addition of Three New Claims without Leave**

Defendants argue Plaintiff has improperly added three new claims without leave: invasion of privacy by publication, intercepting electronic communications, and intimate image dissemination. Dkt. #114 at 13 (citing *Benton v. Baker Hughes*, 2013 WL 3353636, *3 (C.D. Cal. June 30, 2013), *aff'd sub nom., Benton v. Hughes*, 623 F. App'x 888 (9th Cir. 2015) ("The addition of [the plaintiff's] new claims therefore exceeds the scope of the leave to amend granted, and it is appropriate to strike the newly added claims on this basis."); *Expeditors Int'l of Washington, Inc. v. Santillana*, 2023 WL 8449165, *3 (W.D. Wash. Dec. 6, 2023) ("[Plaintiff's] opportunity to amend its declaratory judgment claim was not an invitation to trot out new legal theories based on the same well-worn factual allegations.")).

In response, Plaintiff argues, "the Ninth Circuit determined that the District Court had abused its discretion in not allowing liberal leave to amend, and gave the Plaintiff leave to amend deficiencies in the complaint without stating leave to amend only certain portions of the complaint." Dkt. #122 at 13. She cites *Fontana v. Haskins*, 262 F.3d 871, 877 (9th Cir. 2001) for the proposition that "[s]pecific legal theories need not be pleaded so long as sufficient factual averments show that the claimant may be entitled to some relief."

On Reply, Defendants state, "[t]he plain language of the [Ninth Circuit's] Order only provides for an amendment limited to the deficiencies in the already pled claims." Dkt. #123 at 4 (citing to the same language above). Defendants point out that *Fontana, supra*, is not applicable because Plaintiff did not plead "new legal theories," instead she added "new causes of action–invasion of privacy by publication, intercepting electronic communications, and

ORDER GRANTING DEFENDANTS' SECOND MOTION TO DISMISS - 8

intimate image dissemination–the elements of which were not plead at all in Plaintiff's [First Amended Complaint]." *Id*. at 5.

Plaintiff has previously amended her pleadings, originally filed in 2019. The Ninth Circuit reversed the Court's 2022 decision not because the Court improperly cut off Plaintiff's ability to add new claims, but because "additional *facts*" could be added "to cure the various deficiencies *identified above*," and "Quinteros should be given more than one opportunity to cure the deficiencies in her pleading." Dkt. #100 at 11 (emphasis added).

Defendants are correct that the plain language of the Ninth Circuit's Order reverses only the Court's failure to allow Plaintiff to add facts to cure the deficiencies identified above. There is no mention of opening the door to new claims years after this case was originally filed. Plaintiff sets forth no valid legal argument for adding new claims under these circumstances. Viewing the procedural history of this case in its entirety, the addition of new claims now is unreasonable given Plaintiff's previous opportunities to amend, would constitute undue delay, and would otherwise prejudice Defendants. These claims are properly dismissed on procedural grounds and without leave to amend.[5]

### 2. Negligence/Gross Negligence

In order to recover for negligence, a plaintiff must show that (1) defendants owed her a duty, (2) defendants breached that duty, (3) an injury resulted, and (4) the breach was the proximate cause of the injury. *Lowman v. Wilbur*, 178 Wn.2d 165, 169, 309 P.3d 387 (2013)

---

[5] The Court also notes Defendants' arguments about the futility of these claims, or that they should be dismissed under Rule 12(b)(6). *See* Dkt. #114 at 14–20. These arguments have merit. For example, Defendants argue that the "intimate image" in question cannot constitute an intimate image under the statute RCW 7.110.020, that the statute went into effect in 2023, and that it cannot apply retroactively. Defendants argue that the other two new claims suffer similar fatal issues, *e.g.*, that Plaintiff does not have a reasonable expectation of privacy to an image that she copyrighted and to which she chose to identify herself as the author, and that Plaintiff consented to interception of her communications on InnoGames' platforms when she agreed to the Terms and Conditions mentioned in her Second Amended Complaint and incorporated by reference. *Id*. If these claims were not being dismissed on procedural grounds, the Court would dismiss them for lacking sufficient factual content, consistent with other pleaded facts, to allow the Court to draw the reasonable inference that Defendants are liable.

ORDER GRANTING DEFENDANTS' SECOND MOTION TO DISMISS - 9

(citing *Crowe v. Gaston*, 134 Wn.2d 509, 514, 951 P.2d 1118 (1998)). "Gross negligence most obviously differs from simple negligence in that it requires a greater breach; to prove gross negligence, [the plaintiff] must show that [the defendant] 'substantially' breached its duty by failing to act with even slight care." *Harper v. Dep't of Corr.*, 192 Wn.2d 328, 340-41, 429 P.3d 1071 (2018).

The Second Amended Complaint repeats allegations from the First Amended Complaint: "sexually explicit advertisements" promoting Forge of Empires created "an unsafe environment for women players;" negligent supervision of "moderator-players," negligence *per se* for failing to protect her "private conversation and photograph-link reported to them," "unsafe advertisements," and other complaints related to conduct from other users of Defendants' game. These allegations have been amended following the Ninth Circuit ruling with additional details about the role of moderator-employees. *See* Dkt. #104 at 26–27. Plaintiff discusses violations of other laws within this cause of action. For example, Plaintiff alleges InnoGames is liable for its employees who "illegally accessed and distributed Plaintiff's intimate image for the purpose of insulting, embarrassing, and harming Plaintiff and damaging her interest in her intellectual property remaining confidential." *Id*. at 26.

Plaintiff alleges that InnoGames had notice of the kind of claims she is bringing now:

> …Chase Xander had accused InnoGames in a lawsuit of moderators sexually harassing her, discriminating against her on the basis of gender, and threatening her and her family. The lawsuit was filed May 6, 2016, two months before Plaintiff was injured, and Ms. Xander had been making reports to InnoGames at least since March of 2014, two years before Plaintiff was injured. The policies put in place to prevent inappropriate access were demonstrably inadequate and this fact was known to InnoGames, Hendrick Klindworth, Michael Zillmer, and Julie Blan during the period of time they had a duty to supervise their employees to prevent them from targeting Plaintiff and inappropriately accessing her account.

ORDER GRANTING DEFENDANTS' SECOND MOTION TO DISMISS - 10

*Id*. at 25.

Despite the amendments, Plaintiff's negligence claims remain speculative and vague. Plaintiff fails to allege how Defendants were negligent or vicariously negligent for moderators sharing her private conversations within Forge of Empires and an image she herself uploaded to Forge of Empires. Plaintiff has not plausibly pled a duty owed to Plaintiff *not* to review her conversations or the photo she uploaded, or that Defendants breached such a duty, or that such a breach caused her injury other than being insulted by unnamed third parties. To the extent Plaintiff alleges Defendants were negligent in their supervision of the moderators, she has not adequately pleaded that any of the Defendants knew or should have known that moderators would pose a risk of danger to her. There is insufficient factual pleading to plausibly establish a special relationship between InnoGames and Plaintiff for a heightened duty of protection. In sum, these allegations, even after amendment, strain credulity and remain inadequate under *Twombly/Iqbal*.

The Court further agrees with Defendants' arguments that "there is no vicarious liability because the moderator acted outside the scope of his duties and not on behalf of his employer," that "there is no evidence that InnoGames authorized, instructed, or had any purpose to further the spreading of the [sports bra photo]," and that "[a]s alleged, the unnamed moderator acted on her own accord, based on her own personal animus, and accordingly, vicarious liability cannot attach to Defendants." Dkt. #114 at 25. Defendants adequately distinguish the facts of the *Xander* case with those encountered by Plaintiff, negating the idea that such could adequately put Defendants on notice of the unique and bizarre circumstances alleged in this case. *See* Dkt. #114 at 26.

Even accepting all facts in the Second Amended Complaint as true and making all inferences in the light most favorable to Plaintiff, the Court cannot draw the reasonable

ORDER GRANTING DEFENDANTS' SECOND MOTION TO DISMISS - 11

inference that Defendants are liable for negligence or gross negligence.  Accordingly, dismissal is warranted under Rule 12(b)(6).

### 3.  Defamation/Libel/Slander

A private individual plaintiff alleging defamation must show falsity, unprivileged communication, fault, and damages.  *Mohr v. Grant*, 153 Wn.2d 812, 822, 108 P.3d 768 (2005).  A false written statement is considered libel, a false spoken statement is slander.

Plaintiff pleads that Defendants' "agent, a moderator, senior moderator, or community manager, committed a sexual-based crime against defendant when they disclosed her intimate image without consent for the express purpose of creating sexually explicit and harassing comments against Plaintiff. Because the crime was committed with the express purpose of creating the harassment, InnoGames has legal liability for the resulting statements."  Dkt. # 104 at 32.  Plaintiff lists twelve statements, including: "2C[TwoCents] is a tranny?"; that Plaintiff "failed in lawschool [sic];" that Plaintiff was a man and not a woman; and that Plaintiff was in a "sad loveless marriage."  *Id*. at 32–33.  The authors of these statements are not pleaded. The location and time of these statements are not pleaded.  Plaintiff continues to plead that "defendants Julie Blan and Richard Stephenson directly committed libel and damaged plaintiff's reputation when they made defamatory remarks that the plaintiff was 'crazy,' 'a liar,' and disparaged plaintiff's mental status in their InnoChat conversations, Skype conversations and emails amongst other Community Managers and player-moderators." *Id*. at 33.

Defendants previously argued that a defamation claim "must be based on a statement that is provably false," Dkt. #64 at 18–19 (citing, e.g., *Schmalenberg v. Tacoma News, Inc.*, 87 Wn. App. 579, 590, 943 P.2d 350 (1997); *Herron v. KING Broadcasting Co.*, 112 Wn.2d 762, 768, 776 P.2d 98 (1989), and that the statements from Defendants at issue are "matters of opinion," *id*. at 19.

ORDER GRANTING DEFENDANTS' SECOND MOTION TO DISMISS - 12

The Court continues to agree with Defendants' analysis with regard to the statements that Plaintiff was "crazy" or "a liar." Dismissal of these claims was affirmed by the Ninth Circuit, which stated, "[r]ead in context, these statements are nonactionable insults." Dkt. #100 at 6. The same can be said about Plaintiff's newly added defamatory statements. Accepting all facts in the Second Amended Complaint as true and making all *reasonable* inferences in the light most favorable to Plaintiff, these claims fail because such statements could not plausibly be considered statements of false truths.

More critically, the new statements lack the requisite details of time and place in which they were made. Plaintiff does not identify the speaker, to whom they were made or even when they were made, which is cause for dismissal. *See Lutz v. Spokane Reg'l Health Dist.*, 2023 WL 8005297, *12 (E.D. Wash. Nov. 17, 2023) (dismissing claim that did not allege "the basic factual details that would allow the Court to evaluate the sufficiency and plausibility of his claim—for example, who made the statements, and where/when/to whom they were made."); *Phillips v. Oklahoma Pub. Co.*, 2011 WL 4914944, *3 (W.D. Wash. Oct. 14, 2011) (same). If Plaintiff does not know who made these statements, or to who, or when, or under what circumstances, it is hard to imagine how she could have been injured by them. There are insufficient facts pled as to loss of reputation. Defendants also contend that "the alleged third-party players' taunting of Plaintiff… could not plausibly be considered to be statements of false truths (that is, libelous declarations) as opposed to invective, opinions and unpleasantries in the category of those Plaintiff admits she sent to rattle opposing players." The Court agrees.

**4. Emotional Distress Claims**

A party may recover for negligent infliction of emotional distress "in the absence of physical injury only where emotional distress is (1) within the scope of foreseeable harm of the negligent conduct, (2) a reasonable reaction given the circumstances, and (3) manifest by

ORDER GRANTING DEFENDANTS' SECOND MOTION TO DISMISS - 13

objective symptomatology." *Bylsma v. Burger King Corp.*, 176 Wn.2d 555, 560 (2013) (citation omitted). Plaintiff fails to state a claim for negligent infliction of emotional distress because the Court has found an absence of negligent conduct. *See Bylsma*, 176 Wn.2d at 560.

A claim for intentional infliction of emotional distress requires (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress. *Lyons v. U.S. Bank NA*, 336 P.3d 1142, 1151 (Wash. 2014). "The first element requires proof that the conduct was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id*. This tort "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Grimsby v. Samson*, 85 Wn.2d 52, 59, 530 P.2d 291 (1975).

The Court dismissed Plaintiff's Amended Complaint as to these claims, and the Ninth Circuit affirmed. Plaintiff has amended only to add the following: "[i]t is outrageous conduct for a company to advertise their unknowing female players up as sexual pawns for their male-based demographic to sexually assault and then refuse to take action when a sex-crime occurs as a result of their pornographic advertisements." Dkt. #104 at 35. The Court finds this sentence implausible, untethered to the pleaded facts, and otherwise legally and factually insufficient to overcome the previous bases for dismissal of these claims. These claims are again dismissed.

**5. Gender Discrimination in Public Accommodation**

This claim lacks citation to any specific federal or state law even after repeated amendment. The Court again assumes that Plaintiff's claim is brought under the Washington Law Against Discrimination, RCW § 49.60.215. The Court dismissed Plaintiff's Amended Complaint as to this claim, and the Ninth Circuit affirmed. Plaintiff has amended only to add the following:

ORDER GRANTING DEFENDANTS' SECOND MOTION TO DISMISS - 14

> Defendants InnoGames, Hendrik Klindworth and Michael Zillmer advertised their female players for sexually-based crimes to encourage a male demographic to join the game. They also created a moderation system that allowed moderators to access and disseminate intimate images of female players for the purpose of sexually harassing them.
>
> …
>
> InnoGames also made it a policy to ban Plaintiff from playing the game on any world at any time because she filed a lawsuit alleging sexual discrimination against them after then told Plaintiff she had the "right to play under any other account [other than TwoCents]" on June 27, 2019.

Dkt. #104 at 38–39.

The Court continues to find that Plaintiff has failed to plead facts showing how Defendants could identify her or other users by their gender.  Plaintiff has failed to plead facts plausibly indicating that Defendants treated her differently based on her gender.  The Second Amended Complaint and attachments previously filed by Plaintiff paint a richly-detailed portrait of Defendants' response to Plaintiff's complaints of gender discrimination, and the Court finds such a claim to be implausible given Defendants' repeated attempts to respectfully respond to Plaintiff's harassing and abusive customer service requests.  This claim is dismissed under Rule 12(b)(6).

**6.  Fraud, Misrepresentation/Deceit**

Under Rule 9(b), a plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). A fraud claim is adequately pled only if it "informs the defendant of who did what, and describes the fraudulent conduct and mechanisms." *Haberman v. Washington Pub. Power Supply Sys.*, 109 Wn.2d 107, 165, 744 P.2d 1032, 1069 (1987), *amended*, 109 Wn.2d 107, 750 P.2d 254 (1988). "General statements about material misrepresentations and fraudulent actions do not provide the required who, what, when, where,

ORDER GRANTING DEFENDANTS' SECOND MOTION TO DISMISS - 15

and how of a properly pleaded fraud claim." *McAfee v. Select Portfolio Servicing, Inc.*, 193 Wn. App. 220, 232 (Wash. 2016) (internal citations omitted).

The Court previously dismissed this claim for lack of particularity and for failing to plausibly allege that Defendants engaged in fraud by changing its terms and conditions in order to target Plaintiff directly. The Ninth Circuit affirmed. Dkt. #100 at 7–8. The panel summarized Plaintiff's fraud claim as alleging that "Defendants represented that game rules on the *Forge of Empires* platform would be applied fairly when they were applied unfairly" without alleging with particularity Defendants' statements made to her, who made these statements, when, and how she was deceived. *Id*.

Plaintiff has added roughly two pages of additional pleading to this claim. *See* Dkt. #104 at 40–41. Plaintiff lists several lines from the Terms of Service, including that "InnoGames does not accept any publications that the Forge of Empires Team considers illegal, insulting, offensive, threatening, abusive, real-life aggressive, sexually explicit, pornographic (including, but not limited to drawings and animations), politically extreme, religiously fanatic, endangering youth, racist, playing down the use of illegal drugs or alcohol, or promoting the use of said substances in any way inappropriate" and similar statements against harassing behavior. *Id*. Plaintiff alleges that "these statements indicate that InnoGames will not accept the exact type of behavior that Plaintiff was the victim of" and that "InnoGames knew that the above statements were false" because they knew "that their moderators did not attempt to enforce the above rules in a consistent fashion" and knew about the *Xander* lawsuit. *Id*.

The Court agrees with Defendants that Plaintiff has again failed to plead fraud with sufficient particularity. She does not identify false statements of fact made by Defendants. Instead, she points to language in the T&C's attempting to regulate user behavior. This kind of language can be found for any online service attempting to avoid the harassing behavior that

ORDER GRANTING DEFENDANTS' SECOND MOTION TO DISMISS - 16

Plaintiff allegedly experienced and apparently dished out as well. This language cannot plausibly constitute a false statement of fact because it is written to users to inform them of their obligations, not as a promise of what will not happen on the platform. Plaintiff fails to allege with specificity how Defendants "knew" that its moderators would act in what has otherwise been alleged as negligent behavior. Any fraud claims that were previously included fail for the reasons stated by the Court previously. Accordingly, Plaintiff's fraud, misrepresentation, and deceit claims are dismissed.

