**Case No. 24-6332**

---

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

---

Penny Quinteros,
*Plaintiff-Appellant, (pro se)*

v.

InnoGames, Hendrick Klindworth, Michael Zillmer,
Julie Blan, and Richard Stephenson,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Western District of Washington
No. 19-cv-1402 - RSM
The Honorable Ricardo S. Martinez

---

### EXCERPT OF RECORD[1]

**VOLUME 2**
**(Complaints and Filings)**

---

Penny Quinteros, Esq.
19338 133rd PL SE
Renton, WA 98058
206-661-8292
253-854-2788

*Pro Se*

---

[1] Please note, appellant is proceeding *pro se*, and under FRAP 30-1.3 is not required to submit an excerpt. Appellant has chosen to do so, but has omitted Exhibit 10, District Court Docket #54 as it is 1495 pages and would be cost-prohibitive to print.

**Third Amended Complaint – Docket 107-2**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

Penny Quinteros _____

_____,

                    Plaintiff(s),

        v.

InnoGames, Hendrik Klindworth,

Michael Zillmer, Julie (Jill) Blan,

Richard Stephenson_____

,

                    Defendant(s).

CASE NO. C19-1402 RSM

THIRD AMENDED COMPLAINT
FOR A CIVIL CASE

(28 U.S.C. § 1332; Diversity of
Citizenship AND 28 U.S.C § 1331;
Federal Question)

Jury Trial: No

_____

## Table of Contents

I.    PRELIMINARY STATEMENT ................................................................................. 2
II.   PROCEDURAL FACTS ......................................................................................... 4
III.  BASIS FOR JURISDICTION ................................................................................. 5
   A.   Diversity of Citizenship .................................................................................. 5
   B.   The Amount In Controversy ........................................................................... 5
   C.   Federal Question .............................................................................................. 6
   D.   Personal Jurisdiction ....................................................................................... 6
IV.  VENUE .................................................................................................................. 10
V.   THE PARTIES TO THIS COMPLAINT ............................................................... 11
   A.   Plaintiff ........................................................................................................... 11

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-1

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

B.    Defendants ........................................................................................ 11
VI.   BACKGROUND FACTS ........................................................................... 14
VII.  LEGAL CLAIMS ...................................................................................... 23
      A.    Negligence, Gross Negligence ..................................................... 23
      B.    Invasion of Privacy by Publication ............................................. 30
      C.    Defamation/Libel/Slander ........................................................... 31
      D.    Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress 34
      E.    Gender Discrimination in Public Accommodation ....................... 37
      F.    Fraud, Misrepresentation/Deceit, Unfair and Deceptive Trade Practices ....................... 39
      G.    Product Liability – InnoGames created an unsafe and dangerous product by producing the game *Forge of Empires.* ............................................................. 47
      H.    Breach of Contract, Third-Party Breach of Contract, Promissory Estoppel .................... 52
      I.    Copyright Infringement ............................................................... 59
      J.    Intercepting Electronic Communications: State and Federal Claims ............................... 61
      K.    Intimate Image Dissemination .................................................... 63
VIII. PRAYER FOR RELIEF ........................................................................... 65

Plaintiff, Penny Quinteros, proceeding *pro se*, for her Complaint against Defendants InnoGames, Hendrik Klindworth, Michael Zillmer, Julie (Jill) Blan, and Richard Stephenson, on knowledge as to their own actions, and otherwise upon information and belief, as follows:

## I.    PRELIMINARY STATEMENT

1. This case is about intentional intimate image theft and publication of that image by an employee of the gaming company, InnoGames, for the purpose of targeting plaintiff, a female customer of the game, for sexual harassment.

It is also about an internet gaming company that unscrupulously exploits its players for profit including advertising that the female employees are sexual playthings and encouraging males to commit crimes against the female players.

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-2

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

Further, InnoGames, through its game Forge of Empires, uses a "freemium" game-model in which the game earns revenue by encouraging as many players as possible to play, and the company relies on the known, and purposeful addictive nature of the game to generate revenue from the small percentage of players who become addicted.

Forge of Empires' target audience is the male demographic, and to encourage male players to join, the company solicits players with pornographic ads offering women players for "aggressive sex." InnoGames created a system of rules that are ambiguous and enforced arbitrarily and capriciously by player-moderators and Community Managers. Both the player-moderators and Community Managers are employees of InnoGames.

These rules allow Forge of Empires players and InnoGames staff members to conspire civilly and collusively intermingle their behavior to target players in order to disrupt their player's valuable accounts and remove female players from the game. The plaintiff was sexually harassed and targeted for removal by players with the active help and affirmative actions of InnoGames' staff members because of her gender and in order to appease the valuable male-demographic.

InnoGames defrauds players through false promises in their Terms and Conditions and Player Rules that the company will not accept certain forms of actions from the players, that the game and the rules are fair.  Plaintiff relied on these promises in order to spend more than $9,000 on the video game.

InnoGames creates an unsafe product through addicting psychological techniques, fails to warn women about the dangerous environment created by their reckless

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-3

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

pornographic solicitations, and allows their own employees to improperly access, steal, and publish intimate images to facilitate sexual harassment of women in the game.

2. Plaintiff's complaint can be generalized in three categories of legal action: torts claims, contract claims, and statutory violation claims.

3. Plaintiff seeks $1,205,000.00 in specified damages and unspecified damages as follows: $180,000 for loss of income due to an unsafe product; $500,000 for defamation claims and loss of reputation; $500,000 for emotional and physical suffering; and $9,000 for fraud plus $16,000 under Washington State Consumer Protection laws (triple damages provision); unspecified statutory or actual damages for copyright infringement; statutory damages as allowed; statutory and actual damages for intercepting electronic communications and intimate image disclosure; unspecified punitive damages; and unspecified interest and costs as allowable.

## II. PROCEDURAL FACTS

4. Plaintiff filed initial complaint on Sept. 03, 2020, and complaint was dismissed as to Defendant Julie Blan on July 01, 2020. Plaintiff was given leave to refile within 30 days of dismissal. Plaintiffs InnoGames, Hendrik Klindworth, Michael Zillmer, and Richard Stephenson filed a motion to dismiss on July 27, 2020.

5. Plaintiff's amended complaint was dismissed on March 28, 2022, for failure to state a claim. Plaintiff appealed and the ruling was reversed on January 08, 2024. This second amended complaint follows.

6. Because Plaintiff's First Amended Complaint was almost entirely rewritten, Plaintiff is identifying EXACT ORIGINAL language via underlining. Language added in the Second Amended Complaint is identified in red.

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-4

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

## III.    BASIS FOR JURISDICTION

**A.    Diversity of Citizenship**

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 (a) (1-2), in that this is a case in which a citizen of one State sues a citizen of another State and citizens of a Foreign State and the amount at stake is more than $75,000 exclusive of interest and costs. It is therefore proper to be heard in federal court. Jurisdiction is proper in this case because the plaintiff is a citizen of the State of Washington, United States. The defendant Julie (Jill) Blan is a citizen of the State of Georgia, United States. The defendants Hendrik Klindworth and Michael Zillmer are citizens of Germany. The defendant Richard Stephenson is a citizen of the United Kingdom residing in Germany. The defendant InnoGames is incorporated under the laws of the foreign nation of Germany and has its principal place of business in Hamburg, Germany.

**B.    The Amount In Controversy**

8.  The complaint exceeds the amount in controversy because the amount at stake is more than $75,000 not counting interest and court costs. The complaint seeks a prayer for relief as follows: Loss of Income $180,000; Loss of Reputation $500,000 ; Physical and Emotional Pain and suffering $500,000; Defrauded amount $9,000 plus $16,000 of triple damages under Washington State Consumer protection laws. The complaint also seeks statutory maximum damages for copyright infringement and statutory damages for privacy violations and intimate image distribution as well statutory and actual damages for interception of an electronic communication and intimate image distribution, punitive damages, court costs, and interest.

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-5

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

## C.    Federal Question

9.    Under 28 U.S.C. § 1338, a case that involves a copyright is proper to be heard in federal court. This case involves a question under Title 17 of the United States Code involving infringement of copyright because the defendants InnoGames, Hendrik Klindworth, Michael Zillmer, Julie (Jill) Blan, and Richard Stephenson engaged in direct, contributory, and vicarious copyright infringement. They knew transmission of my copyrighted photograph was occurring on the website game Forge of Empires and they had the ability to prevent its transmission. Julie Blan, on behalf of InnoGames and it's executive officers Michael Zillmer and Hendrik Klindworth,  materially contributed to the infringing conduct by either directly or allowing a moderator under their (Blan, Zillmer, and Klindworth's) supervision to give a link of the photograph to players for the initial transmission or alternatively they profited from the transmission of the photo by increased micro-transaction sales and declined to exercise a right to stop or limit it.

10.    Under 28 U.S.C. § 1331, a case that involves a federal question is proper to be heard in federal court. This case involves violation of 18 U.S.C. § 2511 otherwise known as the Electronic Communications Privacy Act. A federal law that provides a civil right of action for violation. This case also involves a federal civil right of action under 15 U.S.C. § 6851 which allows for a civil remedy for intimate image disclosure.

## D.    Personal Jurisdiction

11.    Personal jurisdiction is appropriate in this case because InnoGames, Hendrik Klindworth, Michael Zillmer, Julie (Jill) Blan, Richard Stephenson intentionally reached out to and solicited from the plaintiff and others in Washington State to conduct business through the internet games including *Forge of Empires*. This business involved entering into contracts

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-6

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

with the plaintiff, receiving payments from the defendant for services and repeatedly and knowingly transmitting communications and computer data over internet computer networks to the plaintiff while she was in Washington State. Washington State's long-arm provision allows the assertion of jurisdiction over persons who transact business within the state or commit a tort within the state. Wash. Rev. Code § 4.28.185(1)(a-b) (2011). Due process requires, "in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Specifically, this complaint alleges the following intentional minimal contacts from the defendants with the plaintiff necessary to sustain specific personal jurisdiction:

    a.  Based on knowledge and belief, Plaintiff was solicited while in Washington to play *Forge of Empires* by InnoGames and through Hendrik Klindworth and Michael Zillmer. Plaintiff did not seek out *Forge of Empires'* website independently, but instead received an advertisement directly emailed to her while she was a resident of Washington soliciting her to come assist the game-developers with the beta-phase (pre-public-access) stage of the game. This is how Plaintiff came to play *Forge of Empires*. Hendrik Klindworth and Michael Zillmer on behalf of InnoGames knew, or should have known, that their company and employees under their direction and supervision were soliciting players for their beta-phase game play and these solicitations were sent to people including some to Washington State.

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-7

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

b. Plaintiff has received hundreds of solicitation emails, hundreds of targeted advertisements specifically via Facebook, MSN, and other services as have other Washington State residents encouraging her and others in Washington to play *Forge of Empires*. Other Washington State residents plaintiff is acquainted with have received such solicitations as well. Plaintiff has watched Forge of Empires advertisements targeted to the Washington market on her local television stations. These represent affirmative actions where InnoGames, with the sanction of Hendrik Klindworth and Michael Zillmer knowingly reached out to the State of Washington and the Plaintiff.

c. InnoGames solicited payments from the Plaintiff using AmazonPay services. As is a well-known fact, Amazon is a Washington State company headquartered in Seattle, Washington. This was an intentional act from InnoGames to reach out to Washington State and some of the transactions InnoGames had with plaintiff occurred via this payment method. InnoGames continues to maintain this form of bank account in Washington state. Hendrik Klindworth and Michael Zillmer as CEO and COO likely own portions of the value of this account as well through stock.

d. Plaintiff notified defendants InnoGames, Julie Blan, Hendrik Klindworth and Michael Zillmer that she was a citizen of Washington State via email correspondence in the spring of 2017 between Plaintiff, Julie Blan and Bartlomiej Wawro (an InnoGames employee). Plaintiff notified these

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-8

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

employees that she had filed a complaint with the German Federal Anti-Discrimination Agency (Antidiskriminierungsstelle). As part of that complaint and via the email conversation, Plaintiff was required to identify her residence and citizenship status. This complaint was responded to by legal-staff of InnoGames (presumably under the supervision of the CEO and COO) yet the defendants listed continued to solicit Plaintiff for business, encourage her to purchase their services, contact her for harassment.

e. Plaintiff sent an electronic copy of her Washington State Driver's License to the "Co-Community Manager" referred to as "Sgt. Bothari" via an InnoGames support ticket on June 21, 2017 when he questioned whether her "true name" was indeed "Penny." Julie Blan's responsibility was to supervise and job-share responsibilities this employee as his "Co-Community Manager" at that time. This license was referenced at least four times in conversation with Julie Blan. Despite this notice, she continued to facilitate business transactions, continued in her harassment, and performed the other affirmative actions as listed in the below complaint.

f. Plaintiff sent in a statement via Forge of Empires Support Tickets that she was a citizen of Washington State and she believed the actions taken by InnoGames staff and moderators were illegal based upon the laws of her state. Both Julie Blan and Richard Stephenson stated that they had read these "legal claims," by denying they were responsible for the matter. Yet

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-9

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

these two defendants continued to reach-out to plaintiff to facilitate business transactions, harass plaintiff, and perform the other actions as listed below in the complaint.

g.   Based upon information and belief, Plaintiff alleges that InnoGames uses "cookies" "ISP-locator-services" and other technological tools to identify where players are playing from and to solicit a target market's players (such as players in Washington State) for future business. Plaintiff believes all defendants have the ability to access this information and that specifically Julie Blan has reviewed it as early as June 2016.

12. If the court finds that general jurisdiction does not exist, personal jurisdiction is also appropriate under Federal Rule of Civil Procedure 4(k)(2) to the defendants InnoGames, Hendrik Klindworth, Michael Zillmer, and Richard Stephenson because they are foreign-based defendants not subject to general jurisdiction in any state's courts, the case is about copyright infringement, as well as a violation of federal privacy law 18 U.S.C. § 2511 otherwise known as the Electronic Communications Privacy Act, and 15 U.S.C. § 6851 for a federal civil right of action for intimate image disclosure. All raise federal question, and exercising jurisdiction is consistent with U.S. law.

**IV.    VENUE**

13. Under 28 U.S.C. § 1391, venue is appropriate in this case because a substantial part of the events giving rise to the action occurred in Washington State. Plaintiff played the game almost exclusively from Washington State and the communications with the defendants occurred while plaintiff was in Washington State. Furthermore, as described above, all of the defendants are subject to personal jurisdiction in Washington.

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT-*10

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

## V.    THE PARTIES TO THIS COMPLAINT

**A.    Plaintiff**

14. Penny Quinteros, also known as "TwoCents," is an individual who resides at 19338 133rd PL SE, Renton, Washington. Her telephone numbers are 206-661-8292 or 253-854-2788. Plaintiff is a citizen of Washington. Plaintiff is a 42-year-old married woman with two children. Plaintiff is a licensed attorney in Washington State, and is currently proceeding *pro se*.

**B.    Defendants**[1]

15. Upon information and belief, Defendant InnoGames. GmbH is a limited liability public company of Germany. Its principal place of business is Friesenstraße 13, 20097 Hamburg, Germany. Its telephone number is +49-40-788-9335-0. InnoGames is a $500 million a year revenue company specializing in "freemium" games available to access via internet browser or mobile app. One of the games produced by InnoGames is *Forge of Empires*. InnoGames solicits customers world-wide and focuses on the lucrative United States market. ("Freemium" refers to games that provide basic content for free, but entice players to purchase and spend in-game currency in order to have access to premium game features and content, advance faster, and generally allow easier game-play.)

16. Upon information and belief, Defendant Hendrik Klindworth is an individual who resides in Hamburg, Germany and is a citizen of Germany. His business address is Friesenstraße 13, 20097 Hamburg, Germany. His telephone number is +49-40-7889335-0. He is the

---

[1] All Defendants are represented by Diana Siri Breax of SUMMIT LAW GROUP, PLLC 315 Fifth Ave S. Suite 1000, Seattle, WA 98104 AND Alan Behr (admitted Pro Hac Vice) and Elizabeth Adinolfi (admitted Pro Hac Vice) of PHILLIPS NIZER LLP 485 Lexington Avenue, New York NY 10017.

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-11

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

Chief Executive Officer of InnoGames and a co-founder of the company. In his position as an executive officer he oversees all actions of InnoGames including its staff, advertising, design, products, distribution and customer relations.

17. Upon information and belief, Defendant Michael Zillmer is an individual who resides in Hamburg, Germany and is a citizen of Germany. His business address is Friesenstraße 13, 20097 Hamburg, Germany. His telephone number is +49-40-7889335-0. He is the Chief Operating Officer of InnoGames and a co-founder of the company. In his position as an executive officer he oversees all actions of InnoGames including its staff, advertising, design, products, distribution and customer relations.

18. Upon information and belief, Defendant Julie (Jill) Blan is an individual who resides in and is a citizen of Georgia, United States. Her address is 22 Bollen Rd, Rockmart, GA 30153. At the time of the events she was the United States Community Manager for InnoGames' game *Forge of Empires*. She managed all interaction with players from the U.S., acting as the highest-level of interaction with the company that the over 1 million U.S. Players could achieve effectively acting as a "stone-wall" between players in the United States and InnoGames staff members in Germany. She was responsible for ensuring that InnoGames' moderators and she met the legal requirements for privacy-disclosures and access to confidential records. Her primary interaction with players was through "Support Tickets" and her supervising and monitoring the game forum. She has communicated via electronic message on Jan 17, 2017 "I am the Community Manager. I am responsible for all issues related to the game, players, and moderators." On Jan. 24, 2019 she stated, "I am the Community Manager of the U.S. server and an InnoGames employee. As such, all aspects of the game, rules, players and moderators are my

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-12

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

responsibility." On Nov. 28, 2016 she wrote, "You can write to Innogames… however you will be directed back to me as I am the Community Manager for the U.S. server and responsible for the game on this server." The Community Management of the U.S. server is responsible for being the final arbiter of any rules disputes as well as fairly enforcing the rules to create a fun and fair environment. She was responsible for enforcing and managing the Terms & Conditions. In addition as the U.S. Community Manager, Julie Blan directed and supervised all moderators' activities for the US server. She interacted with other moderators and other Community Managers (nationally and internationally based) via a proprietary chat-system for InnoGames staff members, as well as Skype and email, coordinating activities and discussing players and their punishments. She was generally responsible for the game on the U.S. server including monitoring for cheating, reporting game-bugs, modifying the system to censor profane language, and transmitting design ideas to the game-designers to facilitate changes in the game.  Julie Blan also plays the game Forge of Empires with at least one secret account.  She uses this account to mock and harass players of the game.

19. Upon information and belief, defendant <u>Richard Stephenson</u>, is a citizen of the United Kingdom currently residing in Germany. His business address is His business address is Friesenstraße 13, 20097 Hamburg, Germany. His telephone number is +49-40-7889335-0. He is the <u>International Community Manager</u> of <u>InnoGames</u> for *Forge of Empires*. He also served as assistance to Julie Blan in her role as Community Manager for the US server. As such he had responsibility similar to Julie Blan's to monitor the game, players and supervise the moderators. He interacted with other moderators and Community Managers via a proprietary chat-system for InnoGames staff members, as well as Skype and email,

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-13

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

coordinating activities and discussing players and their punishment. He was responsible for ensuring InnoGames moderators and he met the legal requirements for privacy-disclosure and access to confidential records.

## VI.    BACKGROUND FACTS

20. Plaintiff repeats and realleges paragraphs 1 through 19 hereof, as if fully set forth herein.

21. Upon information and belief, Plaintiff states that she began playing the browser-based game *Forge of Empires* in its pre-public-access beta-phase stage of development sometime in 2011 or 2012.  In 2011 or 2012 the plaintiff registered for a *Forge of Empires* account with the player name "TwoCents."

22. *Forge of Empires* is designed, produced and managed by InnoGames. It is a game available to access via internet browser or mobile app. It is designed so that you build a "city" starting in the Stone Age and progressing through quasi-historical eras. As a part of the game-play players need to communicate and rely on social interactions in order to proceed. One major form of social interaction is encouraging players to group into "guilds." Another form of communication is "global chat" and a separate "message system." Further players assist each other with "support actions" such as "aiding" friend's cities or trading in-game goods in a marketplace. Players also compete via various methods including guild-versus-guild fighting and compete for personal or guild ranking. *Forge of Empires* is free to play but puts specific obstacles in place to free-play such as limiting premium items to in-game currency and giving incentives towards advancement for in-game currency purchases. The in-game currency is termed "diamonds," and is purchased through the game using various methods such as AmazonPay, Paypal, or a

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-14

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

direct credit-card purchase. *Forge of Empires* is designed to promote excessive game-play by penalizing infrequent play. This occurs in instances such as making your city's resources produce more goods if you log in more frequently and providing "special event" buildings that can only be obtained through daily play or diamond purchases, and being unable to complete certain features (such as settlements) without consistent (generally every 4-hour) gameplay. Further the game resets the guild-versus-guild fighting area every day at 8pm EST in order to encourage players to come fight or lose their prior time/troop/money investments. The game also encourages frequent gameplay by having to manually click all items in the game without the use of bots or macros which are against the game rules.

23. InnoGames "moderators" are employees.  There is a hierarchy system in place creating "moderators," "senior moderators" and "community manager" titles. Each level of hierarchy has more supervisory authority over the level below it. All of these roles are advertised with job announcements to the community of players. The job-applicant then submits a written application and resume.  There is a competitive hiring and interview process.  After hiring, the moderators, senior moderators, and community managers sign hiring and confidentiality documents before they are permitted access to InnoGames' systems and moderation tools.  After access is given, the moderators are trained on these proprietary tools and computer systems.  The moderators, senior moderators, and community managers respond to various customer service complaints submitted by customers by way of "Support Tickets," or emails.  The moderators, senior moderators, and community managers handle issues such as password recovery, technical support, billing disputes, reports of cheating, game glitches and bugs, general game-play

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-15

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

instruction, and breach of rule complaints.  The specific types of support tickets handled by each individual moderator, senior moderator, or community manager are assigned by InnoGames and the moderators, senior moderators, and community managers must answer the tickets assigned to them.  The moderators and senior moderators generally work part-time and are required to put in a minimum number of hours each week answering support tickets.  They use only InnoGames developed computer software tools to do this work, and they must log-in before beginning work. The community managers work either full-time or part-time.  The moderators and senior moderators are compensated with in-game currency. The community managers are paid with the currency of their country.  There are no "customer service" agents at InnoGames, instead the customer service role of a major company is given the title "moderator" "senior moderator" or "community manager." There is no distinction between these roles and a remote customer service role at another type of company except for the form of payment.

24. Plaintiff is unaware of any terms and conditions agreed to by "clickwrap" agreement at this time, when she began playing *Forge of Empires*, but believes there were none, or they were different than they are now. However Plaintiff did read the Terms and Conditions, the Privacy Policy, The Game Rules, and the InnoGames Website statements of fairness upon her first "in-game warning" occurring approximately July 13, 2016. Plaintiff perused the Terms and Conditions and Privacy Policy, but read the game rules well as well as the Website.

25. Plaintiff played the game for some time, then left and returned in or around 2016 with the same player name.

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-16

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

26. At that time the plaintiff does not believe she agreed to any new terms and conditions but she remembers a pop-up blocking her re-entry into the game. Plaintiff is unsure if she clicked "accept" on the pop-up Terms and Conditions, but she remembers opening the Terms and Conditions and believes she likely closed the game-window and when she reentered the pop-up was gone.

27. Other players have agreed to the Terms and Conditions and still other players are able to access the game without clicking "accept" on the Terms and Conditions. For a time, players who started the game via mobile-app were only asked by InnoGames to agree to the Privacy Policy and the Terms and Conditions were not visible to these players.

28. Plaintiff played *Forge of Empires* almost every day without interruption from 2016-2019 for over 10,000 hours of game play.

29. During the course of this time and unbeknownst to the plaintiff, *Forge of Empires* was contracting with third-party advertisers who solicited mostly male players into the game with pornographic advertisements that illegally mislead the public using language such as: "brutal sex" or "aggressive sex" would occur in the game, and "Most of the characters in this game are sexually attractive females who display sexually explicit behavior." These statements were accompanied by nude or nearly nude females. At the same time, InnoGames through its written *Forge of Empires* rules and by proxy Hendrik Klindworth and Michael Zillmer who were responsible to supervise the rules-development and Terms and Conditions made statements that "InnoGames does not accept any publications that the Forge of Empires Team considers illegal, insulting, offensive, threatening, abusive, real-life aggressive, sexually explicit, pornographic (including but not limited to drawings and animations), profanity, politically extreme, religiously fanatic, endangering youth,

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-17

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

racist, playing down the use of illegal drugs and alcohol, or promoting the use of said substances or in any way inappropriate. Posting links to such content is also not allowed." From the Forge of Empires Game Rules, and "following the rules creates a fun and fair environment for everyone." Julie Blan, Richard Stephenson used and enforced these rules often referring to them with hyperlinks and other unnamed moderators under their supervision made statements making assertions to the plaintiff that the game was "family friendly."

30. Upon information and belief, there is evidence that at least some of the community, who sexually harassed Plaintiff, was formed by players responding to these advertisements.

31. Plaintiff was unaware of these advertisements and if she had known she either would've chosen not to play the game, or to play with much more caution. Plaintiff further relied on the explicit statements that "InnoGames does not accept … illegal, insulting, offensive… [or] sexually explicit" materials to play the game and make purchases. Defendants knew these statements were false and that InnoGames repeatedly accepted, and even produced, such materials.

32. Upon information and belief, InnoGames, Hendrik Klindworth, Michael Zillmer, Julie Blan and Richard Stephenson were aware of these advertisements or at least had notice of them through player reports on the game forums as early as 2015 and continuing through 2019. It was specifically the jobs of Julie Blan and Richard Stephenson to monitor these forums and report concerning information to InnoGames. Hendrik Klindworth and Michael Zillmer had knowledge of these advertisements because the Terms and Conditions for all of InnoGames' products was changed at some point during Plaintiff's game-play to include a phrase expressly distancing InnoGames from, "the content of all

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-18

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

<u>110</u>

websites that contain direct or indirect references (so-called "links") to our products…" (Terms and Conditions Art 15.8). It is logical to assume that some of the pornographic advertisements were the content that InnoGames sought to distance itself from and that the CEO and COO should be aware of changes to the entire company's Terms and Conditions.

33. Upon information and belief, in or around July 2016, the plaintiff began to be harassed by other players and she was harassed directly by players who were secretly InnoGames moderators, senior moderators, and community managers regarding her gender. Other players, and moderators themselves supervised by Julie Blan and Richard Stephenson made statements such as "you're not actually a woman, you're just faking it [paraphrasing]." These players and staff members accused the defendant of actually being a man and started to solicit the plaintiff's friends and co-players to no longer engage with her socially or for game activities. They used the specialized, interactive game features, such as "guild-versus-guild" and "friends-list" as tools to harass Plaintiff. These other players, and secret InnoGames staff moderators, told the plaintiff that she had to prove she was a woman by sending a photograph of her breasts to them. They told her this was the only way they would stop harassing her. The plaintiff fell victim to this manipulation, and relying on statements from InnoGames and Julie Blan that the game was fun, fair, and the rules were enforced equally, sent a picture of her breasts (in a somewhat see-thru bra) to what she considered a friend and neutral third-party player, known as Gensmoky, via a screenshot link.

34. Plaintiff states upon information and belief, that an InnoGames moderator accessed this screenshot link through a private InnoGame feature known as the "report" system when

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-19

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

111

this Third-Party reported the "whisper" that it was sent in. This unknown moderator then released this private and copyrighted photograph to other players in the game. It was specifically Julie Blan's job to supervise these moderators to ensure acts like this data-breach did not take place. Instead of supervising and properly dealing with the incident, she instead hid the information from Plaintiff, lied to the Plaintiff about it, and covered up the fact by making up derogatory statements about Plaintiff to repeat to the other player-moderators and Community Mangers via a proprietary InnoGames system known as "InnoChat," Skype and email. Julie Blan also attempted to cover up the malfeasance of her staff by using the "ban" feature in the game to target Plaintiff.

35. Plaintiff did not send the photograph to anyone other than the neutral third-party player, Gensmoky, who had no motive or reason to transmit the photo and who also apologized to the Plaintiff for believing incorrect information. Plaintiff has communicated with Gensmoky who insists he did not transmit the photograph to anyone. Plaintiff believes this is a credible statement. Plaintiff does not have GenSmoky's contact information, except for his Discord account, however, believes upon discovery it could be obtained from InnoGames servers.

36. Upon information and belief, InnoGame moderators have a history of accessing private report information for their own personal benefit and reasons and transmitting this information to other players. This has occurred on at least two other occasions. One was where a game-moderator leaked confidential information about the name of the account Plaintiff's minor son was playing on to unfriendly players. This allowed them to identify that he was a minor child, remove him from the guild he was playing in, and taunt him in global chat. Another instance was one in which a moderator, who had a grudge against

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-20

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

Plaintiff and her friend Aprusfire, accessed Aprusfire's data report indicating that he was appealing his permanent ban and released it to unrelated players. This demonstrates a pattern of behavior in which moderators accessed confidential information to target Plaintiff and her friends. There is further evidence that this system of moderator-player bias has occurred on other InnoGames such as *Tribal Wars* against a player by the name of Chase Xander, living in New Mexico.

37. Moderators further have in-game agendas. Since they are both players and InnoGame staff members, they form the same alliances, enemies, grudges etc. that other players have. At least 3 known current or former moderators have had a grudge against Plaintiff for her in-game activities in guild-versus-guild and global chat. Some moderators have targeted the Plaintiff <u>because she doesn't display 'typical female' behavior.'</u> Another moderator who went by the player-name of burrito77 engaged in a conversation in the "global chat" wherein he was mocking plaintiff while the discussion-participants were threatening to kill Plaintiff by shooting her long-distance. Burrito77 also made offensive remarks about Plaintiff while he was playing in the same guild as Plaintiff shortly after the intimate image theft. Burrito77 was in a rival guild at the time my photograph was stolen by a moderator, and was in the same guild with the person who attempted to extort my photograph and was the first known person to say he had seen it.

38. Moderators generally cannot moderate any world they have an account on, however, moderators can secretly create more than one account (alternate or "alt") accounts like any other player. Additionally they can be friends across world with players on a world they are moderating on. They are allowed to respond to rule violations reported by players on a

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-21

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

"gut instinct" level to see if something feels offensive, allowing for a lot of bias, arbitrariness, and capriciousness on rule enforcement.

39. A barrage of other players then proceeded to obtain the photo as evidenced by their descriptions of it, and statements that they had seen it. They openly laugh at and harass the plaintiff using statements such as, "what you are is a dumb sluuuuut,""butthurt dumb ****biotch," and "Inno won't ban 2C [TwoCents] because she keeps sending them photos." This offensive language was directed at the plaintiff repeatedly and consistently from 2016-2019. The plaintiff reported the photograph and its transmission to InnoGames in or around August of 2016 and again in November of 2016. Plaintiff also specifically informed Julie Blan that it had been a moderator who had leaked the photograph to the players. Despite the fact that it [the photograph] was still being transmitted amongst players, Platiff was told by InnoGames , specifically by Julie Blan and moderators under her supervision, that nothing could be done about it even though it is a direct violation of InnoGames Terms and Conditions.

40. Julie Blan in her role as Community Manager facilitated, encouraged and supported the harassment of Plaintiff. She encouraged other players to "report" Plaintiff even if transgressions were minor or non-existent. She allowed InnoGames to be used as a tool of harassment by allowing a mob of players to repeatedly use its report function that it set up and designed to harass Plaintiff in order to deny her access to the game. At the same time Julie Blan stated on several occasions that she would take action to stop the harassment of Plaintiff. The game moderators and community manager were lax in their punishment of other players and instead focused on punishing the plaintiff when she showed outrage or offense over the situation.

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT-*22

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

41. <u>A game moderator accused the plaintiff of having a "vulgar upbringing."</u> Other game moderators accused the plaintiff of "drama" or allowing her emotions to run high. These are subtle, yet offensive slights based upon Plaintiff's gender.

42. Game moderators, Julie Blan, Richard Stephenson, and other InnoGames staff are aware of plaintiff's gender because of her reports regarding the theft of the photograph of her breasts and reports of harassment over her gender.

43. Game moderators, Julie Blan, Richard Stephenson, and other InnoGames staff and players are generally aware of other players genders because of the pronouns used when addressing these players and their avatar picture selections. Although they may occasionally not represent the "true" gender of players, they are generally analogous. Seeking to appease the players in the game who present as male will be statistically very similar to catering to players who present as male in real life.

# VII.   LEGAL CLAIMS

## A.    <u>Negligence, Gross Negligence</u>

44. Plaintiff repeats and realleges paragraphs 1 through 44 hereof, as if fully set forth herein.

45. The negligence, gross negligence, or intentional willful or wanton conduct of InnoGames, Hendrik Klindworth, Michael Zillmer, Julie Blan, and Richard Stephenson can be characterized as having <u>reckless disregard when they knew or should have known of sexually explicit advertisements promoting their game *Forge of Empires*. These sexually explicit advertisements created an unsafe environment for women players. This environment led to ongoing and continuing sexual harassment due to plaintiff's gender for 3 years continuing until today.</u>

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-23

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

46. The negligence of InnoGames, Hendrik Klindworth, Michael Zillmer, Julie Blan, and Richard Stephenson can further by characterized as creating an dangerous system wherein moderator-players were given access to private player information despite potential biases and were not properly supervised in their access to prevent them from sexually harassing Plaintiff and intentionally accessing and transmitting Plaintiff's private photograph. InnoGames, through Hendrik Klindworth and Michael Zillmer created policies to prevent inappropriate access to systems that Julie Blan was responsible for implementing.

47. Despite these policies, they continued to hire and train moderators who also acted as players of the game creating an unsafe system where the moderators have strong motive to inappropriately access the accounts of their game rivals. InnoGames, Hendrik Klindworth, Michael Zillmer, and Julie Blan knew of the risk that moderators, senior moderators, and community managers posed to players.  In particular, Chase Xander had accused InnoGames in a lawsuit of moderators sexually harassing her, discriminating against her on the basis of gender, and threatening her and her family. The lawsuit was filed May 6, 2016, two months before Plaintiff was injured, and Ms. Xander had been making reports to InnoGames at least since March of 2014, two years before Plaintiff was injured. The policies put in place to prevent inappropriate access were demonstrably inadequate and this fact was known to InnoGames, Hendrick Klindworth, Michael Zillmer, and Julie Blan during the period of time they had a duty to supervise their employees to prevent them from targeting Plaintiff and inappropriately accessing her account.

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT-*24

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

48. The negligence of InnoGames, Hendrik Klindworth, Michael Zillmer, Julie Blan, and Richard Stephenson can further be characterized as *negligence per se* because InnoGames and each of its executive officers and employees has a legal duty under several Washington State, United States, and international laws to protect Plaintiff's confidential information. (RCW 9.73.030, Electronic Communications Privacy Act (1986), Computer Fraud & Abuse Act (1986), German Data Protection Act, "BDSG", European Union Data Protective Directive, etc.)   Instead of protecting Plaintiff's private conversation and photograph-link reported to them, they allowed an InnoGames employee under their supervision to access the information and release it to third-party players. This disclosure is a violation of Washington State Law, specifically RCW 9A.86.010. As such, it was an illegal act committed by an InnoGames employee. InnoGames, has a duty not to allow their agents to commit illegal acts using their proprietary access to Plaintiff's accounts.  Hendrik Klindworth, Michael Zilmer, Julie Blan, and Richard Stephenson have a duty to properly supervise agents under them. After the information was released Julie Blan and Richard Stephenson attempted to cover-up the incident further exacerbating Plaintiff's injury.

49. InnoGames is vicariously liable under the theory of respondeat superior for the actions of their employees.  In this case, a moderator, senior moderator, or community manager who illegally accessed and distributed Plaintiff's intimate image for the purpose of insulting, embarrassing, and harming Plaintiff and damaging her interest in her intellectual property remaining confidential. The employee who released the image was acting in the scope of their duty by reviewing support tickets about Plaintiff creating the condition for the image-theft to occur.

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-25

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

50. Even if InnoGames's moderators and senior moderators are not employees and instead are only volunteers. They are still acting in the scope of their volunteer work and at the direction of InnoGames.  InnoGames is vicariously responsible for their actions through the theory of the "gratuitous agent" under Washington State Law.  See *Baxter v. Morningside, Inc.*, 10 Wash.App. 893, 896–97, 521 P.2d 946 (Wash. Ct. App. Div. 2, 1974) ("[status as a volunteer] does not necessarily preclude a finding that a [m]aster-servant relationship existed… We believe the rule to be that where one volunteers or agrees to assist another, to do something for the other's benefit, or to submit himself to the control of the other, even without an agreement or expectation of reward, if the one for whom the service is rendered consents to its being performed under his direction and control, then the service may be rendered within the scope of a master-servant relationship.") Here the moderator who illegally released the intimate image was acting within the scope of their duty by accessing private information through InnoGames servers in order to respond to support tickets. This was their agreed duty with InnoGames and InnoGames controlled the exercise of this duty through training and supervision and by virtue of the contract the moderator signed with InnoGames.

51. InnoGames had an affirmative duty, based upon the business-customer relationship it created with Plaintiff, not to intentionally, recklessly, or negligently harm plaintiff with an unsafe environment created by their misleading advertisements. Hendrik Klindworth, Michael Zillmer, Julie Blan, and Richard Stephenson had an affirmative duty based upon their failure to supervise and properly stop the unsafe advertisements when they became aware of them and also when they failed to warn Plaintiff that men had been solicited into the game who would be seeking out women such as the Plaintiff for sexual activities.

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-26

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

52. Defendants InnoGames, Hendrik Klindworth, Michael Zillmer, Julie Blan, and Richard Stephenson failed to act as a reasonably, prudent people would under the circumstances or even exert any level of care. In fact, each of the named defendants affirmatively acted to cover up and obscure the dangerous environment created by InnoGames' solicitations. Hendrik Klindworth and Michael Zillmer made attempts to legally distance themselves from the advertisements, but allowed their company to continue to pay to run these illegal, misleading, and dangerous advertisements. Julie Blan and Richard Stephenson had a duty to review the forum reports to be aware of the advertisements made as early as 2015, yet they later made affirmative statements to the Plaintiff that the game was fun, fair, and was "family friendly" and suitable for all ages.  In addition to their own statements, Defendants Richard Stephenson and Julie Blan supervised a moderator, by review of Plaintiff's prior tickets, who advised Plaintiff on Dec. 12, 2017 that she should "keep in mind we advertise this as a game anyone can play and as a result many children play this game…we try to keep the chat to a PG rating to protect players and we ask that you abide by those rules." These are affirmative statements and actions that a reasonably prudent person would not have taken knowing that the game was in-fact advertising its women players as sexual-pawns.

53. Defendants Julie Blan and Richard Stephenson made affirmative statements to Plaintiff that they would enforce the rules equally against all players in order to prevent the harassment of the plaintiff and remediate the harm caused by the illegal release of Plaintiff's image by an InnoGames employee under their supervision, these promises of rescue created an affirmative duty to act.  For example, Plaintiff was told on sixty-three occasions "Thank you for bringing this matter to our attention, we appreciate all players

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-27

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

that help the Forge team to keep our game running without rule breakers. I will investigate and take the appropriate action(s) if I find rule breaking." These statements were made directly by Julie Blan and by the moderators she supervised. These statements promise that InnoGames and Julie Blan will investigate rule breaking and take appropriate actions. These are affirmative statements indicating that InnoGames and Julie Blan will take responsibility for stopping the harassing statements. These statements included the phrase: "No matter which, please do not engage this person in the future. Ignore all messages, ignore in chat. Be sure to report." If these statements had not been made, Plaintiff would have taken different steps to remediate the harm she was suffering.

54. Based upon information and belief, but for InnoGames solicitations of men advising them that women players were available for "aggressive sex," etc., and but for InnoGames failure to properly set up a customer relations system in which players of the game didn't also have access to confidential information as employees, the injuries to plaintiff such as the sexual harassment and illegal theft and release of her photograph would not have occurred. This includes that the damages to the plaintiff would not have happened but for Hendrik Klindworth's, Michael Zillmer's, Julie Blan's, and Richard Stephenson's actions to properly fulfill their given roles to prevent InnoGames from engaging in such advertisements and activities.

55. Plaintiff is a foreseeable plaintiff because Plaintiff is a woman who was approached and later harassed in a sexual manner, exactly as the advertisements promise would occur. It is also foreseeable that a player who is secretly a moderator might have a personal vendetta against a player such as Plaintiff and use their private information accessed through the report system created by InnoGames to carry out malfeasance against a

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT-*28

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

120

player like the Plaintiff. Plaintiff is also a foreseeable plaintiff in that the theft and disclosure of her private photograph was an intentional and illegal act designed to harm Plaintiff.

56. Plaintiff's physical damages are the loss of her interests in her property i.e. the loss of exclusive control of her intellectual property rights in her photograph since copyrighted. This loss of interest in property is accompanied by foreseeable emotional damages that might occur from the loss of such personal property. The foreseeability of these emotional damages is reinforce by the fact that InnoGames specifically inserted into their Terms and Conditions a clause stating that players were prevented from transmitting photographs of others without written permission indicating that InnoGames was aware this activity might cause emotional harm. (Terms and Conditions Art. 12.3 Bullet point 11).

57. Plaintiff further alleges physical injury in the form of headaches (induced from sinus injuries from daily crying over the course of 4 years), weight gain and related illnesses associated with it, high blood pressure, and other physical manifestations of stress.

58. Plaintiff's emotional injuries include despondency, depression, anxiety, suicidal thoughts and other thoughts of hopelessness and grief caused by the harassment endured over the theft of her private photograph, loss of her reputation as caused by the incident, and general sexual harassment induced by the defendant InnoGames, Julie Blan, Richard Stephenson and vicariously Hendrik Klindworth and Michael Zillmer through their failure to properly supervise, knowledge and acquiescence to allow the reckless advertisements and moderator-system to continue.

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-29

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

59. InnoGames, Hendrik Klindworth, Michael Zillmer, Julie Blan and Richard Stephenson are vicariously liable for the harassment plaintiff suffered at the hands of third-party players in addition to the harassment plaintiff suffered at the hands of secret players who are also moderators and employees of InnoGames. Although the harassment of these players may be an intervening action of negligence, it is not a superseding action in that it was a foreseeable result that players may harass a woman when they are solicited to do so and when they are given a copy of a photograph of the woman's breasts by a moderator who improperly accessed that confidential information.

**B.     Invasion of Privacy by Publication**

60.  Plaintiff repeats and realleges paragraphs 1 through 6 hereof, as if fully set forth herein.

61.  The facts alleged indicate that Defendant InnoGames has engaged in the tort of Invasion of Privacy through Public Disclosure of Private Facts.  Washington recognizes a common law right to privacy as stated in the Restatement (Second) of Torts § 652D (1977).  *White v. Township of Winthrop*, 128 Wash.App. 588, 593, 116 P.3d 1034 (Wash. Ct. App. Div. 3, 2005).  The elements of which are that a person who gives publicity to a matter concerning the private life of another is subject to liability for the tort of invasion of privacy if the matter publicized is of a kind that would be highly offensive to a reasonable person and is not of legitimate concern to the public.  *Reid v. Pierce County*, 136, Wash.2d 195, 961 P.2d 333 (Wash. 1998).

62. InnoGames, through its agent a moderator, senior moderator, or community manager, obtained and published an intimate image of Plaintiff's breasts without consent of Plaintiff.  Intimate images of a woman's breasts are of a kind that are highly offensive to a reasonable person as illustrated by the fact that it is a crime to distribute such images

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-30

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

under RCW 9A.86.010. Further there was no legitimate concern to the public in seeing an image of Plaintiff's breasts. Lastly, the image was sent to several members of the InnoGames player community with the intention that the image would be further published.

63. The publication was done with the intention that it should be seen throughout the country and that it should reach Washington State and harm a Washington State resident.

64. The damages are the same as those identified under the negligence section of this complaint.

**C.     Defamation/Libel/Slander**

65. Plaintiff repeats and realleges paragraphs 1 through 65 hereof, as if fully set forth herein.

66. InnoGames's agent, a moderator, senior moderator, or community manager, committed a sexual-based crime against defendant when they disclosed her intimate image without consent for the express purpose of creating sexually explicit and harassing comments against Plaintiff. Because the crime was committed with the express purpose of creating the harassment, InnoGames has legal liability for the resulting statements. Some of this harassment resulted in defamatory statements.

67. Specifically the defamatory statements include:

    a. "2C[TwoCents] is a tranny? … 2C [TwoCents] is a push account"

    b. That InnoGames won't ban Plaintiff because Plaintiff perform sexual favors for them.

    c. That "Inno won't ban 2C [TwoCents] because she keeps sending them photos."

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT-*31

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

    **d.** Repeatedly accusing Plaintiff of being other players because they dislike those players.

    **e.** That Plaintiff "failed in lawschool."

    **f.** Repeatedly stating that Plaintiff was a man and not a woman.

    **g.** Stating that Plaintiff was autistic.

    **h.** That Plaintiff "flashed" random strangers at her door.

    **i.** That Plaintiff was in a "sad loveless marriage" where her husband "had all the control."

    **j.** That Plaintiff "sent everyone naked selfies and then got mad everyone saw them."

    **k.** That Plaintiff was living in a "repressive relationship" that Plaintiff has a "very bad husband" and that Plaintiff's life "turns to crap" when her husband comes home.

    **l.** That Plaintiff's husband was unfaithful to her and that he liked online porn more than plaintiff.

68. Upon knowledge and belief, defendants Julie Blan and Richard Stephenson directly committed libel and damaged plaintiff's reputation when they made defamatory remarks that the plaintiff was "crazy," "a liar," and disparaged plaintiff's mental status in their InnoChat conversations, Skype conversations and emails amongst other Community Managers and player-moderators. Julie Blan and Richard Stephenson were aware that the player-moderators would carry this information back into their game-play and it would be "leaked" to the gaming community where Plaintiff played with her husband, children, brother in law and other friends and family.

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-32

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

69. Defendants InnoGames, Hendrik Klindworth, Michael Zillmer, Julie Blan, and Richard Stephenson are responsible for the libelous statements of third-party players and unknown moderators when they continually and repeatedly questioned plaintiff's gender, solicited a photograph of plaintiff's breasts in order to make her prove her gender; they transmitted a photo of her breasts amongst themselves without permission; the players and moderators sexually harassed the plaintiff regarding the photograph; and taunted her in relation to the photo, her gender and her failure to hide the incident in shame because these defendants each performed affirmative actions that led to and encouraged the statements to be made. They allowed the photograph to be negligently accessed by a moderator which in-turn led to the comments regarding plaintiff as a "sluuuut" "stupid dumb biotch" "a bad mother" randomly solicited strangers for sex etc. These comments are libel *per se* because they are derogatory about Plaintiff's sexual habits and do not need to be proven false. Additionally, these statements had no privilege because they were not required under any circumstances and they were not protected speech, either under the First Amendment or Communication's Decency Act. They were not protected by the Communication Decency Act Section 230 because none of the defendants has protection under the Act since they each induced, or were vicariously liable for inducing, encouraged and affirmatively acted to create and assist in generation of the harassing statements and actions. Therefore, the publications cannot be treated as "user-generated content." Additionally, since some of the harassing statements were made directly by player-moderators these statements are not "user-generated content," but content created by staff of InnoGames.

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-33

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

70. Plaintiff seeks further discovery to determine exactly which players were also moderators in order to finalize which statements were made by third parties and which statements were made by moderators. Plaintiff, on July 9th, 2020, received confirmation from a credible source that at least two of the player-moderators were responsible for several of the harassing, derogatory and libelous statements about the Plaintiff.

**D.** **Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress**

71. Plaintiff repeats and realleges paragraphs 1 through 71 hereof, as if fully set forth herein.

72. Upon information and belief, Julie Blan and Richard Stephenson committed intentional infliction of emotional distress when they negligently allowed her private photograph to be released to players in the game and then attempted to cover up the incident by seeking to get Plaintiff to acquiesce and accept the harassment. When Plaintiff made statements to report the moderator's improper behavior they individually made statements alleging that no moderator had done anything improper. They each affirmatively attempted to ignore Plaintiff by repeatedly closing her tickets without response when she reported these incidents. They attempted to make plaintiff acquiesce to the harassment by repeatedly banning her, denying her the service and use of her game account, when she object to the harassing statements.

73. Defendants InnoGames—and because of their knowledge and acquiescence of the unsafe environment and events occurring, Defendants Julie Blan, Richard Stephenson, Hendrik Klindworth and Michael Zillmer—recruited male players and potentially moderators into the game with sexual advertisements promising the Plaintiff and women like her as sexual pawns for aggressive sex, then when these same recruited players acted upon the

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-34

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

promises made in the advertisements, Defendants Julie Blan and Richard Stephenson intentionally assisted the male players in using the game-features such as the "ban" feature to harass Plaintiff.

74. Defendants Julie Blan and Richard Stephenson specifically attempted to inflict emotional distress upon Plaintiff by knowing of the game advertisements and discrimination occurring against Plaintiff and affirmatively helping the harassers in their goal of getting Plaintiff banned. It is outrageous conduct for a company to advertise their unknowing female players up as sexual pawns for their male-based demographic to sexually assault and then refuse to take action when a sex-crime occurs as a result of their pornographic advertisements.

75. Julie Blan and Richard Stephenson individually promised they would review the harassing statements and punish the offending parties if they had broken the rules, which they had by engaging in sexist and offensive language. The Defendants Julie Blan and Richard Stephenson then failed to keep their promises.

76. Defendants InnoGames is vicariously liable for this the infliction of emotional distress and reckless conduct leading to emotional distress committed by its employees in the course of its business.  Hendrik Klindworth and Michael Zillmer are vicariously responsible for this intentional conduct because they affirmatively set up a system in which all customer complaints were "stone-walled" with the Community Managers and could not be brought further. This is reinforced when Julie Blan stated to plaintiff that as a Community Manager, even if plaintiff sent information to InnoGames in another fashion or called them, plaintiff would be redirected to her since she was the Community Manager and thus the ultimate arbitrator of complaints for players in the United States.

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-35

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

Further the actions of "third-party" players cannot be said to be independent of the actions of InnoGames, Julie Blan, Richard Stephenson, Hendrik Klindworth and Michael Zillmer because the tools of the game themselves were part of the harassment, the harassment was encouraged and exacerbated by Julie Blan and Richard Stephenson and there was a collusive intertwining of actions that can no longer be said to be independent of each other, amounting to a civil-conspiracy. InnoGames created the system and had a profit-motive to protect the large number of players harassing the Plaintiff with their game-service even if the Plaintiff herself suffered because of it.

77. The instances here individually are, and also cumulatively add up to outrageous conduct. Using their positions of power over the Plaintiff and her valuable game-account, the Defendants Julie Blan and Richard Stephenson attempted to use this leverage over the Plaintiff to get her to acquiesce and accept the harassment she was suffering at the hands of players and secret moderators so as to make their jobs easier.

78. Plaintiff suffered depression, anxiety, thoughts of suicide and other diagnosed emotional disorders that amount to severe and extreme distress. Plaintiff has suffered uncontrollable weeping episodes almost every day since July of 2016. Plaintiff has been diagnosed with these conditions as a result of the harassment and events occurring alongside and intermingling with the harassment by Forensic Psychologist David Dixon. Plaintiff will provide a report upon the discovery phase of the trial.

79. Plaintiff asserts these reactions are reasonable under the circumstances because they are not a result of simply having unpleasant social interactions on a video game, but instead result from theft and release of plaintiff's private photograph, the ongoing and sustained harassment engaged in by the defendants as stated above, the fact that Plaintiff's

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-36

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

husband, children, nephews, and two brother in-laws witnessed the harassment directly as well as thousands of game-playing strangers, the attempts to socially isolate the Plaintiff from her entire friend-group, and the general pressure exerted by a large and powerful company upon Plaintiff to capitulate to her harassers or lose her valuable game-account. Studies have indicated that women who are sexually harassed in online video games experience more severe emotional distress than when experiencing other forms of offensive remarks.[2]

**E.   Gender Discrimination in Public Accommodation**

80. Plaintiff repeats and realleges paragraphs 1 through 80 hereof, as if fully set forth herein

81. Plaintiff's gaming experience was substantially different and harder than that provided to male players because of her gender. Defendants InnoGames, Hendrik Klindworth and Michael Zillmer advertised their female players for sexually-based crimes to encourage a male demographic to join the game. They also created a moderation system that allowed moderators to access and disseminate intimate images of female players for the purpose of sexually harassing them.

82. InnoGames, Hendrik Klindworth, and Michael Zillmer built a game that was capable of being used as a tool to target female players. Defendants Julie Blan and Richard Stephenson were aware of this use of the game-design to create a different and harder experience for female players but did nothing to make the game equally accessible to

---

[2] https://www.researchgate.net/profile/Jesse_Fox3/publication/297485534_Women%27s_experiences_with_general_and_sexual_harassment_in_online_video_games_Rumination_organizational_responsiveness_withdrawal_and_coping_strategies/links/56e96bf208ae77f87278fd8d/Womens-experiences-with-general-and-sexual-harassment-in-online-video-games-Rumination-organizational-responsiveness-withdrawal-and-coping-strategies.pdf

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-37

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

people of all genders and in-fact they affirmatively helped "ban" female players based on the discriminatory design of the rule-structure and how it was enforced in actual game play as well as the discriminatory "report" system. In-fact, InnoGames changed the report around 2019 to only allow a limited number of reports to be filed at any given time, showing they are now exerting some control over this "mass reporting" attempt to harass players including the Plaintiff.

83. In this case, the *Forge of Empire* interactive game was used to harass players when they were allowed to use their own accounts to repeatedly and persistently attack any "guild" that Plaintiff was in simply because the harassers did not approve of gender. This made Plaintiff a pariah in the game and made an essential element of game-play (joining a guild) unavailable to her. Additionally Plaintiff's in-game "friends" who were relied on to materially play the game were targeted for attacks to induce them to remove Plaintiff and no longer provide the needed game assistance. (See Attached Affidavit(s)).

84. InnoGames also made it a policy to ban Plaintiff from playing the game on any world at any time because she filed a lawsuit alleging sexual discrimination against them after then told Plaintiff she had the "right to play under any other account [other than TwoCents]" on June 27, 2019.

85. InnoGames set up and created the "report system" in a manner that allowed gender-discrimination to occur. Even if InnoGames cannot control who is reported using the feature as it is currently designed, the design itself allows "mobs" of players to gang up on unpopular gaming targets such as female players and report every activity regardless of they break the rules or not. InnoGames could have designed a better system in which to enforce game rules such as having non-player customer service agents generally

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-38

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

monitor the game interactions. The amount of reports received by the moderation-team is a significant factor in how they determine who to punish and ban from the game. In this instance Plaintiff was banned during periods of time for quoting T.S. Elliot poetry that was not offensive, she was banned for typing the asterisks (*) key, she was banned for using the exact same quote other players had previously used without bans, and she was banned for using global chat to say "do not buy goods from this player." Furthermore Plaintiff was banned from the game for incidents supposedly occurring during periods of time that she was not even playing. Plaintiff also admits offensive language at times and does not contest the statements were against the rules,but affirms that male players were treated more leniently for same or similar offensive language.  These incidents show how the structure of allowing the players to control the "report" feature led to fundamental denial of service to the Plaintiff. In short, because the players are allowed to participate in the community with unchecked sexism, and they know the gender of the people they are reporting, due to avatar pictures and gender pronouns, the pool of players reported to the moderators is unfairly skewed against the female demographic, meaning female players receive game-punishments per rata more often than their male counterparts.

**F.** **Fraud, Misrepresentation/Deceit, Unfair and Deceptive Trade Practices**

86. Plaintiff repeats and realleges paragraphs 1 through 86 hereof, as if fully set forth herein.

87. InnoGames made the following specific statements in their Game Rules and Terms of Service respectively:

    a. "InnoGames does not accept any publications that the Forge of Empires Team considers illegal, insulting, offensive, threatening, abusive, real-life aggressive, sexually explicit, pornographic (including, but not limited to

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-39

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

drawings and animations), politically extreme, religiously fanatic, endangering youth, racist, playing down the use of illegal drugs or alcohol, or promoting the use of said substances in any way inappropriate."

b. "…using or publishing content tantamount to mobbing, or threatening, harassing, insulting or defamatory content, or publishing or linking to corresponding material on a third party website, irrespective of whether this content affects other users, our employees or other persons or companies;

using, placing or publishing discriminatory content (e.g. hate speeches against groups of persons, in particular based on race, ethnic origin, religion, disability, gender, age, veteran status or sexual orientation), or content that is political, immoral, pornographic, morally reprehensible, offensive, violent, glorifies violence, sexist, right-wing or left-wing or that violates laws, in particular child protection laws and the Interstate Treaty on the Protection of Minors; or linking to corresponding material on a third party website or advertising, offering for sale or otherwise promote offending products contravening the law, in particular child protection laws;

violating applicable laws or prompting legal violations or linking to corresponding articles;

publishing, duplicating, making publicly accessible or distributing protected content, and in particular violating industrial property rights (e.g.

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-40

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

copyright law, trademark law, patent law, design patent law or utility patent law); advertising, offering or distributing goods or services;"

88. The above statements were published on InnoGames websites with update dates of 2015 and 2018 respectively, although the Terms and Conditions statement was the same before 2018 as well. Plaintiff was directed in the Support Ticket conversations to read these rules on multiple occasions.

89. These statements indicate that InnoGames will not accept the exact type of behavior that Plaintiff was the victim of: intimate image distribution, gender harassment, and offensive and sexually explicit language being targeted at her.

90. InnoGames knew that the above statements were false. They knew that their moderators did not attempt to enforce the above rules in a consistent fashion. InnoGames also knew that their moderators were responsible for harassing female players as shown by the Xander lawsuit.

91. Plaintiff relied on the above statements to continue playing Forge of Empires from 2016 onward and to make repeated transactions totaling over $9,000.

92. Further on May 21, 2017, by Maestro, a senior moderator, that "We enforce our rules on the basis that all players are equal, we don't care what their race is or what their gender is.   Each player is treated equally." Plaintiff relied on this statement to continue playing the game and spending money. This statement was false as shown below with their unequal enforcement of the rules to target Plaintiff. InnoGames knew this statement was false at the time their agent Maestro stated it because they had already been unequally enforcing their rules.

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-41

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

93. InnoGames, Hendrik Klindworth, Michael Zillmer, Julie Blan, and Richard Stephenson misrepresented their game as fair. They engaged in practices such as only punishing players for rules violations if they were reported by other players that are inherently unfair. They changed their rules without notice. They created rules meant specifically to target the plaintiff. They did not equally apply their rules to all players. They targeted the plaintiff specifically for violations that they do not sanction other players for. InnoGames essentially waived the rules for some players without telling the other players.

94. In the course of creating their gaming company, InnoGames, Hendrik Klindworth, and Michael Zillmer have made statements that their game is fair and the rules are equally applied. They created as one of their "core values" that: "Fair Play: We show fair behavior to our players, to our partners and the whole company." Additionally, they have listed on their website rules section a statement saying, "Following the rules helps to create a fun and fair environment for everyone," and "These rules can be adapted to different cases in the interests of maintaining fair play within the game."

95. Julie Blan and Richard Stephenson sent messages to the Plaintiff with links to the above statements, copied the last two of the above statements verbatim, and often invoked the "fairness" of the game in their communications with her. It was Julie Blan and Richard Stephenson's job to enforce the rules, so they would be in a direct position to know exactly how the game was unfair while they were making their assertions.

96. Plaintiff read these statements at least as early as July 2016 and relied on the idea that the game was fair to make a majority of her individual purchases amounting to approximately $9,000. Plaintiff would not have spent money on the game if the rules indicated the game was unfair or were silent as to the issue of fairness. Plaintiff also

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-42

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

relied on the statements to endure rules-punishments which denied her access to her game-property.

97. InnoGames is aware that their game is fundamentally unfair because of its design. If InnoGames relies on the players to "report" each other, then some players, unpopular ones, will be punished for rules violations when popular players are not punished for the exact same violations. This is general knowledge about the company that all of their executive officers and Community Managers know, including Hendrik Klindworth, Michael Zillmer, Julie Blan, and Richard Stephenson. For example, upon information and belief, Plaintiff quoted the movie *Deliverance* saying "He got a real pretty mouth, ain't he?" Plaintiff was banned for her statement specifically because of her quoting this line. Several months later a more popular player said the exact same quote in the exact same way and was not banned or otherwise punished at all.

98. InnoGames, Hendrik Klindworth and Michael Zillmer's motive was to deceive the Plaintiff and others with these false promises of fairness to make money through increased business. Julie Blan and Richard Stephenson's motive was to purposefully attempt to stop the Plaintiff from making legitimate complaints in order to hide the malfeasance of the player-moderators and to make their job easier by not having to respond to Plaintiff's tickets.

99. The defendants, Julie Blan and Richard Stephenson in the course of attempting to stop Plaintiff's complaints of harassment and bias, targeted the plaintiff for minor rules violations that they do not target other players with. They caused the plaintiff to be unable to communicate in game-chat (a muffle or chat-ban) because she criticized other players for in-game behavior [,] something specifically allowed by the rules. They do not

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-43

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

135

punish other players for the same offense. They banned the plaintiff from the game for using three or five asterisks. They banned the plaintiff for "reading" poetry in chat. At the same time they have not banned other players who have egregiously bought and sold in-game items for real life money, used profane and offensive language such as "who lit the fuse of your tampon?" and other behaviors and language.

100.     As a part of the fraud, Julie Blan acting on behalf of InnoGames, changed their rules specifically to target the plaintiff. Julie Blan had the ability to do this in two ways: she could message the game-designers and other staff to request changes to the rules AND she could alter the game in some limited ways herself as shown below.

101.     Throughout 2016, 2017, and most of 2018 the word "ass" wasn't a censored word in the game and was not specifically against the game rules. Plaintiff was banned for using the word "ass" on or around Nov. 22, 2018. Plaintiff stated that it wasn't against the game rules to Julie Blan and instead of unbanning Plaintiff for not violating the rules Julie Blan stated, "If the words 'dick' and 'ass' are no longer censored, I appreciate you bringing this to my attention and I will see that the censor is put back into place." Within a few minutes the game was censoring the word "ass." This is a specific instance where the game rules were changed specifically to the detriment of and to target the Plaintiff.

102.     Another instance where the game rules were changed to target the plaintiff was: In 2016 and as late as May 25, 2017,  the communication rule for the US server stated:

> InnoGames does not accept any publications that the Forge of Empires Team considers illegal, insulting, offensive, threatening, abusive, real-life aggressive, sexually explicit, pornographic (including, but not limited to drawings and animations), politically extreme, religiously fanatic,

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-44

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

*endangering youth, racist, playing down the use of illegal drugs or*

*alcohol, or promoting the use of said substances in any way*

*inappropriate.*

But on June 22, 2017 (or perhaps earlier) the communication rule stated:

*InnoGames does not accept any publication that the Forge of Empires*

*Team considers illegal, insulting, offensive, threatening, abusive, real-life*

*aggressive, sexually explicit, pornographic (including but not limited to*

*drawings and animations), profanity, politically extreme, religiously*

*fanatic, endangering youth, racist, playing down the use of illegal drugs*

*or alcohol, or promoting the use of said substances or in any way*

*inappropriate.*

At some point between May 25, 2017 and June 22, 2017 the word "profanity" was included in the rules without any notice even though the InnoGames Terms and Conditions state that rule changes need to be announced to the community. Additionally the Rules page itself says the last update [was] 01.09.2015. Adding the word "profanity" to the rules only came after the plaintiff repeatedly and insistently asserted that profane language in of itself wasn't a rule violation beginning in November 2016 and notified Julie Blan specifically on May 25, 2017 that profanity wasn't against the game rules. Plaintiff was specifically quoted the first version of the rules several times by moderators and Julie Blan as verification of what the rules where at any specific time. Plaintiff states upon information and belief that the rules were secretly changed within a month of Plaintiff's assertion to Julie Blan that profanity wasn't in the rules. Upon information and belief, this occurred when Julie Blan chose to email or otherwise

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT-*45

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

contact InnoGames Staff to request the word be added specifically into the rules to target Plaintiff.

103. These unfair behaviors, particularly targeting the plaintiff and allowing other players to cheat, create economic hardship and emotionally distress the plaintiff. She has to pay additional money for in-game items in order to "keep up" with other cheating players during the course of competition. If the plaintiff had known the game was unfair she would not have spent $9,000+ on the game. Additionally, plaintiff has suffered damages by being denied access on several occasions to her game-property by being forced to endure unfair "bans" from the game. These bans unfairly hindered Plaintiff's progress increasing her purchases.

104. These fraudulent acts, specifically enticing players into the game with promises of fairness while knowing the game was not fair and not enforcing the game fairly, has an impact on the public interests of Washington State. Specifically, the State has an interest in protecting dozens, hundreds, or thousands of players who play InnoGames products from these unfair promises and attempt to defraud these players, including Plaintiff, out of their money. Furthermore, Washington State has an interest in protecting its statutory laws against unfair or deceptive trade practices.

105. Plaintiff alleges these actions are against the Consumer Protection laws of Washington State because they are deceptive acts as outlined above and under this statute Plaintiff is entitled to triple damages not to exceed $25,000. *Rev. Code Wash.* §§ 19.86.020 - 19.86.090.

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-46

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

**G.       Product Liability – <u>InnoGames created an unsafe and dangerous product by</u> <u>producing the game *Forge of Empires*.</u>**

106.       Plaintiff repeats and realleges paragraphs 1 through 106 hereof, as if fully set forth herein.

107.       InnoGames designed a product meant to intentionally inflict a mental disorder on Plaintiff. This mental disorder, Internet Gaming Disorder, creates structural and functional abnormalities in the brain of people with the disorder.[3] Plaintiff suffered from this disorder as a result.

108.       InnoGames, Hendrik Klindworth, and Michael Zillmer created an unsafe product by developing the internet game *Forge of Empires*. The game creates psychological addiction. Julie Blan and Richard Stephenson are aware that the game is dangerously addictive and facilitate this addiction in players by helping them play and not warning them of the dangers involved in playing, in effect helping to sell the dangerous product.

109.       <u>At first Plaintiff experienced feelings of euphoria, satisfaction, and felt as if she</u> <u>was in a safe community of friends as do other players of *Forge of Empires*. Plaintiff</u> <u>became psychologically dependent and addicted to playing *Forge of Empires*. Even after</u> <u>the above described harassment, the Plaintiff was unable to voluntarily quit playing the</u> <u>game. During this period of time, InnoGames and its officers were aware of the</u> <u>phenomena of psychological dependence and addiction to their game. Defendants never</u> <u>gave the Plaintiff any notice or warning of the danger of psychological dependence or</u> <u>addiction from continued play. Instead the defendants, InnoGames, Hendrik Klindworth</u>

---

[3] https://pubmed.ncbi.nlm.nih.gov/27447451/

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-47

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

and Michael Zillmer, <u>purposefully used the phenomena of addiction to help make players stay in the game longer and therefore spend more money on micro-transaction purchases to advance in the game faster. Plaintiff continues to this day to have a compulsive urge to play *Forge of Empires.*</u>

110.    Although the American Psychiatry Association's manual didn't add gaming disorder yet to its medical reference manual it is referenced for further study and it identifies symptoms of problem video gaming.[4] Further the World Health Organization included "Gaming Disorder" to the 2018 *International Classification of Diseases* its medical reference book.[5]

111.    But for *Forge of Empires* intentionally addictive design, Plaintiff would not have developed Gaming Disorder.

112.    It was reasonable that Plaintiff would suffer this Disorder because she was solicited by InnoGames to play a game intentionally designed to cause the disorder as described below.

113.    Plaintiff has been diagnosed by a Forensic Psychologist with all of the signs and symptoms of Gaming Disorder including: impaired control over her gaming on *Forge of Empires*; giving increased priority to *Forge of Empires* gaming over other activities to the extent that it takes precedence over her other interests and daily activities such as spending time with family, working or being able to care for herself; and continuation or escalation of her gaming the occurrence of negative consequences – such as being unable to quit *Forge of Empires* when being sexually harassed.

---

[4] https://www.webmd.com/mental-health/addiction/video-game-addiction#1

[5] https://www.who.int/news-room/q-a-detail/gaming-disorder

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-48

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

114.     Plaintiff further alleges that she has been diagnosed with all the warning signs of "Problem Gaming" such as: Thinking about gaming on *Forge of Empires* all or a lot of the time; feeling bad when she can't play the game; needing to spend more and more time on *Forge of Empires* to feel good; not being able to quit *Forge of Empires* or even play less, or even to spend less money on the game; not wanting to do other things she used to like such as reading; having serious problems at home, school, and being unable to work because of gaming; playing despite all of these negative consequences; lying to people close to her about how much time she spends playing *Forge of Empires*; and using *Forge of Empires*  to ease bad moods and feelings.

115.     Upon information and belief, InnoGames, Hendrik Klindworth and Michael Zillmer purposefully built *Forge of Empires* to create Gaming Disorder in its customers. Further, they continue to adapt *Forge of Empires* to become ever more addictive based upon data they receive from researching their expanding audience. InnoGames, Hendrik Klindworth and Michael Zillmer use the "freemium" model of internet games. Using this model they offer their game for free to a wide public audience knowing that between 1%-12% [6]of beginning players will become habitually and dangerously addicted to playing *Forge of Empires* and thereby spend money on the game. Furthermore being young and male is a high-risk factor for Gaming Addiction, which while not encompassing the Plaintiff, does explain why *Forge of Empires* seeks to appeal to this market.[7]

---

[6] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5023737

[7] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5023737

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-49

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

116.    59% of Americans play video games, and 97% of Americans age 12-17 years old play video games creating a large danger to the public of intentionally addictive games such as *Forge of Empires*.[8]

117. *Forge of Empires* uses particular psychological strategies in an attempt to create Gaming Addiction such as creating a "grind" in the game where it is difficult and time-consuming to advance in the game. In *Forge of Empires,* the longer you spend away from the game the less you are rewarded on your city productions, buildings, settlements, quests, events. This encourages players to log into the game at least daily, but often addicted players feel like they have to come in every 5 minutes or they will miss out on important items necessary to progress without spending money. Another technique *Forge of Empires* uses to addict players is to provide "Gachas"… "Gachas" are named after a Japanese toy dispensing machine where you put in money and hope to get a certain collectible prize back. In this system *Forge of Empires* uses "Gachas" by providing an opportunity to receive certain collectible items on a random-reward basis. There is no way to directly obtain the item you desire without taking a chance that you will get many undesirable items. This is also known as "Loot Boxes." Often in order to obtain the collectible items desired, and which you will need to be competitive with other players, the only way to do so is to spend in-game currency (diamonds). "Gachas" are based off of a psychological phenomenon called the "Skinner Box." *Forge of Empires* also uses techniques of "Hot State" and "Loss Aversion" which encourage players to not think about their purchases because they are in the middle of action and don't want to lose their progress. This is

---

[8] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5023737

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-50

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

shown in *Forge of Empires* where players are battling other guilds and often have to "diamond heal" their troops back to full health-points in order to continue or lose the progress they've made the previous day. *Forge of Empires* offers "limited time" offers in order to encourage people to spend immediately before the offer "expires." *Forge of Empires* further relies on the "IKEA effect" whereby when someone puts work into something, they value it more highly. Therefore people who do not want to lose ranking, must continue to spend diamonds in order to maintain their high rankings. *Forge of Empires* uses other psychological techniques to create Gaming Addiction in its customers that are not listed here as well. (The listed and unlisted techniques to addict gamers as identified in this paragraph can be in the video at https://youtu.be/xNjI03CGkb4).

118. Plaintiff used *Forge of Empires* the way it was intended. The game specifically is designed to make a player such as Plaintiff play more and more often until they become a habitually addicted player.

119. Plaintiff has often set times to interrupt her sleep so that she can come in and "collect" items from her city. This is a frequent occurrence among players. Plaintiff has also played while driving from her mobile phone as is also customary amongst players of *Forge of Empires*. Plaintiff has had occasional jobs during the course of 2016-2020 but has been unable to keep these jobs due to her Gaming Addiction. Plaintiff also alleges economic harm from the intentional Gaming Addiction created by the unusual amount of money she spent on *Forge of Empires* – $9,000 – when a traditional "subscription" game would've likely cost only about 4% of that total over the same period of time. Plaintiff has physical injuries as well such as weight gain and related conditions e.g. sleep apnea, acid reflux, high blood pressure etc from her Gaming

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-51

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

Addiction. Plaintiff has suffered extreme emotional side effects such as distancing from family except through interacting with them in the game as well as depression, anxiety, and thoughts of suicide.

120. The game *Forge of Empires* is unreasonable dangerous because it is designed to create Gaming Addiction. Defendants had a reasonable alternative product design they could've made. Defendants could've made a subscription-based model of gaming that doesn't reward players for more time spent with the game or simply changed the design structure of the game to not reward continuous play. InnoGames could also have attached warning labels viewable to *Forge of Empires* players. Therefore Plaintiff alleges there is a design defect that created an unreasonably dangerous product.

121. InnoGames also sought to continue this intentional infliction of Gaming Disorder on Plaintiff by making unreasonable advertisements to Plaintiff. Plaintiff has seen thousands of ads for *Forge of Empires* even though she is already a player. Every time Plaintiff opens a computer browser, she sees an advertisement for Forge of Empires. This includes on Plaintiff's work computer where she has *never* played or been associate with *Forge of Empires* on. Plaintiff cannot escape the advertisements. Further, InnoGames designed "push" notifications to remind players to log into the game. And InnoGames sends emails to Plaintiff reminding her to come in and play the game.

**H.      Breach of Contract, Third-Party Breach of Contract, Promissory Estoppel**

122. Plaintiff repeats and realleges paragraphs 1 through 122 hereof, as if fully set forth herein.

123. InnoGames, in its *Forge of Empires* Game Rules states that "*InnoGames* does not accept any publications that the Forge of Empires Team considers illegal, insulting, offensive,

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-52

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

threatening, abusive, real-life aggressive, sexually explicit, pornographic (including, but not limited to drawings and animations), politically extreme, religiously fanatic, endangering youth, racist, playing down the use of illegal drugs or alcohol, or promoting the use of said substances in any way inappropriate." (emphasis added). This is an explicit contract with Plaintiff wherein InnoGames creates a duty for itself not to accept the material stated. This contract was written by InnoGames and is a contract of adhesion, which should be strictly construed against InnoGames. This contract was breached when InnoGames accepted the publication of harassing statements and Plaintiff's intimate image. By InnoGames accepting such publications, Plaintiff was harmed with emotional and intellectual property damages as stated in the prayer for relief.

124. In the event Plaintiff made a valid contract with InnoGames when she entered *Forge of Empires* subject to the Terms and Conditions of play, Plaintiff alleges this contract was breached by the Defendant and that she performed her portion of the contract until the breach. As a result of the breach, plaintiff suffered damages.

125. Plaintiff's presumed contract with InnoGames is a standard "click-wrap" contract which is a contract of adhesion. As such, InnoGames sets the terms and they should be held strictly to those terms since there was no negotiation and they had the privilege of drafting in their chosen language. Some of those terms of Article 12.3 are:

    a.  "duplicating or making publicly accessible an image of another person without the relevant person's written approval [is prohibited],"

    b.  "using or publishing content tantamount to mobbing, or threatening, harassing, insulting or defamatory content…[is prohibited],"

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-53

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

    c.  "using, placing or publishing discriminatory content (e.g. hate speeches against groups of persons, in particular based on race, ethnic origin, religion, disability, gender, age, veteran status or sexual orientation) …[is prohibited]."

    d.  linking to said discriminatory content is prohibited

    e.  "publishing, duplicating, making publicly accessible or distributing protected content, and in particular violating industrial property rights (e.g. copyright law…)…[is prohibited].

    f.  "publishing personal data and confidential information without authorization [is prohibited]."

*Terms and Conditions* Art. 12.3

A coinciding term is: "If we [InnoGames] become aware of illegal content pursuant to Art. 12.3, such content will be removed immediately." *Terms and Conditions* Art. 13.3.

126. InnoGames became aware immediately at the time of the incident (because a moderator had sent the photograph) that there was the illegal content, of an intimate image being published of the Plaintiff but they did not act in any way to remove the photographic content immediately. In fact, they allowed players to brag about having received and seen the photograph despite these statements being reported to the moderation staff. Further they became aware when the Plaintiff notified them in August 2016 and November 2016 that the image was being still being transmitted across their servers. The image was being sent to every new guild member of the guild SpaceBalls and was linked in several messages formed for the purpose of harassing me. Julie Blan on behalf of

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-54

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

InnoGames made false statements that she would properly punish and thereby attempt to stop the spread of the image on InnoGames' servers, but these were false promises.

127. InnoGames became aware of the harassing and discriminatory content based on Plaintiff's gender was being posted about Plaintiff in late June or early July 2016 from Plaintiff's use of the "report" feature in the game, but they did not act to remove such content immediately. In fact they did the opposite, encouraging the posting of such content.

128. Similarly at the same time as the photograph, InnoGames became aware that players had made publicly available the protected (copyrighted) photograph and that Plaintiff's personal data and confidential information (such as her real-life name) was being published without her authorization.

129. Up until the time of InnoGames' breach, the Plaintiff had properly complied with the Terms and Conditions contract which was all that was required by the contract to perform.

130. Plaintiff informed InnoGames through their support-function and declared a material breach of the contract on January 01, 2019, with the statement,

> *"Well, I hate to point out that you are in breech*  [sic] *of the contract you created. You DID just change your rules as you so pointedly noted. The rules in effect before the change clearly stated that you ARE NOT the final arbiter of rule disputes, so I'd like to speak with the person who is. You are required to uphold the contract or it becomes null and void (and thus any punishment I've received for breaking said contract would be an illegal denial of service)."*

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-55

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

131. Plaintiff again notified InnoGames and Julie Blan of the breach of contract on February 03, 2019.

132. Despite these notifications of breach, InnoGames through Julie Blan and Richard Stephenson attempted to enforce the contract against the Plaintiff without abiding by it themselves.

133. Plaintiff suffered damages from the loss of her photograph including loss of her intellectual property and the value of the photograph and the consequential damages that involved years of harassment. These were foreseeable because Article 12.3 involves listing actions that might cause emotional harm, specifically listed as "endangers," in the contract's language in an attempt to prevent it including the photograph provision, harassing provision, and discriminatory content provisions.

134. Even if Plaintiff did not make a contract (or even if she did) with InnoGames, the players harassing her did, and Plaintiff is entitled to enforce their contracts as a third-party beneficiary to their contract.

135. Specifically, Maestro, a senior moderator, told Plaintiff on January 17, 2017 that the Game Rules were in place to provide a high quality game and fair disposition to *all* players (emphasis added).

136. Generally all players on *Forge of Empires* need to agree to the Terms and Conditions before playing, with a few rare exceptions. In the Terms and Conditions, players agree to abide by the Game Rules. This includes the players sexually harassing Plaintiff and spreading around her photograph. As stated above, the Game Rules are intended to benefit other players and provide other players with a quality and fair game.

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-56

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

137. Article 12.3 of the Terms and Conditions states in opening: "As User, you will refrain from any action that endangers or disrupts the operation and functionality of the Games and the successful collaboration with other users." Plaintiff falls into the category of "other users" the contract sought to protect and her "successful collaboration" with InnoGames was disrupted through the harassing player's acts. Therefore, Plaintiff is a third-party beneficiary and entitled to the benefit of these contract terms.

138. InnoGames failed to enforce their prohibition of the terms of Article 12.3 such as the photograph, discrimination, harassment, protected content, or confidential information terms listed above at all.

139. Plaintiff informed InnoGames through Julie Blan and Richard Stephenson about these breaches but the content was not removed, and the parties posting such content were not prohibited from further posting the same or similar information.

140. Even if no contract was made, InnoGames, Hendrik Klindworth, Michael Zillmer, Julie Blan and Richard Stephenson made affirmative statements to Plaintiff that the game rules were fair and would be enforced equally:

    a. "In short, the rules are in place to ensure fair disposition for all players, single household or otherwise." – Seriak (a moderator for Innogames) June 3, 2016.

    b. "Following the rules helps to create a fun and fair environment for everyone." – Julie Blan aka Panacea November 11, 2016

    c. "It was your responsibility to read and understand the rules of the game. You failed to follow the rules and you were subsequently banned for a

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-57

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

infraction. This is our policy and it is in place to ensure fair disposition to all players." – Maestro, a senior moderator, January 1, 2017.

d.  "These rules can be adapted to different cases in the interests of maintaining fair play within the game." – Julie Blan aka Panacea, May 5, 2017.

e.  Julie Blan repeated the same statements as above on numerous occasions as identified in Exhibit 10, the Support Tickets.

f.  "Following the rules helps to create a fun and fair environment for everyone." Julie Blan aka Panacea, May 21, 2017.

141. Plaintiff relied on these statements that the game rules would be fair and equally enforced when she shared her private photograph with Gensmoky. Plaintiff has a screenshot of the incident in which she specifically refers to the fact that if Gensmoky [or anyone generally] shared the photograph, Plaintiff would seek to enforce the game rules and get them banned from the game. Relying on the promises made by InnoGames about the game-rules Plaintiff felt confident that when sharing her photograph with just one individual it would remain private. This was to her detriment because a moderator was able to access the photograph, breaching Plaintiff's privacy, but also sent it to the people plaintiff sought to prohibit from having it by relying on the game-rules.

142. Plaintiff also relied on the statements of fairness when she was told and did ignore the players harassing and discriminating her and that they would be held accountable if they continued their harassing behavior. In fact, the players were not punished for their continuous breach of the rules and plaintiff suffered as a result of her reliance on the

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-58

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

promises to "ignore" the harassers. Plaintiff lost the opportunity to confront her harassers and thereby lost reputation and social-contacts through the effort.

143. It was reasonable to rely on InnoGames, Hendrik Klindworth's, Michael Zillmer's, Julie Blan's and Richard Stephenson's statements that the game rules would be enforced fairly because they made the statements in writing and even indicated that it was one of the company's "core values."

144. The damages again for this lack of enforcement of their promise were foreseeable because InnoGames specifically addressed the concern of loss of a private photograph as well as the harassment over the photograph as "endangering" in their Terms and Conditions.

145. Defenant Julie Blan, on behalf of InnoGames told Plaintiff on June 27, 2019 that Plaintiff could play under any other account, other than the TwoCents account, so long as she played by the rules. Plaintiff relied on these promises to continue her gameplay and purchases with InnoGames, but these promises were not true.  In fact, InnoGames had a policy of banning TwoCents that was discussed amongst its community managers and released to other gameplayers who have stated that they can send screenshots of Community Managers saying Plaintiff would be banned out of the game on any account.

I.      **Copyright Infringement**

146. Plaintiff repeats and realleges paragraphs 1 through 146 hereof, as if fully set forth herein.

147. InnoGames is liable for Copyright Infringement of Plaintiff's protected photograph. Plaintiff created the image on or around July 25, 2016. Shortly thereafter an InnoGames moderator improperly accessed the report system from Plaintiff's private account with

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-59

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

InnoGames, intercepted the private conversation including the link to the photograph, and then copied and transmitted this link to other parties.  Plaintiff sent the image only to the player known as "Gensmoky" with a written agreement between Plaintiff and Gensmoky that he would keep it confidential and not disclose it.  At no time did Plaintiff publish the image.  Plaintiff registered the image with the United States Copyright Office on September 03, 2019.

148. These other parties, some of whom are known and some who are unknown then transmitted the photograph without Plaintiff's consent across InnoGames servers and made it public by copying images of it from the original link-site for their own personal use and transmission. Plaintiff was not made immediately aware of when the transmission occurred. She was told sometime after the fact. Additionally InnoGames sought to cover-up the fact that the copyright infringement and privacy breach occurred at all and directly lied to plaintiff saying their moderators had not transmitted the photograph. Even if their moderator had not transmitted the photograph at that time, the photograph was being transmitted across InnoGames servers and is still being transmitted across InnoGames servers via links to it.

149. InnoGames has a duty to supervise its employees in the course of their conducting business, but also has a duty to supervise its servers to prevent the illegal transmission of copyrighted material. InnoGames acknowledges that it tries to prevent this by enforcing the *Forge of Empires* Game Rules and the Terms and Conditions.

150. 17 U.S.C. § 504 allows compensation for damages of copyrighted material before it is registered if there were actual damages or lost profits.  The actual damages in this case are the reputational damages caused to Plaintiff from the loss of an image that was meant to

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-60

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

be kept confidential.  See e.g. *Harper & Row, Publrs. V. Nation Enters.*, 471 U.S. 539 (1985) (finding the copyright holder had an "interest in confidentiality").  Just as damages for a breach of a non-disclosure agreement contemplate the harm caused by making public intellectual property that was meant to be private, here too Plaintiff's intellectual property was disclosed to the public causing her to suffer harassment and reputational harm. And it caused Plaintiff to spend money in *Forge of Empires* to try and remediate these harms.

151.  Statutory damages also exist in this case because the photograph has been transmitted to people over InnoGames servers after the image was registered. At least until March 2, 2021, it was being transmitted through the *Forge of Empires* videogame.

## J.  Intercepting Electronic Communications: State and Federal Claims

152. Plaintif repeats and realleges paragraphs 1 through 152 hereof, as if fully set forth herein.

153. **STATE LAW RCW 9.73.030:** Plaintiff further asks for damages for privacy violations by the theft of the photograph and copying and releasing of plaintiff's private conversation and photograph  under statutory law. Specifically, RCW 9.73.030 prohibits intercepting, recording, or disclosing a private communication transmitted "within or without the state" by electronic means without the consent of all parties of the communication.  RCW 9.73.060 provides a private right of civil action for such a violation including actual damages including mental pain and suffering due to the violation or liquidated statutory damages of $100 per day up to $1,000 plus attorney fees and litigation costs.

154. An InnoGames employee intentionally intruded on a private conversation in order to interfere with her right of keeping private her conversations and photograph.  The employee then disclosed this photograph to the public. InnoGames, has liability for the

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-61

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

acts of its agents.  The conversation in which the photograph was transmitted occurred between Plaintiff, while she was in Washington, and Gensmoky, who was in Virginia at the time of the conversation.  The moderator did not have permission from either Plaintiff or Gensmoky to intercept and disseminate the photograph.  Although *State v. Fowler*, 157 Wash.2d 387, ¶ 16, 139 P.3d 342 (Wash. 2006) does state that the location of a recording of a conversation is determined at the location of the recording, here there was no such recording, rather it was the interception and dissemination that affected and harmed a Washington State resident, bringing it under the criminal jurisdiction of RCW 9A.04.030(5) ("A person who commits an act without the state which affects persons or property within the state, which, if committed within the state, would be a crime."). Further, unlike in *Fowler*, here there is no indication that the interception and dissemination of the photograph would be legal in any state, nor in Germany where defendants reside as *neither* party consent to the interception. All fifty states, plus the District of Columbia criminalize this action.[9]  Similarly, the German Data Protection Act ("Bundesdatenschutzgesetz" or "BDSG") has been in place since 1978 and provides a private right of action for interception and dissemination of private communications and the General Data Protection regulation of the European Union applies as of 2018.

155. **FEDERAL LAW 18 U.S.C. § 2510 *et seq.*** In addition to being a violation of Washington State law, this is also a violation of federal law. 18 U.S.C. § 2510 *et seq.* otherwise known as the Electronic Communications Privacy Act prohibits interception

---

[9] https://www.upcounsel.com/audio-surveillance-laws-by-state.

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-62

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

and dissemination of electronic communications which includes "signs, signals, writings, images, sounds, data, or intelligence of any nature…" Recovery of civil damages is similarly authorized under § 2520 of that section or statutory damages.

156. Hendrik Klindworth, Julie Blan and Richard Stephenson are responsible for this intrusion because they had a duty to supervise and create a design where moderators could not intrude in such a fashion.

157. This intrusion would be highly offensive to a reasonable person because it involved taking photographs of an intimate nature without permission. Further the general public would not have been free to view these photographs without this intrusion.

158. This intrusion caused damages in the loss of the photograph as described above.

159. Plaintiff respectfully asks for actual and statutory damages because of the privacy violation in accessing a private communication and taking a copy of the photographic link contained within it.

**K.     Intimate Image Dissemination: Federal and State Private Right of Action**

160. Plaintiff repeats and realleges paragraphs 1 through 160 hereof, as if fully set forth herein.

161. Federal law allows for a private civil remedy for the unauthorized disclosure of intimate images under 15 U.S.C. § 6851.

162. Washington State law prohibits disclosing an intimate image under RCW § 9A.86.010.

163. Washington State law creates a civil remedy under RCW §§ 7.110.010–7.110.902 for intimate image unauthorized disclosure.[10]

---

[10] This law took effect July 23, 2023.  The doctrine of *ex post facto* does not apply to civil remedies. *Forster v. Pierce Country*, 99 Wn.App. 168, *178, (Wash. Ct. App. Div. 2, 2000) (citing *Kansas v. Hendricks*, 521 U.S. 346,

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-63

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

164. Defendant InnoGames's agent, a moderator, senior moderator, or community manager, improperly accessed an intimate image of Plaintiff's and distributed it by releasing confidential information from her gaming-account accessible only with moderator-level access. This image was also the result of extortion where Plaintiff sent it because others told her she had to send it or suffer consequences to her expensive gaming account due to the unsafe and harassing environment created by Defendant's pornographic advertisements. Even if InnoGames's agent did not send the photo, InnoGames is still responsible for making the image accessible over its online gaming platform.

165. The transmitted image was an intimate image because it shows Plaintiff's breasts in a bra with the areolas and nipples visible upon zoom-in.

166. Plaintiff sent the image via InnoGames "whisper" function to Gensmoky with the express written agreement that Gensmoky would keep it confidential. Gensmoky did keep it confidential. These are circumstances that create a reasonable expectation of privacy in the image. Plaintiff did not consent to have the image distributed.

167. The image is identifiable of Plaintiff because it contains a written note with Plaintiff's well-known pseudonym signature and it was distributed by people who connected it with Plaintiff's pseudonym and real name.

168. The image was distributed via the internet.

---

370, 117 S. Ct. 2072 (1997)) ("If a law is not 'criminal' or 'punitive,' it can be applied to any conduct, either past or future, without violating the ex post facto clause.").

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-64

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

## VIII. PRAYER FOR RELIEF

169. Plaintiff respectfully prays for relief as follows: Loss of Income $180,000; Loss of Reputation $500,000; Physical and Emotional Pain and suffering $500,000; Defrauded amount $9,000 plus $16,000 of triple damages under Washington State Consumer protection laws. The Plaintiff also prays for relief and seeks the greater of actual and statutory maximum damages for copyright infringement, the greater of compensatory and statutory for interception and dissemination of an electronic communication, and the greater of statutory and compensatory damages for intimate image distribution. Plaintiff also seeks punitive damages, court costs, and interest.


___/s/ Penny Quinteros                05/16/2024

Penny Quinteros, Esq.  *Pro Se*                Date
19338 133rd PL SE
Renton, WA 98058
elilyn@comcast.net
Phone: 206-661-8292

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-65

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the _____16th_____ day of _____May, 2024, I filed this SECOND

AMENDED COMPLAINT FOR A CIVIL CASE with the Clerk of the Court, and I hereby

certify that I served a true and correct copy of the document as follows:

Representing: InnoGames, Hendrik Klindworth, Michael Zillmer, and Richard Stephenson:

Diana Siri Breaux, WSBA #46112
315 Fifth Avenue, Suite 1000
Seattle, WA 98104
dianab@summitlaw.com

and Alan Behr (admitted Pro Hac Vice)
485 Lexington Avenue
New York, NY 10017
abehr@phillipsnizer.com
eadinolfi@phillipsnizer.com

☐ By causing a full, true and correct copy thereof to be MAILED in a sealed, postage-paid

envelope, addressed as shown above, which is the last-known address for the party, and

deposited with the U.S. Postal Service at Renton, WA, on the date set forth above;

☐ By causing a full, true and correct copy thereof to be HAND-DELIVERED by

_____ to the party, at the address listed above, which is the last-known

address for the party's office, on the date set forth above;

☐ By causing a full, true and correct copy thereof to be FAXED to the party, at the fax

number shown above, which is the last-known fax number for the party's office, on the date set

forth above.

☒ By causing a full, true and correct copy thereof to be EMAILED to the party(s), at the

email address(es) shown above, which is the last-known email address for the party's office, on

the date set forth above.

/s/ Penny Quinteros 05/16/2024
By: Penny Quinteros, Esq.  *Pro Se*
19338 133rd PL SE, Renton, WA 98058
elilyn@comcast.net

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-66

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

Phone: 206-661-829

*PLAINTIFF QUINTEROS'S THIRD AMENDED COMPLAINT*-67

Penny Quinteros
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

**Amended Complaint – Docket 52**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| Penny Quinteros _____ <br><br> _____, <br><br>              Plaintiff(s), <br>    v. <br><br> InnoGames, Hendrik Klindworth, <br><br> Michael Zillmer, Julie (Jill) Blan, <br><br> Richard Stephenson_____ <br><br> , <br><br>             Defendant(s). | CASE NO. C19-1402 RSM <br><br> AMENDED COMPLAINT FOR A CIVIL CASE <br><br> (28 U.S.C. § 1332; Diversity of Citizenship AND 28 U.S.C § 1331; Federal Question) <br><br> Jury Trial: No <br><br> _____ |

## Table of Contents

I.    PRELIMINARY STATEMENT ................................................................................ 2
II.   PROCEDURAL FACTS .......................................................................................... 4
III.  BASIS FOR JURISDICTION ................................................................................ 4
   A.   Diversity of Citizenship ................................................................................ 4
   B.   The Amount In Controversy ......................................................................... 5
   C.   Federal Question ........................................................................................... 5
   D.   Personal Jurisdiction .................................................................................... 6
IV.  VENUE ................................................................................................................... 10

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-1

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

V.    THE PARTIES TO THIS COMPLAINT ................................................................ 10
    A.    Plaintiff ...................................................................................................... 10
    B.    Defendants ................................................................................................. 11
VI.    BACKGROUND FACTS .................................................................................... 13
VII.    LEGAL CLAIMS ............................................................................................... 22
    A.    Negligence, Gross Negligence, Willful or Wanton Conduct ..................... 22
    B.    Defamation/Libel/Slander and Loss of Reputation .................................... 27
    C.    Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress 28
    D.    Gender Discrimination in Public Accommodation ...................................... 31
    E.    Fraud, Misrepresentation/Deceit, Unfair and Deceptive Trade Practices ......................... 33
    F.    Product Liability – InnoGames created an unsafe and dangerous product by producing the
    game *Forge of Empires.* ............................................................................. 39
    G.    Breach of Contract, Third-Party Breach of Contract, Promissory Estoppel .................... 44
    H.    Copyright Infringement and Privacy Violations ......................................... 49
    I.    Gender Discrimination in Employment ...................................................... 52
VIII.    PRAYER FOR RELIEF ...................................................................................... 53

Plaintiff, Penny Quinteros, proceeding *pro se*, for her Complaint against Defendants InnoGames, Hendrik Klindworth, Michael Zillmer, Julie (Jill) Blan, and Richard Stephenson, on knowledge as to their own actions, and otherwise upon information and belief, as follows:

## I.    PRELIMINARY STATEMENT

1.    This case is about an internet gaming company that unscrupulously exploits its players for profit. InnoGames, through its game Forge of Empires, uses a "freemium" game-model in which the game earns revenue by encouraging as many players as possible to play, and the company relies on the known, and purposeful addictive nature of the game to generate revenue from the small percentage of players who become addicted. Forge of Empires' target audience is the male demographic, and to encourage male players to join,

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-2

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

the company solicits players with pornographic ads offering women players for "aggressive sex." InnoGames created a system of rules that are ambiguous and enforced arbitrarily and capriciously by player-moderators and Community Managers. These rules allow Forge of Empires players and InnoGames staff members to collusively intermingle their behavior to target players in order to disrupt their player's valuable accounts and remove players from the game. The plaintiff was sexually harassed and targeted for removal by players with the active help and affirmative actions of InnoGames' staff members because of her gender and in order to appease the valuable male-demographic. InnoGames defrauds players through false promises that the game and the rules are fair, creates an unsafe product through addicting psychological techniques, fails to warn women about the dangerous environment created by their reckless pornographic solicitations, and allows their own employees to sexually harass women in the game.

2. Plaintiff's complaint can be generalized in three categories of legal action: torts claims, contract claims, and statutory violation claims.

3. Plaintiff seeks $1,205,000.00 in specified damages and unspecified damages as follows: $180,000 for loss of income due to an unsafe product; $500,000 for defamation claims and loss of reputation; $500,000 for emotional and physical suffering; and $9,000 for fraud plus $16,000 under Washington State Consumer Protection laws (triple damages provision); unspecified statutory or actual damages for copyright infringement; unspecified damages for employment discrimination; unspecified punitive damages; and unspecified interest and costs as allowable.

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-3

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

163

## II.    PROCEDURAL FACTS

4. Plaintiff filed initial complaint on Sept. 03, 2020 and complaint was dismissed as to Defendant Julie Blan on July 01, 2020. Plaintiff was given leave to refile within 30 days of dismissal. Plaintiffs InnoGames, Hendrik Klindworth, Michael Zillmer, and Richard Stephenson filed a motion to dismiss on July 27, 2020 which this amended complaint should make moot.

5. Because Plaintiff's complaint is almost entirely rewritten, Plaintiff is identifying EXACT ORIGINAL language via underlining.

## III.    BASIS FOR JURISDICTION

**A.    Diversity of Citizenship**

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 (a) (1-2), in that this is a case in which a citizen of one State sues a citizen of another State and citizens of a Foreign State and the amount at stake is more than $75,000 exclusive of interest and costs. It is therefore proper to be heard in federal court. Jurisdiction is proper in this case because the plaintiff is a citizen of the State of Washington, United States. The defendant Julie (Jill) Blan is a citizen of the State of Georgia, United States. The defendants Hendrik Klindworth and Michael Zillmer are citizens of Germany. The defendant Richard Stephenson is a citizen of the United Kingdom residing in Germany. The defendant InnoGames is incorporated under the laws of the foreign nation of Germany and has its principal place of business in Hamburg, Germany.

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-4

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

## B.    The Amount In Controversy

7.    The complaint exceeds the amount in controversy because the amount <u>at stake is more than $75,000 not counting interest and court costs</u>. The complaint seeks a prayer for relief as follows: <u>Loss of Income $180,000; Loss of Reputation $500,000 ; Physical and Emotional Pain and suffering $500,000; Defrauded amount $9,000 plus $16,000 of triple damages under Washington State Consumer protection laws.</u> The complaint also seeks statutory maximum damages for copyright infringement, unspecified damages for employment discrimination, punitive damages, court costs, and interest.

## C.    Federal Question

8.    Under 28 U.S.C. § 1338, a case that involves a copyright is proper to be heard in federal court. This case involves a question under Title 17 of the United States Code involving infringement of copyright because the defendants InnoGames, Hendrik Klindworth, Michael Zillmer, Julie (Jill) Blan, and Richard Stephenson engaged in direct, contributory, and vicarious copyright infringement. They knew transmission of my copyrighted photograph was occurring on the website game Forge of Empires and they had the ability to prevent its transmission. Julie Blan, on behalf of InnoGames and it's executive officers Michael Zillmer and Hendrik Klindworth,  materially contributed to the infringing conduct by either directly or allowing a moderator under their (Blan, Zillmer, and Klindworth's) supervision to give a link of the photograph to players for the initial transmission or alternatively they profited from the transmission of the photo by increased micro-transaction sales and declined to exercise a right to stop or limit it.

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-5

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

9. Under 28 U.S.C. § 1331, a case that involves a federal question is proper to be heard in federal court. This case involves a question under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1). Specifically Plaintiff alleges that defendant Julie Blan, on behalf of InnoGames, Hendrik Klindworth and Michael Zillmer and including other unnamed InnoGames employees discriminated against Plaintiff on the basis of sex when InnoGames failed to hire her for a Social Media Moderator position after she applied for the position on May 12, 2017 and was rejected immediately on May 13, 2017 without consideration because of her dispute over her photograph being distributed. This occurred despite Plaintiff being fully qualified for the position.

**D.    Personal Jurisdiction**

10. Personal jurisdiction is appropriate in this case because InnoGames, Hendrik Klindworth, Michael Zillmer, Julie (Jill) Blan, Richard Stephenson intentionally reached out to and solicited from the plaintiff and others in Washington State to conduct business through the internet games including *Forge of Empires*. This business involved entering into contracts with the plaintiff, receiving payments from the defendant for services and repeatedly and knowingly transmitting communications and computer data over internet computer networks to the plaintiff while she was in Washington State. Washington State's long-arm provision allows the assertion of jurisdiction over persons who transact business within the state or commit a tort within the state. Wash. Rev. Code § 4.28.185(1)(a-b) (2011). Due process requires, "in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-6

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Specifically this complaint alleges the following intentional minimal contacts from the defendants with the plaintiff necessary to sustain specific personal jurisdiction:

   a. Based on knowledge and belief, Plaintiff was solicited while in Washington to play *Forge of Empires* by InnoGames and through Hendrik Klindworth and Michael Zillmer. Plaintiff did not seek out *Forge of Empires'* website independently, but instead received an advertisement directly emailed to her while she was a resident of Washington soliciting her to come assist the game-developers with the beta-phase (pre-public-access) stage of the game. This is how Plaintiff came to play *Forge of Empires*. Hendrik Klindworth and Michael Zillmer on behalf of InnoGames knew, or should have known, that their company and employees under their direction and supervision were soliciting players for their beta-phase game play and these solicitations were sent to people including some to Washington State.

   b. Plaintiff has received hundreds of solicitation emails, hundreds of targeted advertisements specifically via Facebook, MSN, and other services as have other Washington State residents encouraging her and others in Washington to play *Forge of Empires*. Other Washington State residents plaintiff is acquainted with have received such solicitations as well. Plaintiff has watched Forge of Empires advertisements targeted to the Washington market on her local television stations. These represent

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-7

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

affirmative actions where InnoGames, with the sanction of Hendrik Klindworth and Michael Zillmer knowingly reached out to the State of Washington and the Plaintiff.

c. InnoGames solicited payments from the Plaintiff using AmazonPay services. As is a well-known fact, Amazon is a Washington State company headquartered in Seattle, Washington. This was an intentional act from InnoGames to reach out to Washington State and some of the transactions InnoGames had with plaintiff occurred via this payment method. InnoGames continues to maintain this form of bank account in Washington state. Hendrik Klindworth and Michael Zillmer as CEO and COO likely own portions of the value of this account as well through stock.

d. Plaintiff notified defendants InnoGames, Julie Blan, Hendrik Klindworth and Michael Zillmer that she was a citizen of Washington State via email correspondence in the spring of 2017 between Plaintiff, Julie Blan and Bartlomiej Wawro (an InnoGames employee). Plaintiff notified these employees that she had filed a complaint with the German Federal Anti-Discrimination Agency (Antidiskriminierungsstelle). As part of that complaint and via the email conversation, Plaintiff was required to identify her residence and citizenship status. This complaint was responded to by legal-staff of InnoGames (presumably under the supervision of the CEO and COO) yet the defendants listed continued to

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-8

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

solicit Plaintiff for business, encourage her to purchase their services, contact her for harassment.

    e.  Plaintiff sent an electronic copy of her Washington State Driver's License to the "Co-Community Manager" referred to as "Sgt. Bothari" via an InnoGames support ticket on June 21, 2017 when he questioned whether her "true name" was indeed "Penny." Julie Blan's responsibility was to supervise and job-share responsibilities this employee as his "Co-Community Manager" at that time. This license was referenced at least four times in conversation with Julie Blan. Despite this notice, she continued to facilitate business transactions, continued in her harassment, and performed the other affirmative actions as listed in the below complaint.

    f.  Plaintiff sent in a statement via Forge of Empires Support Tickets that she was a citizen of Washington State and she believed the actions taken by InnoGames staff and moderators were illegal based upon the laws of her state. Both Julie Blan and Richard Stephenson stated that they had read these "legal claims," by denying they were responsible for the matter. Yet these two defendants continued to reach-out to plaintiff to facilitate business transactions, harass plaintiff, and perform the other actions as listed below in the complaint.

    g.  Based upon information and belief, Plaintiff alleges that InnoGames uses "cookies" "ISP-locator-services" and other technological tools to identify

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-9

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

where players are playing from and to solicit a target market's players (such as players in Washington State) for future business. Plaintiff believes all defendants have the ability to access this information and that specifically Julie Blan has reviewed it as early as June 2016.

## IV.    VENUE

11.  Under 28 U.S.C. § 1391, venue is appropriate in this case because a substantial part of the events giving rise to the action occurred in Washington State. Plaintiff played the game almost exclusively from Washington State and the communications with the defendants occurred while plaintiff was in Washington State. Furthermore, as described above, all of the defendants are subject to personal jurisdiction in Washington.

## V.    THE PARTIES TO THIS COMPLAINT

**A.    Plaintiff**

12.  Penny Quinteros, also known as "TwoCents," is an individual who resides at 19338 133rd PL SE, Renton, Washington. Her telephone numbers are 206-661-8292 or 253-854-2788. Plaintiff is a citizen of Washington. Plaintiff is a 39 year old married woman with two children. Plaintiff is currently proceeding *pro se*.

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-10

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

170

**B.    Defendants**[1]

13. Upon information and belief, Defendant InnoGames. GmbH is a limited liability public company of Germany. Its principal place of business is Friesenstraße 13, 20097 Hamburg, Germany. Its telephone number is +49-40-788-9335-0. InnoGames is a $500 million a year revenue company specializing in "freemium" games available to access via internet browser or mobile app. One of the games produced by InnoGames is *Forge of Empires*. InnoGames solicits customers world-wide and focuses on the lucrative United States market. ("Freemium" refers to games that provide basic content for free, but entice players to purchase and spend in-game currency in order to have access to premium game features and content, advance faster, and generally allow easier game-play.)

14. Upon information and belief, Defendant Hendrik Klindworth is an individual who resides in Hamburg, Germany and is a citizen of Germany. His business address is Friesenstraße 13, 20097 Hamburg, Germany. His telephone number is +49-40-7889335-0. He is the Chief Executive Officer of InnoGames and a co-founder of the company. In his position as an executive officer he oversees all actions of InnoGames including its staff, advertising, design, products, distribution and customer relations.

15. Upon information and belief, Defendant Michael Zillmer is an individual who resides in Hamburg, Germany and is a citizen of Germany. His business address is Friesenstraße 13,

---

[1] Defendants InnoGames, Hendrik Klindworth, Michael Zillmer, and Richard Stephenson are represented by Diana Siri Breax of SUMMIT LAW GROUP, PLLC 315 Fifth Ave S. Suite 1000, Seattle, WA 98104 AND Alan Behr (admitted Pro Hac Vice) and Elizabeth Adinolfi (admitted Pro Hac Vice) of PHILLIPS NIZER LLP 485 Lexington Avenue, New York NY 10017.

Defendant Julie Blan is represented by Philip A. Hass of HASS LAW, P.S. 506 Second Ave. Suite 1400, Seattle, WA 98104.

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-11

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

171

20097 Hamburg, Germany. His telephone number is +49-40-7889335-0. He is the Chief Operating Officer of InnoGames and a co-founder of the company. In his position as an executive officer he oversees all actions of InnoGames including its staff, advertising, design, products, distribution and customer relations.

16. Upon information and belief, Defendant Julie (Jill) Blan is an individual who resides in and is a citizen of Georgia, United States. Her address is 22 Bollen Rd, Rockmart, GA 30153. At the time of the events she was the United States Community Manager for InnoGames' game *Forge of Empires*. She managed all interaction with players from the U.S., acting as the highest-level of interaction with the company that the over 1 million U.S. Players could achieve effectively acting as a "stone-wall" between players in the United States and InnoGames staff members in Germany. She was responsible for ensuring that InnoGames' moderators and she met the legal requirements for privacy-disclosures and access to confidential records. Her primary interaction with players was through "Support Tickets" and her supervising and monitoring the game forum. She has communicated via electronic message on Jan 17, 2017 "I am the Community Manager. I am responsible for all issues related to the game, players, and moderators." On Jan. 24, 2019 she stated, "I am the Community Manager of the U.S. server and an InnoGames employee. As such, all aspects of the game, rules, players and moderators are my responsibility." On Nov. 28, 2016 she wrote, "You can write to Innogames... however you will be directed back to me as I am the Community Manager for the U.S. server and responsible for the game on this server." The Community Management of the U.S. server is responsible for being the final arbiter of any rules disputes as well as fairly enforcing

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-12

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

172

the rules to create a fun and fair environment. She was responsible for enforcing and managing the Terms & Conditions. In addition as the U.S. Community Manager, Julie Blan directed and supervised all moderators' activities for the US server. She interacted with other moderators and other Community Managers (nationally and internationally based) via Skype and email, coordinating activities and discussing players and their punishments. She was generally responsible for the game on the U.S. server including monitoring for cheating, reporting game-bugs, modifying the system to censor profane language, and transmitting design ideas to the game-designers to facilitate changes in the game.

17. Upon information and belief, defendant <u>Richard Stephenson</u>, is a citizen of the United Kingdom currently residing in Germany. His business address is His business address is Friesenstraße 13, 20097 Hamburg, Germany. His telephone number is +49-40-7889335-0. He is the <u>International Community Manager</u> of <u>InnoGames</u> for *Forge of Empires*. He also served as assistance to Julie Blan in her role as Community Manager for the US server. As such he had responsibility similar to Julie Blan's to monitor the game, players and supervise the moderators. He interacted with other moderators and Community Managers via Skype and email, coordinating activities and discussing players and their punishment. He was responsible for ensuring InnoGames moderators and he met the legal requirements for privacy-disclosure and access to confidential records.

## VI.   BACKGROUND FACTS

18. Plaintiff repeats and realleges paragraphs 1 through 17 hereof, as if fully set forth herein.

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-13

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

19. Upon information and belief, Plaintiff states that she began playing the browser-based game *Forge of Empires* in its pre-public-access beta-phase stage of development sometime in 2011 or 2012.  In 2011 or 2012 the plaintiff registered for a *Forge of Empires* account with the player name "TwoCents."

20. *Forge of Empires* is designed, produced and managed by InnoGames. It is a game available to access via internet browser or mobile app. It is designed so that you build a "city" starting in the Stone Age and progressing through quasi-historical eras. As a part of the game-play players need to communicate and rely on social interactions in order to proceed. One major form of social interaction is encouraging players to group into "guilds." Another form of communication is "global chat" and a separate "message system." Further players assist each other with "support actions" such as "aiding" friend's cities or trading in-game goods in a marketplace. Players also compete via various methods including guild-versus-guild fighting and compete for personal or guild ranking. *Forge of Empires* is free to play, but puts specific obstacles in place to free-play such as limiting premium items to in-game currency and giving incentives towards advancement for in-game currency purchases. The in-game currency is termed "diamonds," and is purchased through the game using various methods such as AmazonPay, Paypal, or a direct credit-card purchase. *Forge of Empires* is designed to promote excessive game-play by penalizing infrequent play. This occurs in instances such as making your city's resources produce more goods if you log in more frequently and providing "special event" buildings that can only be obtained through daily play or diamond purchases, and being unable to complete certain features (such as settlements) without consistent (generally

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-14

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

174

every 4-hour) gameplay. Further the game resets the guild-versus-guild fighting area every day at 8pm EST in order to encourage players to come fight or lose their prior time/troop/money investments. The game also encourages frequent gameplay by having to manually click all items in the game without the use of bots or macros which are against the game rules.

21. Plaintiff is unaware of any terms and conditions agreed to by "clickwrap" agreement at this time, when she began playing *Forge of Empires*, but believes there were none, or they were different than they are now. However Plaintiff did read the Terms and Conditions, the Privacy Policy, The Game Rules, and the InnoGames Website statements of fairness upon her first "in-game warning" occurring approximately July 13, 2016. Plaintiff perused the Terms and Conditions and Privacy Policy, but read the game rules well as well as the Website.

22. Plaintiff played the game for some time, then left and returned in or around 2016 with the same player name.

23. At that time the plaintiff does not believe she agreed to any new terms and conditions but she remembers a pop-up blocking her re-entry into the game. Plaintiff is unsure if she clicked "accept" on the pop-up Terms and Conditions, but she remembers opening the Terms and Conditions and believes she likely closed the game-window and when she reentered the pop-up was gone.

24. Other players have agreed to the Terms and Conditions and still other players are able to access the game without clicking "accept" on the Terms and Conditions. For a time,

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-15

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

players who started the game via mobile-app were only asked by InnoGames to agree to the Privacy Policy and the Terms and Conditions were not visible to these players.

25. Plaintiff incorporates by reference the InnoGames Terms and Conditions, Privacy Policy, and *Forge of Empires* Rules to be filed by separately as an exhibit. Plaintiff further incorporates several screenshots images and support-ticket interactions to be filed separately as an exhibit. Plaintiff incorporates by reference images of examples of the pornographic advertisements to be attached separately by exhibit. Plaintiff further incorporates an affidavit made by a prominent *Forge of Empires* player of the veracity of several events listed in the complaint to be filed separately as an exhibit.

26. Plaintiff played *Forge of Empires* almost every day without interruption from 2016-2019 for over 10,000 hours of game play.

27. During the course of this time and unbeknownst to the plaintiff, *Forge of Empires* was contracting with third-party advertisers who solicited mostly male players into the game with pornographic advertisements that illegally mislead the public using language such as: "brutal sex" or "aggressive sex" would occur in the game, and "Most of the characters in this game are sexually attractive females who display sexually explicit behavior." These statements were accompanied by nude or nearly nude females. At the same time, InnoGames through its written *Forge of Empires* rules and by proxy Hendrik Klindworth and Michael Zillmer who were responsible to supervise the rules-development made statements that "following the rules creates a fun and fair environment for everyone." Julie Blan, Richard Stephenson used and enforced these rules often referring to them with

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-16

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

hyperlinks and other unnamed moderators under their supervision made statements making assertions to the plaintiff that the game was "family friendly."

28. Upon information and belief, there is evidence that at least some of the community, who sexually harassed Plaintiff, was formed by players responding to these advertisements.

29. Plaintiff was unaware of these advertisements and if she had known she either would've chosen not to play the game, or to play with much more caution.

30. Upon information and belief, InnoGames, Hendrik Klindworth, Michael Zillmer, Julie Blan and Richard Stephenson were aware of these advertisements or at least had notice of them through player reports on the game forums as early as 2015 and continuing through 2019. It was specifically the jobs of Julie Blan and Richard Stephenson to monitor these forums and report concerning information to InnoGames. Hendrik Klindworth and Michael Zillmer had knowledge of these advertisements because at some point the Terms and Conditions for all of InnoGames' products was changed at some point during Plaintiff's game-play to include a phrase expressly distancing InnoGames from, "the content of all websites that contain direct or indirect references (so-called "links") to our products…" (Terms and Conditions Art 15.8). It is logical to assume that some of the pornographic advertisements were the content that InnoGames sought to distance itself from and that the CEO and COO should be aware of changes to the entire company's Terms and Conditions.

31. Upon information and belief, in or around July 2016, the plaintiff began to be harassed by other players and harassed directly by players who were secretly InnoGames staff moderators, regarding her gender. Other players, and moderators themselves supervised

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-17

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

177

by Julie Blan and Richard Stephenson made statements such as "you're not actually a woman, you're just faking it [paraphrasing]." These players and staff members accused the defendant of actually being a man and started to solicit the plaintiff's friends and co-players to no longer engage with her socially or for game activities. They used the specialized, interactive game features, such as "guild-versus-guild" and "friends-list" as tools to harass Plaintiff. These other players, and secret InnoGames staff moderators, told the plaintiff that she had to prove she was a woman by sending a photograph of her breasts to them. They told her this was the only way they would stop harassing her. The plaintiff fell victim to this manipulation, and relying on statements from InnoGames and Julie Blan that the game was fun, fair, and the rules were enforced equally, sent a picture of her breasts (in a somewhat see-thru bra) to what she considered a friend and neutral third-party player, known as Gensmoky, via a screenshot link.

32. Plaintiff states upon information and belief, that an InnoGames moderator accessed this screenshot link through a private InnoGame feature known as the "report" system when this Third-Party reported the "whisper" that it was sent in. This unknown moderator then released this private and copyrighted photograph to other players in the game. It was specifically Julie Blan's job to supervise these moderators to ensure acts like this data-breach did not take place. Instead of supervising and properly dealing with the incident, she instead hid the information from Plaintiff, lied to the Plaintiff about it, and covered up the fact by making up derogatory statements about Plaintiff to repeat to the other player-moderators and Community Mangers via Skype and email. Julie Blan also attempted to

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-18

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

cover up the malfeasance of her staff by using the "ban" feature in the game to target Plaintiff.

33. Plaintiff did not send the photograph to anyone other than the neutral third-party player, Gensmoky, who had no motive or reason to transmit the photo and who also apologized to the Plaintiff for believing incorrect information. Plaintiff has communicated with Gensmoky who insists he did not transmit the photograph to anyone. Plaintiff believes this is a credible statement. Plaintiff does not have GenSmoky's contact information, however believes upon discovery it could be obtained from InnoGames servers.

34. Upon information and belief, InnoGame moderators have a history of accessing private report information for their own personal benefit and reasons and transmitting this information to other players. This has occurred on at least two other occasions. One was where a game-moderator leaked confidential information about the name of the account Plantiff's minor son was playing on to unfriendly players. This allowed them to identify that he was a minor child, remove him from the guild he was playing in, and taunt him in global chat. Another instance was one in which a moderator, who had a grudge against Plaintiff and her friend Aprusfire, accessed Aprusfire's data report indicating that he was appealing his permanent ban and released it to unrelated players. This demonstrates a pattern of behavior in which moderators accessed confidential information to target Plaintiff and her friends. There is further evidence that this system of moderator-player bias has occurred on other InnoGames such as *Tribal Wars* against a player by the name of Chase Xander, living in New Mexico.

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

35. Moderators further have in-game agendas. Since they are both players and InnoGame staff members, the same alliances, enemies, grudges etc. that other players have. At least 3 known current or former moderators have had a grudge against Plaintiff for her in-game activities in guild-versus-guild and global chat. Some moderators have targeted the Plaintiff because she doesn't display 'typical female' behavior.'

36. Moderators are generally players who have applied for and been selected as "volunteer" customer service agents. Although moderators are termed "volunteers" by InnoGames, they are compensated with premium game features and in-game currency making them InnoGames staff members. They are given permission to access player information based upon tiered-rankings and seniority. They communicate amongst themselves and with the Community Manager via Skye and email. These communications often "leak" back to the player community.

37. Moderators generally cannot moderate any world they have an account on, however, moderators can secretly create more than one account (alternate or "alt") accounts like any other player. Additionally they can be friends across world with players on a world they are moderating on. They are allowed to respond to rule violations reported by players on a "gut instinct" level to see if something feels offensive, allowing for a lot of bias, arbitrariness, and capriciousness on rule enforcement.

38. Community Managers are paid staff members whose job includes supervising moderators. In addition to the above responsibilities listed for the defendants Julie Blan and Richard Stephenson.

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-20

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

39. A barrage of other players then proceeded to obtain the photo as evidenced by their descriptions of it, and statements that they had seen it. They openly laugh at and harass the plaintiff using statements such as, "what you are is a dumb sluuuuut,""butthurt dumb ****biotch," and "Inno won't ban 2C [TwoCents] because she keeps sending them photos." This offensive language was directed at the plaintiff repeatedly and consistently from 2016-2019. The plaintiff reported the photograph and its transmission to InnoGames in or around August of 2016 and again in November of 2016. Plaintiff also specifically informed Julie Blan that it had been a moderator who had leaked the photograph to the players. Despite the fact that it [the photograph] was still being transmitted amongst players, Platiff was told by InnoGames , specifically by Julie Blan and moderators under her supervision, that nothing could be done about it even though it is a direct violation of InnoGames Terms and Conditions.

40. Julie Blan in her role as Community Manager facilitated, encouraged and supported the harassment of Plaintiff. She encouraged other players to "report" Plaintiff even if transgressions were minor or non-existent. She allowed InnoGames to be used as a tool of harassment by allowing a mob of players to repeatedly use its report function that it set up and designed to harass Plaintiff in order to deny her access to the game. At the same time Julie Blan stated on several occasions that she would take action to stop the harassment of Plaintiff. The game moderators and community manager were lax in their punishment of other players and instead focused on punishing the plaintiff when she showed outrage or offense over the situation.

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-21

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

41. A game moderator accused the plaintiff of having a "vulgar upbringing." Other game moderators accused the plaintiff of "drama" or allowing her emotions to run high. These are subtle, yet offensive slights based upon Plaintiff's gender.

42. Game moderators, Julie Blan, Richard Stephenson, and other InnoGames staff are aware of plaintiff's gender because of her reports regarding the theft of the photograph of her breasts and reports of harassment over her gender.

43. Game moderators, Julie Blan, Richard Stephenson, and other InnoGames staff and players are generally aware of other players genders because of the pronouns used when addressing these players and their avatar picture selections. Although they may occasionally not represent the "true" gender of players, they are generally analogous. Seeking to appease the players in the game who present as male will be statistically very similar to catering to players who present as male in real life.

## VII.   LEGAL CLAIMS

**A.**   **Negligence, Gross Negligence, Willful or Wanton Conduct**

44. Plaintiff repeats and realleges paragraphs 1 through 43 hereof, as if fully set forth herein.

45. The negligence, gross negligence, or intentional willful or wanton conduct of InnoGames, Hendrik Klindworth, Michael Zillmer, Julie Blan, and Richard Stephenson can be characterized as having reckless disregard when they knew or should have known of sexually explicit advertisements promoting their game *Forge of Empires*. These sexually explicit advertisements created an unsafe environment for women players. This

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-22

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

environment led to ongoing and continuing sexual harassment due to plaintiff's gender for 3 years continuing until today.

46. The negligence of InnoGames, Hendrik Klindworth, Michael Zillmer, Julie Blan, and Richard Stephenson can further by characterized as creating an dangerous system wherein moderator-players were given access to private player information despite potential biases and were not properly supervised in their access to prevent them from sexually harassing Plaintiff and intentionally accessing and transmitting Plaintiff's private photograph.

47. The negligence of InnoGames, Hendrik Klindworth, Michael Zillmer, Julie Blan, and Richard Stephenson can further be characterized as *negligence per se* because InnoGames and each of its executive officers and employees has a legal duty under several Washington State, US, and International laws to protect my confidential information. (RCW 9.73.030, Electronic Communications Privacy Act (1986), Computer Fraud & Abuse Act (1986), European Union Data Protective Directive etc.)   Instead of protecting my private conversation and photograph-link reported to them, they allowed an InnoGames staff moderator to access the information and release it to third-party players. After the information was released Julie Blan and Richard Stepehenson attempted to cover-up the incident further exacerbating Plaintiff's injury.

48. InnoGames had an affirmative duty, based upon the business-customer relationship it created with Plaintiff, not to intentionally, recklessly, or negligently harm plaintiff with an unsafe environment created by their misleading advertisements. Hendrik Klindworth, Michael Zillmer, Julie Blan, and Richard Stephenson had an affirmative duty based upon

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-23

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

their failure to supervise and properly stop the unsafe advertisements when they became aware of them and also when they failed to warn Plaintiff that men had been solicited into the game who would be seeking out women such as the Plaintiff for sexual activities.

49. Defendants InnoGames, Hendrik Klindworth, Michael Zillmer, Julie Blan, and Richard Stephenson failed to act as a reasonably, prudent people would under the circumstances or even exert any level of care. In fact each of the named defendants affirmatively acted to cover up and obscure the dangerous environment created by InnoGames' solicitations. Hendrik Klindworth and Michael Zillmer made attempts to legally distance themselves from the advertisements, but allowed their company to continue to pay to run these illegal, misleading, and dangerous advertisements. Julie Blan and Richard Stephenson had a duty to review the forum reports to be aware of the advertisements made as early as 2015, yet they later made affirmative statements to the Plaintiff that the game was fun, fair, and was "family friendly" and suitable for all ages.  In addition to their own statements, Defendants Richard Stephenson and Julie Blan supervised a moderator, by review of Plaintiff's prior tickets, who advised Plaintiff on Dec. 12, 2017 that she should "keep in mind we advertise this as a game anyone can play and as a result many children play this game…we try to keep the chat to a PG rating to protect players and we ask that you abide by those rules." These are affirmative statements and actions that a reasonably prudent person would not have taken knowing that the game was in-fact advertising its women players as sexual-pawns.

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-24

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

50. Defendants Julie Blan and Richard Stephenson made affirmative statements to Plaintiff that they would enforce the rules equally against all players in order to prevent the harassment of the plaintiff, which created an affirmative duty to act.

51. Based upon information and belief, but for InnoGames solicitations of men advising them that women players were available for "aggressive sex," etc. and but for InnoGames failure to properly set up a customer relations system in which players of the game didn't also have access to confidential information, the injuries to plaintiff such as the sexual harassment and theft of her photograph would not have occurred. This includes that the damages to the plaintiff would not have happened but for Hendrik Klindworth's, Michael Zillmer's, Julie Blan's, and Richard Stephenson's actions to properly fulfill their given roles to prevent InnoGames from engaging in such advertisements and activities.

52. Plaintiff is a foreseeable plaintiff because Plaintiff is a woman who was approached and later harassed in a sexual manner, exactly as the advertisements promise would occur. It is also foreseeable that a player who is secretly a moderator might have a personal vendetta against a player such as Plaintiff and use their private information accessed through the report system created by InnoGames to carry out malfeasance against a player like the Plaintiff.

53. Plaintiff's physical damages are the loss of her interests in her property i.e. the loss of exclusive control of her intellectual property rights in her photograph since copyrighted. This loss of interest in property is accompanied by foreseeable emotional damages that might occur from the loss of such personal property. The foreseeability of these emotional damages is reinforce by the fact that InnoGames specifically inserted into their

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-25

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

Terms and Conditions a clause stating that players were prevented from transmitting photographs of others without written permission indicating that InnoGames was aware this activity might cause emotional harm. (Terms and Conditions Art. 12.3 Bullet point 11).

54. Plaintiff further alleges physical injury in the form of headaches (induced from sinus injuries from daily crying over the course of 4 years), weight gain and related illnesses associated with it, high blood pressure, and other physical manifestations of stress.

55. Plaintiff's emotional injuries include despondency, depression, anxiety, suicidal thoughts and other thoughts of hopelessness and grief caused by the harassment endured over the theft of her private photograph, loss of her reputation as caused by the incident, and general sexual harassment induced by the defendant InnoGames, Julie Blan, Richard Stephenson and vicariously Hendrik Klindworth and Michael Zillmer through their failure to properly supervise, knowledge and acquiescence to allow the reckless advertisements and moderator-system to continue.

56. InnoGames, Hendrik Klindworth, Michael Zillmer, Julie Blan and Richard Stephenson are vicariously liable for the harassment plaintiff suffered at the hands of third-party players in addition to the harassment plaintiff suffered at the hands of secret moderators. Although the harassment of these players may be an intervening action of negligence, it is not a superseding action in that it was a foreseeable result that players may harass a woman when they are solicited to do so and when they are given a copy of the woman's breasts by a moderator who improperly accessed that confidential information.

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-26

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

**B.**     <u>**Defamation/Libel/Slander and Loss of Reputation**</u>

57. Plaintiff repeats and realleges paragraphs 1 through 56 hereof, as if fully set forth herein.

58. Upon knowledge and belief, defendants Julie Blan and Richard Stephenson directly committed libel and damaged plaintiff's reputation when they made defamatory remarks that the plaintiff was "crazy," "a liar," and disparaged plaintiff's mental status in their Skype conversations and emails amongst other Community Managers and player-moderators. Julie Blan and Richard Stephenson were aware that the player-moderators would carry this information back into their game-play and it would be "leaked" to the gaming community where Plaintiff played with her husband, children, brother in law and other friends and family.

59. Defendants InnoGames, Hendrik Klindworth, Michael Zillmer, Julie Blan, and Richard Stephenson are responsible for the libelous statements of third-party players and unknown moderators when they <u>continually and repeatedly questioned plaintiff's gender, solicited a photograph of plaintiff's breasts in order to make her prove her gender; they transmitted a photo of her breasts amongst themselves without permission; the players and moderators sexually harassed the plaintiff regarding the photograph; and taunted her in relation to the photo, her gender and her failure to hide the incident in shame </u> because these defendants each performed affirmative actions that led to and encouraged the statements to be made. They allowed the photograph to be negligently accessed by a moderator which in-turn led to the comments regarding plaintiff as a "sluuuut" "stupid dumb biotch" "a bad mother" randomly solicited strangers for sex etc. These comments are libel *per se* because they are derogatory about Plaintiff's sexual habits and do not

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-27

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

187

need to be proven false. Additionally these statements had no privilege because they were not required under any circumstances and they were not protected speech, either under the First Amendment or Communication's Decency Act. They were not protected by the Communication Decency Act Section 230 because none of the defendants has protection under the Act since they each induced, or were vicariously liable for inducing, encouraged and affirmatively acted to create and assist in generation of the harassing statements and actions. Therefore the publications cannot be treated as "user-generated content." Additionally since some of the harassing statements were made directly by player-moderators these statements are not "user-generated content," but content created by staff of InnoGames.

60. Plaintiff seeks further discovery to determine exactly which players were also moderators in order to finalize which statements were made by third parties and which statements were made by moderators. Plaintiff has just on July 9th, 2020 received confirmation from a credible source that at least two of the player-moderators were responsible for several of the harassing, derogatory and libelous statements about the Plaintiff.

C.  **Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress**

61. Plaintiff repeats and realleges paragraphs 1 through 60 hereof, as if fully set forth herein.

62. Upon information and belief, Julie Blan and Richard Stephenson committed intentional infliction of emotional distress when they negligently allowed her private photograph to be released to players in the game and then attempted to cover up the incident by seeking to get Plaintiff to acquiesce and accept the harassment. When I made statements to report

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-28

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

the moderator's improper behavior they individually made statements alleging that no moderator had done anything improper. They each affirmatively attempted to ignore Plaintiff by repeatedly closing her tickets without response when she reported these incidents. They attempted to make plaintiff acquiesce to the harassment by repeatedly banning her, denying her the service and use of her game account, when she object to the harassing statements.

63. Defendants InnoGames and because of their knowledge and acquiescence of the unsafe environment and events occurring, Defendants Julie Blan, Richard Stephenson, Hendrik Klindworth and Michael Zillmer, recruited male players and potentially moderators into the game with sexual advertisements promising the Plaintiff and women like her as sexual pawns for aggressive sex, then when these same recruited players acted upon the promises made in the advertisements, Defendants Julie Blan and Richard Stephenson intentionally assisted the male players in using the game-features such as the "ban" feature to harass Plaintiff.

64. Defendants Julie Blan and Richard Stepehenson specifically attempted to inflict emotional distress upon Plaintiff by knowing of the game advertisements and discrimination occurring against Plaintiff and affirmatively helping the harassers in their goal of getting Plaintiff banned. They each individually promised they would review the harassing statements and punish the offending parties if they had broken the rules, which they had by engaging in sexist and offensive language. The Defendants Julie Blan and Richard Stephenson then failed to keep their promises.

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-29

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

65. Defendants InnoGames is vicariously liable for this the infliction of emotional distress and reckless conduct leading to emotional distress committed by its employees in the course of its business. Hendrik Klindworth and Michael Zillmer are vicariously responsible for this intentional conduct because they affirmatively set up a system in which all customer complaints were "stone-walled" with the Community Managers and could not be brought further. This is reinforced when Julie Blan stated to me that as a Community Manager, even if I sent information to InnoGames in another fashion or called them, I would be redirected to her since she was the Community Manager and thus the ultimate arbitrator of complaints for players in the United States. Further the actions of "third-party" players cannot be said to be independent of the actions of InnoGames, Julie Blan, Richard Stephenson, Hendrik Klindworth and Michael Zillmer because the tools of the game themselves were part of the harassment, the harassment was encouraged and exacerbated by Julie Blan and Richard Stephenson and there was a collusive intertwining of actions that can no longer be said to be independent of each other, amounting to a civil-conspiracy. InnoGames created the system and had a profit-motive to protect the large number of players harassing the Plaintiff with their game-service even if the Plaintiff herself suffered because of it.

66. The instances here individually are, and also cumulatively add up to outrageous conduct. Using their positions of power over the Plaintiff and her valuable game-account, the Defendants Julie Blan and Richard Stepehenson attempted to use this leverage over the Plaintiff to get her to acquiesce and accept the harassment she was suffering at the hands of players and secret moderators so as to make their jobs easier.

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-30

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

190

67. Plaintiff suffered depression, anxiety, thoughts of suicide and other diagnosed emotional disorders that amount to severe and extreme distress. Plaintiff has suffered uncontrollable weeping episodes almost every day since July of 2016. Plaintiff has been diagnosed with these conditions as a result of the harassment and events occurring alongside and intermingling with the harassment by Forensic Psychologist David Dixon. Plaintiff will provide a report upon the discovery phase of the trial.

68. Plaintiff asserts these reactions are reasonable under the circumstances because they are not a result of simply having unpleasant social interactions on a video game, but instead result from theft and release of plaintiff's private photograph, the ongoing and sustained harassment engaged in by the defendants as stated above, the fact that Plaintiff's husband, children, nephews, and two brother in-laws witnessed the harassment directly as well as thousands of game-playing strangers, the attempts to socially isolate the Plaintiff from her entire friend-group, and the general pressure exerted by a large and powerful company upon Plaintiff to capitulate to her harassers or lose her valuable game-account. Studies have indicated that women who are sexually harassed in online video games experience more severe emotional distress than when experiencing other forms of offensive remarks.[2]

D. **Gender Discrimination in Public Accommodation**

69. Plaintiff repeats and realleges paragraphs 1 through 68 hereof, as if fully set forth herein

_____

[2] https://www.researchgate.net/profile/Jesse_Fox3/publication/297485534_Women%27s_experiences_with_general_and_sexual_harassment_in_online_video_games_Rumination_organizational_responsiveness_withdrawal_and_coping_strategies/links/56e96bf208ae77f87278fd8d/Womens-experiences-with-general-and-sexual-harassment-in-online-video-games-Rumination-organizational-responsiveness-withdrawal-and-coping-strategies.pdf

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-31

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

70. Plaintiff's gaming experience was substantially different and harder than that provided to male players because of her gender. Defendants InnoGames, Hendrik Klindworth and Michael Zillmer built a game that was capable of being used as a tool to target female players. Defendants Julie Blan and Richard Stephenson were aware of this use of the game-design to create a different and harder experience for female players but did nothing to make the game equally accessible to people of all genders and in-fact they affirmatively helped "ban" female players based on the discriminatory design of the rule-structure and how it was enforced in actual game play as well as the discriminatory "report" system. In-fact, InnoGames changed the report around 2019 to only allow a limited number of reports to be filed at any given time, showing they are now exerting some control over this "mass reporting" attempt to harass players including the Plaintiff.

71. In this case, the *Forge of Empire* interactive game was used to harass players when they were allowed to use their own accounts to repeatedly and persistently attack any "guild" that Plaintiff was in simply because the harassers did not approve of gender. This made Plaintiff a pariah in the game and made an essential element of game-play (joining a guild) unavailable to her. Additionally Plaintiff's in-game "friends" who were relied on to materially play the game were targeted for attacks to induce them to remove Plaintiff and no longer provide the needed game assistance. (See Attached Affidavit(s)).

72. InnoGames set up and created the "report system" in a manner that allowed gender-discrimination to occur. Even if InnoGames cannot control who is reported using the feature as it is currently designed, the design itself allows "mobs" of players to gang up on unpopular gaming targets such as female players and report every activity regardless

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-32

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

of they break the rules or not. InnoGames could have designed a better system in which to enforce game rules such as having non-player customer service agents generally monitor the game interactions. The amount of reports received by the moderation-team is a significant factor in how they determine who to punish and ban from the game. In this instance Plaintiff was banned during periods of time for quoting T.S. Elliot poetry that was not offensive, she was banned for typing the asterisks (*) key, she was banned for using the exact same quote other players had previously used without bans, and she was banned for using global chat to say "do not buy goods from this player." Furthermore Plaintiff was banned from the game for incidents supposedly occurring during periods of time that she was not even playing. Plaintiff also admits offensive language at times and does not contest the statements were against the rules, but affirms that male players were treated more leniently for same or similar offensive language.  These incidents show how the structure of allowing the players to control the "report" feature led to fundamental denial of service to the Plaintiff. In short, because the players are allowed to participate in the community with unchecked sexism, and they know the gender of the people they are reporting, due to avatar pictures and gender pronouns, the pool of players reported to the moderators is unfairly skewed against the female demographic, meaning female players receive game-punishments per rata more often than their male counterparts.

**E.    <u>Fraud, Misrepresentation/Deceit, Unfair and Deceptive Trade Practices</u>**

73. Plaintiff repeats and realleges paragraphs 1 through 72 hereof, as if fully set forth herein

74. <u>InnoGames</u>, Hendrik Klindworth, Michael Zillmer, Julie Blan, and Richard Stephenson <u>misrepresented their game as fair. They engaged in practices such as only punishing</u>

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-33

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

players for rules violations if they were reported by other players that are inherently unfair. They changed their rules without notice. They created rules meant specifically to target the plaintiff. They did not equally apply their rules to all players. They targeted the plaintiff specifically for violations that they do not sanction other players for.

75. In the course of creating their gaming company, InnoGames, Hendrik Klindworth, and Michael Zillmer have made statements that their game is fair and the rules are equally applied. They created as one of their "core values" that: "Fair Play: We show fair behavior to our players, to our partners and the whole company." Additionally they have listed on their website rules section a statement saying, "Following the rules helps to create a fun and fair environment for everyone," and "These rules can be adapted to different cases in the interests of maintaining fair play within the game."

76. Julie Blan and Richard Stephenson sent messages to the Plaintiff with links to the above statements, copied the last two of the above statements verbatim, and often invoked the "fairness" of the game in their communications with her. It was Julie Blan and Richard Stephenson's job to enforce the rules, so they would be in a direct position to know exactly how the game was unfair while they were making their assertions.

77. Plaintiff read these statements at least as early as July 2016 and relied on the idea that the game was fair to make a majority of her individual purchases amounting to approximately $9,000. Plaintiff would not have spent money on the game if the rules indicated the game was unfair or were silent as to the issue of fairness. Plaintiff also relied on the statements to endure rules-punishments which denied her access to her game-property.

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-34

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

78. InnoGames is aware that their game is fundamentally unfair because of its design. If InnoGames relies on the players to "report" each other, then some players, unpopular ones, will be punished for rules violations when popular players are not punished for the exact same violations. This is general knowledge about the company that all of their executive officers and Community Managers know, including Hendrik Klindworth, Michael Zillmer, Julie Blan, and Richard Stephenson. For example, upon information and belief, Plaintiff quoted the movie *Deliverance* saying "He got a real pretty mouth, ain't he?" Plaintiff was banned for her statement specifically because of her quoting this line. Several months later a more popular player said the exact same quote in the exact same way and was not banned or otherwise punished at all.

79. InnoGames, Hendrik Klindworth and Michael Zillmer's motive was to deceive the Plaintiff and others with these false promises of fairness to make money through increased business. Julie Blan and Richard Stephenson's motive was to purposefully attempt to stop the Plaintiff from making legitimate complaints in order to hide the malfeasance of the player-moderators and to make their job easier by not having to respond to Plaintiff's tickets.

80. The defendants, Julie Blan and Richard Stephenson in the course of attempting to stop Plaintiff's complaints of harassment and bias, targeted the plaintiff for minor rules violations that they do not target other players with. They caused the plaintiff to be unable to communicate in game-chat (a muffle or chat-ban) because she criticized other players for in-game behavior [,] something specifically allowed by the rules. They do not punish other players for the same offense. They banned the plaintiff from the game for

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-35

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

195

using three or five asterisks. They banned the plaintiff for "reading" poetry in chat. At the same time they have not banned other players who have egregiously bought and sold in-game items for real life money, used profane and offensive language such as "who lit the fuse of your tampon?" and other behaviors and language.

81. As a part of the fraud, Julie Blan acting on behalf of InnoGames, changed their rules specifically to target the plaintiff. Julie Blan had the ability to do this in two ways: she could message the game-designers and other staff to request changes to the rules AND she could alter the game in some limited ways herself as shown below.

82. Throughout 2016, 2017 and most of 2018 the word "ass" wasn't a censored word in the game and was not specifically against the game rules. Plaintiff was banned for using the word "ass" on or around Nov. 22, 2018. Plaintiff stated that it wasn't against the game rules to Julie Blan and instead of unbanning Plaintiff for not violating the rules Julie Blan stated, "If the words 'dick' and 'ass' are no longer censored, I appreciate you bringing this to my attention and I will see that the censor is put back into place." Within a few minutes the game was censoring the word "ass." This is a specific instance where the game rules were changed specifically to the detriment of and to target the Plaintiff.

83. Another instance where the game rules were changed to target the plaintiff was: In 2016 and as late as May 25, 2017, the communication rule for the US server stated:

*InnoGames does not accept any publications that the Forge of Empires Team considers illegal, insulting, offensive, threatening, abusive, real-life aggressive, sexually explicit, pornographic (including, but not limited to drawings and animations), politically extreme, religiously fanatic,*

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-36

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

*endangering youth, racist, playing down the use of illegal drugs or alcohol, or promoting the use of said substances in any way inappropriate.*

But on June 22, 2017 (or perhaps earlier) the communication rule stated:

*InnoGames does not accept any publication that the Forge of Empires Team considers illegal, insulting, offensive, threatening, abusive, real-life aggressive, sexually explicit, pornographic (including but not limited to drawings and animations), profanity, politically extreme, religiously fanatic, endangering youth, racist, playing down the use of illegal drugs or alcohol, or promoting the use of said substances or in any way inappropriate.*

At some point between  May 25, 2017 and June 22, 2017  the word "profanity" was included in the rules without any notice even though the InnoGames Terms and Conditions state that rule changes need to be announced to the community. Additionally the Rules page itself says the last update [was] 01.09.2015. Adding the word "profanity" to the rules only came after the plaintiff repeatedly and insistently asserted that profane language in of itself wasn't a rule violation beginning in November 2016 and notified Julie Blan specifically on May 25, 2017 that profanity wasn't against the game rules. Plaintiff was specifically quoted the first version of the rules several times by moderators and Julie Blan as verification of what the rules where at any specific time. Plaintiff states upon information and belief that the rules were secretly changed within a month of Plaintiff's assertion to Julie Blan that profanity wasn't in the rules. Upon

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-37

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

197

information and belief, this occurred when Julie Blan chose to email or otherwise contact InnoGames Staff to request the word be added specifically into the rules to target Plaintiff.

84. These unfair behaviors, particularly targeting the plaintiff and allowing other players to cheat, create economic hardship and emotionally distress the plaintiff. She has to pay additional money for in-game items in order to "keep up" with other cheating players during the course of competition. If the plaintiff had known the game was unfair she would not have spent $9,000+ on the game. Additionally plaintiff has suffered damages by being denied access on several occasions to her game-property by being forced to endure unfair "bans" from the game. These bans unfairly hindered Plaintiff's progress increasing her purchases.

85. These fraudulent acts, specifically enticing players into the game with promises of fairness while knowing the game was not fair and not enforcing the game fairly, has an impact on the public interests of Washington State. Specifically the State has an interest in protecting dozens, hundreds, or thousands of players who play InnoGames products from these unfair promises and attempt to defraud these players, including Plaintiff, out of their money. Furthermore Washington State has an interest in protecting its statutory laws against unfair or deceptive trade practices.

86. Plaintiff alleges these actions are against the Consumer Protection laws of Washington State because they are deceptive acts as outlined above and under this statute Plaintiff is entitled to triple damages not to exceed $25,000. *Rev. Code Wash.* §§ 19.86.020 - 19.86.090.

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-38

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

**F.      Product Liability – <u>InnoGames created an unsafe and dangerous product by producing the game *Forge of Empires*.</u>**

87. Plaintiff repeats and realleges paragraphs 1 through 86 hereof, as if fully set forth herein

88. InnoGames, Hendrik Klindworth, and Michael Zillmer created an unsafe product by developing the internet game *Forge of Empires*. The game creates psychological addiction. Julie Blan and Richard Stephenson are aware that the game is dangerously addictive and facilitate this addiction in players by helping them play and not warning them of the dangers involved in playing, in effect helping to sell the dangerous product.

89. <u>At first Plaintiff experienced feelings of euphoria, satisfaction, and felt as if she was in a safe community of friends as do other players of *Forge of Empires*. Plaintiff became psychologically dependent and addicted to playing *Forge of Empires*. Even after the above described harassment, the Plaintiff was unable to voluntarily quit playing the game. During this period of time, InnoGames and its officers were aware of the phenomena of psychological dependence and addiction to their game. Defendants never gave the Plaintiff any notice or warning of the danger of psychological dependence or addiction from continued play. Instead the defendants, InnoGames, Hendrik Klindworth and Michael Zillmer, purposefully used the phenomena of addiction to help make players stay in the game longer and therefore spend more money on micro-transaction purchases to advance in the game faster. Plaintiff continues to this day to have a compulsive urge to play *Forge of Empires*.</u>

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-39

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

90. Although the American Psychiatry Association's manual didn't add gaming disorder yet to its medical reference manual it is referenced for further study and it identifies symptoms of problem video gaming.[3] Further the World Health Organization included "Gaming Disorder" to the 2018 *International Classification of Diseases* its medical reference book.[4]

91. But for *Forge of Empires* intentionally addictive design, Plaintiff would not have developed Gaming Disorder.

92. It was reasonable that Plaintiff would suffer this Disorder because she was solicited by InnoGames to play a game intentionally designed to cause the disorder as described below.

93. Plaintiff has been diagnosed by a Forensic Psychologist with all of the signs and symptoms of Gaming Disorder including: impaired control over her gaming on *Forge of Empires*; giving increased priority to *Forge of Empires* gaming over other activities to the extent that it takes precedence over her other interests and daily activities such as spending time with family, working or being able to care for herself; and continuation or escalation of her gaming the occurrence of negative consequences – such as being unable to quit *Forge of Empires* when being sexually harassed.

94. Plaintiff further alleges that she has been diagnosed with all the warning signs of "Problem Gaming" such as: Thinking about gaming on *Forge of Empires* all or a lot of the time; feeling bad when she can't play the game; needing to spend more and more

---

[3] https://www.webmd.com/mental-health/addiction/video-game-addiction#1

[4] https://www.who.int/news-room/q-a-detail/gaming-disorder

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-40

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

200

time on *Forge of Empires* to feel good; not being able to quit *Forge of Empires* or even play less, or even to spend less money on the game; not wanting to do other things she used to like such as reading; having serious problems at home, school, and being unable to work because of gaming; playing despite all of these negative consequences; lying to people close to her about how much time she spends playing *Forge of Empires*; and using *Forge of Empires* to ease bad moods and feelings.

95. Upon information and belief, InnoGames, Hendrik Klindworth and Michael Zillmer purposefully built *Forge of Empires* to create Gaming Disorder in its customers. Further, they continue to adapt *Forge of Empires* to become ever more addictive based upon data they receive from researching their expanding audience. InnoGames, Hendrik Klindworth and Michael Zillmer use the "freemium" model of internet games. Using this model they offer their game for free to a wide public audience knowing that between 1%-12% [5] of beginning players will become habitually and dangerously addicted to playing *Forge of Empires* and thereby spend money on the game. Furthermore being young and male is a high-risk factor for Gaming Addiction, which while not encompassing the Plaintiff, does explain why *Forge of Empires* seeks to appeal to this market.[6]

---

[5] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5023737

[6] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5023737

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-41

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

96. 59% of Americans play video games, and 97% of Americans age 12-17 years old play video games creating a large danger to the public of intentionally addictive games such as *Forge of Empires*.[7]

97. *Forge of Empires* uses particular psychological strategies in an attempt to create Gaming Addiction such as creating a "grind" in the game where it is difficult and time-consuming to advance in the game. In *Forge of Empires,* the longer you spend away from the game the less you are rewarded on your city productions, buildings, settlements, quests, events. This encourages players to log into the game at least daily, but often addicted players feel like they have to come in every 5 minutes or they will miss out on important items necessary to progress without spending money. Another technique *Forge of Empires* uses to addict players is to provide "Gachas"… "Gachas" are named after a Japanese toy dispensing machine where you put in money and hope to get a certain collectible prize back. In this system *Forge of Empires* uses "Gachas" by providing an opportunity to receive certain collectible items on a random-reward basis. There is no way to directly obtain the item you desire without taking a chance that you will get many undesirable items. This is also known as "Loot Boxes." Often in order to obtain the collectible items desired, and which you will need to be competitive with other players, the only way to do so is to spend in-game currency (diamonds). "Gachas" are based off of a psychological phenomenon called the "Skinner Box." *Forge of Empires* also uses techniques of "Hot State" and "Loss Aversion" which encourage players to not think about their purchases because they are in the middle of action and don't want to lose their progress. This is

[7] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5023737

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-42

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

shown in *Forge of Empires* where players are battling other guilds and often have to "diamond heal" their troops back to full health-points in order to continue or lose the progress they've made the previous day. *Forge of Empires* offers "limited time" offers in order to encourage people to spend immediately before the offer "expires." *Forge of Empires* further relies on the "IKEA effect" whereby when someone puts work into something, they value it more highly. Therefore people who do not want to lose ranking, must continue to spend diamonds in order to maintain their high rankings. *Forge of Empires* uses other psychological techniques to create Gaming Addiction in its customers that are not listed here as well. (The listed and unlisted techniques to addict gamers as identified in this paragraph can be in the video at https://youtu.be/xNjI03CGkb4).

98. Plaintiff used *Forge of Empires* the way it was intended. The game specifically is designed to make a player such as Plaintiff play more and more often until they become a habitually addicted player.

99. Plaintiff has often set times to interrupt her sleep so that she can come in and "collect" items from her city. This is a frequent occurrence among players. Plaintiff has also played while driving from her mobile phone as is also customary amongst players of *Forge of Empires*. Plaintiff has had occasional jobs during the course of 2016-2020 but has been unable to keep these jobs due to her Gaming Addiction. Plaintiff also alleges economic harm from the intentional Gaming Addiction created by the unusual amount of money she spent on *Forge of Empires* – $9,000 – when a traditional "subscription" game would've likely cost only about 4% of that total over the same period of time. Plaintiff has physical injuries as well such as weight gain and related conditions e.g.

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-43

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

sleep apnea, acid reflux, high blood pressure etc from her Gaming Addiction. Plaintiff has suffered extreme emotional side effects such as distancing from family except through interacting with them in the game as well as depression, anxiety, and thoughts of suicide.

100. The game *Forge of Empires* is unreasonable dangerous because it is designed to create Gaming Addiction in a percentage of its customers. Defendants had a reasonable alternative product design they could've made. Defendants could've made a subscription-based model of gaming that doesn't reward players for more time spent with the game or simply changed the design structure of the game to not reward continuous play. InnoGames could also have attached warning labels viewable to *Forge of Empires* players. Therefore Plaintiff alleges there is a design defect that created an unreasonably dangerous product.

**G.     Breach of Contract, Third-Party Breach of Contract, Promissory Estoppel**

101. Plaintiff repeats and realleges paragraphs 1 through 100 hereof, as if fully set forth herein.

102. In the event Plaintiff made a valid contract with InnoGames when she entered *Forge of Empires* subject to the Terms and Conditions of play, Plaintiff alleges this contract was breached by the Defendant and that she performed her portion of the contract until the breach. As a result of the breach, plaintiff suffered damages.

103. Plaintiff's presumed contract with InnoGames is a standard "click-wrap" contract which is a contract of adhesion. As such, InnoGames sets the terms and they should be held

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-44

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

strictly to those terms since there was no negotiation and they had the privilege of drafting in their chosen language. Some of those terms of Article 12.3 are:

 a.  "duplicating or making publicly accessible an image of another person without the relevant person's written approval [is prohibited],"

 b.  "using or publishing content tantamount to mobbing, or threatening, harassing, insulting or defamatory content…[is prohibited],"

 c.  "using, placing or publishing discriminatory content (e.g. hate speeches against groups of persons, in particular based on race, ethnic origin, religion, disability, gender, age, veteran status or sexual orientation) …[is prohibited]."

 d.  linking to said discriminatory content is prohibited

 e.  "publishing, duplicating, making publicly accessible or distributing protected content, and in particular violating industrial property rights (e.g. copyright law…)…[is prohibited].

 f.  "publishing personal data and confidential information without authorization [is prohibited]."

*Terms and Conditions* Art. 12.3

A coinciding term is:  "If we [InnoGames] become aware of illegal content pursuant to Art. 12.3, such content will be removed immediately." *Terms and Conditions* Art. 13.3.

104. InnoGames became aware immediately at the time of the incident (because a moderator had sent the photograph) that there was the illegal content of the publicly accessible image of the Plaintiff but they did not act in any way to remove the photographic

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-45

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

content immediately. Further they became aware when the Plaintiff notified them in August 2016 and November 2016 that the image was being still being transmitted across their servers. In fact it was being sent to every new guild member of the guild SpaceBalls and was linked in several messages formed for the purpose of harassing me. Julie Blan on behalf of InnoGames made false statements that she would properly punish and thereby attempt to stop the spread of the image on InnoGames' servers, but these were false promises.

105. InnoGames became aware of the harassing and discriminatory content based on Plaintiff's gender was being posted about Plaintiff in late June or early July 2016 from Plaintiff's use of the "report" feature in the game, but they did not act to remove such content immediately. In fact they did the opposite, encouraging the posting of such content.

106. Similarly at the same time as the photograph, InnoGames became aware that players had made publicly available the protected (copyrighted) photograph and that Plaintiff's personal data and confidential information (such as her real-life name) was being published without her authorization.

107. Up until the time of InnoGames' breach, the Plaintiff had properly complied with the Terms and Conditions contract which was all that was required by the contract to perform.

108. Plaintiff informed InnoGames through their support-function and declared a material breach of the contract on January 01, 2019 with the statement,

> "Well, I hate to point out that you are in breech [sic] of the contract you created. You DID just change your rules as you so pointedly noted. The

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-46

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

*rules in effect before the change clearly stated that you ARE NOT the final arbiter of rule disputes, so I'd like to speak with the person who is. You are required to uphold the contract or it becomes null and void (and thus any punishment I've received for breaking said contract would be an illegal denial of service)."*

109. Plaintiff again notified InnoGames and Julie Blan of the breach of contract on February 03, 2019.

110. Despite these notifications of breach, InnoGames through Julie Blan and Richard Stephenson attempted to enforce the contract against the Plaintiff without abiding by it themselves.

111. Plaintiff suffered damages from the loss of her photograph including loss of her intellectual property and the value of the photograph and the consequential damages that involved years of harassment. These were foreseeable because Article 12.3 involves listing actions that might cause emotional harm, specifically listed as "endangers," in the contract's language in an attempt to prevent it including the photograph provision, harassing provision, and discriminatory content provisions.

112. Even if Plaintiff did not make a contract (or even if she did) with InnoGames, the players harassing her did, and Plaintiff is entitled to enforce their contracts as a third-party beneficiary to their contract.

113. Generally all players on *Forge of Empires* need to agree to the Terms and Conditions before playing, with a few rare exceptions. This includes the players sexually harassing Plaintiff and spreading around her photograph.

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-47

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

114. Article 12.3 of the Terms and Conditions states in opening: "As User, you will refrain from any action that endangers or disrupts the operation and functionality of the Games and the successful collaboration with other users." Plaintiff falls into the category of "other users" the contract sought to protect and her "successful collaboration" with InnoGames was disrupted through the harassing player's acts. Therefore Plaintiff is a third-party beneficiary and entitled to the benefit of these contract terms.

115. InnoGames failed to enforce their prohibition of the terms of Article 12.3 such as the photograph, discrimination, harassment, protected content, or confidential information terms listed above at all.

116. Plaintiff informed InnoGames through Julie Blan and Richard Stephenson about these breaches but the content was not removed, and the parties posting such content were not prohibited from further posting the same or similar information.

117. Even if no contract was made, InnoGames, Hendrik Klindworth, Michael Zillmer, Julie Blan and Richard Stephenson made affirmative statements to Plaintiff that the game rules were fair and would be enforced equally as discussed in paragraphs 74-77 of this complaint. Plaintiff relied on these statements that the game rules would be fair and equally enforced when she shared her private photograph with Gensmoky. Plaintiff has a screenshot of the incident in which she specifically refers to the fact that if Gensmoky [or anyone generally] shared the photograph, Plaintiff would seek to enforce the game rules and get them banned from the game. Relying on the promises made by InnoGames about the game-rules Plaintiff felt confident that when sharing her photograph with just one individual it would remain private. This was to her detriment because a moderator

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-48

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

was able to access the photograph, breaching Plaintiff's privacy, but also sent it to the people plaintiff sought to prohibit from having it by relying on the game-rules.

118. Plaintiff also relied on the statements of fairness when she was told and did ignore the players harassing and discriminating her and that they would be held accountable if they continued their harassing behavior. In fact, the players were not punished for their continuous breach of the rules and plaintiff suffered as a result of her reliance on the promises to "ignore" the harassers. Plaintiff lost the opportunity to confront her harassers and thereby lost reputation and social-contacts through the effort.

119. It was reasonable to rely on InnoGames, Hendrik Klindworth's, Michael Zillmer's, Julie Blan's and Richard Stephenson's statements that the game rules would be enforced fairly because they made the statements in writing and even indicated that it was one of the company's "core values."

120. The damages again for this lack of enforcement of their promise were foreseeable because InnoGames specifically addressed the concern of loss of a private photograph as well as the harassment over the photograph as "endangering" in their Terms and Conditions.

## H. Copyright Infringement and Privacy Violations

121. Plaintiff repeats and realleges paragraphs 1 through 120 hereof, as if fully set forth herein.

122. InnoGames is liable for Copyright Infringement of Plaintiff's protected photograph. Plaintiff created the image on or around July 25, 2016. Shortly thereafter an InnoGames moderator improperly accessed the report system from Plaintiff's private account with

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-49

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

InnoGames, intercepted the private conversation including the link to the photograph, and then copied and transmitted this link to other parties. Plaintiff registered the image with the United States Copyright Office on September 03, 2019.

123. These other parties, some of whom are known and some who are unknown then transmitted the photograph without Plaintiff's consent across InnoGames servers and made it public by copying images of it from the original link-site for their own personal use and transmission. Plaintiff was not made immediately aware of when the transmission occurred. She was told sometime after the fact. Additionally InnoGames sought to cover-up the fact that the copyright infringement and privacy breach occurred at all and directly lied to plaintiff saying their moderators had not transmitted the photograph. Even if their moderator had not transmitted the photograph at that time, the photograph was being transmitted across InnoGames servers and is still being transmitted across InnoGames servers via links to it.

124. InnoGames has a duty to supervise its employees in the course of their conducting business, but also has a duty to supervise its servers to prevent the illegal transmission of copyrighted material. InnoGames acknowledges that it tries to prevent this by enforcing the *Forge of Empires* Game Rules and the Terms and Conditions.

125. InnoGames had a direct financial interest in the copyright infringement because they received increase revenues from Plaintiff as she sought to protect herself from the game-mechanics harassment that followed, and InnoGames also benefitted directly from "proving up" of their false advertisements about females in the game being available for

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-50

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

sexual activities. These advertisements also encouraged and helped provide the motive, thereby aiding the copyright infringement in the first place.

126. Plaintiff's value in the copyrighted photo is of a "lost opportunity" value. Plaintiff's photograph, when released to the public, creates a loss to the plaintiff in reputation that is hard to measure.

127. Because of the difficulty in measuring the loss of the photograph, Plaintiff asks for actual damages as the court decides or for the statutory maximum of damages.

128. Plaintiff further asks for damages for privacy violations by the theft of the photograph and copying and releasing of plaintiff's private conversation and photograph as described in Paragraph 47 under statutory law.

129. Plaintiff alleges that an InnoGames employee intentionally intruded on a private conversation in order to interfere with her right of keeping private her conversations and photographs. InnoGames, Hendrik Klindworth, Julie Blan and Richard Stephenson are responsible for this intrusion because they had a duty to supervise and create a design where moderators could not intrude in such a fashion.

130. This intrusion would be highly offensive to a reasonable person because it involved taking photographs of an intimate nature without permission. Further the general public would not have been free to view these photographs without this intrusion.

131. This intrusion caused damages in the loss of the photograph as described above.

132. Plaintiff respectfully asks for actual and statutory damages because of the privacy violation in accessing a private communication and taking a copy of the photographic link contained within it.

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-51

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

## VIII.   GENDER DISCRIMINATION IN EMPLOYMENT

133. Plaintiff repeats and realleges paragraphs 1 through 133 hereof, as if fully set forth herein.

134. Plaintiff applied for a Social Media Moderator and InnoGames failed to hire her for the Social Media Moderator position after she applied for the position on May 12, 2017 and was rejected immediately on May 13, 2017 without consideration because of her dispute over her photograph being distributed. This occurred despite Plaintiff being fully qualified for the position.

135. Plaintiff is unsure if the position was paid or volunteer, but believes it was a so-called "volunteer" position that was actually paid with in-game currency. Additionally plaintiff alleges that InnoGames provided all of the tools, training, and had strict control over the work that would've been performed in the position.

136. Plaintiff alleges the position would've given her valuable experience that she could use to attempt to find a new job in the video game industry (since she spent so much time on *Forge of Empires* because of her addiction a remote video-game job was one of the only options open).

137. Upon information and belief, the reason Plaintiff was not hired because she was a woman, a protected class, who had had a photograph of her breasts stolen by another InnoGames moderator and that this incident resulted in disparate treatment of Plaintiff because of her gender.

138. Plaintiff respectfully requests compensatory damages at the Court's discretion.

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-52

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

## IX.    PRAYER FOR RELIEF

139. Plaintiff respectfully prays for relief as follows: <u>Loss of Income $180,000; Loss of Reputation $500,000 ; Physical and Emotional Pain and suffering $500,000; Defrauded amount $9,000 plus $16,000 of triple damages under Washington State Consumer protection laws.</u> The Plaintiff also prays for relief and seeks statutory maximum damages for copyright infringement, unspecified damages for privacy invasion, unspecified damages for employment discrimination, punitive damages, court costs, and interest.

___/s/ Penny Quinteros                           _07/30/2020

Penny Quinteros *Pro Se*                          Date
The UPS Store #4579
14201 SE Petrovitsky Rd A3-102
Renton, WA 98058
elilyn@comcast.net
Phone: 206-661-8292

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

## CERTIFICATE OF SERVICE

I certify that on the _____30th_____ day of _____July_____, I filed this

_____AMENDED COMPLAINT FOR A CIVIL CASE with the Clerk of the Court, and I

hereby certify that I served a true and correct copy of the document as follows:

Representing: InnoGames, Hendrik Klindworth, Michael Zillmer, and Richard Stephenson:

Diana Siri Breaux, WSBA #46112
315 Fifth Avenue, Suite 1000
Seattle, WA 98104
dianab@summitlaw.com

and Alan Behr (admitted Pro Hac Vice)
Elizabeth A. Adinolfi (admitted Pro Hac Vice)
485 Lexington Avenue
New York, NY 10017
abehr@phillipsnizer.com
eadinolfi@phillipsnizer.com

Representing: Julie (Jill) Blan

Philip A. Haas, WSBA No. 46959
Attorney for Defendant Julie Blan
506 Second Avenue, Suite 1400
Seattle, WA 98104
phil@haasattorneys.com

☐ By causing a full, true and correct copy thereof to be MAILED in a sealed, postage-paid

envelope, addressed as shown above, which is the last-known address for the party, and

deposited with the U.S. Postal Service at Renton, WA, on the date set forth above;

☐ By causing a full, true and correct copy thereof to be HAND-DELIVERED by

_____ to the party, at the address listed above, which is the last-known

address for the party's office, on the date set forth above;

☐ By causing a full, true and correct copy thereof to be FAXED to the party, at the fax

number shown above, which is the last-known fax number for the party's office, on the date set

forth above.

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-54

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

214

☒   By causing a full, true and correct copy thereof to be EMAILED to the party(s), at the email address(es) shown above, which is the last-known email address for the party's office, on the date set forth above.

/s/ Penny Quinteros 07/30/2020
By: Penny Quinteros *Pro Se*
The UPS Store #4579
14201 SE Petrovitsky Rd A3-102
Renton, WA 98058
elilyn@comcast.net
Phone: 206-661-8292

*PLAINTIFF PENNY QUINTEROS'S AMENDED COMPLAINT*-55

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

*PROPOSED ORDER FOR_____*

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd
A3-102
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

✎ AO 121 (6/90)

| TO: | REPORT ON THE |
|---|---|
| **Register of Copyrights**<br>**Copyright Office**<br>**Library of Congress**<br>**Washington, D.C. 20559** | **FILING OR DETERMINATION OF AN**<br>**ACTION OR APPEAL**<br>**REGARDING A COPYRIGHT** |

In compliance with the provisions of 17 U.S.C. 508, you are hereby advised that a court action or appeal has been filed on the following copyright(s):

| ✔ ACTION        APPEAL | COURT NAME AND LOCATION |
|---|---|
| | United States District Court - Western District of Washington |
| DOCKET NO. **19-cv-1402 RSM**    DATE FILED **09/03/2019** | 700 Stewart Street, Suite 2310, Seattle, WA 98101 |

| PLAINTIFF | DEFENDANT |
|---|---|
| Penny Quinteros | InnoGames, Hendrik Klindworth, Michael Zillmer, Julie (Jill) Blan, Richard Stephenson |

| COPYRIGHT REGISTRATION NO. | TITLE OF WORK | AUTHOR OF WORK |
|---|---|---|
| 1 VAu 1-372-984 | Picture of Woman with Shirt uplifted and a Note... | Penny Quinteros |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above-entitled case, the following copyright(s) have been included:

| DATE INCLUDED | INCLUDED BY ✔ Amendment        Answer        Cross Bill        Other Pleading | |
|---|---|---|
| **COPYRIGHT REGISTRATION NO.** | **TITLE OF WORK** | **AUTHOR OF WORK** |
| 1 VAu 1-372-984 | Picture of Woman with Shirt uplifted and Note Saying "Love | Penny Quinteros |
| 2 | | |
| 3 | . | |

In the above-entitled case, a final decision was rendered on the date entered below. A copy of the order or judgment together with the written opinion, if any, of the court is attached.

| COPY ATTACHED | WRITTEN OPINION ATTACHED | DATE RENDERED |
|---|---|---|
| Order        Judgment | Yes        No | |

| CLERK | (BY) DEPUTY CLERK | DATE |
|---|---|---|
| | | |

**DISTRIBUTION:**

1) Upon initiation of action,
   mail copy to Register of Copyrights

2) Upon filing of document adding copyright(s),
   mail copy to Register of Copyrights

3) Upon termination of action,
   mail copy to Register of Copyrights

4) In the event of an appeal, forward copy to Appellate Court        5) Case File Copy

217

**Original Complaint – Docket 1-2**

Pro Se 5

___FILED ___ENTERED
___LODGED ___RECEIVED

SEP 03 2019 GT

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                              DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

**19-CV-01402** RSM

Penny Quinteros filing as

TwoCents (a pseudonym)          ,

                    Plaintiff(s),

        v.

InnoGames, Hendrik Klindworth,

Michael Zillmer, Julie (Jill) Blan,

Richard Stephenson          ,

                    Defendant(s).

CASE NO. _____
[to be filled in by Clerk's Office]

COMPLAINT FOR A CIVIL CASE
ALLEGING NEGLIGENCE
(28 U.S.C. § 1332; Diversity of
Citizenship)

Jury Trial: ☐ Yes  ☒ No

## I.    THE PARTIES TO THIS COMPLAINT

A.    Plaintiff(s)

*Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.*

| | |
|---|---|
| Name | Penny Quinteros filing as TwoCents (a pseudonym) |
| Street Address | 19338 133rd PL SE |
| City and County | Renton, King |
| State and Zip Code | Washington, 98058 |
| Telephone Number | 206-661-8292 or 253-854-2788 |

1

*Pro Se 5*

B.    Defendant(s)

*Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.*

Defendant No. 1

| | |
|---|---|
| Name | InnoGames |
| Job or Title *(if known)* | |
| Street Address | Friesenstrabe 13 |
| City and County | 20097 Hamburg |
| State and Zip Code | Germany |
| Telephone Number | +49-40-7889335-0 |

Defendant No. 2

| | |
|---|---|
| Name | Hendrik Klindworth |
| Job or Title *(if known)* | Chief Executive Officer InnoGames |
| Street Address | Friesenstrabe 13 |
| City and County | 20097 Hamburg |
| State and Zip Code | Germany |
| Telephone Number | +49-40-7889335-0 |

Defendant No. 3

| | |
|---|---|
| Name | Michael Zillmer |
| Job or Title *(if known)* | Chief Operating Officer of InnoGames |
| Street Address | Friesenstrabe 13 |
| City and County | 20097 Hamburg |
| State and Zip Code | Germany |
| Telephone Number | +49-40-7889335-0 |

2

219

*Pro Se 5*

Defendant No. 4

| | |
|---|---|
| Name | Julie (Jill) Blan |
| Job or Title *(if known)* | United States Community Manager InnoGames |
| Street Address | unknown |
| City and County | unknown |
| State and Zip Code | unknown |
| Telephone Number | unknown |

Defendant No. 5

| | |
|---|---|
| Name | Richard Stephenson |
| Job or Title *(if known)* | International Community Manager InnoGames |
| Street Address | unknown |
| City and County | unknown |
| State and Zip Code | unknown |
| Telephone Number | unknown |

## II.    BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be  heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction?  (check all that apply)

☐  Federal question                     ☒  Diversity of citizenship

3

*Pro Se 5*

Fill out the paragraphs in this section that apply to this case.

A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

_____

_____

_____

B.    If the Basis for Jurisdiction Is Diversity of Citizenship

       1.    The Plaintiff(s)

          a.  If the plaintiff is an individual.

The plaintiff_____, is a citizen of the State of Washington.

       2.    The Defendant(s)

          a.  If the defendant is an individual.

The defendant, Hendrik Klindworth, is a citizen of the foreign nation of Germany.

The defendant, Michael Zillmer, is a citizen of the foreign nation of Germany.

The defendant, Julie (Jill) Blan, is a citizen of an unknown State or foreign nation.

The defendant, Richard Stephenson, is a citizen of an unknown foreign nation.

Note: The plaintiff has made repeated requests to the defendant(s) Julie (Jill) Blan and Richard Stephenson to ask their location and citizenship for the purpose of this claim, but they have refused to provide their locations/citizenship. It is my belief that Ms. Blan is a citizen of the United States living in Georgia, and that Mr. Stephenson is a citizen of the United Kingdom living in Germany. InnoGames has the information regarding their citizenship and residency but

*Pro Se 5*

refuses to disclose it. The plaintiff has reason to believe no defendants are citizens of Washington State.

   b. If the defendant is a corporation.

The defendant, InnoGames, is incorporated under the laws of the foreign nation of Germany, and has its principal place of business in Hamburg, Germany.

### III. THE AMOUNT IN CONTROVERSY

The amount in controversy-the amount the plaintiff claims the defendant owes or the amount at stake-is more than $75,000, not counting interest and costs of court, because (*explain*):

Loss of Income $180,000; Loss of Reputation $500,000; Physical and Emotional

Pain and suffering $500,000; Defrauded amount $9,000 plus $16,000 of triple

damages under Washington State Consumer Protection laws, unspecified punitive

damages

### IV. STATEMENT OF CLAIM

*Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.*

Plaintiff sets forth eleven counts: (I) Gross Negligence (II) Negligence; (III) Reckless Misconduct; (IV) Fraud; (V) Misrepresentation/Deceit; (VI) Unfair and Deceptive Trade Practices; (VII) Gender Discrimination in Public Accommodation; (VIII) Defamation/Libel/Slander; (IX) Loss of Reputation; (X) Intentional Infliction of Emotional Distress; (XI) Negligent Infliction of Emotional Distress. These counts are described below:

  1.) Reckless Misconduct, Gross Negligence or Negligence:

*Pro Se 5*

Between, 2016 to 2019 during the course of online gameplay, the defendant(s): (1) performed acts that a person of ordinary prudence in the same or similar circumstances would not have done; or (2) failed to perform acts that a person of ordinary prudence would have done under the same or similar circumstances; or (3) acted with a reckless disregard because:

Defendant(s) designed, produced, managed, and distributed the online game known as "Forge of Empires" In 2011 or 2012 the plaintiff registered for a "Forge of Empires" account with the name player name "TwoCents." Plaintiff is unaware of any terms and conditions agreed to by "clickwrap" agreement at this time, but believes there were none, or they were different than they are now. Plaintiff played the game for some time, then left and returned in or around 2016 with the same player name. At that time the plaintiff does not believe she agreed to any new terms and conditions but is unsure of this. Plaintiff played "Forge of Empires" almost every day without interruption from 2016-2019 for over 10,000 hours of game play. During the course of this time and unbeknownst to the plaintiff, Forge of Empires was contracting with third-party advertisers who solicited mostly male players into the game with pornographic advertisements using language such as: "brutal sex" or "aggressive sex" would occur in the game, and "Most of the characters in this game are sexually attractive females who display sexually explicit behavior." These statements were accompanied by nude or nearly nude females. At the same time, the defendants were making assertions to the plaintiff that the game was "family friendly." There is evidence that at least some of the community was formed by players responding to these advertisements. The plaintiff was unaware of these advertisements and if she had known she either would've chosen not to play the game, or to play with much more caution.

a.) SUMMARY OF ABOVE CLAIM - The defendants had reckless disregard when they knew or should have known of sexually explicit advertisements promoting their game Forge of Empires. These sexually explicit advertisements created an unsafe

6

223

*Pro Se 5*

environment for women players. This environment led to ongoing and continuing

sexual harassment due to plaintiff's gender for 3 years continuing until today.

In or around July, 2016 the plaintiff began to be harassed by other players regarding her gender. Other players made statements such as "you're not actually a woman, you're just faking it [paraphrasing]." These players accused the defendant of actually being a man and started to solicit the plaintiff's friends and co-players to no longer engage with her socially or for game activities. These other players told the plaintiff that she had to prove she was a woman by sending a photograph of her breasts to them. They told her this was the only way they would stop harassing her. The plaintiff fell victim to this manipulation and sent a picture of her breasts (in a somewhat see-thru bra) to what she considered a friend and neutral third-party player via a screenshot link. Other players somehow obtained this photograph. Plaintiff is unsure of how they obtained the photo, but believes either the third-party player sent them a copy of the link, or a game moderator for InnoGames spied upon a private in-game conversation and copied the link to provide to other players. A barrage of other players then proceeded to obtain the photo as evidenced by their descriptions of it, and statements that they had seen it. They openly laugh at and harass the plaintiff using statements such as, "what you are is a dumb sluuuuut," "butthurt dumb ****biotch," and, "Inno won't ban 2C [TwoCents] because she keeps sending them photos." This offensive language was directed at the plaintiff repeatedly and consistently from 2016-2019. The plaintiff reported the photograph and it's transmission to InnoGames in or around August of 2016 and again in November of 2016. Despite the fact that it was still being transmitted amongst players, Plaintiff was told by InnoGames staff that nothing could be done about it even though it is a direct violation of InnoGames Terms and Conditions. The game moderators and community manager were lax in their punishment of other players and instead

*Pro Se 5*

focused on punishing the plaintiff when she showed outrage or offense over the situation. A game moderator accused the plaintiff of having a "vulgar upbringing."

      b.) SUMMARY OF ABOVE CLAIM - Other players in the game continually and repeatedly questioned plaintiff's gender; solicited a photograph of plaintiff's breasts in order to make her prove her gender; they transmitted a photo of her breasts amongst themselves without permission; the players sexually harassed the plaintiff regarding the photograph; and taunted her in relation to the photo, her gender, and her failure to hide the incident in shame. InnoGames was aware of the situation and failed to protect the plaintiff from this harassment. The plaintiff alleges this behavior shows a reckless disregard for her safety, plaintiff further alleges allowing the behavior to continue unabated after repeated reports is: fraudulent, libelous, damages the plaintiff's reputation and shows either intentional infliction of emotional distress or negligent infliction of emotional distress.

At first plaintiff experienced feelings of euphoria, satisfaction and felt as if she was in a safe community of friends as do other players of "Forge of Empires." Plaintiff became psychologically dependent and addicted to playing "Forge of Empires." Even after the above described harassment, the plaintiff was unable to voluntarily quit playing the game. During this period of time, InnoGames and its officers were aware of the phenomena of psychological dependence and addiction to their game. Defendants never gave the plaintiff any notice or warning of the danger of psychological dependence or addiction from continued play. Instead the defendant(s) purposefully used the phenomena of addiction to help make players stay in the game longer and therefore spend more money on micro-transaction purchases to advance in the

*Pro Se 5*

game faster. Plaintiff continues to this day to have a compulsive urge to play "Forge of Empires."

      c.) <u>SUMMARY OF ABOVE CLAIM - InnoGames created an unsafe and dangerous product by producing the game Forge of Empires. The game is addictive. Plaintiff became addicted to the game and suffered economic and emotional damages.</u>

      2.) Fraud, Misrepresentation/Deceit, and Unfair and Deceptive Trade Practices:

InnoGames and the named defendants in the course of producing, distributing, and managing "Forge of Empires," have made statements that their game is fair and the rules are equally applied. Specifically they allege on their website that one of their core values as a company is "Fair Play: We show fair behavior to our players, to our partners and the whole company." Additionally they have listed on their website rules section a statement saying, "Following the rules helps to create a fun and fair environment for everyone," and "These rules can be adapted to different cases in the interests of maintaining fair play within the game." However InnoGames does not enforce their rules fairly. The defendant(s) targeted the plaintiff for minor rules violations that they do not target other players with. They caused the plaintiff to be unable to communicate in game-chat (a muffle or chat-ban) because she criticized other players for in-game behavior something specifically allowed by the rules. They do not punish other players for the same offense. They banned the plaintiff from the game for using three or five asterisks. They banned the plaintiff for "reading" poetry in chat. At the same time they have not banned other players who have egregiously bought and sold in-game items for real life money, used profane and offensive language such as "who lit the fuse on your tampon?" and other behaviors and language. As a part of the fraud InnoGames changed their rules specifically to target the plaintiff. In 2016 the communication rule stated:

9

*Pro Se 5*

*InnoGames does not accept any publications that the Forge of Empires Team considers illegal ,insulting, offensive, threatening, abusive, real-life-aggressive, sexually explicit, pornographic (including, but not limited to drawings and animations), politically extreme, religiously fanatic, endangering youth, racist, playing down the use of illegal drugs or alcohol, or promoting the use of said substances or in any way inappropriate.*

But in February of 2019 (or perhaps earlier) the communication rule stated:

*InnoGames does not accept any publications that the Forge of Empires Team considers illegal, insulting, offensive, threatening, abusive, real-life-aggressive, sexually explicit, pornographic (including, but not limited to drawings and animations), profanity, politically extreme, religiously fanatic, endangering youth, racist, playing down the use of illegal drugs or alcohol, or promoting the use of said substances or in any way inappropriate.*

At some point between 2016 and 2019 the word "profanity" was included in the rules even though the Forge of Empires Terms and Conditions state that rule changes need to be announced to the community. Additionally the Rules page itself says the last update 01.09.2015. Adding the word "profanity" to the rules only came after the plaintiff asserted that profane language in of itself wasn't a rule violation in November of 2016, and that profane language happened all the time in the game and wasn't offensive to the parties involved in a conversation.

These unfair behaviors, particularly targeting the plaintiff and allowing other players to cheat, create economic hardship and emotionally distress the plaintiff. She has to pay additional money for in-game items in order to "keep up" with other cheating players during the course of competition. If the plaintiff had known the game was unfair she would not have spent $9,000+ on the game.

10

*Pro Se 5*

a.) <u>SUMMARY OF ABOVE CLAIM - InnoGames misrepresented their game as fair.</u>
<u>They engage in practices, such as only punishing players for rules violations only if</u>
<u>they were reported by other players, that are inherently unfair. They changed their</u>
<u>rules without notice. They created rules meant specifically to target the plaintiff. They</u>
<u>did not equally apply their rules to all players. They targeted the plaintiff specifically</u>
<u>for violations that they do not sanction other players for.</u>

3.) Discrimination in Public Accommodation on the Basis of Sex:

The plaintiff has stated several times to the defendants that they have engaged in gender-discrimination on multiple occasions. The defendant(s) allowed players to harass the plaintiff about her gender without serious repercussions. They allowed players to "gang up" to report the plaintiff and try to get her banned because she didn't conform to gender-stereotypical behavior. Male players aren't reported and therefore not sanctioned for the same behavior. The moderators themselves discriminate against the plaintiff because she doesn't display "typical female" behavior. They do not provide the same level of service that they do to male players. They disregard her complaints. They have a dismissive and placating attitude towards women. They have made offensive comments asserting that the plaintiff's reality isn't the same as theirs.

a.) <u>SUMMARY OF ABOVE CLAIM - InnoGames engaged in gender-discrimination by</u>
<u>not allowing plaintiff equal and fair access to their game. They allow players to</u>
<u>control who gets banned for rules violations and this allows a discriminatory</u>
<u>community to target women. They show disregard for the complaints of female</u>
<u>players.</u>

11

228

*Pro Se 5*

4.) Damage to Reputation, Libel/Slander, Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress.

Plaintiff alleges that as a direct result of using "Forge of Empires" and the defendant(s) acts and omissions, particularly as detailed in the above claims, she has suffered extreme and serious emotional distress and depression, she has been unable to function independently, she has suffered psychological trauma, she has emotional symptoms of depression, anxiety, thoughts of suicide. She has suffered loss of reputation due to the defendant(s) acts and omissions. Plaintiff's spouse, children, brothers-in-law, and nephews play the game as a result of her recruiting them. They all have seen the harassment over the photograph and other incidents. The defendant(s) allowed hundreds or thousands of players to watch the ongoing and repeated insults to the plaintiff's dignity and reputation. The defendant(s) further failed to protect the plaintiff's reputation because they disclosed personal information and also made slanderous/libelous statements to other players (players who are also game moderators). These specific players engage in the community with the plaintiff with private knowledge. Plaintiff's friends, mostly all of whom come from the community of Forge of Empires players, have rejected the plaintiff over the perceived "drama" caused by the harassment.

The acts or omissions caused or contributed to the cause of the plaintiff's injuries by *(explain)*

1.) The plaintiff suffered emotional and physical damages and loss of reputation from InnoGames' failure to protect her from the unsafe environment they created.

2.) The plaintiff suffered emotional and physical damages and loss of reputation from InnoGames' failure to enforce their rules, failure to treat players fairly, and failure sanction players that were harassing her.

12

229

*Pro Se 5*

3.) The plaintiff suffered economic harm from addiction to Forge of Empires resulting in the inability to work, sleep, engage in meaningful relationships and other hardships.

4.) If the plaintiff had known the game was unfair and damaging, she would not have paid $9,000 to InnoGames for building and maintaining her account.

5.) InnoGames violated the law by discriminating against her due to her sex which created emotional distress and mental anguish.

## V.    RELIEF

*State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.*

The plaintiff asks the court to order InnoGames and/or the other defendants to pay $180,000 for loss of income over the three years she was addicted to Forge of Empires and could not work due to addiction and emotional distress. She asks the court to order InnoGames to pay $500,000 for loss of reputation for allowing players to insult her, transmit her private photograph, and slander/libel her on a daily basis for 3+ years. She asks the court to order InnoGames to pay her $500,000 for emotional and physical distress such as depression, anxiety, fixation, and creating suicidal thoughts. She asks the court to order InnoGames to refund her payments to them totaling at or near $9,000 because they did not keep their promise of having a fair game. Under Washington State Consumer Protection Law, she asks the court for $16,000 of additional damages (triple the loss of $9,000 capped at $25,000). She asks the court to order InnoGames to pay an unknown amount of punitive damages for their gender discrimination against her. She asks the court to order InnoGames to pay an unknown amount of punitive damages for willfully and knowingly allowing the above situations to continue unabated.

13

*Pro Se 5*

## VI.    CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:        8/30/2019

Signature of Plaintiff    *Penny Quinteros as TwoCents*

Printed Name of Plaintiff    Penny Quinteros as TwoCents

Date of signing:

Signature of Plaintiff

Printed Name of Plaintiff

Date of signing:

Signature of Plaintiff

Printed Name of Plaintiff

14

231

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

Penny Quinteros, _____

_____,

                              Plaintiff(s),

         v.

InnoGames, *et al.,*

,

                              Defendant(s).

CASE NO. C19-1402 RSM

PRAECIPE TO ADD
SUPPLEMENTAL AUTHORITY AND
INFORMATION TO PLAINTIFF'S
OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S
THIRD AMENDED COMPLAINT
Noted for Determination on:

August 1, 2024 _____

**PRAECIPE TO ADD SUPPLEMENTAL AUTHORITY AND INFORMATION TO**

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S**

**THIRD AMENDED COMPLAINT**

This Praecipe request is in accordance with the District of Western Washington's Local Rule 7(m). Plaintiff, had been researching the Motion to Dismiss in anticipation of Defendants' filing at her work location on the East-Coast.  After the death of Plaintiff's father, Plaintiff had to unexpectedly travel back to Montana (and then the Seattle area) and complete the Opposition

*PRAECIPE: To Add Supplemental Authority and Information* - Case No. C19-1402 RSM -1

Penny Quinteros
Phone: 206-661-8292
elilyn@comcast.net

filing from those locations.  Upon returning to her office desk, Plaintiff found the following binding authority regarding personal jurisdiction under the F.R.C.P. 4(k)(2) standard on a note in her desk drawer.  Plaintiff had inadvertently left behind crucial research which she now seeks to attach.

Regarding the Exhibit, Plaintiff is *pro se*, and while a new attorney, does not have access to any document management software or additional personal assistance in reviewing potential exhibits.  It was not until Plaintiff received Defendants' Reply brief that she became aware there was forgotten evidence demonstrating InnoGames false representations that they were not targeting the U.S. market.

Plaintiff seeks to amend Docket 122 at Page 8, Lines 11 and 22 as stated in the following attachments and attached exhibit.

/s/ Penny Quinteros

Penny Quinteros, Esq. *Pro Se*
WA Bar No. 60753
19338 133rd PL SE
Renton, WA 98058
elilyn@comcast.net
Phone: 206-661-8292

*PRAECIPE: To Add Supplemental Authority and Information* - Case No. C19-1402 RSM -2

Penny Quinteros
Phone: 206-661-8292
elilyn@comcast.net

233

## CERTIFICATE OF SERVICE

I certify that on the 13th day of August 2024, I filed this PRAECIPE TO ADD SUPPLEMENTAL AUTHORITY AND INFORMATION TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT with the Clerk of the Court, and I hereby certify that I served a true and correct copy of the document as follows:

Diana S. Breaux
315 Fifth Avenue S, Suite 1000
Seattle, WA 98104
dianaab@summitlaw.com

Alan Behr (admitted Pro Hac Vice)
Judith Swartz(admitted Pro Hac Vice)
485 Lexington Avenue
New York, NY 10017
abehr@phillipsnizer.com
eadinolfi@phillipsnizer.com

☐ By causing a full, true and correct copy thereof to be MAILED in a sealed, postage-paid envelope, addressed as shown above, which is the last-known address for the party, and deposited with the U.S. Postal Service at Renton, WA, on the date set forth above;

☐ By causing a full, true and correct copy thereof to be HAND-DELIVERED by ____Rodrigo Quinteros_____ to the party, at the address listed above, which is the last-known address for the party's office, on December 27, 2019;

☐ By causing a full, true and correct copy thereof to be FAXED to the party, at the fax number shown above, which is the last-known fax number for the party's office, on the date set forth above.

*PRAECIPE: To Add Supplemental Authority and Information* - Case No. C19-1402 RSM -3

Penny Quinteros
Phone: 206-661-8292
elilyn@comcast.net

234

☒  By causing a full, true and correct copy thereof to be EMAILED to the party, at the email address shown above, which is the last-known email address for the party's office, on December 27, 2019.

/s/ Penny Quinteros

Penny Quinteros, Esq. *Pro Se*
WA Bar No. 60753
19338 133rd PL SE
Renton, WA 98058
elilyn@comcast.net
Phone: 206-661-8292

*PRAECIPE: To Add Supplemental Authority and Information* - Case No. C19-1402 RSM -4

Penny Quinteros
Phone: 206-661-8292
elilyn@comcast.net

235

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

Penny Quinteros,

_____,

                            Plaintiff(s),

      v.

InnoGames, *et al.,*

,

                        Defendant(s).

CASE NO. C19-1402 RSM

ATTACHMENT: PRAECIPE TO ADD SUPPLEMENTAL AUTHORITY AND INFORMATION TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

Noted for Determination on:

August 1, 2024

**ATTACHMENT: PRAECIPE TO ADD SUPPLEMENTAL AUTHORITY AND INFORMATION TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

This is an attachment to a Praecipe request filed concurrently.

Plaintiff seeks to amend Docket 122 at Page 8, Lines 11 to add a new paragraph between lines 8 and 10:

Case No. C19-1402 RSM ATTACHMENT: *PRAECIPE: To Add Supplemental Authority and Information*-1

Penny Quinteros
Phone: 206-661-8292
elilyn@comcast.net

In *Will Co., Ltd. V. Lee*, the Ninth Circuit held that even small activities, if directed into the United States may amount to the minimum contacts required for personal jurisdiction to not offend traditional notions of fair play and substantial justice. 47 F.4th 917, 925–27. The Court held that (1) defendants must purposefully direct its activities at the forum, (2) the lawsuit arises out of or relates to defendant's forum related activities, and (3) exercising jurisdiction is reasonable. *Id*. "Express aiming" at a forum may be appealing to and profiting from consumers there.  A subjective intent to appeal to customers in a market is a key distinguishing factor, but even absent a subjective intent, adding "something more" showing an appeal to and profiting from the U.S. market rises to minimum contacts.  Cultivating a U.S. audience may be shown by small factors such as taking steps to reduce latency delay for U.S. consumers so the page loads faster or posting legal compliance documents relevant to the United States.

Docket 122, Page 8 at Line 22 should be amended to read:

… their marketing professionals to target the United States as reflected by Exhibit 23 showing Fabio Lo Zito's Linked-In Profile.  He was InnoGames's PR Manager in 2013 to 2015.  On page 4 of the exhibit he states that he coordinated PR agencies [marketing agencies] in "key markets such as the US, UK, and France" on behalf of InnoGames. This exhibit shows that not only did InnoGames consider the U.S. a key market, but they directed PR agencies specifically for advertising in the

Case No. C19-1402 RSM ATTACHMENT: *PRAECIPE: To Add Supplemental Authority and Information*-2

Penny Quinteros
Phone: 206-661-8292
elilyn@comcast.net

U.S. market. This fact alone more than exceeds the *Will Co.* requirement of "express aiming." *See* 47 F.4th 917, 925–27

/s/ Penny Quinteros

Penny Quinteros, Esq. *Pro Se*
WA Bar No. 60753
19338 133rd PL SE
Renton, WA 98058
elilyn@comcast.net
Phone: 206-661-829

Case No. C19-1402 RSM ATTACHMENT: *PRAECIPE: To Add Supplemental Authority and Information*-3

Penny Quinteros
Phone: 206-661-8292
elilyn@comcast.net

239

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

Penny Quinteros, _____

_____,

Plaintiff(s),

v.

InnoGames, *et al.,*

,

Defendant(s).

CASE NO. C19-1402 RSM

[PROPOSED] ORDER ON PRAECIPE TO ADD SUPPLEMENTAL AUTHORITY AND INFORMATION TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

_____

THIS MATTER having come on for consideration of Plaintiff's August 13, 2024 PRAECIPE TO ADD SUPPLEMENTAL AUTHORITY AND INFORMATION TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT and being duly advised in the premises, it is ORDERED as follows:

The Praecipe request is granted, and Plaintiff's Supplemental Authority and Information contained in the Exhibit will be added to the Response. Defendants will have an additional 7 days to respond.

Dated this _____ day of _____, _____.

_____
THE HONORABLE RICARD S. MARTINEZ
UNITED STATES DISTRICT JUDGE

241

242

Presented by:

/s/ Penny Quinteros

Penny Quinteros, Esq. *Pro Se*
WA Bar No 60753
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

243

*PROPOSED ORDER ON PRAECIPE TO ADD SUPPLEMENTAL AUTHORITY AND INFORMATION*
Case No. C19-1402 RSM

Penny Quinteros
Phone: 206-661-8292
elilyn@comcast.net

243

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

Penny Quinteros, _____

_____,

                Plaintiff(s),

      v.

InnoGames, *et al.,*

,

                Defendant(s).

CASE NO. C19-1402 RSM

DECLARATION OF PENNY QUINTEROS, ESQ.

_____

**DECLARATION OF PENNY QUINTEROS, ESQ.**

I, Penny Quinteros, Esq., declare and state as follows:

1.  I am the *pro se* Plaintiff in this action.

2.  I am submitting this declaration to provide the Court with key documents relevant to Plaintiff's Opposition to Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint.

Case No. C19-1402 RSM *Declaration of Penny Quinteros*-1

Penny Quinteros
Phone: 206-661-8292
elilyn@comcast.net

244

3.  The document marked as Exhibit 23, attached, is a true and correct copy of the LinkedIn Profile as displayed to me on December 18, 2020 from the stated LinkedIn URL. It purports to be the profile of InnoGames's PR Manager where he describes his duties at InnoGames including targeting the "key" U.S. market.

I declare under penalty of perjury under the laws of the United Staets of America that the foregoing is true and correct.

Executed this 13th day of August, 2024 in Bennington, Vermont.

/s/ Penny Quinteros

Penny Quinteros, Esq. *Pro Se*
19338 133rd PL SE
Renton, WA 98058
elilyn@comcast.net
206-661-8292

Case No. C19-1402 RSM *Declaration of Penny Quinteros*-2

Penny Quinteros
Phone: 206-661-8292
elilyn@comcast.net

245



Join now | Sign in

Fabio Lo Zito

EXHIBIT 23
19-CV-1402-RSM -
- Page 1



...

## Fabio Lo Zito

Global Public Relations Manager at Blizzard
Entertainment

Irvine, California · 500+ connections

Join to Connect


Blizzard Entertainment


Universität Hamburg / University
of Hamburg


Company Website ⬏

## About

PR manager with over 10 years of experience working in an international, multilingual tech,
communications, and gaming environment. German native speaker and excellent proficiency in
written and spoken English. Adept at leading global and local market activities for major products
and franchises, drafting and executing integrated communications plans and strategies – from
media campaigns and press tours to influencer outreach, live streams, trade shows and esports
events. Excellent communicator with strong tech and gaming network in the US, Europe, LatAm
and APAC regions, among others. Media-passionate and team-oriented with strong social skills.
Experienced with budgeting and line-management, leading communication teams, hiring staff
and agencies as well as managing and briefing internal and external stakeholders.

## Activity

**Big stuff incoming! Happy that we do right by the teams and the
community! We threw the gauntlet in Covids face and still have a full**



Join now    Sign in

Fabio Lo Zito

we celebrate #thanksgiving2020. Wanted to share a personal story about the...

Liked by **Fabio Lo Zito**

Thrive together! Achievements are always the product of our teachers, our peers, and our teams! Way to go Anton Borkel, Simon and Christian (2WEI)...

Liked by **Fabio Lo Zito**

Join now to see all activity

## Experience

### Blizzard Entertainment

3 years 6 months

### Global Public Relations Manager

Nov 2019 - Present · 1 year 2 months

Irvine, California

Global PR Manager for Hearthstone and responsible for all franchise communications and media relations worldwide.

Global franchise communications planning for Hearthstone, expansions, and new game mode launches, including media outreach, interviews, live event participation, Blizzcon, spokespeople training, promotional streams.

In charge of briefing communications guidelines, plans and activations to regional PR managers and agencies in 9 global territories and global tracking of...

Show more

### Public Relations Manager Europe - Esports

Jul 2017 - Oct 2019 · 2 years 4 months

Versailles Area, France

EXHIBIT 23
19-CV-1402-
RSM -- Page 2

Case: 24-6332, 02/25/2025, DktEntry: 12.3, Page 157 of 313

 

Fabio Lo Zito

well as agencies, content creators and media across all key markets.
Relationship owner for major sports, gaming and...

Show more

### Senior PR Manager

Perfect World Europe B.V.

2016 - Jun 2017 · 1 year

Amsterdam und Umgebung, Niederlande

PR contact for all European Territories
Development and implementation of EU-wide PR brand strategies and PR activities for
Perfect World and all its Console and PC titles, including Dungeons and Dragons:
Neverwinter and Star Trek Online
Cooperation and synchronisation with stakeholders from Community and Marketing
along with US-based development studios (such as Cryptic, Turtle Rock Studios and
Motiga) and Perfect World US head office
Point of contact for media, freelancers and PR...

Show more

### Product Communications Manager

Goodgame Studios

Nov 2015 - Nov 2016 · 1 year 1 month

Hamburg

Communications Manager for the company's product portfolio
Responsible for communications around all of Goodgame's PC Client and mobile titles
Development of overarching brand strategies in cooperation with stakeholders from
marketing and product
Crisis communication during 2016 layoffs: internal and external statements, media
outreach

### InnoGames GmbH

4 years 8 months

EXHIBIT 23
19-CV-1402-
RSM -- Page 3



Fabio Lo Zito

Product PR Manager

Jun 2013 - Nov 2015 · 2 years 6 months

Hamburg und Umgebung, Deutschland

Developing and executing PR strategies for all of InnoGames' products

- Handling PR side of entire games portfolio
- Long-term launch planning with concepts for trade shows, events, and production of trailers
- Writing PR plans, press releases, FAQs, official game descriptions, feature lists,
- Coordination of PR agencies in key markets, such as US, UK and France.

### Junior PR Manager

Sep 2011 - May 2013 · 1 year 9 months

Hamburg und Umgebung, Deutschland

### Intern PR

Apr 2011 - Sep 2011 · 6 months

Hamburg

### Working Student

Faktenkontor GmbH

Mar 2009 - Apr 2011 · 2 years 2 months

Research and conceptual work

- Creating and proofreading texts and Press releases
- Planning and execution of contest "Hamburgs Best Employees"

### Working Student Press Department

Norddeutscher Rundfunk NDR

Nov 2007 - Mar 2008 · 5 months

Research, Editorial and administrative work

- Writing and proofreading texts for programmes
- Indexing films and PR publications.

EXHIBIT 23
19-CV-1402-
RSM -- Page 4



Fabio Lo Zito

Conceptual design and execution of corporate surveys

## Education

### Universität Hamburg / University of Hamburg

Bachelor of Arts (B.A.) · English Language and Literature

2006 - 2011

## Languages

### German
Native or bilingual proficiency

### English
Full professional proficiency

## Groups

### Digital Gaming Professionals

### Games-Career

### Gameskoepfe

### Podcast Game Consultant

EXHIBIT 23
19-CV-1402-
RSM -- Page 5

Case: 24-6332, 02/25/2025, DktEntry: 12.3, Page 160 of 313

  **Linked**in                                    Join now    Sign in

Fabio Lo Zito

# View Fabio's full profile

. See who you know in common

. Get introduced

. Contact Fabio directly

**Join to view full profile**

## People also viewed

 **Cassandra Reynoso**
Global PR at Blizzard Entertainment
Los Angeles Metropolitan Area

 **Carlos Ascencio**
PR Manager at Bungie
Rockville, MD

 **Sara Zaidi**
Senior Global Public Relations Manager, Diablo Franchise & Classic Games at Blizzard
Entertainment
Los Angeles Metropolitan Area

 **Jeremy Gumber**
Communications Manager at Private Division
New York City Metropolitan Area

 **Juliette Legrand**
Communications Director, EMEA and Asia Pacific at Logitech
Lausanne

 **Meike Hansen**
Managing Supervisor at FleishmanHillard
Frankfurt

 **Alexey Pastushenko**

EXHIBIT 23
19-CV-1402-
RSM -- Page 6

Case: 24-6332, 02/25/2025, DktEntry: 12.3, Page 161 of 313
Page 9 of 10

 

Fabio Lo Zito

   Berlin Metropolitan Area

**Tamara Berger**

PR & Markting bei Toplitz Production

Austria

**Christian Berg**

Operation Manager bei KFP Swiss AG

Winterthur

**Show more profiles**

# Others named **Fabio Lo Zito**

**Fabio Lo Zito**

Service Manager at Serco

Rome

1 other named Fabio Lo Zito is on LinkedIn

See others named **Fabio Lo Zito**

# Add new skills with these courses

**Cert Prep: Unity UI and 2D Games**

**Unity 4: 2D Essential Training**

**Social Media Marketing: Social CRM**

See all courses

EXHIBIT 23
19-CV-1402-
RSM --
Page 7



Join now    Sign in

Fabio Lo Zito

Global Public Relations Manager at Blizzard Entertainment

Global Public Relations Manager at Blizzard Entertainment

Universität Hamburg / University of Hamburg

View profile

View profile badges

© 2020                          About

Accessibility                   User Agreement

Privacy Policy                  Cookie Policy

Copyright Policy                Brand Policy

Guest Controls                  Community Guidelines

Language

EXHIBIT 23
19-CV-1402-
RSM -- Page 8

**2024 Reply on Motion to Dismiss – Docket 123**

The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PENNY QUINTEROS filing as TWOCENTS (a pseudonym),<br><br>Plaintiff,<br><br>v.<br><br>INNOGAMES, HENDRIK KLINDWORTH, MICHAEL ZILLMER, JULIE (JILL) BLAN, RICHARD STEPHENSON,<br><br>Defendants. | CASE NO. 19-cv-01402 RSM<br><br>DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED COMPLAINT<br><br>Noted for Hearing: August 7, 2024 |

254

## I.   PRELIMINARY STATEMENT

This case is more akin to baseball than bowling: three strikes and you are out.  This is indeed the third time Plaintiff has pleaded.  It is the third time she has missed the mark.  Defendants now respectfully ask this Court to recognize that reason and tolerance, both having been honorably presented, must now be granted their dues.

## II.   LEGAL ARGUMENT

### A.   This Court Lacks General and Specific Jurisdiction Over Defendants

Plaintiff's Opposition purports, in a single sentence, that general jurisdiction exists because InnoGames' business relies on Amazon (a Washington company), InnoGames has a Washington State business license, and InnoGames pays Washington State sales tax.  Defendants already established that in the Ninth Circuit, a company's affiliation with Amazon does not confer general jurisdiction.  Motion, at 12.  This proposition of law goes beyond Amazon fulfilling orders, and also includes Amazon's role as a payment processor through Amazon Pay, as alleged.  TAC¶¶11,22;[1] *see, e.g.*, *Serio v. Fan Fair Inc.*, 2017 WL 8785132, *3 (N.D. Cal. Feb. 21, 2017) ("[T]here is no authority to suggest that a business using either of those [payment processing] websites is sufficient to establish general jurisdiction.").  This Court should disregard the remaining allegations set forth in Plaintiff's Opposition that Defendants bought a server from Amazon, that InnoGames has a Washington license and pays Washington sales tax—because they appear for the first time in Plaintiff's Opposition and are absent from the TAC.  *Olympic Tug & Barge, Inc. v. Lovel Briere LLC*, 668 F. Supp. 3d 1165, 1177 (W.D. Wash. 2023) ("A plaintiff, however, may not amend its pleading via its responsive brief.")

---

[1] Unless otherwise indicated, all capitalized terms shall have the same meanings set forth in the Motion, Dkt. #114.

As stated in the Motion, Plaintiff's allegations of trivial connections to Washington do not meet the high bar of establishing specific jurisdiction over Defendants, Dkt. #114. Motion, at 10-11. Citing *Zippo Manufacturing Co v. Zippo Dot Com Inc*., 952 F. Supp. 1119 (W.D.Pa. 1997), Plaintiff argues that specific jurisdiction exists simply because *Forge of Empires* is an interactive website. In finding jurisdiction, the *Zippo* court found that the defendant had "done more than create an interactive website through which it exchanges information with Pennsylvania in hopes of using that information for commercial gain later." *Zippo*, 952 F.2d at 1225. The "something more" was that the defendant had executed approximately 3,000 contracts with Pennsylvania individuals and seven Internet access providers there. *Id*. at 1126. Moreover, because the messages the defendant transmitted over the internet through its website were alleged to have infringed on the plaintiff's trademark, the Court was able to conclude that the plaintiff's cause of action arose out of the defendant's forum-related conduct, satisfying the second prong of the test. *Id*. at 1127.

Plaintiff has offered **no** evidence that *Forge of Empires* is anything more than an interactive website through which players all around the world can play a game, and occasionally make in-game purchases. In *Zippo*, maintenance of the website itself gave rise to the cause of action, i.e., trademark infringement. Here, while Plaintiff generally alleges that she made purchases due to her addiction, Plaintiff's claims are not related to in-game purchases. As such, it cannot be said that Defendants could reasonably foresee being hauled into court in Washington.

Plaintiff's remaining arguments likewise fail. Plaintiff purports that there is a lower bar to personal jurisdiction here because Plaintiff alleges tort, rather than contractual claims. But the TAC includes multiple contractual and statutory claims in addition to two trivial tort claims. This is not primarily a tort case and the standard cited does not apply. Plaintiff also purports, without citing a source of law, that her receipt of an email advertisement constitutes a "prima facie case" of specific

256

jurisdiction. *See* Dkt. #122, at 9. This argument fails to acknowledge that advertisements to the forum state are insufficient connections to establish personal jurisdiction. *See* Motion, at 11.

Plaintiff also misinterprets Defendants' argument about the *Xander* case. Defendants never argued that the *Xander* case created issue preclusion, Opp. at 9, only that the Court's rationale for dismissing the *Xander* case for lack of personal jurisdiction is equally applicable to this case.[2]

**B.      Jurisdiction Over Defendants is Not Appropriate Pursuant to FRCP 4(k)(2)**

In arguing for jurisdiction pursuant to FRCP 4(k)(2), Plaintiff extensively cites a non-binding case, *Graduate Mgmt. Admission Council v. Raju*, 241 F. Supp. 2d 589, 596–600 (E.D. Va. 2003). The instant action is more akin to *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006), where the Ninth Circuit held that a website's domain name is of "minimal importance." Thus, Plaintiff's contention that the *Forge of Empires*' inclusion of "us" in its url means that Defendants intentionally targeted their games to U.S. players fails on its face. For this reason and the additional reasons set forth in the Motion, Defendants are not subject to jurisdiction here.

**C.      The TAC's Newly Pled Claims Exceed the Ninth Circuit's Order
          and Should Be Stricken Pursuant to Rule 12(F)**

Plaintiff's Opposition incorrectly interprets the Ninth Circuit's Order as providing her unlimited and boundless amendments. The plain language of the Order only provides for an amendment limited to the deficiencies in the already pled claims: "Here, amendment would not be futile. Quinteros could plead additional facts to cure the various deficiencies identified above. . . Quinteros should be given more than one opportunity to cure the deficiencies in her pleading [the First Amended Complaint]." Order, at 11.

---

[2] Plaintiff claims she is "unable to determine if Dkt. #66 includes a final order from the court, or just a proposed order." The Order is signed by the Honorable James M. Hudson, so there can be no doubt that it is an order of the Court.

Plaintiff's citation to *Fontana v. Haskins* 262 F.3d 871, 877 (9th Cir. 2001)*,* which provides that legal theories need not be pleaded so long as there are sufficient factual averments, is not applicable here because the issue before the Court was not whether the pleading exceeded the scope of a court order.  Further, Plaintiff did not plead "new legal theories," rather, the TAC provides entirely new causes of action–invasion of privacy by publication, intercepting electronic communications, and intimate image dissemination–the elements of which were not plead at all in Plaintiff's FAC.  Plaintiff's three new causes of action should be stricken.[3]

**D.    Defendants' Exhibits To Its Motion Are Proper and Should Be Considered**

Plaintiff's TAC quotes the material from the three Motion exhibits as the basis of her claims, yet she chose not to attach them to her own pleading.  Now, she argues that they should be disregarded as "alternate facts."  It is well established that the Court may consider "materials incorporated into the complaint by reference, and matters of judicial notice." *New Mexico State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1094 (9th Cir. 2011).

Exhibit A, Dkt. #115-1, is a certification from the Copyright Office of the United States attaching a "true representation" of the copyright registered under number V Au 1-372-984.  Plaintiff's TAC references the copyrighted photograph nearly thirty times in her pleading as the basis of her claims for intimate image disclosure and copyright infringement.  *See* TAC¶9, 33, 34, 35, 37, 39, 42, 46, 48, 54, 56, 58, 59, 69, 72, 79, 126, 128, 133, 136, 138, 141, 144, 147, 148, 151, 153, 154, 157.  It is the *only* evidence for the copyright infringement claim.  Even though the image is certified by the United States Copyright Office, Plaintiff claims it is not the "best evidence" and

---

[3] Plaintiff's Opposition references negligent supervision as a "new claim", but the Ninth Circuit merely suggested Plaintiff expand upon that "legal theory" within her already pled negligence cause of action.  Such an amendment would fall within the bounds of the Order and the proposition in *Fontana*.

is poor quality.[4]   Opp. at 7.   She proffers that a better source evidence would be the Court's examination of her in the "original bra to demonstrate that it [is] somewhat see-through", Opp. at 7. This Court need not inspect Plaintiff wearing the undergarment in-person to determine whether it is see-through and whether she has a claim.   The copyrighted image is what is at issue in this case. Moreover, Plaintiff's incorporation of the image by reference establishes that Exhibit A does not present "alternate facts" that go beyond the pleadings, and Exhibit A is  authentic because it comes from The United States Copyright Office.  *See Milo & Gabby, LLC v. Amazon.com, Inc.*, 12 F. Supp. 3d 1341, 1351 (W.D. Wash. 2014) (considering reproduction of registered word and design marks from the U.S. Trademark Office on a motion to dismiss where marks were expressly identified in the complaint); *see also Warren v. Fox Family Worldwide, Inc.*, 171 F. Supp. 2d 1057, 1062 (C.D. Cal. 2001), *aff'd*, 328 F.3d 1136 (9th Cir. 2003) (judicially noticing copyright certificates); *Idema v. Dreamworks, Inc.*, 90 F. App'x 496, 498 (9th Cir. 2003) (judicially noticing copyright registration).

Exhibits B and C may also be considered in the context of a motion to dismiss.  Exhibit B is the Terms and Conditions in effect in 2016 by which InnoGames operates *Forge of Empires*, Dkt. #115-2.  Plaintiff's Opposition purports that the T&Cs are "not relevant", but she incorporates the T&Cs by reference 36 times in the TAC.  Plaintiff also purports that the T&Cs url's inclusion of "en" instead of "us" means that Exhibit B does not apply to the U.S. server.  This is not true.  "En" merely reflects the language of the T&Cs in "English".  This is made clear at the top of first page of Exhibit B which shows a "language selector" drop down.  *See* Dkt. #115-2.  Similarly, Plaintiff's Opposition purports that Exhibit C – the Rules in effect in 2016 – are "not relevant" but she

[4] Yet, the image is clear enough to read the obscenities in Plaintiff's note.

259

incorporates them by reference eighty times in the TAC. Plaintiff claims that the Rules are not applicable because "InnoGames has a practice of secret rule changes." The Court should not disregard Defendants' exhibit based on Plaintiff's unproven conspiracy theory. Notably, every quotation of the Rules in Plaintiff's TAC appears in Exhibit C, so it is applicable to her claims. *See, e.g.*, TAC ¶132; Exhibit C, Section 3.

**E.      Plaintiff Fails to State a Claim**

**1.      Intimate Image Disclosure**

As set forth in the Motion, the Selfie does not constitute an "intimate image," which requires depiction of "a person's intimate body parts, whether nude or visible through less than opaque clothing, including the . . . postpubescent female nipple." This Court can determine for itself the accuracy of the TAC's description of the Selfie. TAC¶165.

Plaintiff's Opposition fails to overcome presumption that statutes apply prospectively, not retroactively. The Supreme Court has held that the presumption against retroactive legislation is "deeply rooted in our jurisprudence," and can only be overcome where Congress expresses a clear and unambiguous intent to do so. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994). Plaintiff does not point to the Washington legislature's or Congress's intent—let alone clear intent—that the intimate image disclosure statutes should be applied retroactively. Plaintiff also provides no legal support for her contention that the existence of a related criminal law that existed prior to enactment of the civil remedy makes the latter apply retroactively.

Plaintiff attempts to avoid Defendants' statute of limitations argument by purporting that the "relation back" doctrine applies. Rule 15(c)(1)B) of the Federal Rules of Civil Procedure provides: an "amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence that

set out-or attempted to be set out-in the original pleading." In analyzing whether the relation back doctrine applies to a particular claim, "the court compares the original complaint with the amended complaint and decides whether the claim to be added will likely be proved by 'the same kind of evidence' offered in support of the original pleading." *Percy v. San Francisco General Hospital*, 841 F.2d 975, 978 (9th Cir. 1988). "In making this decision, the court considers whether the 'allegations of a new theory in an amended complaint involve[ ] the same transaction, occurrence, or core of operative facts involved in the original claim.'" *Id*. "Fairness to the defendant demands that the defendant be able to anticipate claims that might follow from the facts alleged by the plaintiff." *Id*. at 979 (internal citations omitted). Plaintiff's original complaint, Dkt. #3, does not bring any claims related to the Selfie and does not place responsibility on InnoGames for the Selfie's viewing, so the relation-back doctrine cannot apply.

### 2. Invasion of Privacy by Publication

As stated in the Motion, Plaintiff fails to state a claim for invasion of privacy by publication. Motion, at 16-17. The claim is also time barred and does not "relate back" to Plaintiff's initial complaint. *See infra* Section D.1.

### 3. Interception of Electronic Communications

Plaintiff's interception of electronic communication claims fail under both state and federal law. The WPA and the ECPA both require "interception," which, here, would mean that the (still fictional) moderator must have stopped, impeded, or otherwise prevented the communication from reaching Gensmoky. Plaintiff's Opposition claims that the interception occurred before the Selfie reached Gensmoky, but this directly contradicts allegations in the TAC alleging that the link to the Selfie or a transmittal copy of the Selfie was accessed by the unknown actor *after* its transmission to Gensmoky: "an InnoGames moderator accessed this screenshot link through a private InnoGames

feature known as the "report" system when this Third-Party reported the "whisper" that it was sent in." TAC¶35. *See also* TAC¶36,¶142,¶155,¶166 (alleging that Plaintiff's communication was intercepted after it reached its intended recipient). The TAC controls and the Court may not consider new allegations in Plaintiff's Opposition in determining the sufficiency of the claim. *Olympic Tug & Barge, Inc. v. Lovel Briere LLC*, 668 F. Supp. 3d 1165, 1177 (W.D. Wash. 2023) ("A plaintiff, however, may not amend its pleading via its responsive brief.").

Both claims also fail because Plaintiff consented to the alleged use of the Selfie. This Court should reject Plaintiff's attempt to misread the T&Cs to avoid their applicability. She contends that Section 13.3 would only apply if *Plaintiff* made her Selfie "publicly available", Opp. at 17. But, Section 13.3 states that if the *user* makes the information "*available*" then *InnoGames* has the "free, simple, universal right to duplicate the content and make it *publicly available* in connection with the Games and in the forums." Exhibit C, Section 13.3 (emphasis added). Relatedly, Plaintiff claims that InnoGames waived enforcement of the T&Cs by not abiding by their requirements to enforce them, but provides absolutely no legal support for her contention. The T&Cs are also not unconscionable and do not permit "spying." Opp. at 18. Licenses of this nature are commonplace.

Plaintiff also failed to plead damages (Motion, 18-19), and as stated *supra*, Plaintiff's claim is time-barred and does not "relate back."

### 4.      Plaintiff Still Fails To State Claims of Copyright Infringement

By her own admission, Plaintiff "does not seek to make out a claim for vicarious infringement." Opp. at 19. As such, she is also not entitled to relief premised on direct or contributory infringement.

There can be no direct liability because Plaintiff granted InnoGames a license to display the Selfie, notwithstanding her distorted interpretation of Section 13.3, which, as explained *supra*,

contained no requirement that the user make the image "publicly accessible" to apply, thereby negating her copyright infringement claim.

Even if Plaintiff did not grant InnoGames a license (which she did), *see* Motion, at 20-22, her claim of direct infringement also fails under the server test. Plaintiff admits to sending the Selfie "via a 'screenshot' url link that acted as a private-access-code, however this code was only valid for approximately 12 hours." Opp. at 19. While this allegation is not in her TAC,[5] implicit in her admission is that she sent a link to an image that was stored on her server or one she controlled, or, in any event, a server not controlled by Defendants. That is the only logical inference since she controlled where the image was stored, whether a code was needed to access it, and how long the code was valid. If the Selfie had been stored on InnoGames' server, then it would not have needed the link to access it. Still, the TAC does not allege that InnoGames took any actions to upload the Selfie to its server, so the TAC is also bereft of any non-conclusory allegations that InnoGames stored the image on its server or that a third-party placed a file of the image on its own server. Accordingly, the claim for direct liability falls under the server test.[6]

Without direct liability, there can be no secondary liability, so the contributory liability claim necessarily fails. *See Logan v. Meta Platforms, Inc.,* 2023 WL 3668520 (N.D. California 2023) ("Because Logan has failed to plausibly plead that Meta[]…cause[s] Facebook users to store Logan's photographs on their devices, he has failed to plead the direct infringement that must underlie any claim for secondary liability").

---

[5] *Olympic Tug & Barge, Inc. v. Lovel Briere LLC*, 668 F. Supp. 3d 1165, 1177 (W.D. Wash. 2023).

[6] *Hunley v. Instagram LLC*, 73 F.4th 1060 (9th Cir. 2023) ("Without a copy on its servers, Google transmits or communicates only an address which directs a user's browser to the location where a copy of the full-size image is displayed. Google does not communicate a display of the work itself. Although Google may [have] facilitate[d] the user's access to infringing images, we conclude[] that such assistance ... does not constitute direct infringement.") (internal quotations and citations omitted)

Plaintiff's denial that her claim is barred by the continuing infringement doctrine because "the circumstances of each infringement is different" is baseless. Each allegation in the TAC sounding in copyright infringement concerns the same image, the same platform, and often the same class of alleged infringers (e.g., moderators and other gamers). Hence, the continuing infringement doctrine is apposite and gives the Court another basis to dismiss her claim. And since Plaintiff fails to refute Defendants' argument that she is not entitled to statutory damages or attorneys' fees, she impliedly admits same, so those requests for relief should be denied.[7] The deficiencies in her copyright cause of action are incurable and the Court should dismiss her claim with prejudice.[8]

### 5.    Negligence

Plainiff's Opposition purports that simply alleging an employer-employee relationship between InnoGames and the unnamed moderator creates vicarious liability here. The analysis is far more nuanced. Even if an employee-employer relationship exists, the unnamed moderator did not have a duty to "protect Plaintiff's private conversation and photograph-link reported to them." TAC 48-49. While moderating tickets may have been within the scope of an employees' duty, the complained-of conduct is the disclosure of the Selfie, and the disclosure is an action taken outside the scope of the moderator's duties and not on behalf of his/her employer. Plaintiff glosses over that distinction, but this Court should not. There is no evidence that InnoGames authorized, instructed,

---

[7] See *AT & T Corp.* v. *Syniverse Techs., Inc.*, 2014 WL 4412392, at *7 (S.D.N.Y. Sept. 8, 2014) (finding that plaintiff's "silence concedes the point" where it failed to discuss opponent's argument in its opposition to a motion for summary judgment); *In re UBS AG Secs. Litig.*, 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012) (considering argument not addressed in opposition to motion to dismiss to be conceded); *Degolia v. Kenton Cty.*, 381 F. Supp. 3d 740, 759–60 (E.D. Ky. 2019) ("[I]t is well understood ... that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.")

[8] A court has discretion to deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

264

or had any purpose to further the spreading of the Selfie.  The unnamed moderator, if there even could have been such a person, acted on her own accord, based on her own personal animus, and accordingly, vicarious liability cannot attach.

Plaintiff uses the words "negligent supervision" in a subheading of her Opposition, Opp. 19, but does not defend this theory of her claim–which is distinct from vicarious liability–at all in her brief.  Defendants respectfully refer the Court to their Motion on this argument.

Because Plaintiff failed to state a claim for general negligence, her gross negligence claim necessarily fails.

**6.      The Remaining Claims Fail**

For the reasons stated in the Motion, Plaintiff's Intentional Infliction, Negligent Infliction, Gender Discrimination, and Product Liability claims fail.

**7.      Defamation**

In her Opposition, Plaintiff concedes that she does not identify the speaker of the statement or when the statements were made.  These deficiencies are grounds for dismissal.  *Oriko v. Starbucks Corp.*, 2007 WL 3228443, *2 (W.D. Wash. Oct. 31, 2007); *Lutz v. Spokane Reg'l Health Dist.*, 2023 WL 8005297, *12 (E.D. Wash. Nov. 17, 2023).  Defendants also stand by their argument that the statements are non-actionable opinions.

Plaintiff's purports that statements about extra-marital sexual activities and her mental health are "textbook defamation *per se*" yet provides no legal citation.  Defamation *per se*, is an exceptionally narrow claim reserved for allegations of fact deemed so offensive that damages need

265

not be proven. Here, the alleged third-party players' taunting of Plaintiff (TAC¶67), could not plausibly be considered to be statements of false truths (that is, libelous declarations).

### 8. Fraud and Misrepresentation

A fraud claim does not lie for Defendants' failure to be "fair" under the T&Cs or the Rules. Plaintiffs' claim still fails for lack of particularity. *See* Motion, at 28-29.

Plaintiff's Opposition latches on to the single quote from the Rules that she alleges was misrepresented to her: "InnoGames does not accept any publications that the *Forge of Empires* Team considers illegal, insulting, offensive, threatening, abusive, real-life aggressive, sexually explicit, pornographic . . ." Ex. C, Section 3.  But, Plaintiff's Opposition does not address InnoGames' argument that this statement is not actionable because it does not "constitute a representation of an existing fact."  Motion, at 29-30.

### 9. Unfair and Deceptive Trade Practices

Defendants respectfully refer the Court to their argument in the Motion, at 30.

### 10. Breach of Contract

Plaintiff's wishy washy breach of contract action should be dismissed once and for all.  As referenced *supra*, she claims the T&Cs and Rules are not relevant, Opp. 7, but then seeks to reap the benefits of them through either a direct breach of contract theory or a third party beneficiary theory.

As explained in the Motion, both theories of liability fail because there was no material breach of the T&Cs or Rules – the T&Cs explicitly provide InnoGames a license to duplicate and make publicly available any use-provided content. Exhibit A, Section 12.3.  Also, the TAC does not plead contract damages.  Motion, at 31.

266

Her third-party beneficiary theory fails for the additional reason that the parties to the contract—that is, InnoGames and the users—must have expressly intended to enter into the contract for *Plaintiff's* benefit. A statement by a moderator, after-the-fact, TAC¶135, does not show all users' intent to benefit *Plaintiff* specifically by agreeing to the T&Cs. Plaintiff failed to address this point.

Finally, Plaintiff undercuts the plausibility of her claim once again (and her credibility) by contradicting the allegations in her pleading with those in her brief. *Compare* Opp. at 25 ("Players were freely allowed to join the game without agreeing to the Terms and Conditions.") *with* TAC¶136 ("Generally all players on *Forge of Empires* need to agree to the Terms and Conditions before playing, with a few rare exceptions."). This claim should be dismissed.

**11.    Promissory Estoppel**

Defendants respectfully refer the Court to the Motion, at 32.

### III.  CONCLUSION

For the reasons set forth above, and in Defendants' Motion, Plaintiff's TAC should be dismissed in its entirety, with prejudice.

DATED this 7th day of August, 2024.

Respectfully submitted,

SUMMIT LAW GROUP, PLLC

I CERTIFY THAT THIS MEMORANDUM CONTAINS 4,044 WORDS, IN COMPLIANCE WITH THE LOCAL CIVIL RULES.

By s/Diana Siri Breaux
    Diana Siri Breaux, WSBA #46112
    315 Fifth Avenue S, Suite 1000
    Seattle, WA 98104
    *dianab@summitlaw.com*

267

PHILLIPS NIZER LLP

Alan Behr (admitted Pro Hac Vice)
Elizabeth A. Adinolfi (admitted Pro Hac Vice)
Judith Swartz (admitted Pro Hac Vice)
485 Lexington Avenue
New York, NY 10017
abehr@phillipsnizer.com
eadinolfi@phillipsnizer.com
jswartz@phillipsnizer.com

*Attorneys for Defendants*

**2024 Opposition to Motion to Dismiss – Docket 122**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

Penny Quinteros,_____

_____,

                    Plaintiff(s),

          v.

InnoGames, *et al.,*

                    Defendant(s).

CASE NO. C19-1402 RSM

OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S
THIRD AMENDED COMPLAINT

Noted for Determination on: August 1,
2024

ORAL ARGUMENTS REQUESTED

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD**

**AMENDED COMPLAINT**

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED
COMPLAINT - i

Penny Quinteros, Esq. (pro se)
Phone: 206-661-8292
elilyn@comcast.net

269

## TABLE OF CONTENTS

I.    Introduction ........................................................................................................ 1
II.   Inclusion of Alternate Facts in a Motion to Dismiss is NOT appropriate............................ 3
III.  Personal Jurisdiction Is Appropriate .................................................................... 5
   A.  Waiver of Personal Jurisdiction .................................................................... 5
   B.  General Personal Jurisdiction........................................................................ 6
   C.  Specific Personal Jurisdiction ....................................................................... 6
   D.  Jurisdiction is Appropriate Under F.R.C.P. 4(k)(2) ........................................... 8
IV.   The Third Amended Complaint Does not exceed the Scope of the Ninth Circuit's Order Because specific legal theories are not required in a complaint to still Be Entitled to Relief under those Theories ............................................................................................. 9
V.    The Claims are not time Barred due to the Doctrine of "Relating Back" and the "Discovery PrincipLE"....................................................................................................... 10
VI.   Intimate Image Disclosure Is Properly Pled.................................................. 12
VII.  the Intimate Image LAWS Should Be Applied Retroactively ...................................... 12
VIII. Disclosure of private fact is properly pled ...................................................... 13
IX.   Defendants Misconstrue the TimeLine Related to Electronic Interception of the Image Under State and Federal law .................................................................................... 14
X.    the Copyright Claim is Properly Pled........................................................... 15
XI.   Negligence and negligent Supervision are Properly Pled ......................................... 16
XII.  Negligent Infliction and Intentional Infliction of Emotional Distress are Cured with Plaintiff properly pleading the relationship between InnoGames and its Moderators ................ 18
XIII. Other Claims................................................................................................ 18
   A.  Gender Discrimination .................................................................................. 18
   B.  Product Liability.......................................................................................... 19
   C.  Defamation ................................................................................................. 19
   D.  Fraud and Misrepresentation and Unfair and Deceptive Trade Practices ...................... 20
   E.  Breach of Contract and Promissory Estoppel................................................... 21
XIV.  Conclusion.................................................................................................. 21

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT - ii

Penny Quinteros, Esq. (pro se)
Phone: 206-661-8292
elilyn@comcast.net

TABLE OF AUTHORITIES

**Cases**

*Allen v. State*, 118 Wash. 2d 753, 757–58 (Wash. 1992) .................................................. 11
*ASARCO, LLC v. Union Pacific R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014)........................... 11
*Bayless v. Community College Dist. No. XIX*, 84 Wash.App. 309, 312 (Wash. Ct. App. 1996) 12
*Benton v. Baker Hughes* 2013 WL 3353636, (C.D. Cal. June 30, 2013).................................. 10
Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir. 2008)......................................................... 6
*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) ......................................................... 6
*Expeditors International of Washington, Inc. v. Santillana*, 2023 WL 8449165 (W.D. Wash.
    Dec. 6, 2023) ............................................................................................................................. 10
*Graduate Mgmt. Admission Council v. Raju*, 241 F.Supp. 2d 589, 596–600 (E.D. Va. 2003)..... 8
*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) ................................. 3
*McKeever v. OpenSpend, Inc.*, 2019 WL 7758602 at *4, (N.D. Cal. 2019) ................................. 5
*Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) ................................................................ 3
*Perfect10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146, 1159-62 (9th Cir. 2007) ......................... 16
*Quinteros v. InnoGames et.al*, No. 22-35333, (9th Cir. Jan. 8, 2024). ................................... 1, 9
*Quinteros*, 9th Cir. Jan 8, 2024 ................................................................................................. 10
*Raab v. NuSkin Enterprises, Inc.*, 28 Wash.App.2d 365, 396–97 (Wash. Ct. App. 2023) ......... 15
*Sioux Transp. Inc. v. XPO Logistics, LLC*. 2015 U.S. Dist. Lexis 171801 ................................. 7
*Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 559 (9th Cir. 1995 ............................................... 6
*Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995)............................................... 6
*Zippo Mfg., Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D. Penn. 1997) ......................... 7

**Other Authorities**

*Xander v. InnoGames, et. al.*, Complaint, No. D-504-CV-201600293 (Dist. Ct. Chaves Cnty,
    NM, May 6, 2016)....................................................................................................................... 2

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED
COMPLAINT - iii

Penny Quinteros, Esq. (pro se)
Phone: 206-661-8292
elilyn@comcast.net

271

## I.  INTRODUCTION

Defendants, in their Motion to Dismiss, bring forward the same tired arguments already considered and rejected by the Ninth Circuit Court of Appeals. *Quinteros v. InnoGames et.al*, No. 22-35333, (9th Cir. Jan. 8, 2024).  In remanding this case to the Western District of Washington, the Ninth Circuit identified fourteen areas of factual deficiency, that if properly pled, could result in a properly stated claim for relief.  *Id*. at 3–11.  Plaintiff has properly corrected these fact-omissions in the Third Amended Complaint and has properly stated her claims for relief. This Court should not reconsider the same arguments that the Ninth Circuit did not hold as deficient.

This case can best be explained with an analogy:

A new bowling alley opens and sends out invitations to players promising that it will be a fun, family-friendly atmosphere where all players will be subject to the same rules for their protection.  The bowling alley encourages patrons to bring their family and friends.  These players begin to have fun and strongly enjoy playing with their family and friends.

Unbeknownst to these bowlers seeking a fun and safe environment, the bowling alley also secretly posts flyers advertising in pornographic venues promising men that they should come play at this bowling alley because all of the women there are interested in "aggressive" sexual activity and interested in "brutal sex." Sexual harassment at the bowling alley against female patrons is rampant but ignored by the bowling alley.

At the same time, the bowling alley secretly recruits managers from this community of bowlers previously promised sexual favors from the female players.  It gives these secret-managers special authority and powers over the other patrons, including the ability to access the private information of the bowlers.  One of these secret-managers accesses the private information of a female patron and uses it to commit a sexual-based-crime against her and releases the private information with the intent to conspire with the other bowlers to harass the female patron and to commit further commit sexual-based-crimes.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT - 1

Penny Quinteros, Esq. (pro se)
Phone: 206-661-8292
elilyn@comcast.net

The female patron is unaware that the perpetrator of the crime is the same people she seeks out for help. Meanwhile these secret-managers promise the female patron that they will handle the problem, enforce their rules, but they never do, leaving the situation to continue unabated.

The only difference between this fictional bowling alley and InnoGames is that InnoGames is an international half-a-billion-dollar company that thinks it can get away with such outrageous behavior because the law doesn't apply online. Even worse, InnoGames's practice of intentionally exposing their female patrons to sexual-based-crimes has become a repeated practice across their games.[1] This case, at its heart, is not about money; it is about stopping InnoGames from creating the risk of, and unrepentantly exposing its female patrons to, sexual-based-crimes. It is why Plaintiff chose to expose herself to the perceived public shame associated with sending out an intimate image and continue with this lawsuit in her own name. This suit is about bringing about change and holding a company accountable for its actions.

Defense counsel uses confrontational language such as saying that Plaintiff has made "embarrassing personal admissions that Plaintiff, now a member of the bar of Washington State, has made public in her series of complaints." Dkt. 114, Motion to Dismiss, 1 (July 1, 2024). Defense counsel also claims that Plaintiff "lied." *Id*. at 8. Defense counsel is right, Plaintiff is now a member of the Washington State Bar and as such recognizes these statements as shockingly unprofessional and requests they be stricken from the Motion to Dismiss. Ms. Quinteros is not embarrassed by being the victim of a crime and refuses to be beaten down by the culture of shame defense counsel attempts to employ in a court pleading.

---

[1] This fact is demonstrated by *Xander v. InnoGames, et. al.*, Complaint, No. D-504-CV-201600293 (Dist. Ct. Chaves Cnty, NM, May 6, 2016). Defense counsel admits that Ms. Xander's complaint and Plaintiff's complaint are "strikingly similar" in their factual allegations. Dkt. 66, Declaration of Alan Behr, Esq., (Sept. 14, 2020). Ms. Quinteros and Ms. Xander independently made their assertions and were not aware of the other's case at the time.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT - 2

Penny Quinteros, Esq. (pro se)
Phone: 206-661-8292
elilyn@comcast.net

Plaintiff asks the Court to consider who has the moral high ground: Plaintiff, who, in reaction to years of harassment and being the victim of a crime, responded with anger and rudeness to those who perpetrated the offenses; or Defendants, who committed crimes, and invited others to sexually harass Plaintiff and commit crimes against her, covered it up, and still refuse to enforce their rules and kick the sexual-harassers off their platform? Still today, eight years after the crime occurred, the same players on *Forge of Empires* who engaged in the original offenses, publicly sexually harass Plaintiff with offensive language and share her intimate photo in violation of explicit InnoGames rules and terms and conditions, and InnoGames protects these individuals from the consequences of such behavior. There is no legal or moral authority that requires a victim to be polite to the criminals who committed a sexual-based-crime against her.

Ms. Quinteros has striven for the utmost professionalism throughout this case, and she asks the Court to require defendant's three attorneys to do the same, particularly as Ms. Quinteros is likely to be practicing before this Court in the future and two of defendant's attorneys will be likely returning to their New York City practice.

## II. INCLUSION OF ALTERNATE FACTS IN A MOTION TO DISMISS IS NOT APPROPRIATE

A motion to dismiss tests the legal sufficiency of a claim, not the facts of the claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A district court generally may not consider material outside the pleadings when assessing the sufficiency of a complaint. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Accepting alternate facts would convert the motion for dismissal to one for summary judgment and would require both parties be presented an opportunity to present all material pertinent to the motion. *Id*. A motion

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT - 3

Penny Quinteros, Esq. (pro se)
Phone: 206-661-8292
elilyn@comcast.net

274

for summary judgment is inappropriate in this case because Plaintiff has not had the opportunity to engage in discovery.[2]

Additionally, Plaintiff objects to inclusion of Defendant's Exhibits A, B, and C based on the rules of evidence. Exhibit A is objectionable because it violates F.R.E. 1001–08, otherwise known as the "Best Evidence" rule. Although this appears to be a copy of the photograph submitted to the Copyright Office, the photograph submitted to the Court was converted into a PDF. As such it retains little to no fidelity to the original image size and resolution. The Court should not consider a low-quality and fuzzy copy of a copy as if it were the original because it is not an authentic duplicate. This is particularly important in this case where whether Plaintiff's nipple is visible upon zoom-in is a crucial fact. The original image does show Plaintiff's nipple and areola. Further, Plaintiff has the original bra to demonstrate that it somewhat see-through, and as such meets the requirements of being "less than opaque" as required by RCW §§ 7.110.010–7.110.902 (referencing RCW 9A.86.010(6)(b)(ii)). There is further a question of fact whether a less than opaque covering meets the requirements of an "uncovered post-pubescent female nipple" as required by 15 U.S.C. § 6851.

Exhibits B and C are objectionable under F.R.E. 401 because they are not relevant. Exhibit C contends that it is the Rules applicable to Plaintiff's gameplay, however the submitted version is actually the rules applicable to the International version of the game as stated in "9) Miscellaneous … The Community Management of the *International* version of Forge of Empires are the final arbiters…" Dkt. 115 Exhibit C (emphasis added). This discrepancy is also reflected in the small url at the top of each page. *Id*. Defendants searched for and submitted for **en0**.forgeofempires.com which is the international version of the game. *Id*. (emphasis added). Plaintiff was playing on the U.S. server which has as its url "**us**.forgeofempires.com." (emphasis added); *See generally* Third Amended Complaint. Further, although the bottom of

---

[2] Plaintiff has requested Defense counsel to engage in discover, but they have refused.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT - 4

Penny Quinteros, Esq. (pro se)
Phone: 206-661-8292
elilyn@comcast.net

the Rules page states it was last updated in 2015, the complaint details that the Rules were surreptitiously changed sometime in 2017 to target Plaintiff. *Id*. at ¶ 100–103. Because Innogames has a practice of secret rule changes, these rules would also not be able to be verified as being from 2016 even if they weren't from the wrong server.

Exhibit B suffers from a similar flaw. The url is "en" instead of "us" as reflects the version applicable to the U.S. server which as a url of: "https://legal.innogames. com/portal/us/agb". Even if it weren't the wrong Terms and Conditions, Plaintiff alleges that she did not agree to the Terms and Conditions of the game as it was not a so called click-wrap agreement at the time she began playing, and it is a common flaw for *Forge of Empires* to admit players without having them agree to the Terms and Conditions. Third Amended Complaint, ¶ 24–27.

It is difficult, if not impossible, for Plaintiff to fully brief an opposition in the limited space allowed when she must contend with inappropriate inclusion of factual allegations in each section of the Motion to Dismiss. Plaintiff requests the Court to strike the factual allegations from the Motion to Dismiss and require re-briefing.

## III. PERSONAL JURISDICTION IS APPROPRIATE

### A. Waiver of Personal Jurisdiction

First, it should be noted that defendant Julie Blan waived personal jurisdiction by filing a 12(b)(6) Motion to Dismiss without asserting personal jurisdiction as a defense. F.R.C.P. 12(h)(1); See Dkt. 15, Motion to Dismiss (Dec. 19, 2019); see also *McKeever v. OpenSpend, Inc.*, 2019 WL 7758602 at *4, (N.D. Cal. 2019) (holding that the filing of a second amended complaint does not constitute a "clean slate" and that defendants must assert a lack of personal jurisdiction defense in their first motion to dismiss or it is waived).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT - 5

Penny Quinteros, Esq. (pro se)
Phone: 206-661-8292
elilyn@comcast.net

**B. General Personal Jurisdiction**

Plaintiff relies on her allegation in her complaint that InnoGames is a Washington State company by virtue of routinely doing business in the State with Amazon (not selling through Amazon, but buying server and webservices from Amazon), and also by virtue of having a Washington State Business license and paying Washington State sales tax for its Washington customers.

**C. Specific Personal Jurisdiction**

Specific personal jurisdiction is appropriate because there are numerous contacts that establish the "minimum contacts" necessary so as to not offend due process. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). And the Washington long-arm statute must allow for suit in the state-specific claims. Wash. Rev. Code § 4.28.185(1)(a-b).

The Ninth Circuit has held that "[a]bsent an evidentiary hearing this court only inquires into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Uncontroverted allegations in the plaintiff's complaint must be taken as true. *Id.* Disputes over statements in affidavits must be resolved in the plaintiff's favor in deciding a motion to dismiss for lack of personal jurisdiction. *Id.*

Further, tort claims are treated differently from only contract claims for determination of whether a defendant purposely availed themselves of the privilege of conducting activities in a state. *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995). In contract claims a defendant should not be haled into a jurisdiction through random chance, fortune, or attenuated contact with that jurisdiction. *Id.* (quoting *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 559 (9th Cir. 1995, and further quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). In tort claims, by contrast, "jurisdiction may attach if an out-of-fora defendant merely engages in conduct aimed at, and having effect in, the situs state." *Id.*

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT - 6

Penny Quinteros, Esq. (pro se)
Phone: 206-661-8292
elilyn@comcast.net

For websites, jurisdiction is also appropriate under the *Zippo* sliding scale test. *Zippo Mfg., Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D. Penn. 1997); *Sioux Transp. Inc. v. XPO Logistics, LLC*. 2015 U.S. Dist. Lexis 171801. The *Zippo* sliding scale analyzes the interactivity of a website: websites that are passive do not create jurisdiction in a state, but websites that are interactive do create jurisdiction in a state. 952 F.Supp at 1124. Websites that clearly are subject to personal jurisdiction in a state are those that do business in a state. *Id.*

Here, the minimum contacts are numerous, first InnoGames sent an email to Ms. Quinteros asking her to play the game in its pre-public, beta phase.  Third Amended Complaint ¶ 11(a).  This fact alone establishes a *prima facie* case and undermines defendants claims regarding similarities to Facebook. When Ms. Quinteros began playing the game, it wasn't a widely available website accessible from anywhere in the world, it was a private website only reached via a specific access code.

The Complaint further states that InnoGames has solicited Ms. Quinteros with directed emails, targeted advertisements online, and perhaps most importantly, advertisements on Ms. Quinteros' television over Washington State airwaves. Third Amended Complaint ¶ 11(b).

Personal jurisdiction is also appropriate because here, the website used by Forge of Empires is not a "passive" website. The website isn't a general website, in fact it is us.forgeofempires.com. The "us" indicating it is the website intended for players in the United States. They further display an American flag for those players to clearly indicate who is intended to access it. And they aren't "passive" in that they do business through their site. Ms. Quinteros has made thousands of dollars of purchases through the website alone.  These are factual determinations appropriate for an evidentiary hearing.

The business-aspects of this site, make it unlike any comparison to Facebook other non-business social media sites. There are key distinguishing characteristics the Court should mark.

Lastly, any comparison with the *Xander* case from New Mexico should be disregarded. There clearly is not issue preclusion going from a state court to federal court when a *pro se*,

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT - 7

Penny Quinteros, Esq. (pro se)
Phone: 206-661-8292
elilyn@comcast.net

278

non-attorney litigant is representing herself.  Further, Defendants rely on Dkt. 66 to make this assertion (noted in the footnotes), but Plaintiff is unable to determine if Dkt. 66 includes a final order from the court, or just a proposed order submitted to the New Mexico court.  Lastly, Ms. Xander appears to have started playing a different game when it was publicly available, making several factual distinctions from Ms. Quinteros's situation.

### D.  Jurisdiction is Appropriate Under F.R.C.P. 4(k)(2)

Personal jurisdiction is appropriate under F.R.C.P. 4(k)(2).  Defendants' assertion that an internet company must "target" the United States in order to have "minimum contacts" with the United States does not logically follow from the asserted caselaw they referenced.  There are numerous federal claims stated by Plaintiff meeting the stated requirements of 4(k)(2).

In *Raju* the Virginia Eastern District found that Rule 4(k)(2) allowed jurisdiction over a foreign defendant who was operating a website using copyrighted material from the Graduate Management Admission Test (GMAT). *Graduate Mgmt. Admission Council v. Raju*, 241 F.Supp. 2d 589, 596–600 (E.D. Va. 2003).  GMAT is a registered trademark and they exercise copyright over their test forms and questions. *Id.* at 596. The defendant, a citizen of India, was held to be under the personal jurisdiction of the Virginia federal court because Rule 4(k)(2) allowed the "relevant forum" for minimum contacts analysis to be "the United States as a whole." *Id.* at 597. Raju only had to direct his activity into the United States as a whole and not any specific jurisdiction within the United States, to fall within the personal jurisdiction of the court. *Id.*

Here, there is ample evidence that InnoGames and the defendants directed their activities into the United States. Primarily InnoGames, Hendrik Kindworth and Michael Zillmer directed their marketing professionals to target the United States; and they directed their game to create a special, and unique server to target U.S. players for play with the address us.forgeofempires.com: the "us" designating the country for players.  Richard Stephenson knew

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT - 8

Penny Quinteros, Esq. (pro se)
Phone: 206-661-8292
elilyn@comcast.net

279

he was moving from the international server to moderate on the United States server to direct his moderation employment activities towards the United States as well.  And as stated above, InnoGames used a U.S. flag as the logo to the server.  These are factual questions best decided on an evidentiary hearing.

## IV.  THE THIRD AMENDED COMPLAINT DOES NOT EXCEED THE SCOPE OF THE NINTH CIRCUIT'S ORDER BECAUSE SPECIFIC LEGAL THEORIES ARE NOT REQUIRED IN A COMPLAINT TO STILL BE ENTITLED TO RELIEF UNDER THOSE THEORIES

The Ninth Circuit held that Plaintiff should be given "… more than one opportunity to cure the deficiencies in her pleading…" *Quinteros*, 9th Cir Jan. 8, 2024.  At no point did the Ninth Circuit limit Plaintiff to specific factual allegations, and the Ninth Circuit even left open the door to multiple amendments. Even if the Ninth Circuit required only certain factual amendments, the complaint would still be sufficient because the prior complaint contained enough facts to assert these legal theories.

"Specific legal theories need not be pleaded so long as sufficient factual averments show that the claimant may be entitled to some relief."  *Fontana v. Haskins*, 262 F.3d 871, 877 (9th Cir. 2001).  Here, the intimate image theft laws, interception of communication laws, and invasion of privacy claims can all be made out based on the factual statements found in both the new complaint and the prior complaint.  The inclusion of headers and references to specific laws is for the convenience of the Court and opposing counsel, even if they were absent from the complaint, they could still be asserted against the Defendants, meaning their inclusion is de minimis.

This case has substantial differences from either *Expeditors* or *Benton*, cases cited by Defendants.  *Expeditors International of Washington, Inc. v. Santillana*, 2023 WL 8449165

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT - 9

Penny Quinteros, Esq. (pro se)
Phone: 206-661-8292
elilyn@comcast.net

(W.D. Wash. Dec. 6, 2023); *Benton v. Baker Hughes* 2013 WL 3353636, (C.D. Cal. June 30, 2013).  In *Expeditors*, the Plaintiff essentially tried to do an end-run around having to file an appeal by repleading two claims that had been dismissed but with different titles.  2023 WL 8449165 at *2("… two are relabled clones of causes of action previously dismissed without leave to amend.").  Similarly, in *Benton*, a claim for breach of contract was revived into a claim for promissory estoppel among other arguments.  2013 WL 3353636 at *2.  In either case, the district court had granted leave to amend for only very specific reasons, and the Plaintiffs tried to refile similar claims without having to appeal.

In Plaintiff's case, the Ninth Circuit determined that the District Court had abused its discretion in not allowing liberal leave to amend, and gave the Plaintiff leave to amend deficiencies in the complaint without stating leave to amend only certain portions of the complaint. *Quinteros*, 9th Cir. Jan 8, 2024 at 1 ("We affirm in part and reverse and remand in part so that Quinteros may be granted leave to amend her pleadings").  In fact, the Ninth Circuit itself was able to make-out a potential claim for negligent supervision that was not asserted in the prior complaint, indicating that the Ninth Circuit freely identified that there may be claims that could be asserted without their legal-names being in the complaint. *Id*. at 5.

## V.  THE CLAIMS ARE NOT TIME BARRED DUE TO THE DOCTRINE OF "RELATING BACK" AND THE "DISCOVERY PRINCIPLE"

A claim "relates back" when the applicable statute of limitations allows it and the amendment "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading…" F.R.C.P. 15(c).  "An amended claim arises out of the same conduct, transaction, or occurrence if it 'will likely be proved by the 'same kind of evidence' offered in support of the original pleading.'" *ASARCO, LLC v.*

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT - 10

Penny Quinteros, Esq. (pro se)
Phone: 206-661-8292
elilyn@comcast.net

*Union Pacific R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) (citations omitted).  The doctrine of relating-back is liberally applied.  *Id*.

The original complaint here was filed September 3, 2019, and the conduct related to these claims is the same conduct attempted to be set out in the original complaint, i.e. InnoGames creating an unsafe environment with risky advertisements promising sexual activities from their female players which led to the extortion of the photograph and intimate image disclosure.  *See* Dkt. 3, Original Complaint at 6–7.  Because these original allegations essentially mirror those of the Third Amended Complaint, they would be proven by the same kind of evidence allowing Defendants fair notice of the operative facts they needed to defend against.

In Washington, the statute of limitations does not run until a Plaintiff "knew or should have known the essential elements of the cause of action: duty, breach, causation and damages." *Allen v. State*, 118 Wash. 2d 753, 757–58 (Wash. 1992).  The federal rule is applied similarly, and the statute of limitations only begins to run once a plaintiff has knowledge of the "critical facts" of her injury so long as she exercises due diligence.  *Bibeau v. Pacific Northwest Research Foundation Inc.*, 188 F.3d 1105, 1108 (9th Cir. 2000).

Plaintiff did not know about the involvement of InnoGames's agents until circa February 2019 because of attempts by the moderators, and defendants Julie Blan and Richard Stephenson to hide the event and deny it.  *See e.g.*, Dkt. 54, Exhibit 10, 1199 (Feb. 4, 2019 "I believe it was a moderator who accessed the link and shared it…" to which Julie Blan aka "Panacea" responds "One fallacy is that a moderator 'leaked' the photo.  Moderators do not have access to private whisper conversations nor any attachments." Julie Blan then further promises that "action will be taken" if there is proof that players are sending the photo and that "we will work with you to see that it is not sent any longer.").  This conversation illustrates that Plaintiff did not know it was a moderator who sent the photo until around that time, and because of the denials of InnoGames's staff members, could not have reasonably discovered that it was a moderator.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT - 11

Penny Quinteros, Esq. (pro se)
Phone: 206-661-8292
elilyn@comcast.net

The complaint was filed less than a year later, well within any statute of limitations relevant to this case.

## VI. INTIMATE IMAGE DISCLOSURE IS PROPERLY PLED

Either under RCW §§ 7.110.010–7.110.902, or 15 U.S.C. § 6851 intimate image disclosure is properly pled.  As stated above, Defendants attempt to insert their own "facts" regarding Plaintiff's photograph by submitting an image so blurred it is almost pixilated.  This is not the original image, and the original image does show a nipple and areola through the bra. Whether the original image meets the criteria of the laws is a question of fact that should not be decided on a motion to dismiss.  Further, although the image in Exhibit A is so blurred as to be almost illegible, the Court can see that Plaintiff's characteristic moniker of TwoC is visible as a signature on the note, and the image is being sent to people with statements that it is TwoCents. As the harassers have disseminated Plaintiff's personal information, it is commonly known by the people receiving the photograph that TwoCents is Penny Quinteros.  Even so, under RCW § 7.110.020, InnoGames need only have a "reckless disregard" for whether Plaintiff is identifiable.

## VII.      THE INTIMATE IMAGE LAWS SHOULD BE APPLIED RETROACTIVELY

In Washington, a statute may be deemed to apply retroactively 'if it is remedial in nature and retroactive application would further its remedial purpose." *Bayless v. Community College Dist. No. XIX*, 84 Wash.App. 309, 312 (Wash. Ct. App. 1996).  Remedial statutes are those that generally "afford a remedy or better or forward remedies already existing for the enforcement of rights and the redress of injuries." *Id.*  In Washington, it has been a crime since September 2015 to disclose an intimate image or another person.  *See* RCW § 9A.86.010.  Therefore,

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT - 12

Penny Quinteros, Esq. (pro se)
Phone: 206-661-8292
elilyn@comcast.net

InnoGames had no preexisting right to release the intimate image. Since §§ 7.110.010–7.110.902 references RCW § 9A.86.010 on multiple occasions, it is apparent from the plain language of the statute that the two laws are linked, and that the civil-remedy law extends the enforcement of the right to not have intimate images disclosed and redresses injury caused by violation of the criminal law.

For the federal law 15 U.S.C. § 6851, courts first look to determine whether Congress has explicitly stated a temporal reach for the statute. *K.T. v. A Place for Rover*, 2024 WL 1356221 at \*4 (E.D. Penn. March 29, 2024). This statute does not have an explicit time stated. *Id*. Next courts look to statutory construction, and again this statute does not have any indication that it only applies prospectively. *Id*. Last courts look to whether a statute has a "retroactive effect" in that the statute would take away or impair a vested right under existing law or create a new obligation and there is a strong presumption against a retroactive effect.[3] Although the Eastern District of Pennsylvania found that there was a retroactive effect, this Court should hold there is not, because there is already a common law right to sue for injury under disclosure of private fact for this type of disclosure of private images, and state laws almost every state make this activity illegal. Therefore, there is no impairment to a vested right or new monetary damages. The federal law simply codifies state law and converts it to a federal cause of action.

**VIII.       DISCLOSURE OF PRIVATE FACT IS PROPERLY PLED**

Plaintiff has already stated above that the image in question is an "intimate image" under the law, and thus the elements of the tort of disclosure of private fact are easily met. However even if the image were not purely an "intimate image" the image is still one of Plaintiff with her shirt uplifted that was meant to be private. An image of a woman's breasts, whether

---

[3] The federal law uses the term "retroactive effect" differently that Washington State law does.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT - 13

Penny Quinteros, Esq. (pro se)
Phone: 206-661-8292
elilyn@comcast.net

covered by a bra or not, with an uplifted shirt and a private note is something that a reasonable person can determine to be highly offensive is shared without permission.  The other elements, in that the image was shared publicly, that it depicts Plaintiff, and that it is not of legitimate public concern are also easily met in that the image is shared with either Plaintiff's name or well-known alias, and there is no public interest in an up-shirt image of Plaintiff: she is not a public figure and there is no legitimate reason for others to see the image.

As Defendants helpfully point out, Plaintiff did not disclose the image to the Copyright Office until 2019 and the tort was committed in 2016.

Plaintiff has addressed above why the claim is not time-barred.

## IX.  DEFENDANTS MISCONSTRUE THE TIMELINE RELATED TO ELECTRONIC INTERCEPTION OF THE IMAGE UNDER STATE AND FEDERAL LAW

Plaintiff has asserted claims under the Washington Privacy act and the federal Electronic Communications Privacy Act and Wiretap Act.  Again, defendants seem to be adding new facts to bolster their arguments.  The image was sent to GenSmoky, but before it reached him, it was transmitted over InnoGames servers where it was illegally captured/recorded.  Although the disclosure did not occur until after, the interception occurred between the image being transmitted from Plaintiff to GenSmoky.

As stated, the Terms and Conditions attached were not agreed to by Plaintiff and do not accurately reflect the Terms and Conditions for the U.S. Server, however assuming the same provision 13.3 is included in the U.S. version, at no time did Plaintiff make her image "publicly available" as necessitated by the provision.  Plaintiff intended to share the image with one person through a feature that was supposed to be private.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT - 14

Penny Quinteros, Esq. (pro se)
Phone: 206-661-8292
elilyn@comcast.net

285

Even if the Terms and Conditions do apply, they are unconscionable to the extent that they allow release of disclosure of information intended to be private.  A contract is unconscionable when there is procedural unconscionability and substantive unconscionability. *Raab v. NuSkin Enterprises, Inc.*, 28 Wash.App.2d 365, 396–97 (Wash. Ct. App. 2023). A click-wrap agreement as alleged here is a contract of adhesion resulting in Plaintiff having no ability to negotiate the terms of the contract: it is procedurally unconscionable.  The Terms and Conditions are also substantively unconscionable in that interpretating them as Defendants suggest would allow InnoGames to spy on and publicize conversations that the parties expect to be private through a feature known as "whisper" which is only directed to one individual and not publicly accessible.  Substantive unconscionability is where, as here, the terms are overly harsh or one-sided.  *Id.*  Unconscionable contracts are void.  *Id.*

Enforcement of the Terms and Conditions was also waived via InnoGames not abiding by their requirements to enforce the rules, particularly the terms and conditions require them not to accept certain types of offensive or harassing statements.

Regarding damages, RCW § 9.73.060 clearly states that the damage can be to "reputation" or "his or her person."  Here, Plaintiff has alleged on multiple occasions that her reputation was damaged through release of the photograph to the public.  Defendants themselves assert that Plaintiff should be embarrassed.  Motion to Dismiss at 1.  Plaintiff also alleges emotional distress damage that caused her physical injury.  Damages are properly pled.

## X.  THE COPYRIGHT CLAIM IS PROPERLY PLED

InnoGames was not licensed to publicly display the image as noted above, Plaintiff did not agree to the Terms and Conditions, and even if she did, the Terms and Conditions do not grant the license Defendants assert, they are unconscionable and they were waived.

No Copyright Infringement could ever occur electronically if the "server test" were applied as Defendants assert.  Defendants again add additional improper facts.  Plaintiff did

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT - 15

Penny Quinteros, Esq. (pro se)
Phone: 206-661-8292
elilyn@comcast.net

286

indeed send the original image via a "screenshot" url link that acted as a private-access-code, however this code was only valid for approximately 12 hours, and the image has been sent dozens, if not hundreds of times after that including as recently as 2021. In *Perfect10*, Google only displayed the link to the image, but never displayed the actual image. *Perfect10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146, 1159-62 (9th Cir. 2007). Here, that would be factually impossible. At some point an InnoGames agent accessed the image and converted it to a different format. The exact format will need to wait further discovery as these facts are only in the Defendants hands, but either way, copying a private url code and disseminating it and encouraging others to access the image is different that *Perfect10* where Google was displaying public url codes.

Plaintiff does not seek to make out a claim for vicarious infringement. InnoGames's agent directly took and displayed the image. Companies can only act through their agents. Even so, InnoGames did have a direct financial interest in the infringing activity, otherwise why would InnoGames seek to recruit players with pornographic advertisements promising them this very type of sexual activity would occur. Even if InnoGames didn't intentionally create a financial interest, they did so knowingly. Creating conflict in the game increases sales, and InnoGames knew that their moderators were creating conflict.

Plaintiff is not barred by the doctrine of "continuing infringement" as the circumstances of each infringement is different. In particular the photograph is being sent to individualized players through individualized messages. This is not a recurring infringement where the photograph is displayed and accessed.

## XI. NEGLIGENCE AND NEGLIGENT SUPERVISION ARE PROPERLY PLED

Defendants misconstrue the Ninth Circuit's holding. The Ninth Circuit did not hold that there was an absence of a duty, instead they held that that duty was not clearly breached because Plaintiff failed to plead that moderators are employees. *Quinteros*, 9th Cir. Jan. 8, 2024

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT - 16

Penny Quinteros, Esq. (pro se)
Phone: 206-661-8292
elilyn@comcast.net

(However, she fails to allege specific facts that show the relationship between Defendants and moderators is sufficient to render Defendants vicariously liable for moderators' actions under Washington law"). That oversight is corrected in the Third Amended Complaint. Plaintiff has properly pled duties; such that a reasonably prudent company would not create an extreme risk that a sexual-based-crime would be inflicted on their patrons, nor would a reasonably prudent company allow its agents to commit such a crime while in the course of their supervisory duties. Defendants Klindworth, and Zillmer instituted the structure of the company both regarding the unsafe advertisements and the secret-moderator-player structure that led to inappropriate access of Plaintiff's images. And Defendants Blan and Richardson both assumed duties when they promised they would take action to stop the dissemination of the photograph and to stop the harassment of the Plaintiff, but instead covered-up the problem, did nothing to help, and actually increased the harassment through biased application of the rules. There are also multiple negligence per se duties as indicated by the statutes cited in the complaint.

Defendant InnoGames is vicariously responsible for its employees. The employees in question, moderators, were acting in the scope of their duties by accessing the files of players to "moderate" tickets. InnoGames knew their moderator system presented risk and they were not properly supervising the moderators both because the same thing happened in the *Xander* case throughout 2013 to 2016 which she reported to the company, *see* Dkt. 66, but also because Plaintiff herself notified Julie Blan earlier in 2016 that private information about her son had been inappropriately accessed and released. And even if the moderators are not "employees" they are undoubtedly volunteers meeting the criteria of a "gratuitous agent" under Washington State law as detailed in the complaint. These volunteers acted at the direction of InnoGames and in the scope of their moderator duties at the time the intimate image was taken.

Gross negligence is properly pled because the InnoGames agents acted with the intention of harming Plaintiff through creating harassment and damaging her reputation.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT - 17

Penny Quinteros, Esq. (pro se)
Phone: 206-661-8292
elilyn@comcast.net

**XII.      NEGLIGENT INFLICTION AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ARE CURED WITH PLAINTIFF PROPERLY PLEADING THE RELATIONSHIP BETWEEN INNOGAMES AND ITS MODERATORS**

The factual allegations in the prior complaint led both the Ninth Circuit and this Court to a faulty conclusion: that the "outrageous conduct" was limited to misapplying the rules, helping harassers ban her, and covering up misconduct. This is a false conclusion perhaps based on misunderstanding of the agent-master relationship at issue between the moderators and InnoGames. Now that Plaintiff has clarified that moderators are in-fact employees of InnoGames, the deficiency is corrected. The outrageous conduct is that above, but it is also mostly soliciting men promising them Plaintiff would provide them sexual gratification, and committing a sexual-based-crime (intimate image disclosure) against Plaintiff with the intention that these crimes lead to the years-worth of sexual harassment of Plaintiff. The intentional harm can also be seen as addicting Plaintiff to the game so that she could not easily withdraw from receiving the emotional harm.

The emotional harm and reputational harms were foreseeable because InnoGames' agents intended to inflict emotional damage and reputational harm when they released the photograph, and InnoGames was reckless when it promised Plaintiff a safe environment and promised an unknown number of male players that she would provide them sexual gratification.

**XIII.      OTHER CLAIMS**

**A. Gender Discrimination**

Gender discrimination is properly pled by pleading the correct agent-master relationship between InnoGames and its moderators. The moderators intended to harass Plaintiff because she was a woman. Further InnoGames intentionally stated that only the "female" players would

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT - 18

Penny Quinteros, Esq. (pro se)
Phone: 206-661-8292
elilyn@comcast.net

provide sexual gratification to the other players, resulting in a different and much riskier environment for the female players.

## B. Product Liability

The Ninth Circuit identified the missing component here is that the game-addiction intentionally created by InnoGames had to be "unreasonable."  Reasonableness is a factual-determination, but InnoGames knew that it game was addictive and purposefully attempted to cause addiction in their players without warning their players that they were doing so. InnoGames knew that this addiction could lead to excessive overspending, excessive gameplay to the point of damaging players brains and destroying their relationships, loss of the ability to work and other harmful effects.  There were many safer alternative designs InnoGames could choose to implement, such as "rest periods" or decreased benefits for extended play, but InnoGames chose to do the exact opposite. All of these circumstances should lead to a finding that the game was unreasonably addictive.

## C. Defamation

Plaintiff provided the specific statements that are alleged to be defamatory with exact quotes.  It is clear from the context that these statements were made by players who were encouraged to harass Plaintiff by InnoGames's agents.  If these exact quotes are not sufficient, Plaintiff asks the Court for the ability to amend the complaint—Plaintiff has screenshots of all of these statements and can verify the exact day, time, and person who said these statements.

These statements are statements of fact, not opinion, particularly as they relate to Plaintiff's mental health and her relationship with her husband.  They also disparage Plaintiff's sexuality and lead to the belief that Plaintiff is freely engaging in extra-marital sexual activities, which is textbook defamation *per se*. The statements also falsely allege that Plaintiff willingly

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT - 19

Penny Quinteros, Esq. (pro se)
Phone: 206-661-8292
elilyn@comcast.net

290

sent a nude photograph, when facts are that Plaintiff was extorted for the photograph and it was not done so willingly, again with the intention that it deprive Plaintiff the benefit of social confidence and interaction and weaponize a culture of shame around intimate image distribution.

### D. Fraud and Misrepresentation and Unfair and Deceptive Trade Practices

Defendants misconstrue the fraud and misrepresentation arguments. The fraud involved is promising Plaintiff that certain rules would be maintained in the game and then not maintaining those rules. These rules are very specifically detailed out. In a game, "fair" means something different that it does colloquially. Rather than a vague notion of something be "fair" in life, a "fair" game is one in which all the players are held to the same explicit standard. That did not happen here. InnoGames also promised Plaintiff that they would enforce the rules on multiple occasions *see supra* quotation from Panacea, these promises were made to encourage Plaintiff to play the game and continue spending money on the game. InnoGames, Julie Blan, and Richard Stephenson knew these promises were untrue when they made them.

Regarding the quotations, they very clearly say that *InnoGames* has a duty not to accept certain statements. Because InnoGames was responsible for writing this contract of adhesion, their words should be taken literally. Even if InnoGames meant to apply this duty to *users*, they did not do so in their language.

Regarding Unfair and Deceptive Trade Practices, InnoGames promised a family-friendly environment to the female players, and promised male players "brutal sex" with the female players secretly. Exposing all of their female players to the risk of unwanted sexual contact is of vital concern to the public.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT - 20

Penny Quinteros, Esq. (pro se)
Phone: 206-661-8292
elilyn@comcast.net

**E. Breach of Contract and Promissory Estoppel**

As stated above, InnoGames's plain language of their Terms and Conditions and Rules states that they have the duty. Plaintiff asserts that she did not make a contract with InnoGames, but in the event she did, they should be held strictly to the terms that they wrote. Plaintiff is a third-party beneficiary not just because one senior moderator said so, but because all of the players, and all of the InnoGames staff considered the contract to be in place to protect other players from unwelcome behavior. The senior-moderator quote is just an illustration that this understanding was in-fact in place.

Plaintiff did not have a contract with InnoGames, because InnoGames did not properly execute its click-wrap agreements, either with Plaintiff or with many other players. Players were freely allowed to join the game without agreeing to the Terms and Conditions. In that case, the statements of InnoGames's agents control, and the agents promised they would take actions to curtail the image distribution and harassment and never did so. The agents also promised they would moderate the game by applying the same rules to everyone and they did not do so. Plaintiff relied on these statements when she sent the photograph to GenSmoky, and Plaintiff's screenshot of this conversation proves that reliance.

**XIV.     CONCLUSION**

The Ninth Circuit properly identified several areas of deficiency that, if corrected, would lead to a properly stated claim. Plaintiff has corrected these deficiencies in this Third Amended Complaint, and therefore Defendants' Motion to Dismiss should be denied.

I certify that this memorandum contains 6584 words, in compliance with the Local Civil Rules.

____/s/Penny Quinteros_____                    _08/01/2024_____

Penny Quinteros, Esq. *Pro Se*                         Date
WA Bar No. 60753

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT - 21

Penny Quinteros, Esq. (pro se)
Phone: 206-661-8292
elilyn@comcast.net

19338 133rd PL SE
Renton, WA 98058
elilyn@comcast.net
Phone: 206-661-8292

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT - 22

Penny Quinteros, Esq. (pro se)
Phone: 206-661-8292
elilyn@comcast.net

293

**CERTIFICATE OF SERVICE**

I certify that on the 1st day of August, 2024, I filed this OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT with the Clerk of the Court, and I hereby certify that I served a true and correct copy of the document as follows:

Diana S. Breaux
315 Fifth Avenue S, Suite 1000
Seattle, WA 98104
dianaab@summitlaw.com

Alan Behr (admitted Pro Hac Vice)
Judith Swartz(admitted Pro Hac Vice)
485 Lexington Avenue
New York, NY 10017
abehr@phillipsnizer.com
eadinolfi@phillipsnizer.com

☐ By causing a full, true and correct copy thereof to be MAILED in a sealed, postage-paid envelope, addressed as shown above, which is the last-known address for the party, and deposited with the U.S. Postal Service at Renton, WA, on the date set forth above;

☐ By causing a full, true and correct copy thereof to be HAND-DELIVERED by _____ to the party, at the address listed above, which is the last-known address for the party's office, on the date set forth above;

☐ By causing a full, true and correct copy thereof to be FAXED to the party, at the fax number shown above, which is the last-known fax number for the party's office, on the date set forth above.

☒ By causing a full, true and correct copy thereof to be EMAILED to the party, at the email address shown above, which is the last-known email address for the party's office, on the date set forth above.

By: Penny Quinteros, Esq. *Pro Se*

CERTIFICATE OF SERVICE: OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT - i

Penny Quinteros, Esq. (pro se)
Phone: 206-661-8292
elilyn@comcast.net

294

WA Bar No. 60753
19338 133rd PL SE
Renton, WA 98058
elilyn@comcast.net
Phone: 206-661-829

CERTIFICATE OF SERVICE: OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S THIRD AMENDED COMPLAINT - ii

Penny Quinteros, Esq. (pro se)
Phone: 206-661-8292
elilyn@comcast.net

295

*PROPOSED ORDER TO DENY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT - i*

Penny Quinteros, Esq (pro se)
Phone: 206-661-8292
elilyn@comcast.net

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

Penny Quinteros, _____

_____,

     Plaintiff(s),

  v.

InnoGames, *et al.,*

     Defendant(s).

CASE NO. 19-CV-1402 RSM

[PROPOSED] ORDER DENYING
MOTION TO DISMISS

_____

THIS MATTER having come on for consideration of: Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint dated July 1, 2024, and Plaintiff's Opposition dated August 1, 2024; and any supporting documents, responses and replies:

it is ORDERED as follows:

Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint is denied.

*Proposed Order Denying Defendant's Motion to Dismiss - 1*

Penny Quinteros, Esq. (pro se)
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

297

Dated this _____ day of _____, _____.

_____
THE HONORABLE RICARD S. MARTINEZ
UNITED STATES DISTRICT JUDGE

Presented by:

__/s/ Penny Quinteros   on 08/01/2024
Penny Quinteros, Esq. *pro se*
WA Bar No. 60753
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

*Proposed Order Denying Defendant's Motion to Dismiss* - 2

Penny Quinteros, Esq. (pro se)
19338 133rd PL SE
Renton, WA 98058
Phone: 206-661-8292
elilyn@comcast.net

298

**2024 Motion to Dismiss – Docket 114**

The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PENNY QUINTEROS filing as TWOCENTS (a pseudonym),<br><br>        Plaintiff,<br><br>    v.<br><br>INNOGAMES, HENDRIK KLINDWORTH, MICHAEL ZILLMER, JULIE (JILL) BLAN, RICHARD STEPHENSON,<br><br>        Defendants. | CASE NO. 19-cv-01402 RSM<br><br>DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT<br><br>NOTE FOR MOTION: July 29, 2024 |

300

**TABLE OF CONTENTS**

I.  PRELIMINARY STATEMENT ................................................................................1

II. POSTURE...........................................................................................................1

III. LEGAL ARGUMENT..........................................................................................2

    A.  This Court Lacks Personal Jurisdiction Over Defendants................................2

        1.  The State of Washington Lacks Specific Jurisdiction Over Defendants .............2

        2.  The State of Washington Lacks General Jurisdiction Over Defendants...............4

        3.  Jurisdiction Over Defendants is Not Appropriate Pursuant to FRCP4(k)(2).......4

    B.  The TAC's Newly Pled Claims Exceed the Ninth Circuit's Order and Should Be Stricken Pursuant to Rule 12(F) ................................................................5

    C.  The New Claims Fail to State Plausible Claims. ...........................................5

        1.  Intimate Image Disclosure ......................................................................6

        2.  Invasion of Privacy by Publication .........................................................8

        3.  Interception of Electronic Communications ...........................................9

            a.  State Law ...................................................................................9

            b.  Federal Law ..............................................................................11

    D.  Plaintiff Still Fails To State Claims of Copyright Infringement.................12

        1.  Copyright Infringement..........................................................................12

            a.  The Copyright Claim Fails Because Plaintiff Granted InnoGames a License to Display the Selfie ...............................................................12

            b.  Defendants are Shielded from Direct Liability Under the Server Test. ....12

            c.  Neither Contributory Liability nor Vicarious Liability Are Sufficiently Pled ............................................................................................14

            d.  Plaintiff's Request for Statutory Damages Must be Denied as a Matter of Law ..........................................................................................15

        2.  Negligence and Gross Negligence .......................................................16

            a.  Duty .........................................................................................16

               (i)  Vicarious Liability ............................................................16

               (ii) Negligent Supervision......................................................17

            b.  Gross Negligence....................................................................18

        3.  Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress...................................................................................18

4.    Gender Discrimination ........................................................................... 19

5.    Product Liability ..................................................................................... 19

6.    Defamation .............................................................................................. 19

7.    Fraud and Misrepresentation .................................................................. 20

8.    Unfair and Deceptive Trade Practices .................................................... 22

9.    Breach of Contract ................................................................................. 22

10.   Promissory Estoppel .............................................................................. 24

IV.  CONCLUSION ................................................................................................... 24

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aecon Bldgs., Inc. v. Zurich N. Am.*,
  2008 WL 895978 (W.D. Wash. Mar. 28, 2008) ................................................................8

*AMA Multimedia, LLC v. Wanat*,
  970 F.3d 1201 (9th Cir. 2020) ........................................................................................5

*Amsbury v. Cowles Pub. Co.*,
  76 Wn.2d 733 (1969) ......................................................................................................21

*Asahi Metal Indus. Co. v. Superior Court of California*,
  480 U.S. 102 (1987) .........................................................................................................2

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2007) .......................................................................................................15

*Axiom Foods, Inc. v. Acerchem*,
  874 F.3d 1064 (9th Cir. 2017) .........................................................................................2

*Baxter v. Morningside, Inc.*,
  10 Wash. App. 893 (1974) .............................................................................................18

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .........................................................................................................6

*Benton v. Baker Hughe*s,
  2013 WL 3353636 (C.D. Cal. June 30, 2013) ................................................................5

*Blenheim v. Dawson & Hall Ltd.*,
  35 Wash. App. 435 (1983) .............................................................................................18

*Burg v. Shannon & Wilson, Inc.*,
  110 Wash. App. 798 (2002) ...........................................................................................17

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) .........................................................................................................2

*Calder v. Jones*,
  465 U.S. 783, 789 (1984) .................................................................................................5

*Clare v. Clare*,
  2022 WL 1714547 (Wash. Ct. App. May. 26, 2022) .....................................................10

*Colorado Tire Corp. v. Moraglis S.A.*,
  2022 WL 3025823 (Wash. App. Aug. 1, 2022) .............................................................23

*Columbia Park Golf Course, Inc. v. City of Kennewick*,
  160 Wash. App. 66 (2011).............................................................................................23

*Densley v. Dep't of Retirement Sys.*,
    162 Wn.2d 210 (2007) ........................................................................................... 8

*Derek Andrew, Inc. v. Poof Apparel Corp.*,
    528 F.3d 696 (9th Cir. 2008) ............................................................................... 16

*Emery v. BioPort Corp.*,
    273 F. App'x 694 (9th Cir. 2008) .......................................................................... 4

*Emeson v. Dep't of Corr.*,
    194 Wash. App. 617 (Wash. Ct. App. 2016) ......................................................... 9

*Estate of Davis v. State, Dep't of Corr.*,
    127 Wash. App. 833 (2005) ................................................................................. 19

*Expeditors Int'l of Washington, Inc. v. Santillana*,
    2023 WL 8449165 (W.D. Wash. Dec. 6, 2023) ..................................................... 6

*Facebook, Inc. v. K.G.S.*,
    294 So.3d 122 (Ala. June 28, 2019) ...................................................................... 3

*Falcon Enterprises, Inc. v. Centurion Ltd.*,
    2007 WL 3046201 (W.D. Wash. Oct. 18, 2007) .................................................... 5

*Fisher v. State ex rel. Dep't of Health*,
    125 Wash. App. 869 (2005) ................................................................................... 9

*Goddard v. Google, Inc.*,
    640 F. Supp. 2d 1193 (N.D. Cal. 2009) .............................................................. 25

*Greco v. Northwell Health, Inc.*,
    2022 WL 533047 (E.D. Wash. Feb. 22, 2022) ...................................................... 2

*Haberman v. Washington Pub. Power Supply Sys.*,
    109 Wn.2d 107 (1987) ......................................................................................... 21

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984) .............................................................................................. 4

*Hold Sec. LLC v. Microsoft Corp.*,
    2023 WL 8433122 (W.D. Wash. Dec. 5, 2023) ................................................... 25

*Holland Am. Line, Inc. v. Wärtsilä N. Am., Inc.*,
    485 F.3d 450 (9th Cir. 2007) ................................................................................ 5

*Hunley v. Instagram, LLC*,
    73 F.4th 1060 (9th Cir. 2023) .................................................................. 13, 14, 15

*Idema v. Dreamworks, Inc.*,
    90 F. App'x 496 (9th Cir. 2003) ........................................................................... 6

*In re Gilead Scis. Secs. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) .............................................................................. 6

*In re Stac Elecs. Sec. Litig.*,
  89 F.3d 1399 (9th Cir. 1996) ...............................................................................................6

*In re Yahoo Mail Litig.*,
  7 F. Supp. 3d 1016 (N.D. Cal. 2014) ..................................................................................12

*In re Zoom Video Commc'ns Inc. Priv. Litig.*,
  525 F. Supp. 3d 1017 (N.D. Cal. 2021) ..............................................................................17

*Konop v. Hawaiian Airlines, Inc.*,
  302 F.3d 868 (9th Cir. 2002) ..............................................................................................12

*Logan v. Meta Platforms Inc.*,
  636 F. Supp. 3d  1052 (N.D. Cal. 2022) .............................................................................14

*Lutz v. Spokane Reg'l Health Dist.*,
  2023 WL 8005297 (E.D. Wash. Nov. 17, 2023) ................................................................21

*Maxon v. Frontier Adjusters, Inc.*,
  1996 WL 733186 (9th Cir. Dec. 17, 1996) .........................................................................23

*McAfee v. Select Portfolio Servicing, Inc.*,
  193 Wash. App. 220 (2016) ...........................................................................................21, 22

*McGlinchy v. Shell Chem. Co.*,
  845 F.2d 802 (9th Cir. 1988) ................................................................................................3

*Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP*,
  110 Wash. App. 412 (2002) ................................................................................................22

*MyPlayCity, Inc. v. Conduit Ltd.*,
  2012 WL 1107648 (S.D.N.Y. Mar. 30, 2012) ...............................................................12, 13

*Niece v. Elmview Grp. Home*,
  131 Wn.2d 39 (1997) .....................................................................................................17, 18

*Nist v. Tudor*,
  67 Wn.2d 322 (1965) ...........................................................................................................19

*Oriko v. Starbucks Corp.*,
  2007 WL 3228443 (W.D. Wash. Oct. 31, 2007) ................................................................21

*Paulson v. Backyard Wrestling, Inc.*,
  2005 WL 8158627 (N.D. Ala. June 24, 2005) .....................................................................3

*Perfect10, Inc. v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007) ............................................................................................13

*Perkins v. LinkedIn Corp.*,
  53 F. Supp. 3d 1190 (N.D. Cal. 2014) ................................................................................12

*Phillips v. Oklahoma Pub. Co.*,
  2011 WL 4914944 (W.D. Wash. Oct. 14, 2011) ................................................................21

*RDF Media Ltd. v. Fox Broadcasting Co.*,
  372 F. Supp. 2d 556 (C.D. Cal. 2005) ...............................................................15

*Reese v. BP Expl. (Alaska) Inc.*,
  643 F.3d 681 (9th Cir. 2011) .............................................................................23

*Reid v. Pierce Cnty.*,
  136 Wn.2d 195 (1998) .........................................................................................8

*Rideout v. City of Bellingham*,
  2019 WL 5381962 (Wash. App. Oct. 21, 2019) .........................................18, 19

*Russo v. Microsoft Corp.*,
  2021 WL 2688850,n.3 (N.D. Cal. June 30, 2021)............................................11

*Smith v. Weeknd*,
  2019 WL 6998666 (C.D. Cal. Aug. 23, 2019) ..................................................16

*State v. Roden*,
  179 Wn.2d 893 (2014).......................................................................................10

*Summers Fam. Tr. TA Neak Prods. Buff WA Pty Ltd. v. Nat'l Distribution Warehouse Inc.*,
  2021 WL 8445579 (W.D. Wash. Oct. 8, 2021)....................................................4

*Top Line Builders, Inc. v. Bovenkamp*,
  179 Wash. App. 794 (2014)...............................................................................23

*Van Buskirk v. Cable News Network, Inc.*,
  284 F.3d 977 (9th Cir. 2002) ...............................................................................6

*VHT, Inc. v. Zillow Grp., Inc.*,
  918 F.3d 723 (9th Cir. 2019).................................................................14, 15, 16

*Walden v. Fiore*,
  571 U.S. 277 (2014) .........................................................................................2, 5

*Warren v. Fox Family Worldwide, Inc.*,
  171 F. Supp. 2d 1057 (C.D. Cal. 2001) ...............................................................6

*Westcott v. Wells Fargo Bank*, N.A,
  862 F. Supp. 2d 1111 (W.D. Wash. 2012) .........................................................25

*Xander v. Innogames*,
  2022 WL 17489057 (N.M. Ct. App. Dec. 7, 2022).............................................4

**Statutes**

17 U.S.C. §412(1),(2) ...............................................................................................16
18 U.S.C. §§ 2511(1)(a),(c)-(d) ...............................................................................12
18 U.S.C.A. §2511(d) ...............................................................................................12
18 U.S.C.A. §2520(e) ...............................................................................................12
RCW §4.16.080 .........................................................................................................9

RCW §4.16.080(2),(3) ........................................................................................................9
WA ST 7.110.010(6)(a) ......................................................................................................7
Wash. Rev. Code Ann. §7.110.060...................................................................................8
Wash. Rev. Code §9.73.060.............................................................................................11

**Rules**

Fed. R. Evid. 201(b)(2) .....................................................................................................6
FRCP 9(b) .......................................................................................................................21
FRCP 12(b)(6) ..................................................................................................................6

**Other Authorities**

5 Fed. Prac. & Proc. Civ. § 1282 (4th ed.)....................................................................15

## I.   PRELIMINARY STATEMENT

For the fourth time, Defendants respond to spurious allegations and embarrassing personal admissions that Plaintiff, now a member of the bar of Washington State,[1] has made public in her series of complaints.  After this Court dismissed Plaintiff's First Amended Complaint ("FAC") with prejudice, on appeal, the Ninth Circuit agreed that all of Plaintiff's claims should be dismissed, but gave her one last chance–due to her then *pro se* status–to remedy her claims' deficiencies.  With this Third Amended Complaint ("TAC"), Plaintiff brings three new claims grounded in false allegations about a single photograph ("Selfie") and reprises all prior claims without curing the defects that warranted dismissal.

## II.   POSTURE

This is Plaintiff's fourth iteration of her Complaint against defendant InnoGames GmbH ("InnoGames"), a German publisher and operator of online videogames, including the world-renowned online multiplayer game *Forge of Empires*, and four individual defendants: Hendrik Klindworth, InnoGames' CEO, Michael Zillmer, InnoGames' COO, Richard Stephenson, InnoGames' international community manager, and Julie Blan, InnoGames' former community manager (together, the "Individual Defendants", with InnoGames, "Defendants").

This Court already granted Defendants' motion to dismiss the FAC without leave to replead. Dkt.# 94, pp. 17-18.  Plaintiff then appealed to the Ninth Circuit which also dismissed her claims but with an opportunity to replead them ("Order")[2].  Plaintiff next filed a second amended complaint and, by stipulation with Defendants, she then filed the TAC.

Plaintiff's TAC includes three entirely new claims: (i) intimate image disclosure under a recently enacted Washington statute intended to combat "revenge porn," (ii) invasion of privacy, and (iii) interception with electronic communications under state and federal law.  Meanwhile, her previously pled claims were extensively amended, without substantive effect.

---

[1] TAC¶14.

[2] Case 2:19-cv-1402-RSM, United States Court of Appeals for the Ninth Circuit, Dkt.# 100.

As examined below, none of Plaintiff's amendments are sufficient to save the TAC from dismissal in its entirety.

### III.   LEGAL ARGUMENT

**A.     This Court Lacks Personal Jurisdiction Over Defendants**

Washington State lacks both general and specific jurisdiction over InnoGames and the Individual Defendants, an independent basis for dismissal.

**1.      The State of Washington Lacks Specific Jurisdiction Over Defendants**

Under Washington law, for specific jurisdiction: (1) the nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction must not offend traditional notions of fair play and substantial justice, considering the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protections of state laws afforded the respective parties, and the basic equities of the situation. *Greco v. Northwell Health, Inc.*, 2022 WL 533047, *4 (E.D. Wash. Feb. 22, 2022).

"In the case of . . . specific *in personam* jurisdiction, [t]he 'substantial connection' between the defendant and the forum state necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State." *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 112 (1987).  This requirement assures that a defendant will not be hauled into a jurisdiction as a result of, "the 'unilateral activity of another party or a third person.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).  The Court's primary concern is "the burden on the defendant."  *Id.* at 476-77.

"It is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *Walden v. Fiore*, 571 U.S. 277, 289-91 (2014); *see Axiom Foods, Inc. v. Acerchem*, 874 F.3d 1064, 1068 (9th Cir. 2017) (the relationship among the nonresident defendant, the forum, and the litigation "must arise out of contacts that the 'defendant himself' creates with the forum State" and

the minimum contacts analysis examines "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.").

The TAC alleges only trivial connections to Washington. For example, Plaintiff alleges she was solicited in Washington to play *Forge of Empires* because she received an email advertisement while in Washington. TAC¶11. This is insufficient. *See Paulson v. Backyard Wrestling, Inc.*, 2005 WL 8158627, *11-12 (N.D. Ala. June 24, 2005) (advertising and marketing that reach the forum state but are not uniquely directed to the forum state, are not sufficient for jurisdictional purposes). Plaintiff also cites to unilateral activity of *Plaintiff* in alleging she sent the Selfie while in Washington and submitted a support ticket noting she was a Washington citizen and believed InnoGames violated Washington law. TAC¶¶11, 55. "It is well settled that [t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 816 (9th Cir. 1988); *see also Facebook, Inc. v. K.G.S.*, 294 So.3d 122, 140 (Ala. June 28, 2019) (Facebook's "contacts with Alabama that were made merely in response to [plaintiff's] or her attorney's contact with Facebook are 'precisely the sort of unilateral activity of a third party that cannot satisfy the requirement of contact with the forum State.'").

Applying these settled standards, the New Mexico Fifth Judicial Court recently dismissed a similar complaint against InnoGames brought by a player of another game, for lack of personal jurisdiction, *Tribal Wars*. *See Xander v. Eight Roads, et al.*, No. D-504-CV-2016-00293 (N.M. Jud. Ct. July 15, 2020).[3] Just like Ms. Quinteros, Xander argued that InnoGames should be subject to personal jurisdiction because it directed its marketing of the game to her residence. The New Mexico court, and the appellate court,[4] rejected her argument, holding that the game's website was passive and that there were insufficient minimum contacts with the forum. The plaintiff's jurisdictional arguments here are very similar, so the result, dismissal, should be the same.

---

[3] Dkt.#66, 4-13.

[4] *Xander v. Innogames*, 2022 WL 17489057 (N.M. Ct. App. Dec. 7, 2022).

310

## 2.    The State of Washington Lacks General Jurisdiction Over Defendants

To confer general jurisdiction over a non-resident defendant, the defendant must have continuous, systematic business contacts with Washington. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).   "The standard for establishing general jurisdiction is 'fairly high,' and requires that the defendant's contacts be of the sort that approximate physical presence." *Emery v. BioPort Corp.*, 273 F. App'x 694, 695 (9th Cir. 2008).

InnoGames and the Individual Defendants' have had no continuous or systematic contacts with Washington State.  Defendants are not domiciled in Washington; Defendants Klindworth and Zillmer are citizens of Germany; Defendant Stephenson is a citizen of the United Kingdom; and InnoGames has its principal place of business in Germany.  TAC¶7. InnoGames is not registered to do business in Washington and has no offices or employees there.  Nor is the solicitation of player's payments from AmazonPay–a Washington-based company–sufficient to confer general jurisdiction. TAC¶¶11,22.  *See Tr. of Summers Fam. Tr. TA Neak Prods. Buff WA Pty Ltd. v. Nat'l Distribution Warehouse Inc.*, 2021 WL 8445579, *3 (W.D. Wash. Oct. 8, 2021) ("[I]t is settled law in this district that product distribution though Amazon.com does not constitute 'express aiming' at Washington residents or establish 'continuing relationships and obligations' sufficient to show purposeful availment of the privilege of conducting business in Washington.")  Washington State therefore lacks general jurisdiction over Defendants.

## 3.    Jurisdiction Over Defendants is Not Appropriate Pursuant to FRCP4(k)(2)

Plaintiff wrongly attempts to invoke the nationwide jurisdictional analysis under FRCP (4)(k)(2). TAC¶12.  Rule4(k)(2) is meant to correct a "gap in the enforcement of federal law" which arises when a foreign defendant has contacts with the United States sufficient to justify the application of United States law but has insufficient contacts with any one state to satisfy the long-arm statute or meet the requirements of the Fourteenth Amendment.  *See Falcon Enterprises, Inc. v. Centurion Ltd.*, 2007 WL 3046201, *2 (W.D. Wash. Oct. 18, 2007).   Jurisdiction under FRCP3(k)(2) is only proper if the defendant has sufficient minimum contacts with the United States

as a whole such that the maintenance of suit does not offend traditional notions of fair play and substantial justice. *Holland Am. Line, Inc. v. Wärtsilä N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007). This condition is not satisfied here. The United States was not "the focal point" of the website. *Walden*, 571 U.S. at 287 (quoting *Calder v. Jones*, 465 U.S. 783, 789 (1984)). The TAC does not allege that Forge of Empires has a forum-specific focus on the U.S., was expressly aimed at the U.S. market, or allege that most players are U.S. based. *See AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1209-13 (9th Cir. 2020) (holding that website operator did not expressly aim his intentional acts at the U.S.).

**B.    The TAC's Newly Pled Claims Exceed the Ninth Circuit's Order and Should Be Stricken Pursuant to Rule 12(F)**

The Ninth Circuit's Order reads, in part: "Here, amendment would not be futile. Quinteros could plead additional facts to cure the various deficiencies identified above. . . Quinteros should be given more than one opportunity to cure the deficiencies in her pleading [the First Amended Complaint]." Order, at 11.

The TAC exceeds the scope of leave granted by the Ninth Circuit by pleading three entirely new causes of action: (a) invasion of privacy by publication, (b) intercepting electronic communications, and (c) intimate image dissemination.

Courts in this Circuit routinely strike amendments that they did not grant a plaintiff leave to make. *Benton v. Baker Hughe*s, 2013 WL 3353636, *3 (C.D. Cal. June 30, 2013), *aff'd sub nom.*, *Benton v. Hughes*, 623 F. App'x 888 (9th Cir. 2015) ("The addition of [the plaintiff's] new claims therefore exceeds the scope of the leave to amend granted, and it is appropriate to strike the newly added claims on this basis."); *Expeditors Int'l of Washington, Inc. v. Santillana*, 2023 WL 8449165, *3 (W.D. Wash. Dec. 6, 2023) ("[Plaintiff's] opportunity to amend its declaratory judgment claim was not an invitation to trot out new legal theories based on the same well-worn factual allegations.")

**C.    The New Claims Fail to State Plausible Claims.**

Under FRCP 12(b)(6), a district court must dismiss a complaint if it fails to state a claim

upon which relief can be granted.  The plaintiff must allege "enough facts to state a claim to relief that is plausible on its face" and there must be "more than a sheer possibility that a defendant has acted unlawfully" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

Though courts must draw all reasonable inferences in favor of Plaintiff, courts are not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

On a Rule 12(b)(6) motion, courts may consider documents that are incorporated by reference and take judicial notice of documents "that were referenced extensively in the complaint and were accepted by all parties as authentic." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); Fed. R. Evid. 201(b)(2). Doing so does not convert the motion into one for summary judgment.  *See In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996) (considering referenced document).  Courts consistently take judicial notice of documents from the Copyright Office in connection with motions to dismiss.  *See, e.g., Warren v. Fox Family Worldwide, Inc.*, 171 F. Supp. 2d 1057, 1062 (C.D. Cal. 2001), *aff'd*, 328 F.3d 1136 (9th Cir. 2003) (judicially noticing copyright certificates); *Idema v. Dreamworks, Inc.*, 90 F. App'x 496, 498 (9th Cir. 2003) (judicially noticing copyright registration).

## 1.    Intimate Image Disclosure

Count eleven seeks to invoke a newly passed statute in Washington State, WA ST 7.110.20, which provides a civil remedy for the dissemination of an "intimate image" which is intended to provide civil redress for victims of "revenge porn."[5]  "Revenge porn" describes the disreputable practice of posting private, intimate images of another on the Internet without authorization.  Here, Plaintiff consented to InnoGames' Terms and Conditions ("T&Cs") that permitted user-generated content to be redistributed when Plaintiff authored, and distributed, the Selfie.  There is nothing in the Selfie that would make the subject recognizable as Plaintiff.  Her face is not in view, and she

---

[5] https://housedemocrats.wa.gov/blog/2015/03/03/house-passes-revenge-porn-bill-unanimously/

hasn't alleged that anyone identified it as her. Plaintiff falsely represented to this Court that the Selfie depicts intimate body parts. The only thing obscene about the Selfie is the profane note written by Plaintiff pasted to her torso.

The Selfie does not constitute an "intimate image" under the statute:

> 'Intimate image' means any photograph, motion picture film, videotape, digital image, or any other recording or transmission of another person who is identifiable from the image itself or from information displayed with or otherwise connected to the image, and that was taken in a private setting, is not a matter of public concern, and depicts:…

> > (ii) A person's intimate body parts, whether nude or visible through less than opaque clothing, including the genitals, pubic area, anus, or postpubescent female nipple.

WA ST 7.110.010(6)(a). In a highly disingenuous attempt to make the Selfie fit within the statutory definition, Plaintiff alleges that the Selfie is "a picture of her breasts (in a somewhat see-through bra)" (TAC¶34), and that "it shows Plaintiff's breasts in a bra with the areolas and nipples visible upon zoom-in" (TAC¶165). This is not true. The Selfie, annexed to the Affirmation of Alan Behr, dated June 17, 2024 ("Behr Aff.") as Ex. A does not remotely fit that description. The subject's areolas and nipples are not visible at all. The Selfie is a G-rated snapshot of a woman's torso in a sports bra that is neither transparent nor translucent.

Plaintiff's claim is also barred because the statute does not apply retroactively. The statute went into effect on July 23, 2023. TAC¶163,n.10.[6] Washington courts disfavor retroactive application of statutes, and presume that a statute operates prospectively unless (1) the legislature explicitly provides that it applies retroactively, (2) the amendment is curative, or (3) the statute is remedial. *Densley v. Dep't of Retirement Sys.*, 162 Wn.2d 210, 223 (2007); *Aecon Bldgs., Inc. v. Zurich N. Am.*, 2008 WL 895978, *2 (W.D. Wash. Mar. 28, 2008). WA ST 7.110 does not have an

---

[6]https://lawfilesext.leg.wa.gov/biennium/2023-24/Pdf/Bills/Session%20Laws/House/1165-S.SL.pdf?cite=2023%20c%2065%20%C2%A7%202

express retroactivity provision, there is no indication that it was intended to apply retroactively, and the statute is also not "remedial" in that it does not "relate[] to practice, procedures and remedies...." *Densley*, 162 Wn.2d at 223-24.

Even if Plaintiff somehow once had a valid claim under the statute, it is time barred. Wash. Rev. Code Ann. §7.110.060 provides that a civil claim has a four-year statute of limitations from the date the disclosure was discovered. Plaintiff discovered the alleged "disclosure," at the latest, in August 2016, TAC¶40, and thus was required to bring the claim by August 2020. She alleged it for the first time in her March 2024 SAC, so it is time barred.

### 2. Invasion of Privacy by Publication

Plaintiff also alleges that InnoGames is liable for invasion of privacy through public disclosure of private facts because an unspecified person published an "intimate image of Plaintiff's breasts without consent of Plaintiff." TAC¶63. This claim, too, fails and is time barred.

To state a viable claim of privacy by publication, a plaintiff must allege: (1) defendant gave publicity to a matter concerning the private life of another (2) that would be highly offensive to a reasonable person; and (3) is not of legitimate concern to the public. *Reid v. Pierce Cnty.*, 136 Wn.2d 195, 205 (1998). The photo at issue is not "highly offensive to a reasonable person." As explained *supra-Section III.2.C.*, Plaintiff's face is not in the picture and her name has not been alleged to have been used anywhere in connection with it. The Selfie merely depicts a cropped image of a woman's body in a solid sports bra covering her entire chest. Simply, Plaintiff lied about the Selfie.

The claim also fails because Plaintiff did not have a reasonable expectation of privacy. When Plaintiff copyrighted it, she chose to identify herself as the author even though the work could have been registered under a pseudonym or as "Anonymous." The U.S. Copyright Office advises that "The applicant should not provide any private or confidential information in the application that is not required for registration. All of the information that the applicant provides in the application is a permanent part of the public record" and notes, "The Office will make information provided in a

315

copyright application available to the general public upon request."[7]  Plaintiff forfeited any right of privacy in a Selfie she made publicly accessible.  Separately, there is no reasonable expectation of privacy because Plaintiff was not identifiable from the photograph and her name was not alleged to have been disseminated with it.  *See Fisher v. State ex rel. Dep't of Health*, 125 Wash. App. 869, 879-80 (2005) (no invasion of privacy where there was insufficient "identifying information").

Plaintiff's claim is also time barred.  The three-year statute of limitations provided by RCW §4.16.080 applies to an invasion of privacy by publication claim.  *Emeson v. Dep't of Corr.*, 194 Wash. App. 617, 638-39 (Wash. Ct. App. 2016); *see also* RCW §4.16.080(2),(3).  At the latest, Plaintiff discovered the "invasion" in August 2016 when she first reported the photograph and its transmission. TAC¶40.  Thus, the claim is barred because she first alleged it in her March 2024 SAC despite the August 2019 deadline.[8]

### 3.    Interception of Electronic Communications

#### a.    State Law

Washington's privacy act ("WPA") prohibits intercepting or recording certain communications without a court order or the consent of all parties. WA ST9.73.030; WA ST9.73.060 (civil private right of action).  A claim for a violation of the WPA requires: "(1) a private communication transmitted by a device, which was (2) intercepted or recorded by use of (3) a device designed to record and/or transmit (4) without the consent of all parties to the private communication." *State v. Roden*, 179 Wn.2d 893, 899 (2014).

Plaintiff fails to plead "interception."  Plaintiff makes the conclusory allegation that an unnamed employee or volunteer of InnoGames intercepted her communication after it  reached its intended recipient, Gensmoky.  TAC¶36,¶142,¶155,¶166.  Although the WPA does not define the term "interception," the Washington Supreme Court has interpreted the term as: "to stop…before

---

[7] https://www.copyright.gov/comp3/docs/compendium.pdf,Section 205.

[8] Even if Plaintiff asserted this claim in her first filed complaint, in September 2019, it would still be time barred.

arrival…or interrupt the progress or course." *Id*. (citing Merriam-Webster's Dictionary). The Washington Court of Appeals confirmed that definition, holding: "[a message] received without interference and was read by the intended recipient cannot be intercepted by subsequent actions taken by other people." *Clare v. Clare*, 2022 WL 1714547, *2 (Wash. Ct. App. May. 26, 2022). Plaintiff never alleges that the purported "interceptor" stopped, impeded, or otherwise prevented the communication from reaching Gensmoky. She alleges instead that the link to the Selfie or a transmittal copy of the Selfie was accessed by the unknown actor *after* its transmission to Gensmoky: "an InnoGames moderator accessed this screenshot link through a private InnoGames feature known as the "report" system when this Third-Party reported the "whisper" that it was sent in." TAC¶35. Her claim thus fails because the allegations do not allege "interception."

Plaintiff's consent to any such purported "interception" defeats her WPA claim. Plaintiff's TAC consistently refers to the InnoGames' T&Cs in support of her WPA claim and she incorporates them therein by reference. TAC¶28. The T&Cs, effective in 2016, are annexed to the Behr Aff. as Exhibit B. Notably absent from Plaintiff's T&Cs citations, is the section whereby all users grant InnoGames a license to duplicate and make publicly available any user-provided content. Specifically, Article 13.3 provides:

> If, within the scope of the Games or in any of the forums operated by us, you make information available via texts, photographs, graphics, videos, links, music, etc. ("Content"), **you grant us the free, simple, universal right to duplicate the content and make it publicly available in connection with the Games and in the forums**. You are personally responsible for this information. We do not have control in this respect and also do not adopt the content as our own. We do not examine or check such content. If we become aware of illegal content or content pursuant to Art. 12.3, such content will be removed immediately.

Thus, Plaintiff consented to the conduct she complains of.

Plaintiff also fails to plead damages. Plaintiffs are required to show that "a violation of [the WPA] has injured his or her business, his or her person, or his or her reputation" and that only "[a] person so injured shall be entitled to actual damages . . . or liquidated damages." Wash. Rev. Code

317

§9.73.060; *See, e.g., Russo v. Microsoft Corp.*, 2021 WL 2688850, *3 n.3 (N.D. Cal. June 30, 2021). Plaintiff does not allege any injury to her business, person, or reputation. She merely pleads that Defendants' conduct "caused damages in the loss of the photograph," TAC¶159, which is insufficient as a matter of law.

    **b.**    **Federal Law**

Plaintiff also alleges a claim under The Electronic Communications Privacy Act ("ECPA" or "Wiretap Act"). The ECPA provides relief against any person who "intentionally intercepts ... the contents of any electronic communication," or who "intentionally discloses" or "intentionally uses" such content while "knowing or having reason to know" it was so intercepted. 18 U.S.C. §§ 2511(1)(a),(c)-(d). Plaintiff's claim under the ECPA fails for similar reasons as its state-law counterpart.

The TAC does not allege "interception" under the ECPA. "[T]o be "intercepted" in violation of the Wiretap Act, it must be acquired during transmission, not while it is in electronic storage," or in other words, before the communication reaches its intended recipient. *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). As explained *supra*, Plaintiff alleges that the link/photo was first received by Gensmoky and *after that*, an individual from InnoGames accessed the photo and spread it. This is not "interception" under the ECPA.

Plaintiff's consent to share her content through InnoGames' T&Cs also bars her federal claim. 18 U.S.C.A. §2511(d) provides, "It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where . . . one of the parties to the communication has given prior consent. . ." Plaintiff consented to InnoGames' "right to duplicate the content and make it publicly available" by playing *Forge of Empires. See Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190 (N.D. Cal. 2014) (applying consent exception to social networking website where users authorized operator's collection of contacts); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1028-32 (N.D. Cal. 2014) (applying consent exception in context of terms of service).

Even if there once had been such a claim, it is now time barred. 18 U.S.C.A. §2520(e) provides for a two-year statute of limitations. At the latest, Plaintiff discovered the alleged conduct in August 2016, TAC¶40, and was thus required to bring this claim by August 2018. She brought the claim in March 2024.[9]

**D.      Plaintiff Still Fails To State Claims of Copyright Infringement**

**1.      Copyright Infringement**

**a.      The Copyright Claim Fails Because Plaintiff Granted InnoGames a License to Display the Selfie**

Plaintiff alleges that Defendants are liable for copyright infringement because "an InnoGames moderator…intercepted the private conversation including the link to the photograph, and then copied and transmitted this link to other parties," and that this same or maybe a different moderator or moderators—Plaintiff's pleading is ambiguous—"disseminated" and "transmitted [the photograph] amongst players." TAC¶147. Those allegations fail because she authorized Defendants' conduct by granting them a license under the T&Cs, to copy the content and display it on their platform, the Selfie. Behr Aff., Ex. B; *See Hunley v. Instagram, LLC*, 73 F.4th 1060, 1077 (9th Cir. 2023) ("By displaying Hunley's images, Instagram did not directly infringe Hunley's exclusive display right because Instagram had a nonexclusive sublicense to display these photos.")

**b.      Defendants are Shielded from Direct Liability Under the Server Test.**

Defendants did not disseminate Plaintiff's link. But even if they had, they cannot be held liable for direct copyright infringement for doing so under the server test, as explained in the seminal case *Perfect10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1159-62 (9th Cir. 2007). *Perfect10* and its progeny[10] hold that providing links to otherwise infringing works does not give rise to direct

---

[9] Even if Plaintiff asserted this claim in her first filed complaint, in September 2019, it would still be time barred.

[10] *See also MyPlayCity, Inc. v. Conduit Ltd.*, 2012 WL 1107648, *12 (S.D.N.Y. Mar. 30, 2012) (collecting cases), adhered to on reconsideration, 2012 WL 2929392 (S.D.N.Y. July 18, 2012).

copyright infringement of one's display or distribution rights because a "copy" of the work is not stored in a tangible medium of expression (e.g., a server). The *Perfect10* court explained:

> A photographic image is a work that is fixed in a tangible medium of expression, for purposes of the Copyright Act, when embodied (i.e., stored) in a computer's server (or hard disk, or other storage device). The image stored in the computer is the "copy" of the work for purposes of copyright law… …Applying the server test…Google does not, however, display a copy…for purposes of the Copyright Act when Google frames in-line linked images that appear on a user's computer screen… First, the HTML instructions are lines of text, not a photographic image. Second, HTML instructions do not themselves cause infringing images to appear on the user's computer… Because Google did not communicate the full-size images to the user's computer, Google did not distribute these images…such assistance… does not constitute direct infringement…

Plaintiff alleges that Defendants disseminated a link, but also contends that a photograph or image was transmitted. *Compare* TAC¶34,¶35 *with* TAC¶50,¶63,¶127. If the claim is that a link was sent, there can be no infringement under the server test as a matter of law. *See Hunley*, 73 F.4th at 1064 ("Courts have generally held that hyperlinking does not constitute direct infringement.").

Her allegation that a photograph (as opposed to a link) was distributed on InnoGames' platform, is also insufficient to withstand 12(b)(6) scrutiny and confer direct liability on Defendants. An image does not just magically appear on a server. Someone must take affirmative steps to place it there, which is done by uploading a digital file to the server where it will be stored. Plaintiff's TAC is plagued by her vague allegations that the photograph was transmitted across InnoGames servers, TAC¶149, and the absence of any allegations clarifying who saved, stored, or otherwise placed it on any server and whether that person had any relationship to Defendants or acted on their behalf or for their benefit. Without alleging that InnoGames–or a party under its control–saved or stored the image to its server, the claim fails. *See Logan v. Meta Platforms Inc.*, 636 F. Supp. 3d 1052, 1059 (N.D. Cal. 2022) ("Altogether, the FAC adequately pleads that Meta *saved* Logan's

photos onto its servers, satisfying the server test") (emphasis added).  Plaintiff's trumped-up accusation lacks a necessary element under the server test and must be denied.

### c. Neither Contributory Liability nor Vicarious Liability Are Sufficiently Pled

To plead a *prima facie* case of vicarious infringement, a plaintiff must plead that the defendant has "(1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity." *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 746 (9th Cir. 2019). For a contributory liability claim to withstand a motion to dismiss, a plaintiff must allege that a defendant "(1) has knowledge of another's infringement and (2)  either (a) materially contributes to or (b) induces that infringement." *Id.* at 745.  Both theories are forms of secondary liability where liability is imposed based on its conduct and that of a third party.  As a threshold matter, neither vicarious infringement nor contributory is available to Plaintiff because she has failed to credibly allege direct infringement by a third party (or any party). *See Hunley* at 1077 ("Without direct infringement, Hunley cannot prevail on any theory of secondary liability…")

To advance her vicarious liability theory, Plaintiff vaguely alleges that InnoGames received a direct financial benefit from the alleged infringement via "micro-transaction purchases." TAC¶9. Micro-transaction purchases of what and by whom? To accept her allegations, one would have to accept that InnoGames knowingly permitted its moderators to intentionally transmit a link (or a photograph) of Plaintiff in a sports bra for the specific purpose of attracting more users to its platform to buy some unidentified service or product.  It is simply not plausible[11] that this is InnoGames' business model.

Her claim of contributory liability fares no better because she does not allege what reasonable steps InnoGames could have taken to locate the purported infringer who first circulated

---

[11] "The right to plead alternatively ... does not sanction deviations from the basic obligation to plead comprehensibly," § 1282 <u>Alternative and Hypothetical Pleading</u>, 5 Fed. Prac. & Proc. Civ. § 1282 (4th ed.), nor loosen the requirement to plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal,*

the image/link on the platform, or how it could have learned of, and stopped, the ensuing dissemination. Plaintiff does not even know the identity of who allegedly disseminated the Selfie, nor does the TAC identify a specific individual, and it is unreasonable to believe that it would be a simple undertaking for InnoGames to identify that person (if that person even exists) from the millions of *Forge of Empires* players.[12]

### d. Plaintiff's Request for Statutory Damages Must be Denied as a Matter of Law

Plaintiff alleges, "At no time did Plaintiff publish the image." TAC¶147. So, to be entitled to statutory damages under 17 U.S.C. §412(1),(2),[13] Plaintiff must allege infringement after the Selfie's registration date–September 03, 2019. However, she alleges infringement began when she "reported the photograph and its transmission to InnoGames in or around August of 2016 and again in November of 2016." TAC¶39. Accepting her assertions as true, she must be denied statutory damages for all acts of infringement occurring in 2016 or at any time before September 03, 2019. Because she alleges that infringement of the same work by principally the same people was ongoing, "[a]t least until March 2, 2021," Plaintiff is barred from an award of statutory damages in the 9th Circuit under the doctrine of continuing infringement. TAC¶151; *See Smith v. Weeknd,* 2019 WL 6998666, *7 (C.D. Cal. Aug. 23, 2019) ("When ... continuing infringement commences before registration, as [wa]s alleged in [the p]laintiffs' Complaint, §412 eliminates the possibility for the recovery of statutory damages and attorneys' fees."); *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 701 (9th Cir. 2008) ("[T]he first act of infringement in a series of ongoing

---

556 U.S. 662, 678 (2007); *RDF Media Ltd. v. Fox Broadcasting Co.*, 372 F. Supp. 2d 556, 561 (C.D. Cal. 2005) ("However, a court need not accept as true unreasonable inferences or conclusory legal allegations.")

[12] *VHT, Inc.* at 745 ("In the online context … a 'computer system operator' is liable…'if it has actual knowledge that specific infringing material is available using its system, and *can take simple measures* to prevent further damage to copyrighted works, yet continues to provide access to infringing works.") (emphasis added).

[13] ("**[N]o award of statutory damages or of attorney's fees**, as provided by sections 504 and 505, shall be made for— (1) **any infringement of copyright in an unpublished work commenced before the effective date of its registration**; or (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.") (emphasis added).

infringements of the same kind marks the commencement of one continuing infringement under § 412.").

### 2. Negligence and Gross Negligence

To withstand a motion to dismiss, a claim grounded in negligence must plead: (1) duty; (2) breach; (3) injury; and (4) causation. *Burg v. Shannon & Wilson, Inc.*, 110 Wash. App. 798, 804 (2002). Plaintiff's newest pleading purports to enhance her allegation that Defendants were negligent by allowing an unidentified moderator to access and disseminate a link/image of Plaintiff which led to her harassment on the platform. *See generally* TAC¶45-60.

#### a. Duty

The Ninth Circuit's Order emphasized that the claim failed because Plaintiff did not allege that Defendants had a duty to prevent the nameless moderator from accessing and disseminating a link/image of Plaintiff which led to her harassment on the platform. Order, at 4-5. Courts consistently recognize that generally, there is not a "special relationship" between millions of users and services that users can join (or leave) at will, like InnoGames. *See, e.g.*, *In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017, 1038 (N.D. Cal. 2021) (explaining why there is no "special relationship" between plaintiffs-users and Zoom). Acknowledging this, the Ninth Circuit held that to establish duty, Plaintiff must plead a special relationship between InnoGames and the unidentified moderator who allegedly caused harm to Plaintiff by disseminating the link to her photo. Order, at 5. Plaintiff attempts to do so through vicarious liability and negligent supervision theories, both of which fail.

#### (i) Vicarious Liability

In Washington, vicarious liability "imposes liability on an employer for the torts of an employee who is acting on the employer's behalf. Where the employee steps aside from the employer's purposes in order to pursue a personal objective of the employee, the employer is not vicariously liable." *Niece v. Elmview Grp. Home*, 131 Wn.2d 39, 48 (1997). To invoke this theory, the TAC alleges that a special relationship exists because the moderator was either an employee or

a volunteer for InnoGames. TAC¶¶50-51. Even assuming *arguendo* that the moderator is an employee, there is no vicarious liability because the moderator acted outside the scope of his duties and not on behalf of his employer. Here, there is no evidence that InnoGames authorized, instructed, or had any purpose to further the spreading of the Selfie. As alleged, the unnamed moderator acted on her own accord, based on her own personal animus, and accordingly, vicarious liability cannot attach to Defendants. *See, e.g.*, *Rideout v. City of Bellingham*, 2019 WL 5381962 (Wash. App. Oct. 21, 2019) (no vicarious liability when employee secretly recorded coworker); *Blenheim v. Dawson & Hall Ltd.*, 35 Wash. App. 435 (1983) (no vicarious liability when employees assaulted dancer at employer's party). This analysis applies equally to volunteers, based on agency principles. *See Baxter v. Morningside, Inc.*, 10 Wash. App. 893 (1974).

### (ii)    Negligent Supervision

Plaintiff also fails to plead that, in the absence of vicarious liability, Defendants are liable under a negligent supervision theory. "Negligent supervision creates a limited duty to control an employee for the protection of third parties, even where the employee is acting outside the scope of employment." *Niece*, 131 Wn.2d at 51. However, "an employer is not liable for negligent supervision of an employee unless the employer knew, or in the exercise of reasonable care should have known, that the employee presented a risk of danger to others." *Id.* at 48-49.

First, Plaintiff does not allege that the moderator was acting outside of his scope of employment. TAC¶50-51("The employee was acting *in the scope of their duty*. . . [t]he moderator who illegally released the intimate image was acting *within the scope* of their duty. . .").

Second, Plaintiff does not allege, as the Ninth Circuit said she must, that Defendants knew or should have known that its moderators might act in this way, creating a risk of harm to Plaintiff. Order, at 5. Although the TAC alleges that there were additional instances of moderators intercepting messages, she fails to plead that Defendants were aware of such interception. *See* TAC¶37. Plaintiff's conspiracy theory that a secret moderator "might have personal vendetta . . to carry out malfeasance against a player like the Plaintiff" fails. TAC¶56. Defendants had no reason

to believe that an ordinary game moderator would be "out to get her"; that theory is not sufficiently plausible. Similarly, separate litigation against InnoGames does not mean Defendants knew or should have known that a nameless moderator would intercept users' messages. Although the jurisdictional issues in *Xander* were analogous to those at issue here, the facts of *Xander* are distinguishable and that case did not concern message interception. *See* Dkt#66, 4-10. Also, the person complained of in *Xander* is not the same person who Plaintiff complains about here. *See Rideout*, 2019 WL 5381962, at *4 ("For an employer to be liable in Washington under a claim for negligent supervision . . . , courts have required that the employer have knowledge of the dangerous tendencies of that *particular* employee"). Therefore, the facts alleged in *Xander* do not support Plaintiff's negligence claim here.

### b. Gross Negligence

Gross negligence is the failure to exercise slight care. *Nist v. Tudor*, 67 Wn.2d 322, 324 (1965). For liability, there must first be a showing of general, or ordinary, negligence. *Estate of Davis v. State, Dep't of Corr.*, 127 Wash. App. 833, 840 (2005). Because Plaintiff failed to state a claim for general negligence, her gross negligence claim necessarily fails.

### 3. Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress

When the Ninth Circuit dismissed Plaintiff's negligent infliction of emotional distress claim, it noted, "Washington courts allow claims for negligent infliction of emotional distress absent physical injury only where emotional distress is within the scope of foreseeable harm of the negligent conduct." Order, p.6. Plaintiff did not amend her allegations for this claim in her TAC so it likewise fails. FAC¶¶61-68; TAC¶¶71-79.

The Ninth Circuit's rationale for dismissing Plaintiff's claim for intentional infliction of emotional distress applies equally to the claim in the TAC. The Ninth Circuit and this Court previously dismissed this claim because "Plaintiff's allegations that Defendants inconsistently applied certain rules to her, helped her alleged harassers ban her from the game, and attempted to

cover up the misconduct of moderators" did not "rise to the level of outrageous conduct." Order, p.7. The TAC merely adds inflammatory language to the same allegations. *See* TAC¶74. Plaintiff's use of new phrasing does not rescue her claim.

### 4.    Gender Discrimination

Plaintiff's latest complaint again asserts a claim for gender discrimination based on her allegation that Defendants created a game that was inherently discriminatory towards women and enforced the Rules to the detriment of her gender. The Ninth Circuit, reiterating this Court's reasoning for dismissal, dismissed the FAC's discrimination claim, in part, because Plaintiff did not "show that her gender was a substantial factor causing the alleged discrimination." Order, p.7. The TAC similarly fails. It provides nothing more than conclusory allegations of discrimination and does not allege that gender was a substantial factor causing the alleged discrimination by any of the Defendants.

### 5.    Product Liability

The Ninth Circuit dismissed Plaintiff's product liability claim, because *Forge of Empires* is not a "product" subject to product liability laws, and because Plaintiff "fails to allege specific, factual allegations that are sufficient to show that the game was, as designed, unreasonably addictive," also warrants dismissal of the TAC. Order, pp.8-9. The TAC does not cure those deficiencies. Rather, the TAC vaguely alleges, "[t]he game creates psychological addition" and Defendants "facilitate this addition in players by helping them play and not warning them of the dangers involved in playing." TAC¶109. This is insufficient and warrants dismissal.

### 6.    Defamation

Plaintiff's amended defamation claim also fails. The Ninth Circuit dismissed the FAC's defamation claim "because the statements alleged in the complaint [were] not defamatory because they are not statement of facts. . . these statements are nonactionable insults." Order, p.6. Ignoring the Ninth Circuit, the TAC reprises the defamatory statements that the Ninth Circuit already rejected (TAC¶68-69), and adds 12 new statements, albeit without the requisite detail to state a claim

326

(TAC¶68(a)-(l)).  "The Ninth Circuit has held that a defamation claim satisfies the pleading standards of Rule 8 where the allegations identify the substance of the allegedly defamatory statements and the time and place in which they were made." *Oriko v. Starbucks Corp.*, 2007 WL 3228443, *2 (W.D. Wash. Oct. 31, 2007).  As concerns the new statements, Plaintiff does not identify the speaker, to whom they were made or even when they were made, which is cause for dismissal.  *See Lutz v. Spokane Reg'l Health Dist.*, 2023 WL 8005297, *12 (E.D. Wash. Nov. 17, 2023) (dismissing claim that did not allege "the basic factual details that would allow the Court to evaluate the sufficiency and plausibility of his claim—for example, who made the statements, and where/when/to whom they were made."); *Phillips v. Oklahoma Pub. Co.*, 2011 WL 4914944, *3 (W.D. Wash. Oct. 14, 2011) (same).[14]

The TAC also does not plead a claim for libel *per se*, which is an exceptionally narrow claim reserved for allegations of fact deemed so offensive that damages need not be proven.  "A written publication is libelous *per se* . . . if it tends to expose a living person to hatred, contempt, ridicule, or obloquy, or to deprive him of the benefit of public confidence or social intercourse." *Amsbury v. Cowles Pub. Co.*, 76 Wn.2d 733, 737 (1969). Here, the alleged third-party players' taunting of Plaintiff (TAC¶70), could not plausibly be considered to be statements of false truths (that is, libelous declarations) as opposed to invective, opinions and unpleasantries in the category of those Plaintiff admits she sent to rattle opposing players.

### 7.    Fraud and Misrepresentation

Under Rule 9(b), a plaintiff "must state with particularity the circumstances constituting fraud" and the claim must "inform the defendant of who did what, and describes the fraudulent conduct and mechanisms." FRCP 9(b); *Haberman v. Washington Pub. Power Supply Sys.*, 109 Wn.2d 107, 165 (1987). General statements about material misrepresentations and fraudulent

---

[14] Defendants do not address Plaintiff's request for discovery to identify the speakers who made the allegedly defamatory statements, TAC¶71, because improperly made through a pleading.

actions "'do not provide the [required] who, what, when, where, and how of a properly pleaded fraud claim.'" *McAfee v. Select Portfolio Servicing, Inc.*, 193 Wash. App. 220, 232-33 (2016).

Plaintiff's "main allegation is that Defendants represented that games rules on the *Forge of Empires* platform would be applied fairly when they were applied unfairly." Order, p.8. The Ninth Circuit dismissed this claim because the allegations lacked particularity–what specific statements were made, who made the statements, and how she was deceived. *Id.* The TAC, attempts, unsuccessfully, to remedy this by pointing to specific portions of the T&Cs which Plaintiff claims were misrepresentations. TAC¶88.

Specifically, Plaintiff alleges that InnoGames and its agents' agreement to abide by the T&Cs and the Game Rules (the "Rules") was a fraudulent misrepresentation, because they failed to comply with the provisions of both. *See generally* TAC¶88-104. A closer look at the T&Cs and the Rules[15] illustrates that Plaintiff, again, has made false representations to this Court. Plaintiff purports that the 5 portions of the T&Cs quoted in TAC¶88(b) are *InnoGames'* obligations. *See* TAC¶88 ("InnoGames made the following specific statements in their Game Rules and Terms of Service respectively. . . "). Those five quotations relate to the *user's* obligations. Section 12.3 of the T&Cs states: "As User, you will refrain from any action that endangers or disrupts the operation and functionality of the Games and the successful collaboration with other users. In particular you are prohibited from . . .". Accordingly, these statements cannot be considered Defendants' fraudulent misrepresentations to players, because they only relate to user obligations.

The only statement in TAC¶88 that was not subject to Plaintiff's deceitful ellipsis, is ¶88(a) which sets forth InnoGames' statement in Section 3 of the Rules: "InnoGames does not accept any publications that the *Forge of Empires* Team considers illegal, insulting, offensive, threatening, abusive, real-life aggressive, sexually explicit, pornographic . . ." This statement is not actionable because it does not "constitute a representation of an existing fact." This portion of the Rules is

---

[15] The Rules are annexed to the Behr Aff. as Exhibit C.

only a promise of future conduct, which "may support a contract claim. But failure to perform those promises alone cannot establish the requisite negligence for negligent misrepresentation." *Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP*, 110 Wash. App. 412, 436 (2002); *see Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 692-94 (9th Cir. 2011) (representation that defendant was and will comply with all the terms and conditions was not actionable); *Colorado Tire Corp. v. Moraglis S.A.*, 2022 WL 3025823, *11 (Wash. App. Aug. 1, 2022) (failure to comply with the terms and conditions did not constitute "actionable statements of existing fact, but [we]re promises of future conduct.").

Plaintiff also alleges that InnoGames, by changing the rules as they relate to her, and not fostering a safe online environment, misrepresented their "core values" which include "Fair Play". TAC¶95. This statement is also not actionable because reliance on this vague and indefinite assurance was unreasonable. *See Maxon v. Frontier Adjusters, Inc.*, 1996 WL 733186, *2 (9th Cir. Dec. 17, 1996) (reliance on "decidedly ambiguous statements" was unreasonable and insufficient to support a fraud claim). Plaintiff's vague allegation that Blan and Stephenson "often invoked the 'fairness'" of the game in their communications with her, TAC¶96, fails for the same reason.

### 8.    Unfair and Deceptive Trade Practices

Plaintiff's TAC fails to state a claim under Washington's Consumer Protection Act ("CPA"). The Ninth Circuit stated that to state a claim, the matter must "vitally affect[] the public interest" which the FAC did not allege. The same result is warranted here because Plaintiff still makes no allegations concerning the public interest. FAC¶¶85-86;TAC¶¶104-105.

### 9.    Breach of Contract

Plaintiff's breach of contract claim fails regardless of whether she was a party to the contract or a third-party beneficiary. Under both, "[t]o recover, the plaintiff has the burden of proving that the defendant breached the contract, that the plaintiff incurred actual economic damages as a result of the breach, and the amount of the damages." *Columbia Park Golf Course, Inc. v. City of Kennewick*, 160 Wash. App. 66, 83 (2011). There must be a "material breach," which is "one that

substantially defeats [the] primary function of the contract." *Top Line Builders, Inc. v. Bovenkamp*, 179 Wash. App. 794, 808 (2014). Here, Plaintiff has failed to adequately plead that a breach took place, let alone a material breach, or show any actual economic damages.

Under a direct or third-party beneficiary theory of liability, there must be a material breach of the contract by InnoGames. Plaintiff purports that the material breach is InnoGames accepting such publications, the intimate image which she purports is "illegal content" and allowing players to brag about having received and seen the Selfie despite the statements being reported to the moderation staff. TAC¶127-129. This is not a material breach, because the contract, the T&Cs, explicitly provides InnoGames a license to duplicate and make publicly available any use-provided content. Plaintiff "grant[ed] [InnoGames] the free, simple, universal right to duplicate the content and make it publicly available in connection with the Games and in the forums." Art. 12.3

Accordingly, once Plaintiff herself put the content on the platform, InnoGames had no obligation to remove the photograph. It is also not "illegal content" because as explained, *supra–Section* C.2., transmission of the photograph does not violate Washington's intimate image dissemination law, nor did dissemination constitute a copyright infringement as explained, *supra–Section* D.1.

Plaintiff's TAC also does not plead damages stemming from breach of contract. She claims her damages are loss of her intellectual property (the photograph), but she still has the photograph (it is a digital file in her possession) and a copyright in it as well as "consequential damages that involved years of harassment." TAC¶133. These vague allegations do not sufficiently plead actual damages.

The Ninth Circuit held that Plaintiff failed to allege plausibly the existence of a contract between herself, and Defendants and that the Complaint does not adequately allege that Plaintiff is a third-party beneficiary of an agreement between Defendants and other users. Plaintiff's TAC attempts to remedy the latter deficiency and invoke third-party beneficiary status. She attempts to do this by adding an alleged statement from a senior moderator who told Plaintiff that the rules

330

"were in place to provide a high-quality game and fair disposition to *all* players." And then purports that this means the T&Cs and the Rules were "intended to benefit" Plaintiff and "other players" thus transforming Plaintiff into a third-party beneficiary. Her efforts to characterize herself as a third-party beneficiary fail. The parties to the contract—that is, InnoGames and the users—must have expressly intended to enter into the contract for Plaintiff's benefit. A statement by a moderator, after-the-fact, does not show all users' intent to benefit Plaintiff by agreeing to the Terms and Conditions. *See Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1201 (N.D. Cal. 2009) (holding that plaintiff was not a beneficiary of Google's content policy, noting that "a third party is not an intended beneficiary of an agreement unless the *promisee* intends the agreement to benefit the third party").

### 10.    Promissory Estoppel

Plaintiff's promissory estoppel claim also fails. "Promissory estoppel does not apply where a contract governs." *Westcott v. Wells Fargo Bank*, N.A, 862 F. Supp. 2d 1111, 1116 (W.D. Wash. 2012); *see also Hold Sec. LLC v. Microsoft Corp.*, 2023 WL 8433122, *9 (W.D. Wash. Dec. 5, 2023).

### IV.    CONCLUSION

For the reasons set forth above, Plaintiff's TAC should be dismissed in its entirety.

DATED this 1st day of July, 2024.

Respectfully submitted,

SUMMIT LAW GROUP, PLLC

I CERTIFY THAT THIS MEMORANDUM CONTAINS 8,265
WORDS, IN COMPLIANCE WITH THE LOCAL CIVIL RULES.

By s/Diana Siri Breaux
    Diana Siri Breaux, WSBA #46112
    315 Fifth Avenue S, Suite 1000
    Seattle, WA 98104
    *dianab@summitlaw.com*

PHILLIPS NIZER LLP

Alan Behr (admitted Pro Hac Vice)
Elizabeth A. Adinolfi (admitted Pro Hac Vice)
Judith Swartz (admitted Pro Hac Vice)
485 Lexington Avenue
New York, NY 10017
abehr@phillipsnizer.com
eadinolfi@phillipsnizer.com
jswartz@phillipsnizer.com

*Attorneys for Defendants*

The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PENNY QUINTEROS filing as TWOCENTS (a pseudonym),<br><br>     Plaintiff,<br><br>  v.<br><br>INNOGAMES, HENDRIK KLINDWORTH, MICHAEL ZILLMER, JULIE (JILL) BLAN, RICHARD STEPHENSON,<br><br>     Defendants. | CASE NO. 19-cv-01402 RSM<br><br>[PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT<br><br>NOTE FOR MOTION:  July 29, 2024 |

THIS MATTER having come on before this Court on the Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint, the parties appearing by and through counsel, the Court having reviewed the pleadings and files in this matter, specifically including the following:

1. Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint;

2. Declaration of Alan Behr in Support of Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint, with Exhibits A-C;

3. Plaintiff's Response, if any; and

4. Defendants' Reply and supporting documents, if any.

333

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint is GRANTED and

Plaintiff's Third Amended Complaint is dismissed in its entirety with prejudice.

IT IS SO ORDERED.


Dated this _____ day of _____, 2024.


_____
Honorable Ricardo S. Martinez
United States District Court Judge


Presented by:

SUMMIT LAW GROUP, PLLC

By s/Diana Siri Breaux
    Diana Siri Breaux, WSBA #46112
    315 Fifth Avenue S, Suite 1000
    Seattle, WA 98104
    Tel: (206) 676-7000
    Fax: (206) 676-7001
    dianab@summitlaw.com

PHILLIPS NIZER LLP

Alan Behr (admitted Pro Hac Vice)
Elizabeth A. Adinolfi (admitted Pro Hac Vice)
Judith Swartz (admitted Pro Hac Vice)
485 Lexington Avenue
New York, NY 10017
abehr@phillipsnizer.com
eadinolfi@phillipsnizer.com
jswartz@phillipsnizer.com

*Attorneys for Defendants*

334

**2024 Exhibits to Motion to Dismiss – Docket 115**

The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PENNY QUINTEROS filing as TWOCENTS (a pseudonym),<br><br>Plaintiff,<br><br>v.<br><br>INNOGAMES, HENDRIK KLINDWORTH, MICHAEL ZILLMER, JULIE (JILL) BLAN, RICHARD STEPHENSON,<br><br>Defendants. | CASE NO. 19-cv-01402 RSM<br><br>DECLARATION OF ALAN BEHR IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT<br><br>NOTE FOR MOTION: July 29, 2024 |

I, Alan Behr, Esq., declare and state as follows:

1.      I am a partner with the firm of Phillips Nizer LLP, counsel to Defendants in this action.

2.      I submit this Declaration in support of Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint.

3.      My office requested from the Copyright Office of the United States a certified copy of the copyright registration for the image referenced in ¶147 of the Third Amended Complaint ("TAC"), Registration No. VAu1-372-984.   On or about April 22, 2024, my office received such certified copy from the Copyright Office.  A copy is annexed as **Exhibit A**.

4.      InnoGames operates *Forge of Empires* under terms and conditions that apply to its various online games (the "T&Cs").  In the ¶24 of the TAC, Plaintiff admits that she read the T&Cs on or around July 2016, and Plaintiff incorporates the T&Cs into her pleading by referencing them no less than twenty-five times.  My firm used https://wayback-api.archive.org/, an internet archive of web pages, to obtain a screengrab of the T&Cs in effect in 2016, which are annexed as **Exhibit B**.

5.      InnoGames also operates *Forge of Empires* under in-game rules in order to maintain a virtual environment in which players can enjoy the time they spend playing InnoGames' online games (the "Rules").  Plaintiff also admits that she read the Rules, TAC ¶24, and incorporates the Rules into her pleading by reference to them more than fifty times.  My firm used https://wayback-api.archive.org/, an internet archive of web pages, to obtain a copy of the Rules that, upon information and belief, were effective in July 2016.  They are annexed as **Exhibit C**.

6.      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 1st day of July, 2024 in New York, New York.


_____/s/ Alan Behr_____
ALAN BEHR

336

337

# EXHIBIT A

# FILED UNDER SEAL

# EXHIBIT B

Case: 24-6332, 02/25/2025, DktEntry: 12.3, Page 248 of 313

Case 2:19-cv-01402-RSM    Document 31 Filed 06/01/24    Page 2 of 10

The Wayback Machine - https://web.archive.org/web/20160328135031/https://legal.innogames.com/portal/en/agb

☐ LANGUAGE SELECTOR ▾

# General Terms and Conditions

## Art. 1 Validity of the GTC, changes to the GTC

**1.1** Among other things, InnoGames GmbH, Friesenstraße 13, 20097 Hamburg ("we") distributes various online games ("Games") via various top-level domains as well as via various sub-domains and aliases of these domains. The Games can be used by you as a User ("User") via mobile application ("Mobile Apps") or browser(s).

The services and performances provided within the scope of these Games, including, but not limited to, the display of your profile page, the participation in forums, the display of user-generated content such as photographs, graphics or moving pictures, the provision of In-Game news systems ("Services") are exclusively carried out on the basis of these General Terms and Conditions ["GTC"]. These GTC are published for Mobile Apps during the order process of the relevant App and also on the website of the Games where they can be accessed and printed out at any time. In addition to these GTC, the relevant applicable game rules and game instructions (if applicable) for the Game that are made available via the downloaded App or listed on the website shall apply. In the event of any contradiction between these GTC and the game rules or game instructions, the GTCs shall prevail. Special Terms of Use may apply to individual Games and particular variations of Games. If this is the case, you will be notified appropriately of any such terms prior to making use of the relevant offer.

**1.2** By acknowledging the GTC, we conclude a licensing agreement with you. When using the Games via a browser you, as User, acknowledge the GTC for our Services by ticking the box "I accept the General Terms and Conditions" and clicking the registration button.

**1.3** When using the Games via a Mobile App, you acknowledge the GTC with each download of the relevant Mobile App. Your own General Terms and Conditions expressly do not form a part of the contract.

**1.4** We are entitled to change the GTC and other provisions with effect for a future date. We will only carry out these changes for an important reason; in particular based on new technical developments, expanding our services, changes in legislation or jurisprudence or other equivalent reasons. Should the change significantly distort the contractual balance between the parties, the change will not take place. In all other cases, changes require your approval. You agree to be informed about changes to the GTC when you log in to the relevant games platform or via ingame messages or by e-mail to your most recently notified e-mail address. The GTC are considered accepted if you do not object to them in writing or in text form (e.g. by e-mail or fax) within eight weeks after receipt. ("Objection Deadline"). When notifying any changes, we will draw specific attention to this option. We advise you to direct any objection to us in writing or by e-mail for the preservation of evidence. In the latter instance, it is recommended to provide the name of both the Game and your own name in the subject line.

**1.5** If you, as User, do not object to the changed GTC towards us within the Objection Deadline or you continue to use the Games despite access to the notification concerning changes, the changed or supplementary GTC become effective.
If you, as User, object within the deadline, both you and us are entitled to duly terminate the Licensing Agreement or the Premium Licensing Agreement pursuant to **Art. 10** of these GTC and, after the expiry of a possible notice period, to delete the account. Any possible service fees paid in advance for the period after the termination shall be refunded to the User on a pro rata basis or credited to other Games. When notifying changes, we will always explicitly point out the possibility of objection and termination as well as the period of notice and the legal consequences in particular where an objection does not take place.

## Art. 2 Conclusion of the contract, free of charge Licensing Agreement

339

**2.1** As User, you conclude a contract with us for the free of charge use of Games via the browser or via Mobile Apps ("Licensing Agreement"). You are neither entitled to a Licensing Agreement nor to the use of the Services or the Premium Services. The Licensing Agreement can be terminated by us and by you at any time without giving reasons, and the Services can be discontinued at any time without giving reasons.

**2.2** If you are below 18 years of age, you confirm that you your legal representative has read these GTC and that he/she agrees to the use of the Games .

**2.3 The Licensing Agreement for a free of charge use of the Services via the browser becomes effective through access to the data from the registration form which you completed and sent to us, and the activation of the account by us, and your acceptance of these GTC pursuant to Art. 1.2. The Licensing Agreement is free of charge.**

**2.4** In addition to the free Licensing Agreement described in 2.3, we offer Services subject to a charge ("Premium Services"). It is your choice whether or not you want to make use of these Services. Prior to such utilization, you are advised of your obligation to pay for these Services by an appropriately clear marking, and you must specifically confirm this use. Further details and information on Premium Services, in particular conclusion of the contract, description of the relevant Premium Services, payment, and revocation notice are specified in **Art. 8** under "Premium Licensing Agreement".

**2.5 Licensing Agreements are concluded with InnoGames GmbH, Friesenstraße 13, 20097 Hamburg as contracting partner. More information about us, in particular our contact details (fax, e-mail), Commercial Register number and name of authorized representatives can be accessed under "Imprint" on our website.**

**2.6** For individual Games you, as User, have the option to utilize services offered by our cooperation partners. In these cases, a separate agreement between you and the cooperation partner is concluded. This agreement is then subject to special conditions of which the cooperation partner will inform you prior to concluding the agreement.

## Art. 3 Mobile Apps

**3.1** Games are offered as Mobile App downloads via various providers (e.g. iTunes, Google, Google Play Store) free of charge ("Stores"). As User, you can use the Games via Mobile Apps by downloading the relevant Mobile App from a Store to your end device.

**3.2 The Licensing Agreement for a free use of the Mobile App comes about by downloading the Mobile App on your end device and your acceptance of these GTC pursuant to Art. 1.2.**

**3.3** In addition to the free of charge Licensing Agreement as described in 3.2 above, you may also buy Premium Services with Mobile Apps in the relevant store (so-called In-App Purchases). It is your choice whether or not you use these In-App Purchases. You will be made aware of the obligation to pay for these Services by a clear marking and must expressly confirm the use by clicking on "Buy" or similar buttons.

**3.4** With regard to the use of the Premium Services subject to a charge, these GTC also apply as a supplement to the stores' Terms of Use. Further details and information on Premium Services, in particular conclusion of the contract, description of the relevant Premium Services, payment, and revocation notice are specified in **Art. 8** under "Premium Licensing Agreement".

**3.5 The agreement for the free use of a Mobile App or the use of the Premium Services subject to a charge is concluded with InnoGames GmbH, Friesenstraße 13, 20097 Hamburg as contracting partner and not with the relevant stores. We alone, and not the stores, are responsible for the licensed Mobile App and its content. If you have any complaints, requests or questions regarding Mobile Apps, please contact us. More information about us, in particular our contact details (fax, e-mail), Commercial Register number and names of the authorized representatives can be accessed under "Imprint" on our website.**

**3.6** As User, you agree that you will not use the Mobile App in any way that contradicts or violates the Terms of Use and licensing conditions or other agreements between you and the stores.

**3.7** The relevant stores are not responsible for the provision of maintenance and support with regard to the Mobile App.

**3.8** All your claims regarding Premium Services subject to a charge, in particular but not conclusively regarding a warranty for defects or other defaults, must be asserted against us as your contracting partner and not against the stores. The provisions of these GTC apply. Regulations on the warranty rights and our scope of liability are detailed in **Art. 15** of these GTC.

**3.9** In the event that the Mobile App and/or the Licensing Agreement with you as User violates the rights of third parties, we alone, and not the store through which the Mobile App was downloaded, are responsible to defend against and settle any copyright claims.

**3.10** If you download a Mobile App via a store, you must be aware of the following restriction:
A download of the Mobile App is not permitted if you reside in a country that is subject to an official ban by the government of the USA or which the government of the USA has determined a country that supports terrorism. When you download Mobile Apps via the store, as a User, you therefore assure that

- you do not reside in a country which is subject to an official ban by the US government or in a country which the US government has determined to be a country "supporting terrorism"; and
- that you are not on any list of "prohibited or restricted parties" as published by the US government.

**3.11** The stores through which you buy the Mobile Apps are third-party beneficiaries of the contract between you and us and, as third-party beneficiaries, they are entitled to enforce this contract against you.

## Art. 4 Name

**4.1** As the User, you will chose a player name as an alias to participate in the Games ("User Name"). You are not entitled to be allocated a specific User Name.

**4.2** We are entitled to change or delete the User Name not only for technical but also for ethical or legal reasons without the requiring your approval.

## Art. 5 Accounts

**5.1** As a user, you will receive a user account ("Account") together with your License Agreement. With this Account, you can change your data and manage the Games.

**5.2** An Account can either be created by us on the games portal or on the relevant website of the Game or via a Mobile App downloaded to your end device.

**5.3** An Account cannot be transferred without our express approval, whether this is subject to a fee or free of charge.

**5.4** You may only have one Account per game world (one section of the Game). You can login to your account both via the relevant website of the Game or via the App you have downloaded. Using multiple accounts ("Multi-Accounts") within a game world (irrespective whether this is via a downloaded Mobile App or the Games' websites) is prohibited and can be punished with an immediate ban or extraordinary cancellation of the Licensing Agreement. Asserting any claims for damages by you is excluded in such a case.

**5.5** As User, you undertake to keep secret any login data, passwords and access data (jointly referred to as "Login Details") for your Account and to inform us without delay as soon as you become aware or suspect that unauthorized third parties gained knowledge of your Login Details. In such a case, you will change your data or have it changed by us. We also reserve the right to block your access temporarily. You will be permitted to use the Game(s) again as soon as we have eliminated the suspicion of any abuse of the Login Details either by you or by a third party.

**5.6** If a third party uses an Account without authorization by gaining access to your Login Details where you are to blame, you are treated as if you had acted on your own.

**5.7** Making use of another User's Account is prohibited unless the game rules specifically provide for this (e.g. "holiday replacement").

**5.8** If we suspect that a third party has become aware of the Login Details, we are entitled, but not obliged, to change the Login Details or block the account without prior notice. We will notify you accordingly without delay and, on request, provide you with new Login Details within a reasonable deadline. Further claims by you as a result of the temporary blocking of your Account or change to your Login Details are excluded.

**5.9** We are entitled to delete inactive Accounts according to the relevant game rules. In this case, the Licensing Agreement ends automatically.

## Art. 6 Required technical equipment

The use of the Games is only possible through locally installed software as well as an internet connection on your computer, tablet, Smartphone or other end device ("End Device"). These include an Internet browser, a connection to the Internet, an operating system, possible plug-ins, e.g. Java or Flash and possibly required clients for the use of the Game. You bear the costs of this software and its application as well as the costs incurred for the use of the Internet connection. It is your responsibility to maintain your End Device in such a manner as to ensure the use of the Games. We do not provide any support for this.

## Art. 7 Scope of content

**7.1** We provide the Games and other Services within the scope of our technical and operational possibilities. The Services of the Games are open to Users who have a Licensing Agreement and consequently an Account.

**7.2** All the Games, Services, Premium Services, items or currencies we offer are reworked and updated at our discretion to ensure that they remain attractive for the largest possible circle of users. To make sure that all users can take part in the Game, it is essential that all users use the same version of the Game, Services, Premium Services, items or currency. For this reason, you may use the relevant Game, Service, Premium Service, item or the currency only in the most recent version.

**7.3** We reserve the right to discontinue the operation of the Games or parts thereof without giving reasons.

**7.4** We expressly reserve the right to contest a contract, provided a contract was concluded in the first place, should, for example, technical problems or interference with the offer by a third party or similar events lead to faulty offers to you (e.g. incorrect or faulty pricing of Premium Points), and to demand a recovery of the services provided to you, in particular Premium Points granted, against reimbursement of any sum you may have paid. As the User, you have the same right.

## Art. 8 Premium Licensing Agreement

**8.1** The contract for Premium Services ("Premium Licensing Agreement") is concluded both via browser games as well as Mobile Apps as soon as you click on the button "Pay Now" or similar, once you have selected the Premium Service and through sending an order confirmation via Ingame-News or e-mail in which you accept the offer.

**8.2** The Premium Services in particular, but not exclusively, include the provision of virtual currency (e.g. "Premium Points, Gold") and the use of game advantages by way of virtual goods ("items").

**8.3** The content, features and preconditions of the Premium Services that are valid at the time of the order and in the manner they are presented on our website and in the Mobile Apps as well as the corresponding baskets shall apply; this is conveyed to you accordingly in the relevant order confirmation.

**8.4** Generally, as User, you can utilize items for a certain duration. You can also lose items during the course of a Game, for example if they are destroyed during gameplay or are taken away by other users.

**8.5** Premium Services can only be purchased through a separate order. There is no permanent or repeated obligation to purchase a Premium Service.

**8.6** With regard to the use of the Games via browsers, the prices valid at the time of the order, as presented in the relevant baskets and transmitted in the order confirmation for the corresponding order, shall apply. Prices include possible statutory value-added-tax.

**8.7** In some instances, costs or fees ensuing from various payment providers are not included in the prices. As far as you could incur additional fees or costs through your chosen payment provider, this will be expressly pointed out. If you are playing in a browser, you can change the payment provider prior to finalizing the payment process. We do not have any influence over costs or fees raised by the payment provider. Binding information on incurred fees and costs can only be given by the payment provider.

**8.8** With regard to Mobile Apps, the prices indicated in the relevant stores (e.g. App Store or Google Play Store) and in the order confirmation sent to you for the relevant order apply. Prices include possible statutory value-added-tax. Payments for Mobile Apps are processed through the relevant stores. In this case, the stores' Terms of Use and Terms of Payment apply. These GTC apply supplementary. Where there is a contradiction between the stores' GTC and these GTC, the stores' Terms of Use and Terms of Payment shall have priority.

**8.9** As far as the Games simulate currencies, e.g. Premium Points, these are Premium Services and not real money. A reconversion of the Premium Services (i.e. currencies, etc.) in real money is only possible if the operation of our website and Mobile Apps as a whole are permanently discontinued. In such a case, any payments you made shall be refunded if the purchased Premium Services or items have not been unlocked.

**8.10** Service payments are due in advance with the purchase of a Premium use.

**8.11** As User, you are not entitled to a specific payment method.

**8.12** You are liable towards us for any cancellations or reversal debits for which you are responsible (e.g. due to insufficient funds on your account). You shall also bear the costs (e.g. fees charged by the payment provider) and handling fee of EUR 3.00 incurred through such a default. We are entitled to charge these amounts together with the original payment to your account. You have the right to prove that no damage occurred, or that there was no damage equivalent to the amount demanded.

**8.13** If you are in arrears with your payment, we are entitled to cease our services and to block the Account, notwithstanding your continued payment obligation. No service payment is due during this period. However, we are entitled to charge a handling fee of EUR 3.00 to unblock the account upon full settlement (provided you are responsible for the default). You have the opportunity to prove that no damage occurred or only to a minor degree. Furthermore, we are entitled to charge the statutory interest on arrears of 5 percentage points above the relevant valid base interest rate.

**8.14** As part of adapting and updating the Games in terms of **Art. 7.2** and **Art. 7.3** of these Terms of Use, we may offer new Premium Services, items or currencies, or change or completely discontinue existing Premium Services for future use of the Games. In the event of such adaptation or cessation, we undertake to give you the opportunity to apply and use Premium Services, items or currencies you have purchased against a fee within a previously notified deadline. Alternatively, we give you, as the User, the option to convert the Premium Services, items and currencies you have purchased against a fee into a credit that you can use otherwise. In the event that a specific Game is discontinued, you have the right to use those Premium Services, items and currencies until the actual date of discontinuation and convert these into a credit, which can then be used for another Game. Further claims on your part are excluded.

**8.15** We are entitled to change the prices for Premium Services at our discretion.

## Art. 9 Right of revocation, revocation notice with regard to Premium Services

**If you are sending your revocation by e-mail, we recommend that you enter your name and the name of the Game in the subject line to ensure speedier handling.**

**Revocation instructions**

**Right of revocation**

**You have the right to revoke this contract within fourteen days without giving any reasons.**

**The revocation period is fourteen days from the date of concluding the contract.**

To exercise your right of revocation, you must inform us (InnoGames GmbH, Friesenstrasse 13, 20097 Hamburg, Fax: +49 40 7889335-200; e-Mail: **info@innogames.com** ) of your decision to cancel this contract with a clear declaration (e.g. a letter sent by mail, fax or e-mail). You can use **this** sample form to submit your revocation, although it is not a condition.

**To meet the revocation deadline it is sufficient that you send the notification before the end of the revocation deadline stating that you wish to exercise the revocation right.**

**Consequences of revocation**

**If you revoke this contract, we shall refund you all payments we received from you without delay and no later than fourteen days from the date on which we received your notification to withdraw from this contract. This refund includes the delivery costs (with the exception of additional costs that were incurred because you chose a different type of delivery than the most cost-efficient standard delivery). For such a refund, we will use the same method of payment you used for your original transaction unless something else has expressly been agreed to with you; you will not be charged a fee for this refund.**

**End of revocation notice.**

**Special note regarding the premature expiry of the revocation right:**

**Your right of revocation ends prematurely if, prior to the expiry of the revocation deadline, the contract has commenced after you, as User, have given your express approval for this and are aware that, as a consequence, you lose your revocation right once the contract has been executed.**

<u>**Special note on contract wording:**</u>

**We will confirm the conclusion of the contract to you, the User, via Email by sending an invoice and confirming the contract wording.**

## Art. 10 Contract duration and cancelation

**10.1** Provided nothing to the contrary is agreed in our actual offer, the Licensing Agreement and/or the Premium Licensing Agreement between you and us are concluded for an indefinite period of time. Different provisions may apply for the provision of Premium Services.

**10.2** If no duration is agreed upon regarding the duration of the Licensing Agreement, it can be cancelled at any time. Reasons need not be given.

**10.3** The Premium Agreement can be cancelled by both parties (you and us) by giving three (3) months proper notice. No reasons are required for such cancellation.

**10.4** The parties' right to cancel the Licensing Agreement or the Premium Licensing Agreement at any time for an important reason remains unaffected by the aforementioned regulation.

**10.5** We are in particular, but not exclusively, entitled to cancel the Licensing Agreement or the Premium Licensing Agreement for an important reasons, if

- you are in arrears with your payments in the amount of at least EUR 1.99 and do not pay, despite a reminder;
- your account pursuant to 8.12 is in the red and you do not settle it despite a payment request including a deadline;
- you, despite having been given a reminder, culpably violate the game rules, laws or these GTC;
- you commit criminal acts; or
- there is a violation of **Art. 11** or **Art. 12.3** and this violation, despite a request and the expiry of a certain deadline to remedy the situation, has not been healed or is repeated despite the warning.

**10.6** If there is no cancellation stipulated for the relevant Game (e.g. delete feature), a cancellation notice must be effected in written form (letter, fax, e-mail). Giving reasons for the cancellation is required in case of an extraordinary notice of cancellation.

**10.7** For technical reasons, the final deletion of the Account and the user data only occurs after several days.

**10.8** In the event of a proper cancellation by you, or a notice of cancellation given by us for an important reason, you may not demand a refund of the payments you have made when the notice becomes effective. As User, you have the option – until the time the notice becomes effective – to use and use up any items purchased against a fee; thereafter you are not entitled to assert any reimbursement claims against us, in particular regarding non-utilized Premium Services. Furthermore, any claims for provision of the Premium Services cease to exist. Moreover, we are authorized to demand the sum of all payments you would have had to pay (in particular Premium Services already ordered). Your right to prove that no damage occurred or that the damage was significantly lower remains unaffected.

## Art. 11 Safety, cheating

**11.1** You are not entitled to use mechanisms, software, programs or other routines that could disrupt our systems. You may not adopt any measures that could lead to an unreasonable overload of the systems. The use of special software, in particular for the systematic or automatic control of the Games or special game features (Bots, Macros), for the reproduction or evaluation of the Games is not permitted.

**11.2** It is prohibited to exploit bugs or faults in the Games' programming and during gameplay that could represent an advantage for you for personal and/or third party purposes. If you discover any bugs, you shall notify us immediately. As far as you have derived any benefits therefrom, such benefits must be reimbursed to the extent this is possible. Intentionally exploiting bugs or fault, or publishing such exploits on the Internet or though mobile applications, can lead to an immediate cancellation of the Licensing Agreement without notice and a deletion of the Account.

**11.3** The use of software which allows data mining or that in any other way collects information associated with the Games is prohibited.

**11.4** The use of items outside the Game, their sale or purchase for real money or their exchange is prohibited.

## Art. 12 Your obligations

**12.1** As User, you undertake to provide us true and complete information upon registration and when using the Premium Services. You undertake to inform us immediately of any changes to the data supplied and to confirm their validity upon request.

**12.2** You undertake to abide by the provisions of these GTC, to observe the rules of the game and to obey our instructions and those of our employees as well as our vicarious agents and assistants. This includes the instructions of administrators and moderators (community managers, supporters) in the Game's forums.

**12.3** As User, you will refrain from any action that endangers or disrupts the operation and functionality of the Games and the successful collaboration with other users. In particular, you are prohibited from

- choosing a User Name that violates rights of third parties (in particular copyright, personal rights, trademark rights, company rights, etc.) or moral standards, e.g. is disrespectful towards religious orientation of third parties, is racist or discriminatory (we expressly distance ourselves from such behavior;)

- using an e-mail or internet address as a User Name;

- committing identity theft;

- using or publishing content tantamount to mobbing, or threatening, harassing, insulting or defamatory content, or publishing or linking to corresponding material on a third party website, irrespective of whether this content affects other users, our employees or other persons or companies;

- using, placing or publishing discriminatory content (e.g. hate speeches against groups of persons, in particular based on race, ethnic origin, religion, disability, gender, age, veteran status or sexual orientation), or content that is political, immoral, pornographic, morally reprehensible, offensive, violent, glorifies violence, sexist, right-wing or left-wing or that violates laws, in particular child protection laws and the Interstate Treaty on the Protection of Minors; or linking to corresponding material on a third party website or advertising, offering for sale or otherwise promote offending products contravening the law, in particular child protection laws;

- violating applicable laws or prompting legal violations or linking to corresponding articles;

- publishing, duplicating, making publicly accessible or distributing protected content, and in particular violating industrial property rights (e.g. copyright law, trademark law, patent law, design patent law or utility patent law); advertising, offering or distributing goods or services;

- conducting or promoting anticompetitive actions, including progressive customer advertising (such as chain schemes, snowball schemes or pyramid schemes);

- requesting provision of Login Details or personal data from other users for commercial or illegal purposes;

- carrying out or advertising (also via a link) commercial activities and/or sales for third parties, e.g. advertisements, competitions, lotteries, draws, exchange transactions, snowball schemes;

- duplicating or making publicly accessible an image of another person without the relevant person's written approval;

- publishing personal data and confidential information without authorization;

- using the services for commercial gain;

- publishing or distributing content that causes damage to networks, servers or other infrastructural components, hampers their operation, or accessing such content (e.g. distribution of worms, Trojans, viruses, spyware, password-phishing, etc.).

**12.4** Intentional false entries, the use or placement of unauthorized content or violations of **Art. 11** and **Art. 12.3** or the abuse of data entitles us to give extraordinary notice. We also reserve the right to take further legal action.

**12.5** We are entitled to delete user-generated content. This applies in particular to content violating these GTC.

## Art. 13 Granting of rights; Mobile Apps software

**13.1** Mobile Apps and Games require the installation of a software on your End Device ("Mobile App Software"). As the User, you are aware that we are entitled to all rights to the Mobile App software and, where applicable, our licensors. We provide you with with this Mobile App software and grant you the corresponding simple user rights for private use on your end device. The Mobile App software may not be duplicated or made publicly accessible on the Internet or via a network or stored on data carriers beyond above-stated intended use. It may also not be commercially utilized or exploited. Furthermore, adaptation, decompiling, disassembly and reverse engineering are prohibited. Soliciting or aiding third parties in such actions is also prohibited. We can revoke these rights granted to you at any time without giving reasons. In such a case, you, as the User, are obligated to delete the Mobile App software on your end device. The authorization to use the granted rights expires at the latest with the expiry of your Licensing Agreement.

**13.2** With regard to the Mobile App, the Terms of Use of the stores and the rights granted there also apply in addition to **Art. 13.1** of these GTC. Accordingly, you, as the User, are granted the simple rights of use to the downloaded Mobile Apps or the Mobile Apps software for private use on each end device that you own or control.

**13.3** If, within the scope of the Games or in any of the forums operated by us, you make information available via texts, photographs, graphics, videos, links, music, etc. ("Content"), you grant us the free, simple, universal right to duplicate the content and make it publicly available in connection with the Games and in the forums. You are personally responsible for this information. We do not have control in this respect and also do not adopt the content as our own. We do not examine or check such content. If we become aware of illegal content or content pursuant to Art. 12.3, such content will be removed immediately.

**13.4** You indemnify us against all claims including claims for damages that other users or other third parties assert against us due to an infringement of their rights by your behavior and/or by the content or data you have posted. You will also compensate us for reasonable costs incurred, in particular those costs that we may incur for a possibly required legal defense. All further rights and claims for damages on our part remain unaffected. Your aforementioned obligations do not apply if you are not responsible for the relevant infringement. If your content infringes third party rights, you will provide us – at our discretion and at your expense – with the right to use the content or to design the content free from protective rights to the extent possible. If your use of the Services infringes third party rights, you will immediately cease any use that is in violation of the contract and/or illegal at our request.

## Art. 14 Availability

We guarantee availability of the Games in 98% on an annual average. Excepted herefrom are times for regular maintenance of the Games, which is only possible in an off-line mode, and times in which the Games, due to force majeure, external manipulation or other problems that are not within our control or that of our vicarious agents, cannot be reached. We are liable for the unavailability of the Games only in cases of willful intent or gross negligence or culpable violation of life, body or health.

## Art. 15 Warranty for defects and limitation of liability

**15.1** With the License Agreement you, as User, are granted the option to use the Games in their relevant current version. You are aware that the Games offered by us – just as any software – can never be completely free of defects.

**15.2** You must immediately notify us of any defects you discover. For the preservation of evidence, you should document this in text form (e.g. by fax, letter or e-mail) and send the information to us. Before notifying us of any possible faults, you shall read all the help pages, FAQ pages and possible notifications in the forums.

**15.3** Excluded from warranty are defects that are attributable to external influences, operating faults for which you are responsible or those from force majeure.

**15.4** You are obliged to collaborate as far as possible with the elimination of the Games' defects.

**15.5** In principle, any liability on our part is excluded and only applies under the following conditions:

We are liable for claims for damages and replacement of futile expenses ("Claims for Damages") due to an infringement of contractual or extra-contractual obligations only in cases

- of willful intent or gross negligence;
- of grossly negligent or intentional harm to life, body, or health;

- of willful intent or intentional infringement of important contractual obligations;

- where we assumed an express guarantee of condition and quality;

- based on mandatory liability pursuant to the Product Liability Act as well as in the scope of application of **§ 44a** TKG (Telecommunications Act); or

- based on other mandatory liability.

Claims for damages for the violation of important contractual obligations are limited to damage typical and foreseeable for contracts, provided there is willful intent or gross negligence, or a liability exists from culpable violation of life, body or health, or from the express guarantee of condition and quality, or from product liability.

**15.6** The aforementioned liability limitations in **Art. 15.5** also apply to the personal liability of our employees, shareholders, representatives, bodies and their members, community manager, moderators, supporters, and vicarious agents.

**15.7** The above provisions do not imply a change in the burden of proof to your detriment.

**15.8** We expressly distance ourselves from the content of all websites that contain direct or indirect references (so-called "links") to our products. We do not assume any liability for such content and pages. The providers of the relevant pages are personally responsible for the content of these pages.

# Art. 16 Data protection

Information regarding the type, scope, place and purpose of collecting, processing and use of the personal data required for the agreement as well as for the execution of orders and sending of newsletter on our end, as well as your right to information and the right to correction, blocking and deletion, can be found in the **Data Protection Provisions**.

# Art. 17 Choice of law / Place of jurisdiction

**17.1** This agreement is subject to the laws of the Federal Republic of Germany with the exclusion of the UN Convention on Contracts for the International Sale of Goods (CISG) and the exclusion of the rules on conflict of laws.

**17.2** For disputes with you, the legal place of jurisdiction shall apply as far as you have a general place of jurisdiction in the Federal Republic of Germany. For disputes arising from legal business transactions with merchants, legal entities under public law or special funds under public law, the exclusive competence of the place of jurisdiction Hamburg is considered agreed for all cases.

Version: June 2014

© Copyright InnoGames 2009 – 2016. All rights reserved.

# EXHIBIT C

The Wayback Machine - https://web.archive.org/web/20170703155746/https://en0.forgeofempires.com/page/the_game/rules/

More Games:



- Home Home
- The game The game
  - Basics
  - Buildings
    - Residential buildings
      - Stone Age
        - Hut
      - Bronze Age
        - Chalet
        - Thatched House
        - Stilt House
        - Longhouse
      - Iron Age
        - Roof Tile House
        - Cottage
        - Villa
      - Early Middle Ages
        - Multistory House
        - Frame House
        - Clapboard House
      - High Middle Ages
        - Mansion
        - Brownstone House
        - Town House
      - Late Middle Ages
        - Apartment House
        - Manor
        - Estate House
      - Colonial Age
        - Gambrel Roof House
        - Plantation House
        - Arcade House
        - Country House
      - Industrial Age
        - Boarding House
        - Workers' House
        - Urban Residence
        - Victorian House
      - Progressive Era
        - High-Rise
        - Tenement House
        - Council House
        - Art Nouveau Mansion
      - Modern Era
        - Suburban House
        - Prefab House
        - Luxury Dwelling
        - Motel
      - Postmodern Era
        - Prefabricated High-Rise
        - Duplex House
        - Loft House
        - Bungalow
      - Contemporary Era
        - Condominium
        - Shophouse
        - Waterfront Residential
        - Waterfront Villa
      - Tomorrow Era
        - Capsule Hotel
        - Annex
        - Pod Home
        - Terraced High-Rise
      - The Future

- Underground House
- Tree House Hotel
- Self-Supporting Home
- Arcology
  - Arctic Future
    - Mobile House
    - Sea-Scraper
- Production buildings
  - Stone Age
    - Hunter
  - Bronze Age
    - Pottery
    - Fruit Farm
    - Blacksmith
  - Iron Age
    - Butcher
    - Goat Farm
    - Tailor
  - Early Middle Ages
    - Bakery
    - Shoemaker
    - Tannery
  - High Middle Ages
    - Farm
    - Alchemist
    - Windmill
  - Late Middle Ages
    - Cooperage
    - Brewery
    - Spice Trader
  - Colonial Age
    - Tobacco Plantation
    - Sailmaker
    - Clockmaker
    - Perfume Distillery
  - Industrial Age
    - Gunsmith
    - Ceramics Factory
    - Chemical Plant
    - Wheelwright
  - Progressive Era
    - Cattle Ranch
    - Lamp Factory
    - Garage
    - Deli Shop
  - Modern Era
    - Aircraft Factory
    - Hatter
    - Appliance Factory
    - Film Studio
  - Postmodern Era
    - Car Factory
    - Greenhouse Complex
    - Toy Factory
    - Junkyard
  - Contemporary Era
    - Computer Games Company
    - Fish Market
    - Logistics Center
    - Business Center
  - Tomorrow Era
    - Drone Factory
    - Private Security Company
    - Urban Farm
    - 3D Printer
  - The Future
    - Helium-3 Extraction Facility
    - Food Printer
    - Sea Life Tower
    - Levitation Outlet
  - Arctic Future
    - Plasma Generator
- Good Buildings
  - Bronze Age
    - Marble Mason
    - Lumbermill
    - Stone Mason

Case: 24-6332  02/25/2025  DktEntry: 12.3  Page 260 of 313
Case 2:19-cv-01402-RSM    Document 110-11 Filed 07/26/21   Page 4 of 11

- Dye Works
- Vineyard
- Iron Age
  - Ebony Woodworks
  - Jewelry Manufacturer
  - Iron Foundry
  - Weaving Mill
  - Limestone Mason
- Early Middle Ages
  - Copper Foundry
  - Goldsmith
  - Granite Mason
  - Alabaster Mason
  - Beekeeper
- High Middle Ages
  - Brickworks
  - Herb Merchant
  - Ropery
  - Saltworks
  - Glassblower
- Late Middle Ages
  - Gunpowder Manufactory
  - Talc Cutter
  - Brass Foundry
  - Silk Manufactory
  - Basalt Mason
- Colonial Age
  - Paper Mill
  - Coffee Roaster
  - Wiremill
  - Porcelain Manufactory
  - Tar Kiln
- Industrial Age
  - Rubber Plant
  - Coke Oven
  - Textile Mill
  - Whaling Station
  - Fertilizer Plant
- Progressive Era
  - Asbestos Factory
  - Oil Refinery
  - Machine Workshop
  - Tinning Plant
  - Explosives Factory
- Modern Era
  - Concrete Plant
  - Packaging Factory
  - Flavor Laboratory
  - Construction Warehouse
  - Food Processing Plant
- Postmodern Era
  - Tree Nursery
  - Steel Plant
  - Semiconductor Factory
  - Industrial Filter Factory
  - Genetics Research Lab
- Contemporary Era
  - LNG Plant
  - Magnet Factory
  - Bionics Research Lab
  - Plastics Plant
  - Robotics Factory
- Tomorrow Era
  - Translucent Concrete Plant
  - Smart Materials Factory
  - Papercrete Factory
  - Preservatives Factory
  - Nutrition Research Lab
- The Future
  - Earth Science Center
  - Water Purifier
  - Algae Farm
  - Superconductor Factory
  - Nanoparticle Laboratory
- Arctic Future
  - Nanowire Laboratory
  - Transester Gas Catalyzer

551

Case: 24-6332, 02/25/2025, DktEntry: 12.3, Page 261 of 313

- A.I. Research Center
- Paper Battery Factory
- Bioplastics Factory
- Cultural buildings
  - Bronze Age
    - School
    - Tavern
    - Theater
    - Stone Circle
  - Iron Age
    - Triumphal Arch
    - Amphitheater
    - Public Bath
  - Early Middle Ages
    - Gallows
    - Marketplace
    - Pillory
    - Inn
  - High Middle Ages
    - Church
    - Doctor
    - Printer
  - Late Middle Ages
    - Library
    - Palace
    - Academy
    - Cartographer
  - Colonial Age
    - Trading Company
    - Travelling Circus
    - Exotic Goods Vendor
    - Coiffeur
  - Industrial Age
    - Saloon
    - Police Station
    - Water Pumping Station
    - Natural History Museum
  - Progressive Era
    - Publishing House
    - Electrical Plant
    - City Park
    - Zeppelin
    - Metro Entrance
  - Modern Era
    - Amusement Park
    - Drive-In Theater
    - American Diner
    - Roller Derby Track
  - Postmodern Era
    - Music Festival
    - Zoo
    - Public Pool
    - Golf Course
  - Contemporary Era
    - Shopping Mall
    - Zen Garden
    - Floating Market
    - Casino
  - Tomorrow Era
    - Hologram Arena
    - Tower Club
    - Surveillance Nexus
    - Concept Vehicle Fair
  - The Future
    - Eco Park
    - Algae Airship
    - Concert Hall
    - Weather Control Station
  - Arctic Future
    - Holo-Holiday Park
- Military buildings
  - Bronze Age
    - Spearfighter Barracks
    - Warrior Barracks
    - Horseman Stable
    - Slinger Range
    - Thrower Camp

- Iron Age
  - Archery Range
  - Legionnaire Barracks
  - Soldier Barracks
  - Ballista Camp
  - Mounted Warrior Stable
- Early Middle Ages
  - Mounted Archer Range
  - Armored Infantry Barracks
  - Catapult Camp
  - Mercenary Barracks
  - Heavy Cavalry Stable
- High Middle Ages
  - Crossbow Range
  - Berserker Barracks
  - Heavy Infantry Barracks
  - Trebuchet Camp
  - Knight Stable
- Late Middle Ages
  - Imperial Guard Barracks
  - Cannon Camp
  - Heavy Knight Stable
  - Longbow Archer Range
  - Great Sword Warrior Barracks
- Colonial Age
  - Dragoon Stables
  - Grenadier Barracks
  - Musketeer Range
  - Ranger Encampment
  - Field Gun Camp
- Industrial Age
  - Rifleman Range
  - Jaeger Encampment
  - Lancer Stables
  - Howitzer Factory
  - Breech Loader Factory
- Progressive Era
  - Sniper Camp
  - Conscription Office
  - Armored Car Factory
  - Tank Factory
  - Ordnance Factory
- Modern Era
  - Heavy Weapons Center
  - Paratrooper Camp
  - Mechanized Infantry Barracks
  - Battle Tank Factory
  - Mechanized Artillery Factory
- Postmodern Era
  - Rocket Artillery Factory
  - Commando Camp
  - IFV Factory
  - Universal Tank Factory
  - Machinegun Range
- Contemporary Era
  - Strike Team Center
  - Air Defense Factory
  - Attack Helicopter Base
  - Assault Tank Factory
  - Missile Site
- Tomorrow Era
  - Anti-Materiel Range
  - Ultra AP Factory
  - Microwave Blaster Factory
  - Combat Drone Base
  - Stealth Tank Factory
- The Future
  - Exoskeleton Factory
  - Satellite Uplink Center
  - Hover Tank Base
  - Rail Gun Range
  - Drone Swarm Hub
- Arctic Future
  - Surrogate Assembly
  - Recon Raider Garage
- Decorations
  - Stone Age

- Obelisk
- Memorial
- Tree
- Bronze Age
  - Bush
  - Flowers
  - Hedge
  - Pillar
  - Statue
- Iron Age
  - Aqueduct
  - Flower Tub
  - Fountain
  - Monument
  - Victory Pillar
- Early Middle Ages
  - Cypress
  - Floral Bush
  - Hedge with Flowers
  - Pond
- High Middle Ages
  - Fence
  - Flag
  - Gargoyle
  - Lantern
  - Signpost
- Late Middle Ages
  - Tower Ruin
  - Potted Plant
  - Waterspout Fountain
  - Nautical Statue
  - Group of Trees
- Colonial Age
  - Ornamental Tree
  - Peacock Hedge
  - Eagle Hedge
  - Flamingo Hedge
  - Neptune Fountain
  - Kite
  - Globe Statue
  - Clock Tower
  - Guillotine
- Industrial Age
  - Gas Lamp
  - Carillon
  - Fountain with Benches
  - Fire Hydrant
  - Pavilion with Flowers
  - Clothesline
  - Old Wall South
  - Old Wall East
- Progressive Era
  - Newspaper Stand
  - Billboard
  - Water Tower
  - Urban Tree
  - Equestrian Statue
- Modern Era
  - Drive-In Sign
  - Welcome Sign
  - Palm Group
  - Nuclear Shelter
  - Jet Statue
- Postmodern Era
  - Playground
  - Allotment Garden Cabin
  - Allotment Garden House
  - Allotment Garden Shed
  - Astronaut Statue
  - Peace Sculpture
- Contemporary Era
  - Canal Bridge
  - Cherry Tree
  - Monster Statue
  - Neon Billboard
- Tomorrow Era
  - Surveillance Camera

- Veggie Booth
- Burger Booth
- Pizza Booth
- Security Post
  - The Future
    - Wind Turbine
    - Plantarium
    - Lichen Lamp
  - Arctic Future
    - Flower Arbor
- Roads
  - Stone Age
    - Trail
  - Bronze Age
    - Path
  - Iron Age
    - Gravel Road
    - Paved Road
  - Early Middle Ages
    - Cobbled Road
  - High Middle Ages
    - Rough Paved Road
  - Colonial Age
    - Paved Lane
    - Brick Road
  - Industrial Age
    - Sett Paved Road
  - Progressive Era
    - Tarmac Road
    - Avenue
    - Promenade
  - Modern Era
    - Motorway
    - Alley
  - Postmodern Era
    - Boulevard
    - Walkway
  - The Future
    - Solar Roadway
    - Solar Walkway
- Getting Started
- Social Actions
  - Support Actions
  - Messages and Forum
- Rules
- Guilds Guilds
  - Introduction
  - Guild vs Guild
    - Join the War!
    - Guild Continent Map
    - Provinces
    - Sectors
    - Guild Levels
    - Guild Rights and Treasury
    - GvG Terms
- Help Help
  - FAQ
  - Support
- Media Media
  - News
  - Artwork
    - Concept Art
  - Screenshots
- Wiki Wiki

- Forge of Empires
- The game
- Rules

# Rules

### 1) One account per player

Each player may have only one account per world. Each account may have only one user and may not be logged into or played by any other player.
Sharing your password with another person is forbidden.

Case: 24-6332, 02/25/2025, DktEntry: 12.3, Page 265 of 313
Case 2:19-cv-01402-RSM    Document 7-3    Filed 06/07/19    Page 9 of 11

Knowing, storing, or asking passwords for other players' accounts is forbidden. If another player sends you their password, you must always report them.

*Examples:*
- It is forbidden to create multiple accounts on a single world for any reason.
- It is allowed to use the same account to play on multiple worlds.
- It is allowed to use multiple accounts to play Forge of Empires but never on the same world.
- You may not access (or have access to) any account that does not belong to you, on any world.
- It is forbidden to play for another player if they are temporarily away, or for any other reason.
- It is forbidden to force entry into an account or attempt to trick another player into giving you their login information.
- It is forbidden to ask another player for their login information.

## 2) Sharing a device and/or internet connection

It is allowed for two or more players to use the same computer and/or internet connection, provided each player only controls the actions of his/her account (please contact Support to make them aware).

*Examples:*
- It is allowed for you and your brother to each have your own account on Forge of Empires provided that you both only have access to your own account.
- It is allowed to login at your work or school provided that only you have access to your account.

## 3) Communication

InnoGames does not accept any publications that the Forge of Empires Team considers illegal, insulting, offensive, threatening, abusive, real-life-aggressive, sexually explicit, pornographic (including, but not limited to drawings and animations), politically extreme, religiously fanatic, endangering youth, racist, playing down the use of illegal drugs or alcohol, or promoting the use of said substances or in any way inappropriate. Posting links to such content is also not allowed. Spamming other players with in-game mails or chat messages is abusive and will not be tolerated. It is against the rules to impersonate any staff member or suggest acquaintances with them in order to force any kind of behavior.

*Examples:*
- It is forbidden to use inappropriate names,
- It is forbidden to advertise competitors' games, post inappropriate content or links to such, post links to moneymaking sites or links to competitors' games.
- It is allowed to refer to a player as a noob or to criticize their way of playing using appropriate language.
- Threats are only allowed when they relate to the game and not real life. For example, saying that you will attack someone with your units if he does not give you Forge Points is allowed. However, it is not allowed to say that you will find someone and beat him up if he does not give you Forge Points.
- Using only capital letters, or spamming the same message repeatedly in the chat room is not permitted as it is poor chat etiquette.
- We ask players to not use account names that include whole e-mail addresses, full names or telephone numbers, for player safety and safety of personal data.
- Encouraging other players to break rules is forbidden.

## 4) Language

This Forge of Empires server is an English game. The use of other languages in the game is forbidden. This means all communication and all publications must be in English.
A short phrase or a universally known saying in another language is permitted, provided that this is translated to English either directly following or preceding it. It is not necessary to translate proper names.
Support requests must also be created in understandable English, otherwise an answer might be not be given.

## 5) Transfer of accounts and Diamonds

It is not allowed to play accounts for commercial purposes. It is not allowed to sell, buy, trade or offer accounts in exchange for Diamonds or any other benefit.
It is not allowed to exchange in-game items (e.g. goods, Forge Points etc.) for Diamonds or outside benefits (such as money, vouchers etc.).
An account can be transferred for free to another person. A prior express approval from the Support team must be given.
Diamonds may only be used by the account that bought them. Transferring Diamonds to another account is not possible.

## 6) Bots and scripts

It is strictly forbidden to use bots or scripts.

356

*Examples:*
- It is strictly forbidden to use bots or scripts that automatically collect your resources.
- It is not allowed to use click-bots or scripts that minimize your manual clicks.
- You may not use programs that mimic premium features or provide an unfair advantage.

### 7) Bugs

Each player is required to report serious errors immediately to the Forge of Empires Team. A player is not allowed to knowingly take advantage of bugs.
If you notice that a player is abusing a bug in the game you must report him.
If you notice a spelling error or typo, you are not obligated to report it, however you are encouraged to do so for the improvement of the game.

### 8) Pushing

Operating a push account or knowingly benefiting from it is forbidden. A push account is an account that is mainly used to help another account while neglecting other parts of the game. This means that it is not allowed to use an account solely for the purpose of helping another account grow, or to knowingly receive benefits or any kind of support from such account.
Trades in any form (goods, Forge Points, etc.) that involve multiple worlds are forbidden.

### 9) Miscellaneous

Please treat other Forge of Empires Community members with respect. Following the rules helps to create a fun and fair environment for everyone.
The Community Management of the International version of Forge of Empires are the final arbiters of any rules dispute. Their interpretation of these rules is final.
Forge of Empires Team reserves the right to exclude anyone from the game. Bans can be appealed via the Support System.
Please be aware that in-game items can be removed from an account as a punishment, and that Diamonds aren't refunded to players who are banned for breaking our rules.
If you believe someone is breaking the rules, you can contact the Support Team.
Knowingly benefiting from another player breaking the rules is prohibited. If you think you have benefited from a breach of rules, you must report this.
It is not allowed to mistreat the Support Team or abuse the Support system.
These rules can be adapted to different cases in the interests of maintaining fair play within the game.

### 10) Account deletion

Game accounts may be deleted after 30 days of inactivity. Please note that any Diamonds left on the account will remain on the master account and will not be deleted, unless a complete account deletion has been requested.

**Rules last revised: 01.09.2015**

**E-mail / player name**

**Password**

☐ Remember me

LOGIN

**Forum**

**Come and share your thoughts!**

**Blog**

**Follow our Developer Blog!**

## Games

- Tribal Wars 2
- Elvenar
- Tribal Wars
- The West
- Grepolis

## Company Info

- Wiki

- Home
- Game Credits
- Imprint
- Terms & Conditions
- Privacy Policy

## InnoGames

- © 2009-2016 InnoGames GmbH

## World Selection

**Welcome back, .**

**These are the worlds you've already played in:**

Or start a new game in a recommended world:

Play in a new world that you haven't discovered yet

You are not ?

Logout

**blaaah**

Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PENNY QUINTEROS,

                Plaintiff,

v.

INNOGAMES, et al.,

                Defendants.

No. C19-1402 RSM

DEFENDANT JULE BLAN'S MOTION TO
DISMISS COMPLAINT

Note on Motion Calendar: January 17, 2010

Defendant Julie Blan ("Blan") by and through her undersigned attorneys, will and hereby does respectfully move for an order pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") dismissing the Complaint ("PQC") brought against her by Plaintiff Penny Quinteros in the above captioned action.

## INTRODUCTION

Plaintiffs' Complaint contains eleven (11) counts: (1) Gross Negligence; (2) Negligence; (3) Reckless Conduct; (4) Fraud; (5) Misrepresentation/Deceit; (6) Unfair and Deceptive Trade Practices; (7) Gender Discrimination in Public Accommodation; (8) Defamation/Libel/Slander; (9) Loss of Reputation; (10) Intentional Infliction of Emotional Distress; and (11) Negligent Infliction of Emotional Distress. (PQC ℙ5). Plaintiffs' Complaint names five (5) defendants.

*DEFENDANT JULIE BLAN'S MOTION TO DISMISS COMPLAINT - 1*

**HAAS LAW, P.S.**
506 Second Avenue, Suite 1400
Seattle, WA 98104
Phone: (206)853-3379
Facsimile: (866)621-0193

According to the Complaint, Defendant Blan is the "United States Community Manager InnoGames." (PQC ₣3). The Complaint does not allege that Blan has an ownership interest or any type of agency in or with Defendant InnoGames. The Complaint does not list or describe any managerial or other work or duties performed by Blan for InnoGames. Similarly, the Complaint does not describe or allege any acts or omissions by Blan that contributed to the Plaintiff's alleged injuries. The Complaint fails to plead any claims against Blan which are factually independent of her role as an alleged manager at/of InnoGames. Accordingly, all claims against Blan in the PQC must necessarily be dismissed.

## ARGUMENT

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). The claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.*

Here, all allegations against Blan appear to be factually based solely upon her alleged position as a "United States Community Manager" for InnoGames. The Plaintiff neither alleges that Blan has an ownership interest in InnoGames nor took or personally managed any acts or omissions that caused or contributed to Plaintiff's alleged injuries.

*DEFENDANT JULIE BLAN'S MOTION TO DISMISS COMPLAINT - 2*     **HAAS LAW, P.S.**
506 Second Avenue, Suite 1400
Seattle, WA 98104
Phone: (206)853-3379
Facsimile: (866)621-0193

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Complaint should be dismissed against Blan.

DATED this 19th day of December, 2019.

/s / Philip A. Haas
Philip A. Haas, WSBA No. 46959
Attorney for Defendant Julie Blan
HAAS LAW, P.S.
506 Second Avenue, Suite 1400
Seattle, WA 98104
Phone: (206)853-3379
Facsimile: (866)621-0193
phil@haasattorneys.com

*DEFENDANT JULIE BLAN'S MOTION TO DISMISS COMPLAINT - 3*

**HAAS LAW, P.S.**
506 Second Avenue, Suite 1400
Seattle, WA 98104
Phone: (206)853-3379
Facsimile: (866)621-0193

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 19th day of December, I electronically filed this MOTION TO DISMISS COMPLAINT with the Clerk of the Court using the CM/ECF system and I hereby certify that I served a true and correct copy of the document as follows:

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd A3-102
Renton, WA 98058

☒　　By causing a full, true and correct copy thereof to be MAILED in a sealed, postage-paid envelope, addressed as shown above, which is the last-known address for the party, and deposited with the U.S. Postal Service at Seattle, WA, on the date set forth above;

☐　　By causing a full, true and correct copy thereof to be HAND-DELIVERED by _____ MESSENGER SERVICE to the party, at the address listed above, which is the last-known address for the party's office, on the date set forth above;

☐　　By causing a full, true and correct copy thereof to be FAXED to the party, at the fax number shown above, which is the last-known fax number for the party's office, on the date set forth above.

☐　　By causing a full, true and correct copy thereof to be EMAILED to the party, at the email address shown above, which is the last-known email address for the party's office, on the date set forth above.

**HAAS LAW, P.S.**

By:　　/s / Philip A. Haas
　　　　Philip A. Haas, WSBA No. 46959
　　　　Attorney for Defendant Julie Blan
　　　　506 Second Avenue, Suite 1400
　　　　Seattle, WA 98104
　　　　Phone:  (206)853-3379
　　　　Facsimile:  (866)621-0193
　　　　phil@haasattorneys.com

*DEFENDANT JULIE BLAN'S MOTION TO DISMISS COMPLAINT - 4*

**HAAS LAW, P.S.**
506 Second Avenue, Suite 1400
Seattle, WA 98104
Phone:  (206)853-3379
Facsimile:  (866)621-0193

**2019 Blan Motion to Dismiss Revised – Docket 29**

Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PENNY QUINTEROS,

               Plaintiff,

v.

INNOGAMES, et al.,

               Defendants.

No. C19-1402 RSM

DEFENDANT JULE BLAN'S *SECOND* MOTION TO DISMISS COMPLAINT

Note on Motion Calendar: April 10, 2020

Defendant Julie Blan ("Blan") by and through her undersigned attorneys, will and hereby does respectfully move for an order pursuant to Rule 12(b)(6) and Rule 8(a) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") dismissing the Complaint ("PQC") brought against her by Plaintiff Penny Quinteros in the above captioned action.

## I.      **COMPLAINT'S FACTUAL ALLEGATIONS**

Plaintiffs' Complaint contains eleven (11) counts: (1) Gross Negligence; (2) Negligence; (3) Reckless Conduct; (4) Fraud; (5) Misrepresentation/Deceit; (6) Unfair and Deceptive Trade Practices; (7) Gender Discrimination in Public Accommodation; (8) Defamation/Libel/Slander; (9) Loss of Reputation; (10) Intentional Infliction of Emotional Distress; and (11) Negligent Infliction of Emotional Distress. (PQC ℙ5). Plaintiffs' Complaint names five (5) defendants.

*DEFENDANT JULIE BLAN'S SECOND MOTION TO DISMISS COMPLAINT - 1*

**HAAS LAW, P.S.**
506 Second Avenue, Suite 1400
Seattle, WA 98104
Phone: (206)853-3379
Facsimile: (866)621-0193

According to the Complaint, Defendant Blan is the "United States Community Manager InnoGames." (PQC ₱3). The Complaint does not allege that Blan has an ownership interest or any type of agency in or with Defendant InnoGames. The Complaint does not list or describe any managerial or other work or duties performed by Blan for InnoGames. Similarly, the Complaint does not describe or allege any acts or omissions by Blan that contributed to the Plaintiff's alleged injuries. The Complaint fails to plead any claims against Blan which are factually independent of her role as an alleged manager at/of InnoGames. More broadly, Plaintiff's Complaint is rife with conclusory allegations that do not plausibly suggest that she is entitled to relief against Defendant Julie Blan.

## II.        PRODECURAL HISTORY

On December 19, 2019, Blan filed a Motion to Dismiss. In the March 2, 2020 Order on Pending Motions, the Court denied the Motion to Dismiss "without prejudice to refiling."

## III.        AUTHORITY AND ARGUMENT

### A.        Rule 12(b)(6) Standard for a Motion to Dismiss

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). The claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.*

*DEFENDANT JULIE BLAN'S SECOND MOTION TO DISMISS*
*COMPLAINT - 2*

**HAAS LAW, P.S.**
506 Second Avenue, Suite 1400
Seattle, WA 98104
Phone: (206)853-3379
Facsimile: (866)621-0193

## B.      Plaintiff's Attempt at Group Pleading Does Not Satisfy Rule 8(a)

Plaintiff's claims fail because she has not alleged any specific act by Blan, instead attempting to lump the Defendants together as one, in violation of Rule 8(a).  *See* Fed. R. Civ. P. 8(a); *Atuahene v. City of Hartford,* 10 Fed. App'x 33, 34 (2nd Cir. 2001) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiff's] complaint failed to satisfy this minimum standard").  According to the Complaint, Blan is the "United States Community Manager InnoGames." (PQC ⁋3). The Complaint does not allege that Blan has an ownership interest or any type of agency in or with Defendant InnoGames.  The Complaint does not list or describe any managerial or other work or duties performed by Blan for InnoGames. Similarly, the Complaint does not describe or allege any acts or omissions by Blan that contributed to the Plaintiff's alleged injuries.  Plaintiff's complaint does not satisfy the minimum standard per Rule 8(a) and should be dismissed.

## C.      Negligence, Gross Negligence, Reckless Conduct Claims

A claim for Negligence generally requires a physical injury.  *See Corcoran v. Postal Telepgrah-Cable Co.,* 80 Wash. 570, 579, 142 P. 29 (Wash. 1914).  In negligence cases, claims for emotional distress in the absence of physical injury are only allowed "where emotional distress is (1) within the scope of foreseeable harm of the negligent conduct, (2) a reasonable reaction given the circumstances, and (3) manifest by objective symptomatology." *Bylsma v. Burger King Corp.*, 176 Wn.2d 555, 560, 293 P.3d 1168 (Wash. 2013) (quoting *Hunsley v. Giard*, 87 Wn.2d 433, 436, 553 P.2d 1096 (1976).  Here, there is no claim of physical injury or physical impact associated with the alleged negligent conduct.  Plaintiff does not allege that her claimed emotional distress flowed from physical injuries.  Plaintiff's negligence and reckless conduct-related claims do not plausibly suggest that she could be entitled to relief.  Undersigned

*DEFENDANT JULIE BLAN'S SECOND MOTION TO DISMISS COMPLAINT - 3*

**HAAS LAW, P.S.**
506 Second Avenue, Suite 1400
Seattle, WA 98104
Phone:  (206)853-3379
Facsimile:  (866)621-0193

counsel is unaware of any valid cause of action for "reckless conduct." Given Plaintiff's lack of physical injury and lack of any facts to show that an exception to the physical injury requirement is present here, amendment would be futile. Therefore, Plaintiff's negligence and reckless conduct claims should be dismissed with prejudice.

### D. Fraud and Misrepresentation/Deceit Claims

Plaintiffs Complaint references the term "fraud" and "misrepresentation/deceit but contains no allegations supporting these assertions. Fraud has nine (9) elements:

> (1) Representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff.

*Stiley v. Block*, 130 Wn.2d 486, 505, 925 P.2d 194 (Wash. 1996). In a fraud claim, plaintiffs "must establish a right to rely on a representation." *Williams v. Joslin*, 65 Wash.2d 696, 697, 399 P.2d 308 (Wash. 1965). "General statements about "material misrepresentations" and "fraudulent actions" do not provide the required "who, what, when, where, and how of a properly pleaded fraud claim." *McAfee v. Select Portfolio Servicing, Inc.*, 193 Wn. App. 220, 232 (Wash. 2016). "Under Washington law, a plaintiff claiming fraud must establish a number of elements, and must plead the fraud claim with particularity." *Id.* Here, Plaintiff's Complaint does not plead the fraud claim with particularity. It is devoid of any factual allegations of Plaintiff actually having knowledge of or reading the "communication rule(s)" that she cites in her Complaint while she was playing the video game. There is no mention of Blan having any input in creating any rules or making any representations. Even more importantly, there are no factual allegations of Plaintiff relying on any representations by InnoGames or Blan while she

*DEFENDANT JULIE BLAN'S SECOND MOTION TO DISMISS COMPLAINT - 4*

**HAAS LAW, P.S.**
506 Second Avenue, Suite 1400
Seattle, WA 98104
Phone: (206)853-3379
Facsimile: (866)621-0193

was playing the video game. Plaintiff's claims related to fraud and misrepresentation/deceit should be dismissed.

### E. Gender Discrimination Claim

Plaintiff's Complaint fails to state a plausible claim for "Gender Discrimination." Plaintiff does not cite any specific federal or state statutes or laws upon which her claim rests. Is it a federal civil rights claim? Is it a WLAD claim? Per Federal Rule of Civil Procedure 8, Plaintiff fails to give Blan fair notice of her claims and the grounds upon which they rest. Plaintiff's "Gender Discrimination" claim is insufficient and should be dismissed.

### F. Defamation/Libel/Slander and Loss of Reputation Claims

Defamation has four (4) elements: "falsity; an unprivileged communication; fault; and damages." *Caruso v. Local Union No. 690*, 107 Wn.2d 524, 529, 730 P.2d 1299 (Wash. 1987). Here, Plaintiff fails to allege that Blan made any false statements about Plaintiff. Therefore, Plaintiff's Defamation-related claims, including the "damage to reputation" claim, should be dismissed.

### G. Emotional Distress Claims

A claim for intentional infliction of emotional distress requires (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress. *Lyons v. U.S. Bank NA*, 336 P.3d 1142, 1151 (Wash. 2014). "The first element requires proof that the conduct was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* The tort of outrage "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Grimsby v. Samson,* 85 Wash.2d 52, 59, 530 P.2d 291 (Wash. 1975) (quoting Restatement

*DEFENDANT JULIE BLAN'S SECOND MOTION TO DISMISS COMPLAINT - 5*

**HAAS LAW, P.S.**
506 Second Avenue, Suite 1400
Seattle, WA 98104
Phone: (206)853-3379
Facsimile: (866)621-0193

(Second) of Torts § 46 cmt. d.  Here, the alleged acts and omissions lists in the Complaint do not plausibly suggest that Plaintiff is entitled to relief against Defendant Julie Blan.

### IV.   CONCLUSION

The Complaint violates Rule 12(b)(6) and Rule 8(a).  Plaintiff's factual allegations, even if accepted as true, do not support Plaintiff's claims against Blan and are missing facts to support essential elements of Plaintiff's claims against Blan.  Therefore, Plaintiff's Complaint against Blan should be dismissed.

DATED this 16th day of March, 2020.

/s / Philip A. Haas
Philip A. Haas, WSBA No. 46959
Attorney for Defendant Julie Blan
HAAS LAW, P.S.
506 Second Avenue, Suite 1400
Seattle, WA 98104
Phone:  (206)853-3379
Facsimile:  (866)621-0193
phil@haasattorneys.com

*DEFENDANT JULIE BLAN'S SECOND MOTION TO DISMISS COMPLAINT - 6*

**HAAS LAW, P.S.**
506 Second Avenue, Suite 1400
Seattle, WA 98104
Phone:  (206)853-3379
Facsimile:  (866)621-0193

**CERTIFICATE OF SERVICE**

I certify that on the 16th day of March, 2020, I electronically filed this SECOND MOTION TO DISMISS COMPLAINT with the Clerk of the Court using the CM/ECF system, will send notification of such filing the below-referenced individual, and I hereby certify that I served a true and correct copy of the document as follows:

Penny Quinteros
The UPS Store #4579
14201 SE Petrovitsky Rd A3-102
Renton, WA 98058

☒ By causing a full, true and correct copy thereof to be MAILED in a sealed, postage-paid envelope, addressed as shown above, which is the last-known address for the party, and deposited with the U.S. Postal Service at Seattle, WA, on the date set forth above;

☐ By causing a full, true and correct copy thereof to be HAND-DELIVERED by _____ MESSENGER SERVICE to the party, at the address listed above, which is the last-known address for the party's office, on the date set forth above;

☐ By causing a full, true and correct copy thereof to be FAXED to the party, at the fax number shown above, which is the last-known fax number for the party's office, on the date set forth above.

☐ By causing a full, true and correct copy thereof to be EMAILED to the party, at the email address shown above, which is the last-known email address for the party's office, on the date set forth above.

**HAAS LAW, P.S.**

By:     /s / Philip A. Haas
        Philip A. Haas, WSBA No. 46959
        Attorney for Defendant Julie Blan
        506 Second Avenue, Suite 1400
        Seattle, WA 98104
        Phone:  (206)853-3379
        Facsimile:  (866)621-0193
        phil@haasattorneys.com

*DEFENDANT JULIE BLAN'S SECOND MOTION TO DISMISS COMPLAINT - 7*

**HAAS LAW, P.S.**
506 Second Avenue, Suite 1400
Seattle, WA 98104
Phone:  (206)853-3379
Facsimile:  (866)621-0193

369

**EXHIBIT 18**

**EXAMPLES OF PORNOGRAPHIC AD's**

**WARNING!**

**EXPLICIT IMAGES AND SEXUAL LANGUAGE**

**This Document is being submitted in connection with PLAINTIFF'S AMENDED COMPLAINT  Dkt. #52. (referenced specifically in ¶25)**

**These are screenshots other people have taken of the pornographic ads used to solicit players into Forge of Empires.  Many of these links are publicly available in the Forge of Empires Forum (some of which are included here). Also included are some of the pages showing the url link-paths. Plaintiff has not altered the images except to add this title page and insert footnotes.**

**Submitted by Plaintiff**

**/s/ Penny Quinteros**

370

Sexual Advertisements – Exhibit 18 –Docket 84







































**forum**













Forums > General > Questions >

**[Question]** AC Advertising

DeletedUser40171 · Apr 28, 2019

1  2  Next

**Apr 28, 2019**                                                                      #1

**DeletedUser4017 1**

Why is this game advertised on adult websites with direct promises from the ad embedded on the adult website that this game is sexual in nature or becomes that way?

Isn't there some liability for defamation resulting from that action? Either the game is promoted to new players through false advertising, Inno is hosting adult content or partnered with such sites, or someone is lying about the game.

Look I'm not proud of the fact that I sink low enough to look at women (who I wouldn't impress IRL) for sexual gratification. And I've seen games that make money on this sort of diamond scheme before. What I don't know is why this particular game is bound up with sexually explicit websites.

**Apr 28, 2019**                                                                      #2

**DeletedUser2972 6**

You won't get official answers from the company here. I can say this has been a standing practice for them for years. You don't see it often but every now and then you get people in global chat asking where the porn is after they're led here from a porn site.

I don't think there's any 'defamation' by promising adult content and not delivering. I'd gather their hope is just to get players in by any means necessary and hope some stay and spend. It's only one step removed from the double-entendres and scantily clad females irrelevant to gameplay certain games would use in all their ads to try and get clicks.

**Apr 28, 2019**                                                                      #3

**cton2.forge**
Active Member

ARE YOU KIDDING ME!?!?!? When I play the game my wife cannot keep her hands off of me. Usually because she's hitting me. Hmm. In retrospect maybe this post isn't pertinent to the conversation. Unless it was a bondage site....

DeletedUser31540, Emberguard, DeletedUser4441 and 1 other person









**Godly Luke**
Well-Known Member

Apr 28, 2019 — #15

> **Lauramiller said:** ⊕
>
> I have a hard time believing many kids play this game.

Hey!

👍 Stephen Longshanks, Lucifer1904 and Algona

---

**Emberguard**
Senior Ingame Moderator

Apr 28, 2019 — #16

> **Lauramiller said:** ⊕
>
> What people usually do. And there's nothing wrong with it!

I'm going to have to disagree with you on that. I've seen just how quickly porn can ruin a perfectly good friendship that's lasted for years. Porn by its nature is a destructive thing because it places the opposite sex into a position of being a means to a end (an object) instead of sex being something to bring two people closer in a intimate relationship. Because the brain releases chemicals during sexual activity this rewires the brain. So there is something wrong with going to a porn website. It'll never teach anyone respect for other people but it can teach people to mistreat others due to its very nature of using people in a disrespectful way

👍 Stephen Longshanks

---

**ODragon**
Well-Known Member

Apr 28, 2019 — #17

> **Algona said:** ⊕
>
> Would it be poor form to ask what folk are doing looking at ads on pr0n sites?

Yes, why waste time on the ads.

> **Algona said:** ⊕
>
> Err, I mean, going to pr0n sites?

Also yes since his post says why he is going there.

👍 Lucifer1904 and Algona

---

Apr 28, 2019 — #18

I have been a forum mod for over 15 years now. Two things will happen: One porn site leads to do many, many more. Second, a lot of the porn sites advertised leads to virus and spyware sites. I Have spent untold hours protecting forums from this. Third, if you click on a porn site and child porn shows up, you are then in violation of U.S. laws. Your life could be ruined. Don't think this will not happen. I have sent URLs of porn sites to the FBI cyber crimes division.





**NOT FOR PUBLICATION**

FILED

UNITED STATES COURT OF APPEALS

JAN 8 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| PENNY QUINTEROS, | No. 22-35333 |
| Plaintiff-Appellant, | D.C. No. 2:19-cv-01402-RSM |
| v. | |
| INNOGAMES; et al., | MEMORANDUM[*] |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, District Judge, Presiding

Submitted January 8, 2024[**]

Before: BENNETT, SUNG, and H.A. THOMAS, Circuit Judges.
Partial Dissent by Judge BENNETT.

Plaintiff Penny Quinteros appeals pro se from the district court's dismissal

of her first amended complaint against Defendants. Quinteros's complaint alleges a

series of state and federal law claims, stemming from harassment Quinteros states

she suffered on Defendants' online video game platform, *Forge of Empires*. The

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Court assumes familiarity with the facts as alleged in the operative complaint, and with the district court's opinion below. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm in part and reverse and remand in part so that Quinteros may be granted leave to amend her pleadings.

"We review the grant of a motion to dismiss de novo." *Kappouta v. Valiant Integrated Servs., LLC*, 60 F.4th 1213, 1216 (9th Cir. 2023). On a motion to dismiss, the Court considers the operative complaint and the documents attached to it, and we must accept well-pled allegations as true. *Koala v. Khosla*, 931 F.3d 887, 895 (9th Cir. 2019). The Court draws all reasonable inferences in plaintiff's favor, *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247–48 (9th Cir. 2013), and construes pro se pleadings liberally, *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).[1]

"[D]ismissal for failure to state a claim is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quotation omitted). Factual allegations, however, must

---

[1] While the Court construes pro se pleadings liberally, this grace "does not apply to practicing attorneys." *Huffman v. Lindgren*, 81 F.4th 1016, 1021 (9th Cir. 2023). Documents appended to the complaint indicate Quinteros was a law student when she filed this case. However, there is no evidence in the record indicating whether Quinteros is now an attorney, and we assume in this case that *Huffman* does not apply to law students. We leave it to the district court to determine whether *Huffman* applies to any future pleadings.

2

be plausible, and not merely speculative. *See DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 765 (9th Cir. 2018) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "Claims move beyond speculation when the allegations 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 972 (9th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

For the reasons explained below, the district court properly found Quinteros failed to state a claim as to all the claims raised in the complaint. However, for some claims, we affirm dismissal on different grounds.

1.     As an initial matter, the district court erred in concluding that the Communications Decency Act (CDA), specifically 47 U.S.C. § 230, immunizes Defendants from liability for Quinteros's negligence and defamation claims. Section 230 generally applies where a plaintiff seeks to treat (1) a provider of interactive computer services as (2) a publisher or speaker under a state law cause of action, of (3) information provided by a third party. *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019). Quinteros plausibly alleges that *Forge of Empires* moderators improperly accessed a sensitive image of hers, and

unlawfully disseminated that image.[2] These allegations do not treat Defendants as
publishers or speakers and therefore are not covered by the CDA.[3] Additionally,
§ 230 concerns only the actions of third parties. *Fair Hous. Council of San
Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008)
(en banc). Quinteros sufficiently alleges that moderators are not third parties within
the meaning of the CDA, but rather individuals with some unspecified agency
relationship to Defendants. Accordingly, the CDA does not immunize Defendants
from the alleged actions of moderators.

2.      Although we conclude that § 230 does not immunize Defendants, we affirm
the dismissal of Quinteros's negligence claims for different reasons. Quinteros
alleges a handful of negligence claims relating to Defendants' recruitment and
supervision of moderators. Quinteros sufficiently alleges that moderators are not

---

[2] The district court found that Quinteros's allegations that moderators improperly
accessed her image were "fanciful" and therefore implausible. This finding,
however, overlooked other factual allegations in the complaint, including
allegations that: (1) Quinteros only sent the image to a single non-moderator, who
confirmed he had not further distributed the image; (2) in two separate, detailed
instances moderators had inappropriately accessed private information on the
*Forge of Empires* platform. On a motion to dismiss, these allegations—combined
with the pleading leniency afforded pro se plaintiffs—should have allowed the
court to draw the reasonable inference that one or more moderators inappropriately
accessed and disseminated Quinteros's image.

[3] Quinteros also appears to allege a violation of her privacy rights under Wash.
Rev. Code § 9.73.030 based on these same allegations. Quinteros fails to state a
claim under Washington law, however, because she does not allege that these
violations occurred in Washington state, or at the behest of someone located in
Washington state. *See State v. Fowler*, 139 P.3d 342, 347 (Wash. 2006).

third parties within the meaning of the CDA. However, she fails to allege specific facts that show the relationship between Defendants and moderators is sufficient to render Defendants vicariously liable for moderators' actions under Washington law. For instance, Quinteros does not allege facts that establish Defendants and moderators have an employer-employee relationship, which could give rise to vicarious liability under Washington law. *See Anderson v. Soap Lake Sch. Dist.*, 423 P.3d 197, 214 (Wash. 2018) (stating Washington imposes vicarious liability on an employer for the torts of an employee acting on the employer's behalf and within the scope of employment). And to the extent Quinteros alleges Defendants were negligent in their supervision of the moderators, she has not shown any of the defendants knew or should have known that moderators would pose a risk of danger to her. She does not plausibly allege, for instance, that Defendants were aware that similar messages had been intercepted in the past, or that Defendants had a reason to believe moderators would intercept such messages. Without more, Quinteros fails to state a claim for negligence.

3.      We also agree with the district court that Quinteros failed to state a claim for defamation. "The elements a plaintiff must establish in a defamation case are falsity, an unprivileged communication, fault, and damages." *Mohr v. Grant*, 108 P.3d 768, 773 (Wash. 2005). "Before the truth or falsity of an allegedly defamatory statement can be assessed, a plaintiff must prove that the words constituted a

statement of fact, not an opinion." *Robel v. Roundup Corp.*, 59 P.3d 611, 621

(Wash. 2002). Here, the district court properly found that the statements alleged in

the complaint are not defamatory because they are not statements of fact. Read in

context, these statements are nonactionable insults. *See id.* at 622 (undertaking a

totality of circumstances test to conclude that "plainly abusive words not intended

to be taken literally as statements of fact" such as "idiot" and "snitch" are not

defamatory).

4.      Quinteros also fails to state a claim for negligent infliction of emotional

distress. Washington courts allow claims for negligent infliction of emotional

distress absent physical injury only where emotional distress is "within the scope

of foreseeable harm of the negligent conduct." *Bylsma v. Burger King Corp.*, 293

P.3d 1168, 1170 (Wash. 2013). Because Quinteros fails to state a claim for

negligent conduct, or plausibly allege any physical injury stemming directly from

Defendants' conduct, she cannot state a claim for negligent infliction of emotional

distress.

5.      Likewise, Quinteros fails to state a claim for intentional infliction of

emotional distress. Such a claim requires showing conduct "so outrageous in

character, and so extreme in degree, as to go beyond all possible bounds of

decency, and to be regarded as atrocious, and utterly intolerable in a civilized

community." *Lyons v. U.S. Bank Nat'l Ass'n*, 336 P.3d 1142, 1151 (Wash. 2014);

*see also Kloepfel v. Bokor*, 66 P.3d 630, 632 (Wash. 2003) (outrageous conduct generally does not include "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities"). Here, Quinteros only alleges that Defendants inconsistently applied certain rules to her, helped her alleged harassers ban her from the game, and attempted to cover up the misconduct of moderators. None of these allegations rise to the level of outrageous conduct.

6.    The district court properly dismissed Quinteros's gender discrimination in public accommodations claim, which it construed as an alleged violation of Wash. Rev. Code § 49.60.215. To make a prima facie case of gender discrimination, Quinteros must show that her gender was a substantial factor causing the alleged discrimination. *See W.H. v. Olympia Sch. Dist.*, 465 P.3d 322, 325 (Wash. 2020). The district court correctly found Quinteros's allegations as to this claim were vague and conclusory.

7.    Quinteros also fails to meet the heightened pleading standards for fraud. *See* Fed. R. Civ. P. 9(b) (fraud must be pled "with particularity"); *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1145 (9th Cir. 2021) (stating particularity includes the "who, what, when, where, and how" including what is false and why); *see also Adams v. King Cnty.*, 192 P.3d 891, 902 (Wash. 2008) (outlining the nine elements for fraud under Washington law). Here, Quinteros's main allegation is that Defendants represented that game rules on the *Forge of Empires* platform would

7

398

be applied fairly when they were applied unfairly. However, she fails to allege with particularity what specific statements Defendants made to her, who made these statements, when, and how she was deceived.

8. Quinteros fails to state a claim for unfair business practices under Washington's Consumer Protection Act (CPA), Wash. Rev. Code § 19.86.020. A private plaintiff bringing a CPA claim must show that their lawsuit would serve the public interest. *Michael v. Mosquera-Lacy*, 200 P.3d 695, 700 (Wash. 2009). Washington courts consider a number of factors to assess whether a claim concerns the public interest, including whether acts: (1) were carried out in the course of business, (2) were part of a pattern or generalized course of conduct, (3) were repeated prior to the involvement of the plaintiff, (4) created a "real and substantial potential for repetition," and (5) if the act is a single transaction, whether many consumers were affected. *Mason v. Mortg. Am., Inc.*, 792 P.2d 142, 148 (Wash. 1990); *see also Michael*, 200 P.3d at 700 (identifying similar factors). Applying the *Mason* factors to Quinteros's complaint, she fails to allege that her CPA claims concern the public interest.

9. Quinteros fails to state a products liability claim based on a design defect. "The elements of proof for a design defect products liability claim require a showing of (1) a manufacturer's product (2) not reasonably safe as designed (3) causing harm to the plaintiff." *Pagnotta v. Beall Trailers of Oregon, Inc.*, 991 P.2d

8

399

728, 732 (Wash. Ct. App. 2000) (citing Wash. Rev. Code § 7.72.030(1)); *see also Ayers By & Through Ayers v. Johnson & Johnson Baby Prods. Co.*, 818 P.2d 1337, 1340 (Wash. 1991). Here, Quinteros conclusorily alleges that Defendants created an unsafe product that causes gaming addiction in its consumers. While she identifies certain features of *Forge of Empires* which she asserts are addictive and harmful, she fails to allege specific, factual allegations that are sufficient to show that the game was, as designed, unreasonably addictive. Consequently, the allegations fail to state the second element of the design defect claim.

10.    The district court properly dismissed Quinteros's breach of contract claim, finding Quinteros failed to plead a material breach that caused damages to her. "A breach of contract is actionable only if [1] the contract imposes a duty, [2] the duty is breached, and [3] the breach proximately causes damage to the claimant." *Nw. Indep. Forest Mfrs. v. Dep't of Lab. & Indus.*, 899 P.2d 6, 9 (Wash. Ct. App. 1995) (citing *Larson v. Union Inv. & Loan Co.*, 10 P.2d 557 (Wash. 1932)). "Washington courts have recognized that a party must be intended as a third-party beneficiary to benefit from a contract." *Minton v. Ralston Purina Co.*, 47 P.3d 556, 562 (Wash. 2002). Quinteros fails to plausibly allege the existence of a contract between her and Defendants, which imposed an obligation on Defendants to refrain from transmitting images or engaging in verbal harassment. Likewise, none of the allegations in the complaint represent that Quinteros is a third-party beneficiary of

9

400

an agreement between Defendants and other users.

11.     Quinteros also fails to make a claim for promissory estoppel. To make out a promissory estoppel claim, a promise must be "clear and definite" and include "manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." *Washington Educ. Ass'n v. Washington Dep't of Ret. Sys.*, 332 P.3d 428, 435 (Wash. 2014) (citations and quotations omitted). Quinteros fails to allege a clear and definite promise. She alleges only that she "relied on [unspecified] statements of fairness" for her promissory estoppel claims.

12.     The district court also properly dismissed Quinteros's copyright infringement claim. Quinteros alleges the copyright violation here took place *before* she registered the photograph in question with the U.S. Copyright Office. However, Quinteros "is entitled to statutory damages and attorneys' fees only to the extent infringement occurred after the work was registered." *Enter. Mgmt. Ltd., Inc. v. Construx Software Builders, Inc.*, 73 F.4th 1048, 1056 n.6 (9th Cir. 2023) (citing 17 U.S.C. § 412). Because Quinteros fails to allege any other damages arising from the alleged copyright infringement with any specificity, this claim was properly dismissed.

13.     Quinteros's gender discrimination in employment claim fails because it simply recites the elements of a cause of action, and fails to contain "sufficient

10

401

allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Specifically, Quinteros merely asserts "[u]pon information and belief, the reason [she] was not hired [was] because she was a woman[.]" Quinteros alleges no underlying facts to support this bald assertion, and without more, she does not elevate her claim from the speculative to the plausible.

14.     Finally, we conclude that the district court abused its discretion in denying Quinteros, a pro se plaintiff, leave to amend. Even where a plaintiff fails to state a claim, district courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). This rule is liberally applied for pro se litigants. *Watison v. Carter*, 668 F.3d 1108, 1117 (9th Cir. 2012). A district court's denial of leave to amend is reviewed for abuse of discretion, and a "court abuses its discretion by denying leave to amend unless amendment would be futile or the plaintiff has failed to cure the complaint's deficiencies despite repeated opportunities." *Garmon v. Cnty. of Los Angeles*, 828 F.3d 837, 842 (9th Cir. 2016). Here, amendment would not be futile. Quinteros could plead additional facts to cure the various deficiencies identified above. And under the liberal standard we apply to pro se litigants, Quinteros should be given more than one opportunity to cure the deficiencies in her pleading.

**AFFIRMED IN PART, REVERSED AND REMANDED IN PART.**

11

402

FILED

*Quinteros v. InnoGames*, No. 22-35333

JAN 8 2024

BENNETT, Circuit Judge, dissenting in part:

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

I respectfully dissent from the majority's holding that the district court abused its discretion in denying Quinteros leave to amend her complaint a second time. Even with a liberal policy favoring amendment for pro se litigants,[1] "[a] district court acts within its discretion to deny leave to amend when amendment would be futile." *Chappel v. Lab'y Corp. of Am.*, 232 F.3d 719, 725-26 (9th Cir. 2000); *see also Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir.), *amended,* 856 F.2d 111 (9th Cir. 1988) ("If the district court determines that the 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency,' then the dismissal without leave to amend is proper." (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986))).

The majority states without elaboration that "Quinteros could plead additional facts to cure the various deficiencies identified above." Mem. at 11. But I don't know what possible additional facts Quinteros could plausibly allege to cure the significant (and to me incurable) deficiencies in her complaint, and the majority identifies none. And neither in the district court, nor on appeal, has Quinteros identified any such facts.

---

[1] Quinteros, a law student while this case was pending in district court, is now a licensed attorney.

403

Plus, here, Quinteros has already been afforded the opportunity to amend her complaint. "[W]hen a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is 'particularly broad.'" *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (quoting *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 879 (9th Cir. 1999)); *Godwin v. Christianson*, 594 F. App'x 427, 428 (9th Cir. 2015) (applying this rule to a pro se prisoner); *Snyder v. Allison*, F. App'x 329, 330 (9th Cir. 2021) (same).

I believe the district court did not abuse its discretion in denying Quinteros a second opportunity to amend her complaint, and thus I respectfully dissent from that portion of the majority's disposition.