### 7.  Unfair and Deceptive Trade Practices/Consumer Protection Act Claim

Plaintiff's previous Amended Complaint included within her fraud claim a couple of paragraphs about Unfair and Deceptive Trade Practices, with a reference to Washington's Consumer Protection Act ("CPA"). The Court dismissed this claim and the Ninth Circuit affirmed. Plaintiff has not amended these allegations. *See* Dkt. #104 at 47 and Dkt. #104-1 at 51.

A claim for deceptive trade practices falls within the state's Consumer Protection Act ("CPA"). A CPA claim requires proof of five elements: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 719 P.2d 531, 533 (1986).

A practice is "unfair" under the CPA if it causes injury to consumers "which is not reasonably avoidable by consumers themselves." *Alpert v. Nationstar Mortg. LLC*, 2019 U.S. Dist. LEXIS 41741, 2019 WL 1200541, *19 (W.D. Wash. 2019) (citing *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 295 P.3d 1179, 1187 (Wash. 2013)). An injury is "reasonably avoidable if consumers 'have reason to anticipate the impending harm and the means to avoid it,' or if consumers are aware of, and are reasonably capable of pursuing, potential avenues toward

ORDER GRANTING DEFENDANTS' SECOND MOTION TO DISMISS - 17

mitigating the injury after the fact." *Id.* at *21 (quoting *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168-69 (9th Cir. 2012)).

To support this claim, the Second Amended Complaint states that "these actions" (*i.e.*, everything previously stated in the Second Amended Complaint) violate the CPA "because they are deceptive acts as outlined above…" Dkt. #104 at 47. This type of catch-all pleading leaves the opposing party and the Court in the dark as to what is being alleged and how the many facts of this case injured Plaintiff to support this claim.

The Court finds no reason to come to a different conclusion than before. Taking the pleaded facts as true, they do not demonstrate an unfair practice because any injury to the Plaintiff caused by cheating or unfair play in this game was reasonably avoidable, the harm did not affect the public interest, and it did not cause injury to her business or property. Accordingly, this claim will be dismissed.

### 8. Product Liability

Defendants have previously argued:

> Forge of Empires and other online games are not subject to Washington's products liability law. RCW Section 7.72.010 defines "Product" as "any object possessing intrinsic value, capable of delivery either as an assembled whole or as a component part or parts, and produced for introduction into trade or commerce." Forge of Empires is software as a service, not an "object," hence Plaintiff's product liability claim must fail as a matter of law. *See, e.g., James v. Meow Media, Inc.*, 90 F.Supp.2d 798, 811 (W.D.Ky. 2000) (holding videogames not "products" under product liability law), *Wilson v. Midway Games, Inc.*, 198 F. Supp. 2d 167, 174 (D. Conn. 2002) (same); *Sanders v. Acclaim Entertainment, Inc.*, 188 F. Supp. 2d 1264, 1279 (D. Colo. 2002); Restatement (Third) Torts: Products Liability § 19 (1998) (product is "tangible personal property distributed commercially for use or consumption.").

Dkt. 64 at 23. The Court continues to agree that Forge of Empires as pled in this case is not a product under the WPLA.

ORDER GRANTING DEFENDANTS' SECOND MOTION TO DISMISS - 18

The Ninth Circuit has also pointed out that "Quinteros conclusorily alleges that Defendants created an unsafe product that causes gaming addiction in its consumers. While she identifies certain features of Forge of Empires which she asserts are addictive and harmful, she fails to allege specific, factual allegations that are sufficient to show that the game was, as designed, unreasonably addictive." Dkt. #100 at 9.

Plaintiff has added only the following to her product liability claim:

> 108. InnoGames designed a product meant to intentionally inflict a mental disorder on Plaintiff. This mental disorder, Internet Gaming Disorder, creates structural and functional abnormalities in the brain of people with the disorder. Plaintiff suffered from this disorder as a result.
>
> ….
>
> 122. InnoGames also sought to continue this intentional infliction of Gaming Disorder on Plaintiff by making unreasonable advertisements to Plaintiff. Plaintiff has seen thousands of ads for Forge of Empires even though she is already a player. Every time Plaintiff opens a computer browser, she sees an advertisement for Forge of Empires. This includes on Plaintiff's work computer where she has never played or been associate with Forge of Empires on. Plaintiff cannot escape the advertisements. Further, InnoGames designed "push" notifications to remind players to log into the game. And InnoGames sends emails to Plaintiff reminding her to come in and play the game.

Dkt. # 104 at 47 and 53 (footnote omitted).

The new allegations continue to be conclusory. The pleading, even with these additions, fails to allege specific, factual allegations that are sufficient to show that the game was, as designed, unreasonably addictive. For all of the above reasons, this claim is dismissed under Rule 12(b)(6).

**9. Contract and Promissory Estoppel Claims**

To prevail on a breach of contract claim under Washington law, a plaintiff must establish (1) the existence of a contractual duty, (2) defendant's breach of that duty, and that (3)

ORDER GRANTING DEFENDANTS' SECOND MOTION TO DISMISS - 19

defendant's breach of that duty caused damages to the plaintiff. *Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 78 Wn. App. 707, 712, 899 P.2d 6 (1995). The doctrine of promissory estoppel serves to enforce "otherwise unenforceable promises which are not supported by consideration." *Klinke v. Famous Recipe Fried Chicken, Inc.*, 94 Wn.2d 255, 261, 616 P.2d 644, 647 (1980). Where a plaintiff alleges both breach of contract and promissory estoppel claims, "[i]t may be proper to dismiss a promissory estoppel claim when 'an undisputedly valid and enforceable written contract governs the same subject matter.'" *Neravetla v. Va. Mason Med. Ctr.*, No. C13-1501-JCC, 2014 U.S. Dist. LEXIS 200668, 2014 WL 12787979, *7 (W.D. Wash. Feb. 18, 2014) (quoting *Air Atlanta Aero Engineering Ltd. V. SP Aircraft Owner I, LLC*, 637 F. Supp. 2d 185, 196 (S.D.N.Y. 2009)) (emphasis added).

The Court previously dismissed these claims for failure to plead a material breach of the Terms and Conditions by Defendants proximately causing damages to Plaintiff. The Ninth Circuit affirmed, finding that "Quinteros fails to plausibly allege the existence of a contract between her and Defendants, which imposed an obligation on Defendants to refrain from transmitting images or engaging in verbal harassment," and that "none of the allegations in the complaint represent that Quinteros is a third-party beneficiary of an agreement between Defendants and other users." Dkt. #100 at 9–10. The Ninth Circuit found that "Quinteros fails to allege a clear and definite promise. She alleges only that she "relied on [unspecified] statements of fairness" for her promissory estoppel claims." *Id*. at 10.

Plaintiff's substantive new allegations are as follows:

> InnoGames, in its Forge of Empires Game Rules states that "InnoGames does not accept any publications that the Forge of Empires Team considers illegal, insulting, offensive, threatening, abusive…. This is an explicit contract with Plaintiff wherein InnoGames creates a duty for itself not to accept the material stated. This contract was written by InnoGames and is a contract of adhesion, which should be strictly construed against InnoGames.

ORDER GRANTING DEFENDANTS' SECOND MOTION TO DISMISS - 20

This contract was breached when InnoGames accepted the publication of harassing statements and Plaintiff's intimate image.

….

Maestro, a senior moderator, told Plaintiff on January 17, 2017 that the Game Rules were in place to provide a high quality game and fair disposition to *all* players. (emphasis added).

….

In the Terms and Conditions, players agree to abide by the Game Rules…. As stated above, the Game Rules are intended to benefit other players and provide other players with a quality and fair game.

….

Even if no contract was made, InnoGames, Hendrik Klindworth, Michael Zillmer, Julie Blan and Richard Stephenson made affirmative statements to Plaintiff that the game rules were fair and would be enforced equally: a. "In short, the rules are in place to ensure fair disposition for all players, single household or otherwise." – Seriak (a moderator for Innogames) June 3, 2016. b. "Following the rules helps to create a fun and fair environment for everyone." – Julie Blan aka Panacea November 11, 2016. c. "It was your responsibility to read and understand the rules of the game. You failed to follow the rules and you were subsequently banned for a [sic] infraction. This is our policy and it is in place to ensure fair disposition to all players." – Maestro, a senior moderator, January 1, 2017. d. "These rules can be adapted to different cases in the interests of maintaining fair play within the game." – Julie Blan aka Panacea, May 5, 2017. e. Julie Blan repeated the same statements as above on numerous occasions as identified in Exhibit 10, the Support Tickets. f. "Following the rules helps to create a fun and fair environment for everyone." Julie Blan aka Panacea, May 21, 2017.

….

Defenant [sic] Julie Blan, on behalf of InnoGames told Plaintiff on June 27, 2019 that Plaintiff could play under any other account, other than the TwoCents account, so long as she played by the rules. Plaintiff relied on these promises to continue her gameplay and purchases with InnoGames, but these promises were not true. In fact, InnoGames had a policy of banning TwoCents that was discussed amongst its community managers and released to other

ORDER GRANTING DEFENDANTS' SECOND MOTION TO DISMISS - 21

gameplayers who have stated that they can send screenshots of Community Managers saying Plaintiff would be banned out of the game on any account.

Dkt. #104 at 53–60.

In its Motion to Dismiss, Defendants point out that the Terms and Conditions "explicitly provides InnoGames a license to duplicate and make publicly available any use-provided content," and thus Plaintiff "grant[ed] [InnoGames] the free, simple, universal right to duplicate the content and make it publicly available in connection with the Games and in the forums." Dkt. #114 at 31 (citing Dkt. #115-2 at 9). Defendants argue that "once Plaintiff herself put the content on the platform, InnoGames had no obligation to remove the photograph." *Id.* Defendants also argue that the image at issue cannot be "illegal content." Although not strictly necessary for dismissal of this claim, the Court finds that Plaintiff's pleadings as to this image do not match any reasonable interpretation of the image, which is in the record. The image does not show a see-through bra. Defendants also assert that Plaintiff fails to plead damages stemming from the breach of contract. *Id.* Defendants adequately address Plaintiff's third-party beneficiary and promissory estoppel claims. *Id.* at 31–32.

The Court again finds that Plaintiff has failed to plead a material breach of the Terms and Conditions proximately causing damages to Plaintiff. There are insufficient facts to support an obligation on Defendants to refrain from transmitting the image Plaintiff herself uploaded. Plaintiff otherwise fails to allege a clear and definite promise or contractual obligation that could give rise to liability under these circumstances.

As before, the breaches she points to are really breaches of the Terms and Conditions by other users. Failure to maintain a "fun and fair environment for everyone" is too vague to be actionable. The Terms and Conditions did not state "in exchange for your money we promise you a harassment-free environment" or similar language. The harassment by third parties is

ORDER GRANTING DEFENDANTS' SECOND MOTION TO DISMISS - 22

outside the scope of a contract claim, Plaintiff has failed to adequately plead that she was the intended beneficiary of a third-party beneficiary contract, and, in any event, Plaintiff has failed to plead how the alleged breaches by Defendants plausibly caused her damages. Promissory estoppel is inapplicable as there is a contract governing the alleged breaches. These claims will be dismissed under Rule 12(b)(6).

### 10. Copyright Infringement and Privacy Violation Claims

Plaintiff again pleads that "InnoGames is liable for Copyright Infringement of Plaintiff's protected photograph," that she created the image on July 25, 2016, that an InnoGames moderator "intercepted the private conversation" where she posted the photograph "then copied and transmitted this link to other parties." Dkt. #104 at 60. Plaintiff registered the image with the United States Copyright Office on September 03, 2019. *Id*.

Defendants previously argued:

> In *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881 (2019), the Supreme Court held that a claim for copyright infringement may not be filed until after registration. The Copyright Act of 1976 only permits an award of statutory damages or attorney's fees if a copyright registration is issued within three months following publication of the copyrighted work. *See* 17 U.S.C. §412 (2). Plaintiff fails to demonstrate ownership of a valid copyright registration within the time constraints outlined in the statute. *See also Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991). Plaintiff photographed her breasts on July 25, 2016. Immediately thereafter, Plaintiff published the image. Plaintiff did not register the photo with the U.S. Copyright Office until September 3, 2019--more than three years after publication, making her ineligible to receive statutory damages and permitting no claims for damages accruing prior to that date. No such post-registration infringing actions or damages are alleged.

Dkt. #64 at 25–26. The Court previously agreed that statutory damages and fees are not available, and the Ninth Circuit agreed. The Court previously found other damages attributable to Defendants under this claim speculative and not plausible, and the Ninth Circuit agreed.

ORDER GRANTING DEFENDANTS' SECOND MOTION TO DISMISS - 23

Plaintiff has now added, in paragraph 151 of the Second Amended Complaint, a claim for "reputational damages caused to Plaintiff from the loss of an image that was meant to be kept confidential." Dkt. #104 at 61. Plaintiff alleges that her "intellectual property was disclosed to the public causing her to suffer harassment and reputational harm" and that she had to "spend money in Forge of Empires to try and remediate these harms." She also alleges that statutory damages should be available because it was being transmitted to people over InnoGames after the image was registered. *Id.* No further details about that are provided.

Responding to these additions, Defendants first argue that Plaintiff granted InnoGames "a license to under the T&Cs, to copy the content and display it on their platform…" Dkt. #114 at 20 (citing Dkt. #115-2; *Hunley v. Instagram, LLC*, 73 F.4th 1060, 1077 (9th Cir. 2023). Defendants next state that Plaintiff fails to explain who added the photo to InnoGames' server and that InnoGames did not distribute copies of the photo, it at most simply linked to the photo. *Id.* at 21.

The Court finds that Plaintiff's additions to this claim are insufficient to overcome the Court's prior analysis. Statutory damages continue to be unavailable for the reasons previously stated. Plaintiff fails to add with any specificity how, when, and under what circumstances the image was shared after it was registered. Actual damages related to copyright infringement continue to be speculative and implausible. There are insufficient facts pled as to reputational damage, and the plausibility of such is belied by the surrounding alleged facts—the fact that she chose to upload this photo to prove to others that she was indeed a woman, that the photo delivers a message to specific users to "fuck off," and the PG nature of the photo. Her requested relief of $500,000 for loss of reputation is untethered to facts and borderline frivolous. Again, the copyrighted photo in question shows Plaintiff's chest with a note tucked into an opaque teal sports bra that reads "fuck off [unintelligible] Macy, DD, and the [unintelligible]

ORDER GRANTING DEFENDANTS' SECOND MOTION TO DISMISS - 24

Love, TwoC[ents]." Dkt. #116. Calling this intellectual property is a stretch. Calling it a loss of intellectual property that this photo was shared with other users of Forge of Empires is even less plausible considering all of the above. The Court is asked at this moment to rule on the plausibility of this claim keeping in mind the above standards, and finds this claim well short of those standards. This claim is properly dismissed under Rule 12(b)(6).

**C. Leave to Amend**

The Court finds that Plaintiff has been aware of the majority of the above grounds for dismissal, has already amended her Complaint once, and that the deficiencies above cannot possibly be cured by amendment consistent with the challenged pleading. This assessment is further supported by the unusually detailed factual record previously provided by the Plaintiff in attachments to her pleadings.

**IV.    CONCLUSION**

Having reviewed the relevant pleadings and the remainder of the record, the Court hereby finds and ORDERS that Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint under Rule 12(b)(6), Dkt. #114, is GRANTED. Plaintiff's claims are DISMISSED. This case is CLOSED.

DATED this 16th day of September, 2024.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER GRANTING DEFENDANTS' SECOND MOTION TO DISMISS - 25

**Minute Order Decision Denying Supplement Authority– Docket 125**

MINUTE ORDER, Motions terminated: 124 MOTION Praecipe - Leave to Amend Opposition to Motion to Dismiss Dkt 122 re 122 Response to Motion filed by Penny Quinteros.The following MINUTE ORDER is made by direction of the Court, the Honorable Ricardo S. Martinez, United States District Judge: On August 13, 2024, Plaintiff filed a Motion "to add supplemental authority and information to Plaintiff's Opposition to Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint." Dkt. #124. The Motion cites to Local Rule 7(m). That Local Rule states, in part: "Parties are expected to file accurate, complete documents, and the failure to do so may result in the courts refusal to consider later filed corrections or additions to the record. In the event that an error is discovered, a party should file, as promptly as possible, a praecipe requesting that the court consider a corrected document.... If the party seeks to add an additional document in support of a previous filing, the praecipe must set forth why the document was not included with the original filing..." LCR 7(m). Contrary to this Local Rule, Plaintiff's Motion does not seek to correct an error with her Opposition, such as a typo or misstated fact, but to add "binding authority regarding personal jurisdiction." Dkt. #124 at 2. Plaintiff also wishes to attach an exhibit. Id. She states that after she "received Defendants' Reply brief" she "became aware there was forgotten evidence demonstrating InnoGames false representations..." Id. This Motion is STRICKEN as procedurally improper because the praecipe does not correct an error, it adds additional legal argument and an exhibit in response to reading the Reply brief. In that way it is more like a surreply filed without leave. It was not filed promptly, which would have allowed Defendants to address these materials on Reply, and the Court will hold Plaintiff to the standards of an attorney in this case. The Court notes that Plaintiff cannot add the additional legal argument as supplemental authority because (1) it includes legal argument and (2) the cited case was not "issued after the date the party's last brief was filed." See LCR 7(n). (CB) (Entered: 08/14/2024)

**Minute Order Decision Denying Extension of Time – Docket 119**

MINUTE ORDER, Motions terminated: 117 Stipulated MOTION to Extend Time to Respond filed by Penny Quinteros.The following MINUTE ORDER is made by direction of the Court, the Honorable Ricardo S. Martinez, United States District Judge: On July 20, 2024, Plaintiff filed a two-sentence Motion to extend the deadlines for her opposition to Defendants' Motion to Dismiss and for a response to Defendants' Motion to Seal, both filed on July 1. Dkt. #117. Although Plaintiff's Motion is captioned as a stipulated motion it is not signed by Defendants. Id. A motion for relief from a deadline should, whenever possible, be filed sufficiently in advance of the deadline to allow the court to rule on the motion prior to the deadline. LCR 7(j). Parties should not assume that the motion will be granted and must comply with the existing deadline unless the court orders otherwise. Id. If a true, unforeseen emergency exists that prevents a party from meeting a deadline, and the emergency arose too late to file a motion for relief from the deadline, the party should contact the adverse party, meet and confer regarding an extension, and file a stipulation and proposed order with the court. Id. In this case, the deadline to file the opposition to the Motion to Dismiss is today, July 22. LCR 7(d)(4). The deadline to file a response to the Motion to Seal was July 16. LCR 7(d)(3). Plaintiff's Motion for relief from these deadlines is untimely. Because the Motion is unsigned by Defendants, it is not clear that the requested relief was stipulated to by Defendants. Plaintiff also failed to submit a proposed order as required by the Court's Local Rules. Accordingly, the Court STRIKES Plaintiff's Motion as procedurally improper. The Court will permit Plaintiff to refile a properly stipulated motion today to extend the deadline for her response to Defendants' Motion to Dismiss. No response is permitted to Defendants' Motion to Seal, which has been denied. See Dkt. #118. (CB) (Entered: 07/22/2024)

**Order Granting Defendants' Extension of Time – Docket 112**

The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PENNY QUINTEROS, | CASE NO. 19-cv-01402 RSM |
| Plaintiff, | STIPULATED MOTION AND ORDER EXTENDING TIME FOR DEFENDANTS TO ANSWER PLAINTIFF'S THIRD AMENDED COMPLAINT |
| v. | |
| INNOGAMES, HENDRIK KLINDWORTH, MICHAEL ZILLMER, JULIE (JILL) BLAN, RICHARD STEPHENSON, | |
| | NOTE FOR MOTION:  June 17, 2024 |
| Defendants. | |

STIPULATION

This Stipulated Motion is entered into by Plaintiff Penny Quinteros ("Plaintiff"), Pro Se, and by Defendants, by and through their counsel, with reference to the following:

WHEREAS, Plaintiff filed her Third Amended Complaint on May 16, 2024 (Dkt. #107-2).

WHEREAS, the deadline for Defendants to file and serve their Answer to the Third Amended Complaint is currently set for June 17, 2024 (Dkt. #108).

WHEREAS, the Parties have stipulated and agreed, by Plaintiff, Pro Se, and by Defendants, through their counsel, that the deadline for Defendants to file and serve their Answer to the Third Amended Complaint is extended by 14 days to July 1, 2024.

IT IS SO STIPULATED.

STIPULATION AND ORDER EXTENDING TIME FOR
DEFENDANTS TO ANSWER PLAINTIFF'S THIRD AMENDED
COMPLAINT - 1
CASE NO. 19-cv-01402 RSM

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Stipulated and agreed to on June 16, 2024.

By: s/ Penny Quinteros (with email authorization)
  Penny Quinteros, WSBA #60753
  19338 133rd PL SE
  Renton, WA 98058
  elilyn@comcast.net

  *Pro Se Plaintiff*


SUMMIT LAW GROUP, PLLC

By: s/ Diana Siri Breaux
  Diana Siri Breaux, WSBA #46112
  315 Fifth Avenue S, Suite 1000
  Seattle, WA 98104
  dianab@summitlaw.com


PHILLIPS NIZER LLP

Alan Behr (admitted Pro Hac Vice)
Elizabeth A. Adinolfi (admitted Pro Hac Vice)
485 Lexington Avenue
New York, NY 10017
abehr@phillipsnizer.com
eadinolfi@phillipsnizer.com

*Attorneys for Defendants*

STIPULATION AND ORDER EXTENDING TIME FOR
DEFENDANTS TO ANSWER PLAINTIFF'S THIRD AMENDED
COMPLAINT - 2
CASE NO. 19-cv-01402 RSM

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

## ORDER

IT IS SO ORDERED.

DATED this 18th day of June, 2024.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

STIPULATION AND ORDER EXTENDING TIME FOR
DEFENDANTS TO ANSWER PLAINTIFF'S THIRD AMENDED
COMPLAINT - 3
CASE NO. 19-cv-01402 RSM

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

**Order Changing Answer Deadline to June 17, 2024 – Docket 108**

The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF
WASHINGTON AT SEATTLE

| | |
|---|---|
| PENNY QUINTEROS, | CASE NO. 19-cv-01402 RSM |
| Plaintiff, | STIPULATED MOTION AND ORDER ALLOWING PLAINTIFF'S THIRD AMENDED COMPLAINT AND ALLOWING EXTENDED TIME FOR DEFENDANTS' RESPONSE |
| v. | |
| INNOGAMES, HENDRIK KLINDWORTH, MICHAEL ZILLMER, JULIE (JILL) BLAN, RICHARD STEPHENSON, | |
| Defendants. | |

STIPULATION

This Stipulated Motion is entered into by Plaintiff Penny Quinteros ("Plaintiff"), Pro Se, and by Defendants, by and through their counsel, with reference to the following:

WHEREAS, the Parties have stipulated that Plaintiff may file a Third Amended Complaint to replace the Second Amended Complaint filed March 6, 2024 (Dkt. #104). The Third Amended Complaint is filed concurrently with this motion.

WHEREAS, the Parties have stipulated and agreed, by Plaintiff, Pro Se, and by Defendants, through their counsel, that the deadline for Defendants to file and serve their Answer to the Third Amended Complaint, is extended thirty (30) days to June 17, 2024.

IT IS SO STIPULATED.

STIPULATION AND ORDER ALLOWING PLAINTIFF'S THIRD
AMENDED COMPLAINT AND ALLOWING EXTENDED TIME
FOR DEFENDANTS' RESPONSE - 1
CASE NO. 19-cv-01402 RSM

32

**ORDER**

IT IS SO ORDERED.

DATED this 17th day of May, 2024.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

STIPULATION AND ORDER ALLOWING PLAINTIFF'S THIRD
AMENDED COMPLAINT AND ALLOWING EXTENDED TIME
FOR DEFENDANTS' RESPONSE - 2
CASE NO. 19-cv-01402 RSM

33

The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PENNY QUINTEROS,<br><br>        Plaintiff,<br><br>        v.<br><br>INNOGAMES, HENDRIK KLINDWORTH, MICHAEL ZILLMER, JULIE (JILL) BLAN, RICHARD STEPHENSON,<br><br>        Defendants. | CASE NO. 19-cv-01402 RSM<br><br>STIPULATED MOTION AND ORDER EXTENDING TIME FOR DEFENDANTS TO ANSWER PLAINTIFF'S SECOND AMENDED COMPLAINT FOR A CIVIL CASE<br><br>NOTE FOR MOTION:  March 25, 2024 |

<u>STIPULATION</u>

This Stipulated Motion is entered into by Plaintiff Penny Quinteros ("Plaintiff"), Pro Se, and by Defendants, by and through their counsel, with reference to the following:

WHEREAS, Plaintiff filed her Second Amended Complaint on March 6, 2024 (Dkt. #104).

WHEREAS, the Parties have stipulated and agreed, by Plaintiff, Pro Se, and by Defendants, through their counsel, that the deadline for Defendants to file and serve their Answer to the Second Amended Complaint is extended sixty (60) days to May 19, 2024.

IT IS SO STIPULATED.

STIPULATION AND ORDER EXTENDING TIME FOR
DEFENDANTS TO ANSWER PLAINTIFF'S SECOND
AMENDED COMPLAINT FOR A CIVIL CASE - 1
CASE NO. 19-cv-01402 RSM

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

Stipulated and agreed to on March 25, 2024.

By:s/ Penny Quinteros (with authorization given)
    Penny Quinteros, WSBA #60753
    19338 133rd PL SE
    Renton, WA 98058
    elilyn@comcast.net

    *Pro Se Plaintiff*


SUMMIT LAW GROUP, PLLC

By: s/ Diana Siri Breaux
    Diana Siri Breaux, WSBA #46112
    315 Fifth Avenue S, Suite 1000
    Seattle, WA 98104
    dianab@summitlaw.com


PHILLIPS NIZER LLP

Alan Behr (admitted Pro Hac Vice)
Elizabeth A. Adinolfi (admitted Pro Hac Vice)
485 Lexington Avenue
New York, NY 10017
abehr@phillipsnizer.com
eadinolfi@phillipsnizer.com

*Attorneys for Defendants*

STIPULATION AND ORDER EXTENDING TIME FOR
DEFENDANTS TO ANSWER PLAINTIFF'S SECOND
AMENDED COMPLAINT FOR A CIVIL CASE - 2
CASE NO. 19-cv-01402 RSM

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

35

## <u>ORDER</u>

IT IS SO ORDERED.


DATED this 26th day of March, 2024.



RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

STIPULATION AND ORDER EXTENDING TIME FOR
DEFENDANTS TO ANSWER PLAINTIFF'S SECOND
AMENDED COMPLAINT FOR A CIVIL CASE - 3
CASE NO. 19-cv-01402 RSM

Summit Law Group, PLLC
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

36

**NOT FOR PUBLICATION**

FILED

JAN 8 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| PENNY QUINTEROS, | No.  22-35333 |
| Plaintiff-Appellant, | D.C. No. 2:19-cv-01402-RSM |
| v. | |
| INNOGAMES; et al., | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, District Judge, Presiding

Submitted January 8, 2024**

Before:  BENNETT, SUNG, and H.A. THOMAS, Circuit Judges.
Partial Dissent by Judge BENNETT.

Plaintiff Penny Quinteros appeals pro se from the district court's dismissal

of her first amended complaint against Defendants. Quinteros's complaint alleges a

series of state and federal law claims, stemming from harassment Quinteros states

she suffered on Defendants' online video game platform, *Forge of Empires*. The

---

\*        This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\*        The panel unanimously concludes this case is suitable for decision
without oral argument.  *See* Fed. R. App. P. 34(a)(2).

Court assumes familiarity with the facts as alleged in the operative complaint, and with the district court's opinion below. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm in part and reverse and remand in part so that Quinteros may be granted leave to amend her pleadings.

"We review the grant of a motion to dismiss de novo." *Kappouta v. Valiant Integrated Servs., LLC*, 60 F.4th 1213, 1216 (9th Cir. 2023). On a motion to dismiss, the Court considers the operative complaint and the documents attached to it, and we must accept well-pled allegations as true. *Koala v. Khosla*, 931 F.3d 887, 895 (9th Cir. 2019). The Court draws all reasonable inferences in plaintiff's favor, *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247–48 (9th Cir. 2013), and construes pro se pleadings liberally, *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).[1]

"[D]ismissal for failure to state a claim is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quotation omitted). Factual allegations, however, must

---

[1] While the Court construes pro se pleadings liberally, this grace "does not apply to practicing attorneys." *Huffman v. Lindgren*, 81 F.4th 1016, 1021 (9th Cir. 2023). Documents appended to the complaint indicate Quinteros was a law student when she filed this case. However, there is no evidence in the record indicating whether Quinteros is now an attorney, and we assume in this case that *Huffman* does not apply to law students. We leave it to the district court to determine whether *Huffman* applies to any future pleadings.

2

be plausible, and not merely speculative. *See DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 765 (9th Cir. 2018) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "Claims move beyond speculation when the allegations 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 972 (9th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

For the reasons explained below, the district court properly found Quinteros failed to state a claim as to all the claims raised in the complaint. However, for some claims, we affirm dismissal on different grounds.

1.      As an initial matter, the district court erred in concluding that the Communications Decency Act (CDA), specifically 47 U.S.C. § 230, immunizes Defendants from liability for Quinteros's negligence and defamation claims. Section 230 generally applies where a plaintiff seeks to treat (1) a provider of interactive computer services as (2) a publisher or speaker under a state law cause of action, of (3) information provided by a third party. *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019). Quinteros plausibly alleges that *Forge of Empires* moderators improperly accessed a sensitive image of hers, and

3

unlawfully disseminated that image.[2] These allegations do not treat Defendants as

publishers or speakers and therefore are not covered by the CDA.[3] Additionally,

§ 230 concerns only the actions of third parties. *Fair Hous. Council of San*

*Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008)

(en banc). Quinteros sufficiently alleges that moderators are not third parties within

the meaning of the CDA, but rather individuals with some unspecified agency

relationship to Defendants. Accordingly, the CDA does not immunize Defendants

from the alleged actions of moderators.

2.      Although we conclude that § 230 does not immunize Defendants, we affirm

the dismissal of Quinteros's negligence claims for different reasons. Quinteros

alleges a handful of negligence claims relating to Defendants' recruitment and

supervision of moderators. Quinteros sufficiently alleges that moderators are not

---

[2] The district court found that Quinteros's allegations that moderators improperly accessed her image were "fanciful" and therefore implausible. This finding, however, overlooked other factual allegations in the complaint, including allegations that: (1) Quinteros only sent the image to a single non-moderator, who confirmed he had not further distributed the image; (2) in two separate, detailed instances moderators had inappropriately accessed private information on the *Forge of Empires* platform. On a motion to dismiss, these allegations—combined with the pleading leniency afforded pro se plaintiffs—should have allowed the court to draw the reasonable inference that one or more moderators inappropriately accessed and disseminated Quinteros's image.

[3] Quinteros also appears to allege a violation of her privacy rights under Wash. Rev. Code § 9.73.030 based on these same allegations. Quinteros fails to state a claim under Washington law, however, because she does not allege that these violations occurred in Washington state, or at the behest of someone located in Washington state. *See State v. Fowler*, 139 P.3d 342, 347 (Wash. 2006).

4

third parties within the meaning of the CDA. However, she fails to allege specific facts that show the relationship between Defendants and moderators is sufficient to render Defendants vicariously liable for moderators' actions under Washington law. For instance, Quinteros does not allege facts that establish Defendants and moderators have an employer-employee relationship, which could give rise to vicarious liability under Washington law. *See Anderson v. Soap Lake Sch. Dist.*, 423 P.3d 197, 214 (Wash. 2018) (stating Washington imposes vicarious liability on an employer for the torts of an employee acting on the employer's behalf and within the scope of employment). And to the extent Quinteros alleges Defendants were negligent in their supervision of the moderators, she has not shown any of the defendants knew or should have known that moderators would pose a risk of danger to her. She does not plausibly allege, for instance, that Defendants were aware that similar messages had been intercepted in the past, or that Defendants had a reason to believe moderators would intercept such messages. Without more, Quinteros fails to state a claim for negligence.

3.      We also agree with the district court that Quinteros failed to state a claim for defamation. "The elements a plaintiff must establish in a defamation case are falsity, an unprivileged communication, fault, and damages." *Mohr v. Grant*, 108 P.3d 768, 773 (Wash. 2005). "Before the truth or falsity of an allegedly defamatory statement can be assessed, a plaintiff must prove that the words constituted a

5

statement of fact, not an opinion." *Robel v. Roundup Corp.*, 59 P.3d 611, 621 (Wash. 2002). Here, the district court properly found that the statements alleged in the complaint are not defamatory because they are not statements of fact. Read in context, these statements are nonactionable insults. *See id.* at 622 (undertaking a totality of circumstances test to conclude that "plainly abusive words not intended to be taken literally as statements of fact" such as "idiot" and "snitch" are not defamatory).

4.      Quinteros also fails to state a claim for negligent infliction of emotional distress. Washington courts allow claims for negligent infliction of emotional distress absent physical injury only where emotional distress is "within the scope of foreseeable harm of the negligent conduct." *Bylsma v. Burger King Corp.*, 293 P.3d 1168, 1170 (Wash. 2013). Because Quinteros fails to state a claim for negligent conduct, or plausibly allege any physical injury stemming directly from Defendants' conduct, she cannot state a claim for negligent infliction of emotional distress.

5.      Likewise, Quinteros fails to state a claim for intentional infliction of emotional distress. Such a claim requires showing conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Lyons v. U.S. Bank Nat'l Ass'n*, 336 P.3d 1142, 1151 (Wash. 2014);

6

*see also Kloepfel v. Bokor*, 66 P.3d 630, 632 (Wash. 2003) (outrageous conduct generally does not include "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities"). Here, Quinteros only alleges that Defendants inconsistently applied certain rules to her, helped her alleged harassers ban her from the game, and attempted to cover up the misconduct of moderators. None of these allegations rise to the level of outrageous conduct.

6.     The district court properly dismissed Quinteros's gender discrimination in public accommodations claim, which it construed as an alleged violation of Wash. Rev. Code § 49.60.215. To make a prima facie case of gender discrimination, Quinteros must show that her gender was a substantial factor causing the alleged discrimination. *See W.H. v. Olympia Sch. Dist.*, 465 P.3d 322, 325 (Wash. 2020). The district court correctly found Quinteros's allegations as to this claim were vague and conclusory.

7.     Quinteros also fails to meet the heightened pleading standards for fraud. *See* Fed. R. Civ. P. 9(b) (fraud must be pled "with particularity"); *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1145 (9th Cir. 2021) (stating particularity includes the "who, what, when, where, and how" including what is false and why); *see also Adams v. King Cnty.*, 192 P.3d 891, 902 (Wash. 2008) (outlining the nine elements for fraud under Washington law). Here, Quinteros's main allegation is that Defendants represented that game rules on the *Forge of Empires* platform would

7

43

be applied fairly when they were applied unfairly. However, she fails to allege with particularity what specific statements Defendants made to her, who made these statements, when, and how she was deceived.

8.      Quinteros fails to state a claim for unfair business practices under Washington's Consumer Protection Act (CPA), Wash. Rev. Code § 19.86.020. A private plaintiff bringing a CPA claim must show that their lawsuit would serve the public interest. *Michael v. Mosquera-Lacy*, 200 P.3d 695, 700 (Wash. 2009). Washington courts consider a number of factors to assess whether a claim concerns the public interest, including whether acts: (1) were carried out in the course of business, (2) were part of a pattern or generalized course of conduct, (3) were repeated prior to the involvement of the plaintiff, (4) created a "real and substantial potential for repetition," and (5) if the act is a single transaction, whether many consumers were affected. *Mason v. Mortg. Am., Inc.*, 792 P.2d 142, 148 (Wash. 1990); *see also Michael*, 200 P.3d at 700 (identifying similar factors). Applying the *Mason* factors to Quinteros's complaint, she fails to allege that her CPA claims concern the public interest.

9.      Quinteros fails to state a products liability claim based on a design defect. "The elements of proof for a design defect products liability claim require a showing of (1) a manufacturer's product (2) not reasonably safe as designed (3) causing harm to the plaintiff." *Pagnotta v. Beall Trailers of Oregon, Inc.*, 991 P.2d

8

728, 732 (Wash. Ct. App. 2000) (citing Wash. Rev. Code § 7.72.030(1)); *see also Ayers By & Through Ayers v. Johnson & Johnson Baby Prods. Co.*, 818 P.2d 1337, 1340 (Wash. 1991). Here, Quinteros conclusorily alleges that Defendants created an unsafe product that causes gaming addiction in its consumers. While she identifies certain features of *Forge of Empires* which she asserts are addictive and harmful, she fails to allege specific, factual allegations that are sufficient to show that the game was, as designed, unreasonably addictive. Consequently, the allegations fail to state the second element of the design defect claim.

10.    The district court properly dismissed Quinteros's breach of contract claim, finding Quinteros failed to plead a material breach that caused damages to her. "A breach of contract is actionable only if [1] the contract imposes a duty, [2] the duty is breached, and [3] the breach proximately causes damage to the claimant." *Nw. Indep. Forest Mfrs. v. Dep't of Lab. & Indus.*, 899 P.2d 6, 9 (Wash. Ct. App. 1995) (citing *Larson v. Union Inv. & Loan Co.*, 10 P.2d 557 (Wash. 1932)). "Washington courts have recognized that a party must be intended as a third-party beneficiary to benefit from a contract." *Minton v. Ralston Purina Co.*, 47 P.3d 556, 562 (Wash. 2002). Quinteros fails to plausibly allege the existence of a contract between her and Defendants, which imposed an obligation on Defendants to refrain from transmitting images or engaging in verbal harassment. Likewise, none of the allegations in the complaint represent that Quinteros is a third-party beneficiary of

9

45

an agreement between Defendants and other users.

11.     Quinteros also fails to make a claim for promissory estoppel. To make out a promissory estoppel claim, a promise must be "clear and definite" and include "manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." *Washington Educ. Ass'n v. Washington Dep't of Ret. Sys.*, 332 P.3d 428, 435 (Wash. 2014) (citations and quotations omitted). Quinteros fails to allege a clear and definite promise. She alleges only that she "relied on [unspecified] statements of fairness" for her promissory estoppel claims.

12.     The district court also properly dismissed Quinteros's copyright infringement claim. Quinteros alleges the copyright violation here took place *before* she registered the photograph in question with the U.S. Copyright Office. However, Quinteros "is entitled to statutory damages and attorneys' fees only to the extent infringement occurred after the work was registered." *Enter. Mgmt. Ltd., Inc. v. Construx Software Builders, Inc.*, 73 F.4th 1048, 1056 n.6 (9th Cir. 2023) (citing 17 U.S.C. § 412). Because Quinteros fails to allege any other damages arising from the alleged copyright infringement with any specificity, this claim was properly dismissed.

13.     Quinteros's gender discrimination in employment claim fails because it simply recites the elements of a cause of action, and fails to contain "sufficient

allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Specifically, Quinteros merely asserts "[u]pon information and belief, the reason [she] was not hired [was] because she was a woman[.]" Quinteros alleges no underlying facts to support this bald assertion, and without more, she does not elevate her claim from the speculative to the plausible.

14.    Finally, we conclude that the district court abused its discretion in denying Quinteros, a pro se plaintiff, leave to amend. Even where a plaintiff fails to state a claim, district courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). This rule is liberally applied for pro se litigants. *Watison v. Carter*, 668 F.3d 1108, 1117 (9th Cir. 2012). A district court's denial of leave to amend is reviewed for abuse of discretion, and a "court abuses its discretion by denying leave to amend unless amendment would be futile or the plaintiff has failed to cure the complaint's deficiencies despite repeated opportunities." *Garmon v. Cnty. of Los Angeles*, 828 F.3d 837, 842 (9th Cir. 2016). Here, amendment would not be futile. Quinteros could plead additional facts to cure the various deficiencies identified above. And under the liberal standard we apply to pro se litigants, Quinteros should be given more than one opportunity to cure the deficiencies in her pleading.

**AFFIRMED IN PART, REVERSED AND REMANDED IN PART.**

11

FILED

*Quinteros v. InnoGames*, No. 22-35333

JAN 8 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

BENNETT, Circuit Judge, dissenting in part:

I respectfully dissent from the majority's holding that the district court abused its discretion in denying Quinteros leave to amend her complaint a second time. Even with a liberal policy favoring amendment for pro se litigants,[1] "[a] district court acts within its discretion to deny leave to amend when amendment would be futile." *Chappel v. Lab'y Corp. of Am.*, 232 F.3d 719, 725-26 (9th Cir. 2000); *see also Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir.), *amended,* 856 F.2d 111 (9th Cir. 1988) ("If the district court determines that the 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency,' then the dismissal without leave to amend is proper." (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986))).

The majority states without elaboration that "Quinteros could plead additional facts to cure the various deficiencies identified above." Mem. at 11. But I don't know what possible additional facts Quinteros could plausibly allege to cure the significant (and to me incurable) deficiencies in her complaint, and the majority identifies none. And neither in the district court, nor on appeal, has Quinteros identified any such facts.

---

[1] Quinteros, a law student while this case was pending in district court, is now a licensed attorney.

48

Plus, here, Quinteros has already been afforded the opportunity to amend her complaint. "[W]hen a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is 'particularly broad.'" *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (quoting *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 879 (9th Cir. 1999)); *Godwin v. Christianson*, 594 F. App'x 427, 428 (9th Cir. 2015) (applying this rule to a pro se prisoner); *Snyder v. Allison*, F. App'x 329, 330 (9th Cir. 2021) (same).

I believe the district court did not abuse its discretion in denying Quinteros a second opportunity to amend her complaint, and thus I respectfully dissent from that portion of the majority's disposition.

2

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PENNY QUINTEROS, | CASE NO. C19-1402RSM |
| Plaintiff, | ORDER DENYING MOTION FOR RECONSIDERATION |
| v. | |
| INNOGAMES, et al., | |
| Defendants. | |

This matter comes before the Court on Plaintiff Penny Quinteros's Motion for Reconsideration, Dkt. #96, filed the same day as the Court's Order Granting Defendants' Motion to Dismiss, Dkt. #94. Plaintiff moves the Court to reconsider its Order, arguing there was manifest error in the ruling, legal authority that was not addressed, and new facts for the Court to consider. Dkt. #96 at 1.

The Court incorporates by reference the factual background of its Order.

"Motions for reconsideration are disfavored." LCR 7(h)(1). "The court will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence." *Id*. "The motion shall point out with specificity the matters which the movant believes were overlooked or misapprehended by the court, any new matters being brought to the court's attention for the first time, and the particular modifications being sought in the court's prior ruling." LCR 7(h)(2). No response to a motion for reconsideration shall be filed unless requested by the court. LCR 7(h)(3).

ORDER DENYING MOTION FOR RECONSIDERATION - 1

The Court has determined that a response brief is unnecessary.

Plaintiff's Motion is conveniently separated into a 13-point list. The Court will not repeat all of Plaintiff's arguments. In an initial paragraph, Plaintiff states "InnoGames recruits men into their game promising them that they can rape women in the game, and then promotes these men to be secret moderators with confidential knowledge and power in the game." Dkt. #96 at 2. Plaintiff did not plead this[1] or submit evidence to support such an accusation, and she does not submit new evidence with this Motion. The Court will address Plaintiff's list:

1. The Court found that "Section 230 of the Communications Decency Act does apply to the facts of this case and provides immunity to Defendants for all claims arising from the publication of user-generated content," and that "Defendants are immune from Plaintiff's claims related to their restriction of her access to Forge of Empires in an effort to prevent her from publishing 'obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable' content." Dkt. #94 at 7. Many of Plaintiff's claims related to user-generated content and a restriction of her access to Defendants' game, Forge of Empires. Other claims related to the actions of Defendants directly and were not affected by Section 230. The Court did not disregard any claims or evidence properly in the record.

2. Plaintiff states "In order to find that Section 230 of the CDA shields InnoGames from liability, the Court must find that they took the moderation actions in good

---

[1] Plaintiff pled that she had "examples of pornographic advertisements to be attached separately by exhibit." Dkt. #52 at 16. Such exhibits were not attached to the Amended Complaint. She pled that "*Forge of Empires* was contracting with third-party advertisers who solicited mostly male players into the game with pornographic advertisements that illegally mislead the public using language such as: 'brutal sex' or 'aggressive sex' would occur in the game, and 'Most of the characters in this game are sexually attractive females who display sexually explicit behavior.'" *Id.* On December 18, 2020, two months after the noting date for the Motion to Dismiss, she filed an "exhibit" with pornographic advertisements. *See* Dkt. #84. Such filing was not made with leave of the Court, did not automatically attach to the Amended Complaint, and was not permitted as part of the briefing on the Motion to Dismiss.

ORDER DENYING MOTION FOR RECONSIDERATION - 2

faith." Dkt. #96 at 3. Plaintiff is presumably referring to Defendants' actions to prevent her from publishing obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable content. The support for such actions were discussed in the Order. The Court finds that, based on the facts of this case, Plaintiff has failed to demonstrate manifest error.

3. The Court did not "erroneously identif[y] the sexual-advertisements that created the unsafe environment as 'conduct from other users of Defendant's game.'" Dkt. #96 at 3. The advertisements were in a list with "other complaints related to conduct from other users." *See* Dkt. #94 at 8. The Court found that the Amended Complaint failed to plead sufficient facts to support a claim for negligence, gross negligence, or willful or wonton conduct based on the alleged advertisements and other facts discussed in that section. Plaintiff has failed to demonstrate manifest error.

4. Under the legal standard used by the Court in ruling on a 12(b)(6) Motion, the Court "accepts all facts alleged in the complaint as true," however it also evaluates the pleading for "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" and need not accept as true a legal conclusion couched as a factual allegation. Dkt. #94 at 6. The Court's Order properly applied this standard. Plaintiff's statement that there is new evidence "that at least 12 women have been exploited for sexual videos by InnoGames moderators in Forge of Empires" does not change the Court's ruling, for two reasons: first, because Plaintiff does not cite to anything to support the statement that there is new evidence, and second because Plaintiff fails to explain how such evidence is linked to her claims or otherwise prevents the Court from dismissing her claims.

ORDER DENYING MOTION FOR RECONSIDERATION - 3

5. Plaintiff is not entitled to further discovery because her claims were dismissed under Rule 12(b)(6). The Court found that Plaintiff failed to plead sufficient facts to establish Defendants' liability for the alleged harassment of moderators under any of her causes of action.

6. The Court need not consider Dkt. #92, an exhibit submitted without leave of the Court and well after briefing was closed on this Motion.

7. The Court does not condone the harassment experienced by Plaintiff as alleged in this case. However, Plaintiff's own harassing language was relevant to this case and properly considered in the Court's Order. It explains the actions taken by Defendants to limit her access to their service. Plaintiff fails to demonstrate manifest error in the Court's rulings, which speak for themselves.

8. Plaintiff asks the Court to "closely read the Game Rules and the Terms and Conditions" in support of her argument that Defendants breached the contract. The Court continues to find no basis to support her contractual claims for the reasons stated in its Order.

9. The Court will not consider Plaintiff's argument as to the constitutionality of Section 230 of the CDA, raised for the first time on a motion for reconsideration.

10. The Court will not consider new argument related to Plaintiff's product liability claim that could have been raised earlier with reasonable diligence. In any event, Plaintiff has failed to demonstrate manifest error.

11. Plaintiff argues that she should be given the opportunity "to shore up" her arguments related to her copyright claim. Dkt. #96 at 7. She has failed to demonstrate good cause to supplement the factual record after the Court's ruling, or otherwise demonstrated manifest error.

ORDER DENYING MOTION FOR RECONSIDERATION - 4

12. Plaintiff cites to a new case to argue that "[u]npaid moderators may be considered employees of the game in which they act as moderators." *Id*. at 8. Plaintiff fails to explain why she could not have included this legal authority in her prior briefing. The facts of that case do not necessarily match the facts of this case. In any event such does not demonstrate manifest error in the Court's ruling.

13. With regard to the defamation claims, the Court found that "[e]ven accepting all facts in the Amended Complaint as true and making all inferences in the light most favorable to Plaintiff, this claim fails because these communications could not plausibly be considered statements of false truths." The defamatory statements in the pleading were "invective, opinions, and unpleasantries in the category of those Plaintiff admits she sent to rattle opposing players." *See* Dkt. #94 at 9–10 (citing Dkt. #64 at 19). Such was the basis for the dismissal of these claims and further discovery is not needed.

The Court has reviewed Plaintiff's lengthy Motion and finds no manifest error in its prior ruling or new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence. The Court hereby finds and ORDERS that Plaintiff Penny Quinteros's Motion for Reconsideration, Dkt. #96, is DENIED.

DATED this 30th day of March, 2022.


RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER DENYING MOTION FOR RECONSIDERATION - 5

**Order Granting Motion to Dismiss – Docket 94**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PENNY QUINTEROS, | CASE NO. C19-1402RSM |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |
| v. | |
| INNOGAMES, et al., | |
| Defendants. | |

## I.      INTRODUCTION

This matter comes before the Court on Defendants Innogames GmbH, Hendrik Klindworth, Michael Zillmer, Julie Blan, and Richard Stephenson's Motion to Dismiss under Rule 12(b)(6).  Dkt. #64.  Plaintiff Penny Quinteros opposes and has requested oral argument. Dkt. #76.  The Court has determined oral argument is unnecessary and that it can rule based on the existing record.  For the reasons stated below, the Court GRANTS Defendants' Motion and dismisses this case.

## II.      BACKGROUND

The Court has previously granted a motion to dismiss in this case with leave for Plaintiff to amend.  Dkt. #34.  For purposes of this Motion to Dismiss, the Court will accept all facts in

ORDER GRANTING MOTION TO DISMISS - 1

the Amended Complaint, Dkt. #52, as true. The Court has also considered the exhibits filed by Plaintiff with her Amended Complaint. *See* Dkts. #54 and #57. The Court will briefly summarize the relevant facts.

Plaintiff Defendant InnoGames—a German business entity—created an online video game known as "Forge of Empires." Dkt. #52 at 11. The individual Defendants are officers and employees of InnoGames. *Id*. at 11–12. Forge of Empires is played via an internet browser or mobile app. The person playing the game (a "user" or "player") builds a city starting in the Stone Age and progressing through history. There is significant interaction between online players within the game over chat and other message systems. *Id*. at 14. Forge of Empires is free to play but includes obstacles to free-play such as limiting premium items to in-game currency and giving incentives towards advancement for in-game currency purchases. The in-game currency, "diamonds," is purchased in the game via AmazonPay, Paypal, or a direct credit-card purchase. Plaintiff alleges that Forge of Empires "is designed to promote excessive game-play by penalizing infrequent play." *Id*. The evidence of this is:

> …instances such as making your city's resources produce more goods if you log in more frequently and providing "special event" buildings that can only be obtained through daily play or diamond purchases, and being unable to complete certain features (such as settlements) without consistent (generally every 4-hour) gameplay. Further the game resets the guild-versus-guild fighting area every day at 8pm EST in order to encourage players to come fight or lose their prior time/troop/money investments. The game also encourages frequent gameplay by having to manually click all items in the game without the use of bots or macros which are against the game rules.

*Id.* at 14–15.

Plaintiff, using the moniker "TwoCents," played Forge of Empires "almost every day without interruption from 2016–2019 for over 10,000 hours of game play." *Id*. at 16.

ORDER GRANTING MOTION TO DISMISS - 2

Plaintiff maintains that the game is psychologically addictive and that she became psychologically dependent or addicted. *Id.* at 39. Plaintiff alleges that instead of warning players of the addictive nature of the game, InnoGames exploited players with "micro-transactions." *Id.* Relying on representations made by InnoGames that the game was fair, Plaintiff sought to excel at the game. Her dependence on the game and/or desire to progress resulted in her spending over $9,000 on micro-transactions. *Id.* at 34.

Around July of 2016 Plaintiff began experiencing gender-based harassment from other players, including some she alleges "were secretly InnoGames staff moderators." *Id*. at 18. These players and/or staff members accused Plaintiff of being a man and started to solicit Plaintiff's online friends and co-players to no longer engage with her socially or for game activities. *Id.* Plaintiff pleads:

> These other players, and secret InnoGames staff moderators, told the plaintiff that she had to prove she was a woman by sending a photograph of her breasts to them. They told her this was the only way they would stop harassing her. The plaintiff fell victim to this manipulation, and relying on statements from InnoGames and Julie Blan that the game was fun, fair, and the rules were enforced equally, sent a picture of her breasts (in a somewhat see-thru bra) to what she considered a friend and neutral third-party player, known as Gensmoky, via a screenshot link.

*Id*. Plaintiff alleges that Defendants were involved in continued harassment through their efforts as moderators of the game's chat feature. *See, e.g., id.* at 21 ("Julie Blan in her role as Community Manager facilitated, encouraged and supported the harassment of Plaintiff."). Statements made by other players to Plaintiff included ""what you are is a dumb sluuuuut,""butthurt dumb ****biotch," and "Inno won't ban 2C [TwoCents] because she keeps sending them photos." *Id*. Plaintiff alleges she has been targeted by unnamed moderators "because she doesn't display 'typical female' behavior." *Id*. at 20. A game moderator accused Plaintiff of having a "vulgar upbringing." Other game moderators accused Plaintiff of "drama"

ORDER GRANTING MOTION TO DISMISS - 3

or allowing her emotions to run high. *Id.* at 22. Plaintiff pleads that moderators are generally players who have applied for and been selected as "volunteer" customer service agents. Although moderators are termed "volunteers" by InnoGames, they are compensated with premium game features and in-game currency making them InnoGames staff members. *Id.* at 20.

Plaintiff believes that the above behavior occurred, at least in part, because InnoGames advertised the game in a manner which "created an unsafe environment for women players." *Id.* at 22.

Plaintiff reported her continued harassment to InnoGames and at least some of the individual Defendants. Plaintiff believes that the harassment violated InnoGames' terms and conditions for playing Forge of Empires.[1] But the Defendants failed to prevent the harassment. Plaintiff believes that instead of acting to protect her, Defendants discriminated against her, enforcing rules disproportionately against her because of her gender, changing rules, and enforcing certain rules against her alone.

In reporting this harassment, Plaintiff, for whatever reason, also engaged in harassing and offensive language. This is demonstrated in her own attachment to the Amended Complaint. Examples of harassment are highlighted by Defendants:

> Among the profane attacks Plaintiff made on InnoGames moderators and managers, were statements such as "F**k that, give me the number you dirty mother f***ing rancid p***y licking f**k". Dkt. #54 at 264 (asterisks added). Plaintiff threatened to change her username to 'Pancea3 s**ks d'…" Dkt. #54 at 374 (asterisks added). In perhaps her most profane and offensive attack on support staff, Plaintiff wrote "YOU are a dirty filthy b**ch. You f**king get down on your knees and s**k the rancid d**ks of

---

[1] Forge of Empires operates under game-specific terms and conditions, community standards, and in-game rules. Moderators explained to Plaintiff how InnoGames handles rule violations: players are first given warnings, and each warning gives them six "points." Once a player has acquired twenty-four points, they are given a temporary ban. Dkt. #54 at 281, 311.

ORDER GRANTING MOTION TO DISMISS - 4

> other players. Or let them shove their fists up you're a**s because you don't have a single brain-cell left. Apparently there is quite seriously a thing as being "f**ked stupid." You're living proof."
> *Id*. at 1350 (asterisks added).

Dkt. #64 at 8–9. This is language directed at Innogames support staff—not other players—through an online customer support system. Responding to that last "down on your knees" example, Innogames support staff stated "[w]e have, repeatedly, asked you not to curse or verbally abuse our team…. whilst as a customer you have a right to service, you don't have a right to verbally abuse our team under any circumstances…. To draw a real world comparison, if you walked in to your local grocery store and verbally abused staff, the management has the right to remove you from their premises." Dkt. #54 at 1350-51. Eight minutes later, Plaintiff wrote, "I have not, once verbally abused any member of your team. On the other hand you have, repeatedly asked me to modify my mode of address to a form of power as a method of silencing my rights as a woman. [citation to a Dame Magazine article]…. This is your final warning." *Id*. at 1351. The argument between Plaintiff and customer support continues for several pages.

The Amended Complaint brings causes of action for negligence, gross negligence, willful or wonton conduct; defamation/libel/slander and loss of reputation; intentional/negligent infliction of emotional distress; "gender discrimination in public accommodation;" fraud, misrepresentation/deceit, unfair and deceptive trade practices; product liability; breach of contract, third-party breach of contract, promissory estoppel; copyright infringement and privacy violations, and gender discrimination in employment. Dkt. #52. She seeks "Loss of Income $180,000; Loss of Reputation $500,000; Physical and Emotional Pain and suffering $500,000; Defrauded amount $9,000 plus $16,000 of triple damages under Washington State Consumer protection laws," as well as statutory and punitive damages and other unspecified damages. *Id*. at 53.

ORDER GRANTING MOTION TO DISMISS - 5

Defendants move to dismiss all of Plaintiff's claims under Rule 12(b)(6). Dkt. #64.[2]

### III.    DISCUSSION

**A. Legal Standard under Rule 12(b)(6)**

In making a 12(b)(6) assessment, the court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted). However, the court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. at 678. This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The complaint need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Absent facial plausibility, a plaintiff's claims must be dismissed. *Id*. at 570.

Where a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

//

//

---

[2] Defendants have also moved for dismissal based on lack of personal jurisdiction. Dkt. #64 at 9–13. The Court finds that it need not address this argument as dismissal of all claims is appropriate under Rule 12(b)(6). The Court has not considered the Declaration of Hendrik Klindworth, Dkt. #78, and finds that the Motion to Exclude that declaration, Dkt. #80, is therefore moot.

ORDER GRANTING MOTION TO DISMISS - 6

## B. Analysis

### 1. Section 230 of the Communications Decency Act

As an initial matter, Defendants cite to Section 230 of the Communications Decency Act as applicable to this case. Dkt. #64 at 13 ("Plaintiff's online tort claims, detailed below, must be dismissed with prejudice as to InnoGames and the Individual Defendants because her claims are foreclosed by Section 20 of the Communications Decency Act, 47 U.S.C. § 230"). Courts have construed the immunity provisions in § 230 broadly to cover all claims arising from the publication of user-generated content. *See, e.g., Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123-24 (9th Cir. 2003); *Batzel v. Smith*, 333 F.3d 1018, 1030-31 & n. 19 (9th Cir. 2003); *Green v. Am. Online (AOL)*, 318 F.3d 465, 471 (3d Cir. 2003); *Ben Ezra, Weinstein, & Co. v. Am. Online Inc.*, 206 F.3d 980, 984-86 (10th Cir. 2000); *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330-31 (4th Cir. 1997). Defendants also argue they are immune from Plaintiff's claims related to their restriction of her access to Forge of Empires in an effort to prevent her from publishing "obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable" content. Dkt. #64 at 14 (citing 47 USC § 230(c)(2)(a)).

The Court finds that Section 230 of the Communications Decency Act does apply to the facts of this case and provides immunity to Defendants for all claims arising from the publication of user-generated content. Defendants are immune from Plaintiff's claims related to their restriction of her access to Forge of Empires in an effort to prevent her from publishing "obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable" content. 47 USC § 230(c)(2)(a).

### 2. Negligence/Gross Negligence/Willful or Wonton Conduct

In order to recover for negligence, a plaintiff must show that (1) defendants owed her a duty, (2) defendants breached that duty, (3) an injury resulted, and (4) the breach was the

ORDER GRANTING MOTION TO DISMISS - 7

proximate cause of the injury. *Lowman v. Wilbur*, 178 Wn.2d 165, 169, 309 P.3d 387 (2013) (citing *Crowe v. Gaston*, 134 Wn.2d 509, 514, 951 P.2d 1118 (1998)). "Gross negligence most obviously differs from simple negligence in that it requires a greater breach; to prove gross negligence, [the plaintiff] must show that [the defendant] 'substantially' breached its duty by failing to act with even slight care." *Harper v. Dep't of Corr.*, 192 Wn.2d 328, 340-41, 429 P.3d 1071 (2018).

The Amended Complaint points to the following to support these claims: "sexually explicit advertisements" promoting Forge of Empires creating "an unsafe environment for women players;" negligent supervision of "moderator-players," negligence *per se* for failing to protect her confidential information, "unsafe advertisements," and other complaints related to conduct from other users of Defendants' game.

The Court finds that Section 230 of the Communications Decency Act renders Defendants immune from the majority of these claims. The Court further agrees with Defendants' arguments that Plaintiffs' claims rely on implausible speculation:

> Defendants are not alleged to have done anything to cause other users to harass Plaintiff. Plaintiff alleges that it was she who took a photograph of her breasts, and it was she who sent that image to another player in an ill-advised attempt to prove that she was not a disliked male player. The rest is fanciful: that someone other than Gensmoky circulated the photograph to others whose real identities—and even their in-game usernames--she did not know. Plaintiff's fanciful speculation that a moderator was involved is insufficient under Iqbal and should therefore be disregarded.

Dkt. #64 at 16–17. Plaintiff has not cited any duty of Defendants to protect Plaintiff from alleged harassment by third parties in a video game. Even accepting all facts in the Amended Complaint as true and making all inferences in the light most favorable to Plaintiff, the Court cannot draw the reasonable inference that Defendants are liable for any of these claims.

ORDER GRANTING MOTION TO DISMISS - 8

Plaintiff has failed to state a plausible claim for negligence, gross negligence, or willful or wonton conduct. Accordingly, dismissal is warranted under Rule 12(b)(6).

### 3. Defamation/Libel/Slander and Loss of Reputation

A private individual plaintiff alleging defamation must show falsity, unprivileged communication, fault, and damages. *Mohr v. Grant*, 153 Wn.2d 812, 822, 108 P.3d 768 (2005). A false written statement is considered libel, a false spoken statement is slander.

Plaintiff pleads that Defendants defamed her by stating plaintiff was "crazy," "a liar," and by disparaging "plaintiff's mental status." Dkt. #52 at 27.

The Court has previously determined that "Plaintiff presents the Court nothing demonstrating an actionable claim for 'loss of reputation' outside of defamation." Dkt. #34 at 8.

Defendants argue a defamation claim "must be based on a statement that is provably false," Dkt. #64 at 18–19 (citing, e.g., *Schmalenberg v. Tacoma News, Inc.*, 87 Wn. App. 579, 590, 943 P.2d 350 (1997); *Herron v. KING Broadcasting Co.*, 112 Wn.2d 762, 768, 776 P.2d 98 (1989), and that the statements from Defendants at issue are "matters of opinion," *id*. at 19.

The Court agrees with Defendants' analysis. Even accepting all facts in the Amended Complaint as true and making all inferences in the light most favorable to Plaintiff, these claims fail because Defendants' statements could not plausibly be considered statements of false truths.

Defendants further argue:

> A written publication is libelous per se (actionable without proof of special damages) if it tends to expose a living person to hatred, contempt, ridicule, or obloquy, or to deprive him of the benefit of public confidence or social intercourse." *Amsbury v. Cowles Pub. Co.*, 76 Wash. 2d 733, 737, 458 P.2d 882, 884 (1969). Here, third-party players taunted Plaintiff, calling her "sluuut" "a stupid dumb biotch" and a "bad mother". Dkt. #52 at 27. The communications complained of could not plausibly be considered to be statements of false truths (that is, libelous declarations) as opposed to invective, opinions and unpleasantries in the category of those

ORDER GRANTING MOTION TO DISMISS - 9

> Plaintiff admits she sent to rattle opposing players. That does not rise to the level of libel, let alone libel per se.

Dkt. #64 at 19. The Court again agrees with Defendants' analysis. Even accepting all facts in the Amended Complaint as true and making all inferences in the light most favorable to Plaintiff, this claim fails because these communications could not plausibly be considered statements of false truths.

Finally, the Court notes that Section 230 of the Communications Decency Act renders Defendants immune from claims based on statements from third-party users.

### 4. Emotional Distress Claims

A party may recover for negligent infliction of emotional distress "in the absence of physical injury only where emotional distress is (1) within the scope of foreseeable harm of the negligent conduct, (2) a reasonable reaction given the circumstances, and (3) manifest by objective symptomatology." *Bylsma v. Burger King Corp.*, 176 Wn.2d 555, 560 (2013) (citation omitted). Plaintiff fails to state a claim for negligent infliction of emotional distress because the Court has found an absence of negligent conduct. *See Bylsma*, 176 Wn.2d at 560.

A claim for intentional infliction of emotional distress requires (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress. *Lyons v. U.S. Bank NA*, 336 P.3d 1142, 1151 (Wash. 2014). "The first element requires proof that the conduct was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* This tort "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Grimsby v. Samson*, 85 Wn.2d 52, 59, 530 P.2d 291 (1975).

ORDER GRANTING MOTION TO DISMISS - 10

The Court has previously ruled that alleged inconsistent enforcement of community standards in an online video game does not raise to the level of extreme and outrageous conduct. See Dkt. #34 at 7. Nothing in the Amended Complaint alters this analysis. Plaintiff has failed to plead conduct that could satisfy the above requirements of this claim, and it will be dismissed.

### 5. Gender Discrimination in Public Accommodation

As an initial matter, this claim lacks any citation to any specific federal or state law even after amendment. Defendants assume that Plaintiff's claim is brought under the Washington Law Against Discrimination, RCW 49.60.215, and proceeds with some attempt at analysis of Plaintiff's claim. The Court agrees with that analysis—Plaintiff has failed to plead facts showing how Defendants could identify her or other users by their gender. Plaintiff has failed to plead facts plausibly indicating that Defendants treated her differently based on her gender. The Amended Complaint and attachments paint a richly-detailed portrait of Defendants' response to Plaintiff's complaints of gender discrimination, and the Court finds such a claim to be implausible given Defendants' repeated attempts to respectfully respond to Plaintiff's harassing and abusive customer service requests. This claim is dismissed under Rule 12(b)(6).

### 6. Fraud, Misrepresentation/Deceit

Under Rule 9(b), a plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). A fraud claim is adequately pled only if it "informs the defendant of who did what, and describes the fraudulent conduct and mechanisms." *Haberman v. Washington Pub. Power Supply Sys.*, 109 Wn.2d 107, 165, 744 P.2d 1032, 1069 (1987), *amended*, 109 Wn.2d 107, 750 P.2d 254 (1988). "General statements about material misrepresentations and fraudulent actions do not provide the required who, what, when, where,

ORDER GRANTING MOTION TO DISMISS - 11

and how of a properly pleaded fraud claim." *McAfee v. Select Portfolio Servicing, Inc.*, 193 Wn. App. 220, 232 (Wash. 2016) (internal citations omitted).

The Court agrees with Defendants that Plaintiff has failed to plead her fraud claims with particularity. She does not identify any specific false statements of fact, the speaker of such, or how she was harmed. The allegation that InnoGames changed its terms and conditions in order to target Plaintiff directly is not plausible. Moreover, even if defendants had changed the terms and conditions to target Plaintiff, this still would not constitute fraud. Accordingly, Plaintiff's fraud, misrepresentation, and deceit claims are dismissed.

### 7. Unfair and Deceptive Trade Practices/Consumer Protection Act Claim

A claim for deceptive trade practices falls within the state's Consumer Protection Act ("CPA"). A CPA claim requires proof of five elements: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 719 P.2d 531, 533 (1986).

A practice is "unfair" under the CPA if it causes injury to consumers "which is not reasonably avoidable by consumers themselves." *Alpert v. Nationstar Mortg. LLC*, 2019 U.S. Dist. LEXIS 41741, 2019 WL 1200541, *19 (W.D. Wash. 2019) (citing *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 295 P.3d 1179, 1187 (Wash. 2013)). An injury is "reasonably avoidable if consumers 'have reason to anticipate the impending harm and the means to avoid it,' or if consumers are aware of, and are reasonably capable of pursuing, potential avenues toward mitigating the injury after the fact." *Id.* at *21 (quoting *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168-69 (9th Cir. 2012)).

To support this claim, the Amended Complaint states that "these actions" (*i.e.*, everything previously stated in the Amended Complaint) violate the CPA "because they are

ORDER GRANTING MOTION TO DISMISS - 12

deceptive acts as outlined above…" Dkt. #52 at 38. This type of catch-all pleading leaves the opposing party and the Court in the dark as to what is being alleged and how the many facts of this case injured Plaintiff to support this claim.

Defendants' Motion argues Plaintiff has failed to plead a public interest impact, and that "[a] breach of a private contract affecting no one but the parties to the contract, whether that breach be negligent or intentional, is not an act or practice affecting the public interest." Dkt. #64 at 23 (citing *Lightfoot v. MacDonald*, 86 Wn.2d 331, 334 (1976)). Defendants also challenge the damages element.

In Response to Defendants' Motion, in a section referring explicitly to the Consumer Protection Act, Plaintiff discusses her fraud claim and later states that she was promised the game would be "fair." Dkt. #76 at 20. She does not address the elements of a CPA claim or respond to Defendants' points. Later, in a section devoted to product liability, she states "[b]roadly advertising a game as fair and then allowing unfair practices and cheating to thrive, and attempting to cause a medical condition in the people you solicit affects every player of *Forge of Empires* in Washington State and relates a broader public interest of protecting the public from predatory companies. Dkt. #76 at 21–23.

The Court cannot guess as to the facts supporting a CPA claim and must rely on Plaintiff's Amended Complaint and her briefing. Taking the pleaded facts as true, they do not demonstrate an unfair practice because any injury to the Plaintiff caused by cheating or unfair play in this game was reasonably avoidable, the harm did not affect the public interest, and it did not cause injury to her business or property. Accordingly, this claim will be dismissed.

**8. Product Liability**

Defendants argue:

ORDER GRANTING MOTION TO DISMISS - 13

Forge of Empires and other online games are not subject to Washington's products liability law. RCW Section 7.72.010 defines "Product" as "any object possessing intrinsic value, capable of delivery either as an assembled whole or as a component part or parts, and produced for introduction into trade or commerce." Forge of Empires is software as a service, not an "object," hence Plaintiff's product liability claim must fail as a matter of law. *See, e.g., James v. Meow Media, Inc.*, 90 F.Supp.2d 798, 811 (W.D.Ky. 2000) (holding videogames not "products" under product liability law), *Wilson v. Midway Games, Inc.*, 198 F. Supp. 2d 167, 174 (D. Conn. 2002) (same); *Sanders v. Acclaim Entertainment, Inc.*, 188 F. Supp. 2d 1264, 1279 (D. Colo. 2002); Restatement (Third) Torts: Products Liability § 19 (1998) (product is "tangible personal property distributed commercially for use or consumption.").

Dkt. 64 at 23.  The Court agrees that Forge of Empires as pled in this case is not a product under the WPLA.  This claim is therefore dismissed under Rule 12(b)(6).

### 9.  Contract and Promissory Estoppel Claims

Plaintiff pleads that Defendants breached the Terms and Conditions of the software, which prohibit harassing behavior and duplicating or making public the image of another person without their written approval.  Dkt. #52 at 44–45.  The Terms and Conditions state that content violating these rules will be removed immediately.  She alleges that Defendants became aware that the photo of her in "a somewhat see-thru bra" was being shared but failed to take adequate action.  Plaintiff alleges she "suffered damages from the loss of her photograph including loss of her intellectual property and the value of the photograph and the consequential damages that involved years of harassment." *Id*. at 47.  She also alleges she was a third-party beneficiary to the Terms and Conditions contract entered into by other users.  She pleads promissory estoppel by relying on these Terms and Conditions.

To prevail on a breach of contract claim under Washington law, a plaintiff must establish (1) the existence of a contractual duty, (2) defendant's breach of that duty, and that (3) defendant's breach of that duty caused damages to the plaintiff. *Nw. Indep. Forest Mfrs. v. Dep't*

ORDER GRANTING MOTION TO DISMISS - 14

*of Labor & Indus.*, 78 Wn. App. 707, 712, 899 P.2d 6 (1995). The doctrine of promissory estoppel serves to enforce "otherwise unenforceable promises which are not supported by consideration." *Klinke v. Famous Recipe Fried Chicken, Inc.*, 94 Wn.2d 255, 261, 616 P.2d 644, 647 (1980). Where a plaintiff alleges both breach of contract and promissory estoppel claims, "[i]t may be proper to dismiss a promissory estoppel claim when 'an undisputedly valid and enforceable written contract governs the same subject matter.'" *Neravetla v. Va. Mason Med. Ctr.*, No. C13-1501-JCC, 2014 U.S. Dist. LEXIS 200668, 2014 WL 12787979, *7 (W.D. Wash. Feb. 18, 2014) (quoting *Air Atlanta Aero Engineering Ltd. V. SP Aircraft Owner I, LLC*, 637 F. Supp. 2d 185, 196 (S.D.N.Y. 2009)) (emphasis added).

The Court finds that Plaintiff has failed to plead a material breach of the Terms and Conditions by Defendants that proximately caused damages to Plaintiff. The breaches she points to are breaches of the terms by other users. Plaintiff has failed to plead that Defendants had a contractual duty to prevent the sharing of this photo once she posted it, other than to attempt to remove the content as it is posted. Even if such a duty existed, she fails to show that Defendants' inaction caused damage to her, other than the damage caused by the harassment of other users. The Terms and Conditions did not state "in exchange for your money we promise you a harassment-free environment" or similar language. The harassment by third parties is outside the scope of a contract claim, Plaintiff has failed to adequately plead that she was the intended beneficiary of a third-party beneficiary contract, and in any event Plaintiff has failed to plead how the alleged breaches by Defendants plausibly caused her damages. Promissory estoppel is inapplicable as there is a contract governing the alleged breaches. Finally, the CDA provides Defendants immunity from liability for the actions of third parties users. *See* 47 U.S.C. §230(c)(1). These claims are dismissed.

ORDER GRANTING MOTION TO DISMISS - 15

**10. Copyright Infringement and Privacy Violation Claims**

Plaintiff's pleads that "InnoGames is liable for Copyright Infringement of Plaintiff's protected photograph," that she created the image on July 25, 2016, that an InnoGames moderator "intercepted the private conversation" where she posted the photograph "then copied and transmitted this link to other parties." Dkt. #52 at 49–50. Plaintiff registered the image with the United States Copyright Office on September 03, 2019. *Id*. at 50.

Defendants argue:

> In *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881 (2019), the Supreme Court held that a claim for copyright infringement may not be filed until after registration. The Copyright Act of 1976 only permits an award of statutory damages or attorney's fees if a copyright registration is issued within three months following publication of the copyrighted work. *See* 17 U.S.C. §412 (2). Plaintiff fails to demonstrate ownership of a valid copyright registration within the time constraints outlined in the statute. *See also Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991). Plaintiff photographed her breasts on July 25, 2016. Immediately thereafter, Plaintiff published the image. Plaintiff did not register the photo with the U.S. Copyright Office until September 3, 2019--more than three years after publication, making her ineligible to receive statutory damages and permitting no claims for damages accruing prior to that date. No such post-registration infringing actions or damages are alleged.

Dkt. #64 at 25–26. The Court agrees that statutory damages and fees are not available. Any other damages attributable to Defendants under this claim are speculative and not plausible. This claim is properly dismissed under Rule 12(b)(6).

**11. Employment Discrimination**

Plaintiff pleads that Defendants failed to hire her for a Social Media Moderator position on May 12, 2017, because of her gender. Dkt. #52 at 52. She pleads that she "is unsure if the position was paid or volunteer, but believes it was a so-called 'volunteer' position that was actually paid with in-game currency." *Id.* Defendants state:

ORDER GRANTING MOTION TO DISMISS - 16

> InnoGames has no United States employees and has never recruited or intended to hire any United States employees. Social Media Moderators, the position for which she applied, are not employees of InnoGames. Even assuming this could be considered an "employment" situation, Plaintiff's claim must fail. The individuals reviewing moderator applications for Forge of Empires were unaware of Plaintiff's gender at the time she applied for the position.

Dkt. #54 at 138-9, 210. The Court finds that Plaintiff cannot bring a claim for gender discrimination in employment. Accepting all facts alleged in the complaint as true, and making all inferences in the light most favorable to Plaintiff, this claim is not facially plausible because Defendants were not offering employment with the position of Social Media Moderator.

### C. Leave to Amend

A "court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2). Courts apply this policy with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). Five factors are commonly used to assess the propriety of granting leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether plaintiff has previously amended the complaint. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990); *Foman v. Davis*, 371 U.S. 178, 182 (1962). In conducting this five-factor analysis, the court must grant all inferences in favor of allowing amendment. *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999). In addition, the court must be mindful of the fact that, for each of these factors, the party opposing amendment has the burden of showing that amendment is not warranted. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987); *see also Richardson v. United States*, 841 F.2d 993, 999 (9th Cir. 1988).

The Court finds that Plaintiff has been aware of the majority of the above grounds for dismissal, has already amended her Complaint once, and that the deficiencies above cannot

ORDER GRANTING MOTION TO DISMISS - 17

possibly be cured by amendment. This assessment is further supported by the unusually detailed factual record provided by the Plaintiff in attachments to her pleading.

## IV. CONCLUSION

Having reviewed the relevant pleadings and the remainder of the record, the Court hereby finds and ORDERS that Defendants' Motion to Dismiss Plaintiff's Amended Complaint under Rule 12(b)(6), Dkt. #64, is GRANTED. Plaintiff's claims are DISMISSED. All remaining motions in this case are STRICKEN as MOOT. This case is CLOSED.

DATED this 28th day of March, 2022.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER GRANTING MOTION TO DISMISS - 18

**Order Granting Motion to Dismiss as to Julie Blan – Docket 34**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PENNY QUINTEROS,

       Plaintiff,

     v.

INNOGAMES, et al.,

       Defendants.

CASE NO. C19-1402 RSM

ORDER GRANTING DEFENDANT JULIE BLAN'S SECOND MOTION TO DISMISS

## I.   INTRODUCTION

This matter is before the Court on Defendant Jule [*sic*] Blan's Second Motion to Dismiss. Dkt. #29.  The Court previously denied Ms. Blan's request for dismissal because her legal arguments were underdeveloped until her reply when Plaintiff, proceeding *pro se*, was unable to respond.  Dkt. #28 at 6.  The Court specified that the denial was "without prejudice to refiling." *Id.* at 7.  On this round of briefing, Plaintiff has had the opportunity to address Ms. Blan's arguments and opposes the Motion.  Dkt. #30.  Neither party requested oral argument[1] and the

_____

[1] Plaintiff did request oral argument in her surreply.  Dkt. #32.  However, the Court's local rules make clear that "[a] party desiring oral argument shall so indicate by including the words 'ORAL ARGUMENT REQUESTED' in the caption of its motion or responsive memorandum."  LCR 7(b)(4).  Plaintiff's surreply-request—a filing the Court need not and does not consider—, even if proper, is untimely.

ORDER – 1

Court finds oral argument unnecessary to resolve the Motion. Local Rules W.D. Wash. LCR 7(b)(4); *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) (court may deny request for oral argument when parties submit briefs to the court). Having considered the briefing and the remainder of the record, and for the following reasons, the Court grants the motion.

## II.      BACKGROUND

Defendant InnoGames—a German business entity—created an online video game known as "Forge of Empires." Dkt. #3 at 6. Plaintiff does not detail the gameplay mechanics but makes clear that there is significant interaction between online players within the game. Plaintiff, using the moniker "TwoCents," played Forge of Empires "almost every day without interruption from 2016–2019 for over 10,000 hours of game play." *Id.* Plaintiff maintains that the game is psychologically addictive and that she became psychologically dependent or addicted. *Id.* at 8. Plaintiff alleges that instead of warning players of the addictive nature of the game, InnoGames exploited players with "micro-transactions."[2] *Id.*

Relying on representations made by InnoGames that the game presented a "level playing field," Plaintiff sought to excel at the game. *Id.* at 9–10. Her dependence on the game and desire to progress further resulted in her spending over $9,000 on micro-transactions to "keep up" with players she now believes were cheating. *Id.* at 8–10. While continuing to make a significant investment of time and money into the game, Plaintiff experienced numerous unpleasant social interactions while playing. *Id.* at 7–11. In fact, Plaintiff faced repeated harassment from multiple individuals because of her gender. *Id.* Plaintiff believes that this occurred, at least in part, because InnoGames advertised the game in a manner which "created an unsafe environment for women players." *Id.* at 6–7.

---

[2] Plaintiff indicates that the micro-transactions are purchases of in-game items that allow the player to "advance in the game faster." Dkt. #3 at 8–10.

ORDER – 2

74

Plaintiff reported her continued harassment to InnoGames and at least some of the individual defendants.[3] Plaintiff believes that the harassment violated InnoGames' terms and conditions for playing Forge of Empires. But the defendants did nothing to prevent the harassment and the harassment continued unabated. *Id.* at 7–11. Plaintiff believes that instead of acting to protect her, defendants discriminated against her, enforcing rules disproportionately against her because of her gender, changing rules, and enforcing certain rules against her alone. *Id.* at 10–11.

Because of her experiences, Plaintiff alleges that "she has suffered extreme and serious emotional distress and depression, [] has been unable to function independently, [] has suffered psychological trauma, [and] has emotional symptoms of depression, anxiety, [and] thoughts of suicide." *Id.* at 12. Plaintiff ultimately seeks recovery for physical and emotional damages, loss of reputation, economic harms, and violations of consumer protection laws. *Id.* at 12–13. Plaintiff's Complaint seeks relief under several legal theories:

> (I) Gross Negligence; (II) Negligence; (III) Reckless Misconduct; (IV) Fraud; (V) Misrepresentation/Deceit; (VI) Unfair and Deceptive Trade Practices; (VII) Gender Discrimination in Public Accommodation; (VIII) Defamation/Libel/ Slander; (IX) Loss of Reputation; (X) Intentional Infliction of Emotional Distress; [and] (XI) Negligent Infliction of Emotional Distress.

*Id.* at 5.

### III.   DISCUSSION

#### A. Legal Standard

Dismissal under Federal Rule of Civil Procedure 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."

---

[3] Plaintiff names Hendrik Klindworth, Chief Executive Officer of InnoGames, Michael Zillmer, Chief Operating Officer of InnoGames, Julie (Jill) Blan, a "United States Community Manager" for InnoGames, and Richard Stephenson, an "International Community Manager" for InnoGames. Dkt. #3 at 2–3. Plaintiff does not attribute specific actions to individual defendants.

ORDER – 3

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *see also* FED. R. CIV. P. 8(a)(2). While considering a Federal Rule of Procedure 12(b)(6) motion, the court accepts all facts alleged in the complaint as true and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (citations omitted). The court is not required, however, to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). The complaint need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556, 557). Absent facial plausibility, a plaintiff's claims must be dismissed.

**B. Plaintiff's Claims Are Appropriately Dismissed**

Ms. Blan's first objection is to Plaintiff's use of "group pleading" in the Complaint. As Ms. Blan explains, Plaintiff does not specify to which defendant she attributes each action alleged

ORDER – 4

and instead attributes all actions to "Defendant(s)" generally. Dkt. #29 at 3. Plaintiff argues that her use of group pleading is supported by *Wool v. Tandem*, 818 F.2d 1433 (9th Cir. 1987), because the individual defendants "are a narrowly defined group in control of a public entity." Dkt. #30 at 4 (quoting *Wool*, 818 F.2d at 1141–1142). But, as Defendant notes, *Wool* was a securities fraud action naming a company's "President/Chief Executive, Senior Vice President/Chief Operating Officer, and Vice President/Controller." Dkt. #31 at 1–2; *Wool*, 818 F.2d at 1140. Here Plaintiff sues InnoGames, two executive officers, and two "Community Managers." Dkt. #3 at 2–3. Plaintiff does not explain what specific role Ms. Blan, a Community Manager, played in the events giving rise to her claims. Plaintiff does not indicate the responsibilities of a Community Manager generally or how Plaintiff interacted with the Community Managers.[4]

The only action that Plaintiff directly attributes to a community manager—presumably Ms. Blan—is "lax" enforcement of rules against other players and a focus on punishing Plaintiff when she complained of their efforts. *Id.* at 7–8. Even after relying on inferences in favor of Plaintiff, she alleges primarily that Ms. Blan failed to protect her from harassment within the game and on the internet. *Id.* at 7–11. In her briefing, Plaintiff argues more broadly that Ms. Blan "designed, produced, managed and distributed Forge of Empires and that she as the community manager was lax in her punishment of other players among the other activities factually described in the complaint and attributable to the defendants." Dkt. #30 at 4. But the argument does not help the Court across "the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556, 557). Is it

---

[4] Further adding to the Court's confusion, Plaintiff draws a distinction between moderators and community managers. Dkt. # Dkt. #3 at 7–8 ("game moderators and community manager were lax . . .").

ORDER – 5

possible that a "United States Community Manager" with frequent customer interaction is responsible for a German company's design, production, management, and distribution of a video game? Perhaps, but common sense precludes the Court from finding such an allegation plausible. Plaintiff presents no other theory upon which to hold Ms. Blan responsible for actions that are more appropriately attributed to InnoGames and its executives. Ms. Blan is the only party before the Court and the Court accordingly focuses on the actions that are properly attributed, relying on common sense and judicial experience, to Ms. Blan as the United States Community Manager for InnoGames.

As noted, Plaintiff primarily complains that Ms. Blan did not protect her from ongoing harassment. But Plaintiff does not plead any facts establishing that Ms. Blan had a duty to protect her from harassment. *Burg v. Shannon & Wilson, Inc.*, 110 Wash. App. 798, 804, 43 P.3d 526, 530 (2002) (noting that "actionable negligence" requires duty, breach, injury, and causation). Under Washington law, "a defendant's duty may be predicated on violation of statute or of common law principles of negligence." *Id.* citing (*Bernethy v. Walt Failor's, Inc.*, 97 Wash. 2d 929, 932, 653 P.2d 280 (1982)). Plaintiff does not point to any statutory[5] or common law duty requiring Ms. Blan to protect Plaintiff from ongoing harassment by third-parties in a video game." *See* 16 WASH. PRAC., TORT LAW AND PRACTICE § 2:6 (4th ed.) (noting general lack of duty to prevent harm absent inducement, a special relationship, or a statutory duty); *Id.* at § 2.8 ("Awareness of the danger faced by another and [one's need for] protection does not by itself

---

[5] Plaintiff cites to the Washington Law Against Discrimination and a provision declaring a civil right "to be free from discrimination because of . . . sex . . .," including "full enjoyment of any of the accommodations, advantages, facilities, or privileges of any place of public resort, accommodation, assemblage, or amusement." WASH. REV. CODE § 49.60.030(1), (1)(b). But, whatever the implications of such a civil right, Plaintiff does not indicate why Ms. Blan should be held accountable and not InnoGames—the purveyor of the "place of public resort, accommodations, assemblage, or amusement."

ORDER – 6

create a duty of care.") (citing *Hopovac v. State Dep't of Corr.*, 197 Wash. App. 817, 822, 391 P.3d 570, 573 (2017)).  Plaintiff also does not explain why any such duty or contractual obligation falls upon Ms. Blan and not InnoGames.  *Nivens v. 7-11 Hoagy's Corner*, 133 Wash. 2d 192, 943 P.2d 286 (1997), *as amended* (Oct. 1, 1997) (noting duty of care owed by business owner to customers).  Accordingly, Plaintiff's negligence claims—reckless conduct, negligence, and gross negligence—must be dismissed.

Plaintiff's negligent infliction of emotional distress and intentional infliction of emotional distress claims likewise fail.  As noted above, Plaintiff does not establish that Ms. Blan acted negligently, destroying any claim for negligent infliction of emotional distress.  *See Bylsma v. Burger King Corp.*, 176 Wash. 2d 555, 560, 293 P.3d 1168, 1170 (2013) (recovery "in the absence of physical injury only where emotional distress is (1) within the scope of foreseeable harm of *the negligent conduct*, (2) a reasonable reaction given the circumstances, and (3) manifest by objective symptomatology") (emphasis added, citation omitted).  Plaintiff's intentional infliction claim requires her to plead "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of emotional distress." *Spicer v. Patnode*, 443 P.3d 801, 807 (Wash. Ct. App. 2019) (quotation marks and citation omitted).  But Plaintiff alleges only that Ms. Blan was lax in punishing other players for infractions and instead punished Plaintiff.  With nothing more, the Court is not able to say that inconsistent application of terms and conditions in an online video game is "extreme and outrageous conduct." *See Kloepfel v. Bokor*, 149 Wash. 2d 192, 196, 66 P.3d 630, 632 (2003) (outrage "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities") (quotation marks and citation omitted).  Plaintiff's claims for emotional distress are dismissed.

ORDER – 7

The Court will likewise dismiss Plaintiff's defamation/libel/slander and loss of reputation claims. Plaintiff presents the Court nothing demonstrating an actionable claim for "loss of reputation" outside of defamation. And defamation requires a false statement, either written (libel) or spoken (slander). *Caruso v. Local Union No. 690*, 107 Wash. 2d 524, 529, 730 P.2d 1299, 1302 (1987). Because Plaintiff does not establish that any statements are attributable to Ms. Blan, Plaintiff has not adequately stated claims for defamation.

As noted above, Plaintiff's remaining claims—fraud[6] and misrepresentation/deceit, unfair and deceptive trade practices, and gender discrimination in public accommodation—are not appropriately attributed to Ms. Blan and those claims are accordingly dismissed as to her.

**C. Leave to Amend**

Where the Court dismisses for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (leave to amend should be granted "unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment").

Here, Plaintiff specifically requests an opportunity to replead her claims. Dkt. #30 at 2. The Court cannot yet say that amendment would be futile. *Rosas v. GEICO Cas. Co.*, 365 F. Supp. 3d 1123, 1128 (D. Nev. 2019) ("Amendment is futile only if no set of facts can be proven under the amendment that would constitute a valid and sufficient claim.") (citing *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)). Plaintiff is granted leave to amend her Complaint, consistent with this Order.

---

[6] The parties do not address whether the Complaint is adequately stated with regards to the specific pleading requirements of Federal Rule of Civil Procedure 9(b).

ORDER – 8

**D. Plaintiff's Surreply**

After Ms. Blan filed a reply in support of her motion to dismiss, Plaintiff filed a surreply. Dkt. #32.  This Court's Local Civil Rules allow surreplys for the limited purpose of requesting that the court strike material contained in or attached to a reply brief.  LCR 7(g).  Any surreply must "be strictly limited to addressing the request to strike.  Extraneous argument or a surreply filed for any other reason will not be considered."  LCR 7(g)(2).  Plaintiff's surreply merely makes further argument in support of her position and attempts to bring new factual allegations before the Court.  *See* Dkt. #32.  Accordingly, the Court does not consider Plaintiff's improper surreply.

## IV.     CONCLUSION

Having considered Ms. Blan's motion, the related briefing, and the remainder of the record, the Court hereby finds and ORDERS:

1. Defendant Jule [*sic*] Blan's Second Motion to Dismiss (Dkt. #29) is GRANTED.

2. Plaintiff, if she chooses, is granted leave to file an amended complaint, consistent with this Order and curing the above-specified deficiencies, no later than thirty (30) days from the date of this Order.

Dated this 1st day of July, 2020.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER – 9

**Order on *Ex Parte* Motions Including Pseudonym – Docket 13**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PENNY QUINTEROS, | CASE NO. C19-1402 RSM |
| Plaintiff, | ORDER ON PENDING MOTIONS |
| v. | |
| INNOGAMES, et al., | |
| Defendants. | |

## I.     INTRODUCTION

This matter is before the Court on numerous *ex parte* motions filed by Plaintiff in the beginning stages of this action.  No defendant has been served or appeared and summonses were only recently issued on November 6, 2019.  The Court resolves the various pending motions as provided below.

## II.     BACKGROUND

Defendant InnoGames created an online video game known as "Forge of Empires."  Dkt. #3 at 6.  Plaintiff, using the moniker "TwoCents," played Forge of Empires "almost every day without interruption from 2016–2019 for over 10,000 hours of game play."  *Id.*  Plaintiff alleges that InnoGames knew that players could get psychologically dependent or addicted to its game,

ORDER – 1

did not warn players of that risk, and instead exploited players with "micro-transactions."[1] *Id.* at 8. Plaintiff alleges that she became addicted to the game and spent over $9,000 on micro-transactions to "keep up" with players she believes were cheating. *Id.* at 10.

Plaintiff appears to have had unpleasant social interactions and experiences while playing the game and attributes those experiences to the defendants. Plaintiff believes that InnoGames's advertising for the game "created an unsafe environment for women players," such as herself. *Id.* at 6–7. Plaintiff alleges that she suffered harassment and that InnoGames did little to prevent the harassment, even after she raised the issue directly. *Id.* at 7–8. Rather, Plaintiff alleges that InnoGames and its employees enforced the rules unfairly and targeted her for harsher enforcement. *Id.* at 9. Plaintiff alleges that these actions were at least partly because of her gender. *Id.* at 11.

Because of her experiences, Plaintiff alleges that "she has suffered extreme and serious emotional distress and depression, she has been unable to function independently, she has suffered psychological trauma, she has emotional symptoms of depression, anxiety, [and] thoughts of suicide." *Id.* at 12. Plaintiff asserts claims against InnoGames, its Chief Executive Officer, its Chief Operating Officer, and two of its "community managers" (collectively, "Defendants"). *Id.* at 2–3. Plaintiff ultimately seeks recovery for physical and emotional damages, loss of reputation, economic harms, and violations of consumer protection laws. *Id.* at 12–13.

//

//

//

---

[1] Plaintiff indicates that the micro-transactions are purchases of in-game items that allow the player to "advance in the game faster." Dkt. #3 at 8–10.

ORDER – 2

## III.    DISCUSSION

### A. Plaintiff's Request to Proceed Under a Pseudonym

Plaintiff seeks to proceed under the pseudonym "TwoCents" to conceal her identity from everyone but the Court and Defendants. Dkt. #5 at 1. The request is based on the ongoing harassment Plaintiff has faced in Forge of Empires and her "fear[] that if her identity becomes known to her harassers they will escalate their behavior including potentially physical violence." *Id.* at 1–2.

### 1. Legal Standard

Permitting a party to pursue legal proceedings anonymously is unusual as it interferes with the public's strong common law right of access to judicial proceedings and conflicts with Federal Rule of Civil Procedure 10. *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000); FED. R. CIV. P. 10(a) (specifying that "[t]he title of the complaint must name all the parties"). "[A] party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity. *Does I thru XXIII*, 214 F.3d at 1068. Anonymity has generally been permitted: "(1) when identification creates a risk of retaliatory physical or mental harm; (2) when anonymity is necessary 'to preserve privacy in a matter of sensitive and highly personal nature;' and (3) when the anonymous party is 'compelled to admit [his or her] intention to engage in illegal conduct.'" *Id.* (alteration in original) (internal citations omitted). When determining the need for anonymity to protect from harm, courts look to: "(1) the severity of the threatened harm; (2) the reasonableness of the anonymous party's fears; and (3) the anonymous party's vulnerability to such retaliation." *Id.* (internal citations omitted).

ORDER – 3

## 2. Use of a Pseudonym Is Not Warranted

The Court does not find that Plaintiff has carried her burden here. Plaintiff does not seek to shield her identity from Defendants, focusing the Court's consideration on Plaintiff's need for anonymity and any prejudice to the public's interest. Plaintiff identifies her own potential harm as the risk of retaliation and intrusion into her privacy, but Plaintiff largely ignores any prejudice to the public's interest.

Plaintiff's concerns over retaliation stem from the allegations of past harassment within Forge of Empires as she lays out in her Complaint. Dkt. #5 at 3. But, to the extent Plaintiff has provided any competent evidence through her motions and unverified Complaint, the Court finds the potential for harm is overly speculative. Plaintiff certainly *may* face further harassment, but Plaintiff does not establish a reason to believe that such harassment is *likely* to occur.

Plaintiff also expresses a need for privacy to protect her personal reputation and her future professional reputation.[2] Plaintiff's concerns in this regard arise primarily from an incident occurring within Forge of Empires where she shared a revealing photo that was subsequently spread within the community. *Id.* at 3; Dkt. #3 at 7. But Plaintiff's privacy concerns are again over-generalized.

"There is a strong presumption of public access to the court's files." LCR 5(g); *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598–99 (1978); *EEOC v. Erection Co., Inc.*, 900 F.2d 168, 169 (9th Cir. 1990). Plaintiff is correct that the public will be afforded access to the proceedings in this matter because she limits her request to protection only of her identity. Dkt. #5 at 3. While this limits the prejudice to the public's interest, it does not establish that "the circumstances here are extraordinary enough to warrant her use of a pseudonym." *D.C. v. Pierce*

---

[2] Plaintiff indicates that she plans to become an attorney. Dkt. #5 at 2.

ORDER – 4

*Cnty.*, No. C10-5246RJB, 2010 WL 3814051, at \*2 (W.D. Wash. Sept. 27, 2010) (denying request to use pseudonym in a case alleging that defendant's law enforcement officer photographed plaintiff's genitals and posted the picture on a law enforcement website and noting that "[m]uch of what is litigated involves embarrassment for one party or another"). Moreover, the Court finds that while the nature of Plaintiff's photograph may be embarrassing, it is only a small aspect of her lawsuit and the Federal Rules of Civil Procedure provide other, less drastic, avenues to protect Plaintiff's privacy. *Id.* (noting that "the Federal Rules of Civil Procedure and the Western District of Washington provide vehicles by which a party may be shielded from unnecessary embarrassment"). The Court will not grant Plaintiff's requested relief here.

**B. Plaintiff's Motions to Seal**

In addition to Plaintiff's request to proceed under a pseudonym, she requests that several filings that reveal her identity be maintained under seal. Dkts. #6 and #8. Specifically, Plaintiff requests that the Court maintain the following under seal:

(1) Declaration and Application to Proceed *In Forma Pauperis* and Written Consent for Payment of Costs (Dkt. #1);

(2) Complaint for a Civil Case Alleging Negligence (Dkt. #3);

(3) Civil Coversheet (Dkt. #3-1);

(4) Affidavit of True Name (Dkt. #7);

(5) Motion to Reconsider *In Forma Pauperis* Decision (Dkt. #9); and

(6) Motion to Appoint a Person to Serve Summons (Dkt. #10).

Pending a ruling on Plaintiff's motions, the Court has maintained the entire matter under seal.

**1. Legal Standard**

"There is a strong presumption of public access to the court's files." LCR 5(g). The party seeking to seal a judicial record must overcome the strong presumption of public access by

ORDER – 5

86

establishing a "compelling reason" justifying sealing. *Kamakana v. City & Cnty. Of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). "What constitutes a 'compelling reason' is 'best left to the sound discretion of the trial court.'"[3] *Center for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978)). However, the trial court must articulate a "factual basis for its ruling, without relying on hypothesis or conjecture." *Kamakana*, 447 F.3d at 1179. Even after finding a compelling reason, "[t]he court must then 'conscientiously balance[] the competing interests of the public and the party who seeks to keep certain judicial records secret." *Center for Auto Safety*, 809 F.3d at 1097 (quoting *Kamakana*, 447 F.3d at 1179) (alterations in original).

### 2. Sealing Is Not Appropriate on This Record

The Court need not consider Plaintiff's requests to seal specific documents in depth. The motions fail for many of the same reasons that Plaintiff's request to proceed under a pseudonym failed. The Court finds it sufficient to note that Plaintiff has not provided the necessary factual basis justifying sealing the documents at issue. The Court therefore denies Plaintiff's motions and unseals this matter in its entirety and the filings currently held under seal. However, nothing precludes Plaintiff from seeking similar relief at a later time.

### C. Plaintiff's Request to Proceed *In Forma Pauperis*

Plaintiff sought to pursue this matter *in forma pauperis*. Dkt. #1. The Honorable Michelle L. Peterson, United States Magistrate Judge, issued a Report and Recommendation advising the Court that Plaintiff's *in forma pauperis* application should be denied. Dkt. #2.

---

[3] "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana*, 447 F.3d at 1179 (quoting *Nixon*, 435 U.S. at 598).

ORDER – 6

Plaintiff subsequently paid the filing fee on September 18, 2019. At the same time, Plaintiff filed a Motion to Reconsider *In Forma Pauperis* Decision. Dkt. #9. The Court interprets that Motion as timely objections to the Report and Recommendation.

The Court has the discretion to grant *in forma pauperis* status, waiving the filing and certain other fees. 28 U.S.C. § 1915; *California Men's Colony v. Rowland*, 939 F.2d 854, 858 (9th Cir. 1991), *reversed on other grounds*, 506 U.S. 194 (1993) ("Section 1915 typically requires the reviewing court to exercise its sound discretion in determining whether the affiant has satisfied the statute's requirement of indigency."). To proceed *in forma pauperis*, "a party need not be completely destitute." *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339–40 (1948). It is sufficient that a party "cannot because of his poverty pay or give security for costs . . . and still be able to provide himself and dependents with the necessities of life." *Id.* at 339.

The Court cannot find that Plaintiff has satisfied the applicable standard here. Plaintiff's application indicates that her spouse earns a monthly net income of $4,800 and that they have approximately $100,000 of equity in their $350,000 home. Dkt. #1 at 1–2. Plaintiff objects that the filing fee is only a portion of the costs she will incur in pursuing her action, that she and her husband are $20,000 underwater on a second property, and that their expenses surpass their income. Dkt. #9. Plaintiff's arguments may tip the scales slightly, but not enough for the Court to find that Plaintiff approaches indigency. Plaintiff's request to proceed *in forma pauperis* is denied.

**D. Plaintiff's Motion to Appoint A Person to Serve Summons**

Plaintiff Motion to Reconsider *In Forma Pauperis* Decision was at least partly premised on the potential costs of service in this matter and Plaintiff requests, for much the same reasons and pursuant to Federal Rule of Civil Procedure 4, that the Court "appoint a person specifically charged and order [sic] to undertake the process of serving the summons on the Defendants."

ORDER – 7

Dkt. #10 at 1.  Federal Rule of Civil Procedure 4 provides that on a party's request, "the court may order that service be made by a United States marshal or deputy marshal or by a person specifically appointed by the court." FED. R. CIV. P. 4(c)(3).  If a plaintiff is proceeding *in forma pauperis*, "[t]he court must [] order" service. *Id.*; 28 U.S.C. § 1915(c).

Plaintiff advances several arguments in support of her request that the Court appoint a person to undertake service of process on her behalf.  Plaintiff indicates that four of the five Defendants reside in foreign countries and that she has mailed requests for waivers to each defendant but is not hopeful that they will be returned.[4]  Dkt. #3 at 4; Dkt. #10 at 1–2.  Thus, Plaintiff bases her motion on the anticipated upfront costs she will incur in properly serving foreign defendants pursuant to Hague Convention requirements, even if those costs are ultimately recoverable.  Dkt. #10 at 2 (estimating $950 to $1,190 and more if she adds additional defendants).  Further, Plaintiff expresses concern about her ability to accomplish timely service of the foreign defendants. *Id.* at 2–3.  Lastly, Plaintiff is aware that InnoGames has resisted and challenged service in an unrelated lawsuit and fears that InnoGames will be able to similarly challenge service in her case unless the Court grants assistance. *Id.* at 4.

Plaintiff has not established that her requested relief is appropriate here.  The Court first notes that Plaintiff has not been granted *in forma pauperis* status and that the Court therefore has discretion whether to assist with service.  Importantly, Plaintiff does not identify an individual that she wants appointed and instead asks the Court to identify and appoint "a person skilled and knowledgeable in International Process Serving."[5]  *Id.* at 5.  Plaintiff also did not know, at the time of filing, whether Defendants would respond to her requests for waiver of service.  Overall,

---

[4] The Court notes that there is a discrepancy between the date that Plaintiff asserts she completed mailing of requests for waiver of service and the date that she was issued summonses.

[5] Plaintiff does not establish that the U.S. Marshal is available to serve process internationally.

ORDER – 8

the Court is sympathetic to the difficulties and expenses associated with service in Plaintiff's case, but it is a case that Plaintiff has chosen to pursue. On this record, the Court does not find that the public should be forced to incur the costs of service in this case.

**E. Plaintiff's Request for Copies**

Finally, Plaintiff has filed a Request for Copy of Complaint and Other Documents; Request to Wait to Correct Errors in Filings. Dkt. #11. Plaintiff is not required to seek leave to receive copies of documents. Further, the Court believes that Plaintiff has appropriately coordinated with the Clerk of Court to obtain the documents requested. To the extent Plaintiff "asks the court to temporarily unseal" documents to allow her to obtain copies, that relief is no longer necessary considering the Court's resolution of Plaintiff's other motions.

Plaintiff also notes several errors in documents that she has filed in this action and seeks leave to "wait to correct these errors and any others found until a decision regarding her Motion to Proceed Under Pseudonym has been made." *Id.* at 2. Because the Court has concurrently resolved that Motion, Plaintiff need not wait to correct any errors and no relief is necessary. The Court will therefore deny the requests as moot.

## IV. CONCLUSION

Having reviewed Plaintiff's filings and the remainder of the record in this matter and for the reasons above, the Court finds and ORDERS:

1. The Court adopts the Report and Recommendation (Dkt. #2) and rejects Plaintiff's objections thereto (Dkt. #9). Plaintiff's Declaration and Application to Proceed *In Forma Pauperis* and Written Consent for Payment of Costs (Dkt. #1) is DENIED.

2. The Motion for Plaintiff to Proceed Under Pseudonym and For A Protective Order (Dkt. #5) is DENIED.

ORDER – 9

3. The Motion for Plaintiff to File Under Seal a True Name Affidavit, Complaint, Cover Sheet and IFP Declaration (Dkt. #6) and the Motion for Plaintiff to File Under Seal a Motion to Appoint a Person to Serve Summons and a Request for Reconsideration of IFP (Dkt. #8) are both DENIED.

    a. This case shall be UNSEALED BY THE CLERK.

    b. Plaintiff's Complaint for a Civil Case Alleging Negligence (Dkt. #3) and her Civil Coversheet (Dkt. #3-1) shall be UNSEALED BY THE CLERK.

    c. Plaintiff's Affidavit of True Name (Dkt. #7) shall be UNSEALED BY THE CLERK.

4. The Motion to Appoint a Person to Serve Summons (Dkt. #10) is DENIED.

5. The Request for Copy of Complaint and Other Documents; Request to Wait to Correct Errors in Filings (Dkt. #11) is DENIED as moot.

DATED this 13th day of November 2019.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER – 10

Court assumes familiarity with the facts as alleged in the operative complaint, and with the district court's opinion below. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm in part and reverse and remand in part so that Quinteros may be granted leave to amend her pleadings.

"We review the grant of a motion to dismiss de novo." *Kappouta v. Valiant Integrated Servs., LLC*, 60 F.4th 1213, 1216 (9th Cir. 2023). On a motion to dismiss, the Court considers the operative complaint and the documents attached to it, and we must accept well-pled allegations as true. *Koala v. Khosla*, 931 F.3d 887, 895 (9th Cir. 2019). The Court draws all reasonable inferences in plaintiff's favor, *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247–48 (9th Cir. 2013), and construes pro se pleadings liberally, *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).[1]

"[D]ismissal for failure to state a claim is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quotation omitted). Factual allegations, however, must

---

[1] While the Court construes pro se pleadings liberally, this grace "does not apply to practicing attorneys." *Huffman v. Lindgren*, 81 F.4th 1016, 1021 (9th Cir. 2023). Documents appended to the complaint indicate Quinteros was a law student when she filed this case. However, there is no evidence in the record indicating whether Quinteros is now an attorney, and we assume in this case that *Huffman* does not apply to law students. We leave it to the district court to determine whether *Huffman* applies to any future pleadings.

be plausible, and not merely speculative. *See DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 765 (9th Cir. 2018) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "Claims move beyond speculation when the allegations 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 972 (9th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

For the reasons explained below, the district court properly found Quinteros failed to state a claim as to all the claims raised in the complaint. However, for some claims, we affirm dismissal on different grounds.

1.     As an initial matter, the district court erred in concluding that the Communications Decency Act (CDA), specifically 47 U.S.C. § 230, immunizes Defendants from liability for Quinteros's negligence and defamation claims. Section 230 generally applies where a plaintiff seeks to treat (1) a provider of interactive computer services as (2) a publisher or speaker under a state law cause of action, of (3) information provided by a third party. *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019). Quinteros plausibly alleges that *Forge of Empires* moderators improperly accessed a sensitive image of hers, and

unlawfully disseminated that image.[2] These allegations do not treat Defendants as

publishers or speakers and therefore are not covered by the CDA.[3] Additionally,

§ 230 concerns only the actions of third parties. *Fair Hous. Council of San*

*Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008)

(en banc). Quinteros sufficiently alleges that moderators are not third parties within

the meaning of the CDA, but rather individuals with some unspecified agency

relationship to Defendants. Accordingly, the CDA does not immunize Defendants

from the alleged actions of moderators.

2.      Although we conclude that § 230 does not immunize Defendants, we affirm

the dismissal of Quinteros's negligence claims for different reasons. Quinteros

alleges a handful of negligence claims relating to Defendants' recruitment and

supervision of moderators. Quinteros sufficiently alleges that moderators are not

---

[2] The district court found that Quinteros's allegations that moderators improperly accessed her image were "fanciful" and therefore implausible. This finding, however, overlooked other factual allegations in the complaint, including allegations that: (1) Quinteros only sent the image to a single non-moderator, who confirmed he had not further distributed the image; (2) in two separate, detailed instances moderators had inappropriately accessed private information on the *Forge of Empires* platform. On a motion to dismiss, these allegations—combined with the pleading leniency afforded pro se plaintiffs—should have allowed the court to draw the reasonable inference that one or more moderators inappropriately accessed and disseminated Quinteros's image.

[3] Quinteros also appears to allege a violation of her privacy rights under Wash. Rev. Code § 9.73.030 based on these same allegations. Quinteros fails to state a claim under Washington law, however, because she does not allege that these violations occurred in Washington state, or at the behest of someone located in Washington state. *See State v. Fowler*, 139 P.3d 342, 347 (Wash. 2006).

third parties within the meaning of the CDA. However, she fails to allege specific facts that show the relationship between Defendants and moderators is sufficient to render Defendants vicariously liable for moderators' actions under Washington law. For instance, Quinteros does not allege facts that establish Defendants and moderators have an employer-employee relationship, which could give rise to vicarious liability under Washington law. *See Anderson v. Soap Lake Sch. Dist.*, 423 P.3d 197, 214 (Wash. 2018) (stating Washington imposes vicarious liability on an employer for the torts of an employee acting on the employer's behalf and within the scope of employment). And to the extent Quinteros alleges Defendants were negligent in their supervision of the moderators, she has not shown any of the defendants knew or should have known that moderators would pose a risk of danger to her. She does not plausibly allege, for instance, that Defendants were aware that similar messages had been intercepted in the past, or that Defendants had a reason to believe moderators would intercept such messages. Without more, Quinteros fails to state a claim for negligence.

3.      We also agree with the district court that Quinteros failed to state a claim for defamation. "The elements a plaintiff must establish in a defamation case are falsity, an unprivileged communication, fault, and damages." *Mohr v. Grant*, 108 P.3d 768, 773 (Wash. 2005). "Before the truth or falsity of an allegedly defamatory statement can be assessed, a plaintiff must prove that the words constituted a

5

statement of fact, not an opinion." *Robel v. Roundup Corp.*, 59 P.3d 611, 621 (Wash. 2002). Here, the district court properly found that the statements alleged in the complaint are not defamatory because they are not statements of fact. Read in context, these statements are nonactionable insults. *See id.* at 622 (undertaking a totality of circumstances test to conclude that "plainly abusive words not intended to be taken literally as statements of fact" such as "idiot" and "snitch" are not defamatory).

4.      Quinteros also fails to state a claim for negligent infliction of emotional distress. Washington courts allow claims for negligent infliction of emotional distress absent physical injury only where emotional distress is "within the scope of foreseeable harm of the negligent conduct." *Bylsma v. Burger King Corp.*, 293 P.3d 1168, 1170 (Wash. 2013). Because Quinteros fails to state a claim for negligent conduct, or plausibly allege any physical injury stemming directly from Defendants' conduct, she cannot state a claim for negligent infliction of emotional distress.

5.      Likewise, Quinteros fails to state a claim for intentional infliction of emotional distress. Such a claim requires showing conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Lyons v. U.S. Bank Nat'l Ass'n*, 336 P.3d 1142, 1151 (Wash. 2014);

*see also Kloepfel v. Bokor*, 66 P.3d 630, 632 (Wash. 2003) (outrageous conduct generally does not include "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities"). Here, Quinteros only alleges that Defendants inconsistently applied certain rules to her, helped her alleged harassers ban her from the game, and attempted to cover up the misconduct of moderators. None of these allegations rise to the level of outrageous conduct.

6.      The district court properly dismissed Quinteros's gender discrimination in public accommodations claim, which it construed as an alleged violation of Wash. Rev. Code § 49.60.215. To make a prima facie case of gender discrimination, Quinteros must show that her gender was a substantial factor causing the alleged discrimination. *See W.H. v. Olympia Sch. Dist.*, 465 P.3d 322, 325 (Wash. 2020). The district court correctly found Quinteros's allegations as to this claim were vague and conclusory.

7.      Quinteros also fails to meet the heightened pleading standards for fraud. *See* Fed. R. Civ. P. 9(b) (fraud must be pled "with particularity"); *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1145 (9th Cir. 2021) (stating particularity includes the "who, what, when, where, and how" including what is false and why); *see also Adams v. King Cnty.*, 192 P.3d 891, 902 (Wash. 2008) (outlining the nine elements for fraud under Washington law). Here, Quinteros's main allegation is that Defendants represented that game rules on the *Forge of Empires* platform would

7

98

be applied fairly when they were applied unfairly. However, she fails to allege with particularity what specific statements Defendants made to her, who made these statements, when, and how she was deceived.

8.     Quinteros fails to state a claim for unfair business practices under Washington's Consumer Protection Act (CPA), Wash. Rev. Code § 19.86.020. A private plaintiff bringing a CPA claim must show that their lawsuit would serve the public interest. *Michael v. Mosquera-Lacy*, 200 P.3d 695, 700 (Wash. 2009). Washington courts consider a number of factors to assess whether a claim concerns the public interest, including whether acts: (1) were carried out in the course of business, (2) were part of a pattern or generalized course of conduct, (3) were repeated prior to the involvement of the plaintiff, (4) created a "real and substantial potential for repetition," and (5) if the act is a single transaction, whether many consumers were affected. *Mason v. Mortg. Am., Inc.*, 792 P.2d 142, 148 (Wash. 1990); *see also Michael*, 200 P.3d at 700 (identifying similar factors). Applying the *Mason* factors to Quinteros's complaint, she fails to allege that her CPA claims concern the public interest.

9.     Quinteros fails to state a products liability claim based on a design defect. "The elements of proof for a design defect products liability claim require a showing of (1) a manufacturer's product (2) not reasonably safe as designed (3) causing harm to the plaintiff." *Pagnotta v. Beall Trailers of Oregon, Inc.*, 991 P.2d

8

728, 732 (Wash. Ct. App. 2000) (citing Wash. Rev. Code § 7.72.030(1)); *see also Ayers By & Through Ayers v. Johnson & Johnson Baby Prods. Co.*, 818 P.2d 1337, 1340 (Wash. 1991). Here, Quinteros conclusorily alleges that Defendants created an unsafe product that causes gaming addiction in its consumers. While she identifies certain features of *Forge of Empires* which she asserts are addictive and harmful, she fails to allege specific, factual allegations that are sufficient to show that the game was, as designed, unreasonably addictive. Consequently, the allegations fail to state the second element of the design defect claim.

10.    The district court properly dismissed Quinteros's breach of contract claim, finding Quinteros failed to plead a material breach that caused damages to her. "A breach of contract is actionable only if [1] the contract imposes a duty, [2] the duty is breached, and [3] the breach proximately causes damage to the claimant." *Nw. Indep. Forest Mfrs. v. Dep't of Lab. & Indus.*, 899 P.2d 6, 9 (Wash. Ct. App. 1995) (citing *Larson v. Union Inv. & Loan Co.*, 10 P.2d 557 (Wash. 1932)). "Washington courts have recognized that a party must be intended as a third-party beneficiary to benefit from a contract." *Minton v. Ralston Purina Co.*, 47 P.3d 556, 562 (Wash. 2002). Quinteros fails to plausibly allege the existence of a contract between her and Defendants, which imposed an obligation on Defendants to refrain from transmitting images or engaging in verbal harassment. Likewise, none of the allegations in the complaint represent that Quinteros is a third-party beneficiary of

an agreement between Defendants and other users.

11. Quinteros also fails to make a claim for promissory estoppel. To make out a promissory estoppel claim, a promise must be "clear and definite" and include "manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." *Washington Educ. Ass'n v. Washington Dep't of Ret. Sys.*, 332 P.3d 428, 435 (Wash. 2014) (citations and quotations omitted). Quinteros fails to allege a clear and definite promise. She alleges only that she "relied on [unspecified] statements of fairness" for her promissory estoppel claims.

12. The district court also properly dismissed Quinteros's copyright infringement claim. Quinteros alleges the copyright violation here took place *before* she registered the photograph in question with the U.S. Copyright Office. However, Quinteros "is entitled to statutory damages and attorneys' fees only to the extent infringement occurred after the work was registered." *Enter. Mgmt. Ltd., Inc. v. Construx Software Builders, Inc.*, 73 F.4th 1048, 1056 n.6 (9th Cir. 2023) (citing 17 U.S.C. § 412). Because Quinteros fails to allege any other damages arising from the alleged copyright infringement with any specificity, this claim was properly dismissed.

13. Quinteros's gender discrimination in employment claim fails because it simply recites the elements of a cause of action, and fails to contain "sufficient

10

allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Specifically, Quinteros merely asserts "[u]pon information and belief, the reason [she] was not hired [was] because she was a woman[.]" Quinteros alleges no underlying facts to support this bald assertion, and without more, she does not elevate her claim from the speculative to the plausible.

14. Finally, we conclude that the district court abused its discretion in denying Quinteros, a pro se plaintiff, leave to amend. Even where a plaintiff fails to state a claim, district courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). This rule is liberally applied for pro se litigants. *Watison v. Carter*, 668 F.3d 1108, 1117 (9th Cir. 2012). A district court's denial of leave to amend is reviewed for abuse of discretion, and a "court abuses its discretion by denying leave to amend unless amendment would be futile or the plaintiff has failed to cure the complaint's deficiencies despite repeated opportunities." *Garmon v. Cnty. of Los Angeles*, 828 F.3d 837, 842 (9th Cir. 2016). Here, amendment would not be futile. Quinteros could plead additional facts to cure the various deficiencies identified above. And under the liberal standard we apply to pro se litigants, Quinteros should be given more than one opportunity to cure the deficiencies in her pleading.

**AFFIRMED IN PART, REVERSED AND REMANDED IN PART.**

11

FILED

*Quinteros v. InnoGames*, No. 22-35333

JAN 8 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

BENNETT, Circuit Judge, dissenting in part:

I respectfully dissent from the majority's holding that the district court abused its discretion in denying Quinteros leave to amend her complaint a second time. Even with a liberal policy favoring amendment for pro se litigants,[1] "[a] district court acts within its discretion to deny leave to amend when amendment would be futile." *Chappel v. Lab'y Corp. of Am.*, 232 F.3d 719, 725-26 (9th Cir. 2000); *see also Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir.), *amended,* 856 F.2d 111 (9th Cir. 1988) ("If the district court determines that the 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency,' then the dismissal without leave to amend is proper." (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986))).

The majority states without elaboration that "Quinteros could plead additional facts to cure the various deficiencies identified above." Mem. at 11. But I don't know what possible additional facts Quinteros could plausibly allege to cure the significant (and to me incurable) deficiencies in her complaint, and the majority identifies none. And neither in the district court, nor on appeal, has Quinteros identified any such facts.

---

[1] Quinteros, a law student while this case was pending in district court, is now a licensed attorney.

103

Plus, here, Quinteros has already been afforded the opportunity to amend her complaint. "[W]hen a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is 'particularly broad.'" *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (quoting *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 879 (9th Cir. 1999)); *Godwin v. Christianson*, 594 F. App'x 427, 428 (9th Cir. 2015) (applying this rule to a pro se prisoner); *Snyder v. Allison*, F. App'x 329, 330 (9th Cir. 2021) (same).

I believe the district court did not abuse its discretion in denying Quinteros a second opportunity to amend her complaint, and thus I respectfully dissent from that portion of the majority's disposition.